IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 26-1225

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN

Defendants-Appellees

LEAGUE OF WOMEN VOTORS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO

Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION CASE NO. 1-25-cv-01148

UNITED STATES' EMERGENCY MOTION TO EXPEDITE BRIEFING

# EMEREGENCY MOTION TO EXPEDITE APPEAL

Pursuant to 28 U.S.C. 1657 and Sixth Circuit Rules 27(f) and 34(c) Plaintiff and Appellant United States ("Appellant") hereby respectfully requests that this Court expedite the briefing and hearing date on this appeal because it raises an issue of urgency with regard to the security of elections in the United States. This Court has discretion to "determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action" for good cause. 28 U.S.C. 1657(a). Good cause is shown under Section 1657 "if a right under the Constitution of the United States or a Federal Statute … would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Ibid.* In this matter the United States' rights under the Civil Rights Act of 1960 (CRA), Pub. L. No. 86-449, 74 Stat. 86, and the National Voter Registration Act of 1993 (NVRA), Pub. L. No. 103-31, 107 Stat. 77; 52 U.S.C. 20501 *et seq.*, would be inhibited, and the security and sanctity of elections in Michigan would be questioned absent an immediate ruling on this issue.

Michigan's next federal election is rapidly approaching on November 3, 2026. Weeks before that date, the State will be mailing

absentee and mail-in ballots to millions of Michigan voters, many of them potentially registered nonvoters. Prior to that date, Michigan voters need to know that its elections are secure and that noncitizens, deceased, and voters with multiple records are not registered to vote in its elections. All parties here are interested in removing the possibility of federal court orders requiring reviews or removals from the list of registered voters as the election approaches. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Michigan's voters and elections officials need a quick answer. The Department of Justice regrets asking for such speedy work from this Court, but as this Motion details, this timing is not of United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:

- United States's merit brief would be due on Wednesday, March 18, 2026;

- Michigan's merit brief would be due on Wednesday, March 25, 2026; and

- United States's reply brief would be due on Wednesday, April 1, 2026.

The United States also suggests that any *amicus* briefs be due on the same day as the party an amicus supports. The United States is also willing to waive oral argument, despite the great importance of the issues here, in order to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place during the April 2026 sitting. *Cf.* 6th Cir. R. 34(c)(3) (allowing for "oral argument at an early date" "[w]hen the court grants a motion to expedite").

Counsel for Michigan and Defendant-Intervenors have indicated that they oppose the Emergency Motion to Expedite Appeal.

## PROCEDURAL BACKGROUND

This is an appeal from the district court's order in *United States v. Benson,* 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), granting Defendants Jocelyn Benson and the State of Michigan's (collectively, "Defendants" or "Michigan") Motion to Dismiss ("Michigan Motion" or "Mich. Mot.") the United States' Complaint based on Title III of the Civil Rights Act of 1960 (CRA), and other related claims.

The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; see 52 U.S.C. 20701 *et seq*.

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. The statute criminalizes willfully destroying such documents, reflecting the Jim Crow–era practice of preventing blacks from voting by destroying their registration materials. 52 U.S.C. 20702. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

On July 21, 2025, the United States Department of Justice (the "Department" or "DOJ") sent a letter to Secretary of State Jocelyn Benson, seeking information regarding Michigan's compliance with the National Voter Registration Act ("NVRA"), 52 U.S.C. 20508, *et seq. See Benson*, 2026 WL 362789, at *1. In these requests the United States listed alleged irregularities with Michigan's voting rolls indicating failures of the state to be in compliance with the NVRA and requesting documentation from the state to ensure compliance. *Ibid.*

The NVRA, along with the Help America Vote Act ("HAVA"), contains provisions designed to help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for states' voting systems and voter registration lists. 52 U.S.C. 21081, 21083. HAVA requires states to implement a centralized computerized statewide voter registration list ("SVRL"), and to maintain that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A), (a)(2)(A). The Attorney General may also bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. 21111. The State refused to provide the United States with copies of the SVRLs with sufficient information to ensure that deceased, duplicate, and noncitizen voters were properly removed from voter rolls. *See Benson*, 2026 WL 362789, at *1. On September 25, 2025, the DOJ sued the state of Michigan for failure to produce its SVRLs. *Id.* at *1.

On February 10, 2026, Chief Judge Hala Y. Jarbou entered an order dismissing the United States' complaint without leave to amend. *Id.* at *11. The district court rejected the DOJ's HAVA claim on the grounds that the DOJ did not allege any violations of HAVA's substantive provisions and the Federal Rules of Civil Procedure did not allow the DOJ to file a claim without alleging violations of HAVA. *Id.* at *2.

The district court next rejected the DOJ's NVRA claim, holding that DOJ could not claim access to the SVRL because what DOJ was entitled to under the NVRA was Michigan's process in maintaining the SVRL and not the individual voter records. *Id.* at *6.

The district court also rejected the DOJ's Title III claim under the CRA, holding that the scope of documents requested by the DOJ were outside of the scope of documents requestable under the CRA. *Id.* at *8. Specifically, the Court ruled that that the CRA applies "only to documents that people *submit* to the State as part of the voter registration process, not a document like the voter registration list that is *created* by state officials." *Id.* at *9. The *Benson* court itself expressed some discomfort at its conclusion, acknowledging that it was possible

that "the distinction between voter registration applications and voter registration lists is overly pedantic…" *Id.* at *10.

The United States appeals from the Order of Dismissal regarding the Court's findings on the CRA. These rulings are contrary to the law as written and the facts of the case. An expedited appeal is necessary to secure the elections in Michigan, and permit Michigan the time to clean its voter rolls prior to the election this fall.

**ARGUMENT**

The United States recognizes that it seeks a tight window for briefing and decision but urges that the Court should expedite the appeal because time is short, and Michiganders deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue this appeal presents, irreparable harm will occur to voters of Michigan and the United States in enforcing laws designed to protect the sanctity of elections and the appeal will become moot considering the impending federal election. *See* 6th Cir. R. 27(f) (requiring "good cause to expedite"). Indeed, the federal courts of appeals, including this Court, routinely expedite appeals in election cases like this one, given their time-sensitive nature. *See, e.g., Libertarian Party of Ohio v. Husted*, 751

F.3d 403, 412 (6th Cir. 2014); *Ne. Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 583 (6th Cir. 2012) ("Given the time-sensitive nature of these appeals with the November election approaching, we ordered expedited briefing . . ."); *see also Mi Familia Vota v. Hobbs,* 977 F.3d 948, 951 (2020) (setting expedited appeal in case involving voter registration law); *TGP Communications, LLC v. Sellers*, 2022 WL 17484331, at *2 (9th Cir. Dec. 5 2022) (expediting appeal in a case involving vote tabulation).

**First**, this appeal presents the important purely legal question of how a court is to adjudicate the United States' demand for federal election records to enforce the CRA and the NVRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election...." 52 U.S.C. 20701 (transferred from 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. 20703. The "usual notions under the Federal Rules of Civil Procedure" do not apply to the CRA's "special statutory proceeding" to compel production of federal election records. *Lynd*, 306 F.2d at 225-26; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960) (same), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). Instead, the written demand need only "contain a statement of the basis and the purpose therefor." 52 U.S.C. 20703; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*"). "[T]he factual foundation for, or the sufficiency of, the Attorney General's" written demand under Section 303 "is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226.

The United States' demand was more than sufficient to provide the basis and purpose for the information the DOJ requested from Secretary Benson. The basis-and-purpose requirement merely requires "the Attorney General identify in a general way the reasons for [her] demand." *Coleman II*, 313 F.2d at 868 (citation omitted). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." *Id.* (emphasis added); *see also Coleman v. Campbell,* 208 F. Supp. 200 (S.D. Miss. 1962) ("*Coleman I*") (the written demand need only indicate the records were needed "to see if any federal laws were violated"). The United States plainly satisfied that requirement by stating that the purpose of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA and the district court erred in concluding otherwise.

Moreover, the United Staes believes that the district court's self-described "pedantic" limitation of the scope of the CRA's document request provision was clearly incorrect. According to the *Benson* court, "'*come* into [their] possession' naturally refers to a process by which someone *acquires* an item from an external source" as opposed to the

phrase "records in the possession of," which would include documents or records that were self-generated. 2026 WL 362789, at *9 (first emphasis added). That, however, is not what the plain terms of the statute dictate: an officer "come[s] into … possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291, (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). And Defendant acquired the relevant records in the course of carrying out her duties as an officer of election. No other federal court we are aware of has adopted such a limitation. Moreover, today many—and likely even most—voter registration applications are only in electronic form in a SVRL. Such a reading would effectively carve out vast numbers of federal election records, which was plainly not the intention of Congress in passing such "sweeping" legislation. *Lynd*, 306 F.2d at 226.

The district court also incorrectly determined the extent of the United States' authority to enforce the NVRA through a request via the CRA. The NVRA is a voting and elections enforcement statute that places requirements upon state entities to ensure that voters can register to vote and that voting lists are maintained in a regular fashion. The NVRA

"'erects a complex superstructure of federal regulation atop state voter-registration systems'" in pursuit of "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018) (brackets omitted) (quoting *Arizona v. Inter Tribal Council of Ariz.*, Inc., 570 U.S. 1, 5 (2013)). The statute requires States to, among other things, "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or change in residence. 52 U.S.C. 20507(a)(4).

Absent an expedited appeal, the extent to which the United States can exercise its authority under the CRA is in question. States, like Michigan, that have large discrepancies in its voter rolls based on its own reports to the EAC put the election in question. *See* p. 16, *infra*. The United States has sent numerous requests to Michigan to help it rectify its reporting failures and SVRL anomalies but to no avail. Absent a final Court determination on this matter there is no other process to ensure a fair election in 2026.

**Second**, an expedited appeal will allow the United States to confirm that Michigan's voter rolls are composed solely of individuals who are eligible to vote.

Michigan's next federal election is rapidly approaching on November 3, 2026, and Michigan must finish removing nonvoters from its rolls in systemic processes by August 4, 2026. *See* 52 U.S.C. 20507(c)(2)(A). Moreover, in the Complaint filed in this matter the Department established numerous anomalies in the records presented by Michigan to the Election Assistance Commission in 2024. *See United States v. Benson,* No. 25-cv-01148 (W.D. Mich. Feb. 10, 2026), Compl., Dkt 1. at ¶ 39. Those anomalies include:

- Michigan sent confirmation notices to only 330,598 (4.5 percent) of registered voters, which was well below the national average of 19.5 percent.

- Michigan reported only 357,708 (4.2 percent) of registered voters were removed, which was well below the national average of 9.1 percent.

- Michigan EAVS data reflects 1,869,570 duplicate voter registrations in the State of Michigan.

*Ibid;* Ex. 1 Letter, Dkt 26-1. All these anomalies were listed in the letter sent to the Secretary of State on July 21, 2025, and indicate that

Michigan has a significant amount of work to do to ensure a fair and secure election in 2026. All states, including Michigan, are required by the NVRA to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters," 52 U.S.C. 20507(a)(4), and are required by the HAVA to remove voters who are "not eligible to vote" from its SVRL, 52 U.S.C. 21083(a)(2)(B)(ii)-(iii).

Michigan would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Michigan to properly conduct an election this fall without the specter of noncitizen and other ineligible voters remaining on its voter rolls. Michigan has an interest in operating its elections without having federal Courts ordering last-minute changes. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

* * *

Absent a ruling on an expedited basis that the United States may proceed to request Michigan's SVRL under the statutory requirements of the CRA, states with anomalous SVRLs will continue to avoid review of its lists in a speedy fashion.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case to allow Michigan to clean its voter rolls prior to sending out ballots to nonvoters. The United States urges the adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

                                Respectfully submitted,

                                HARMEET K. DHILLON
                                  Assistant Attorney General

                                JESUS A. OSETE
                                  Principal Deputy Assistant
                                  Attorney General

                                *s/Andrew G. Braniff*
                                ANDREW G. BRANIFF
                                DAVID N. GOLDMAN
                                KELSEY E. MCGEE
                                  Attorneys
                                  Department of Justice
                                  Civil Rights Division
                                  Appellate Section
                                  Ben Franklin Station
                                  P.O. Box 14403
                                  Washington, D.C. 20044-4403
                                  (202) 532-3803

Date: February 27, 2026

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 3030 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

This emergency motion also complies with 6th Circuit Rule 27(c). Counsel for the United States called the Clerk's Office the same day that this Court docketed the appeal; although the case manager was unavailable, counsel for the United States left a voice message with the case manager advising him of the United States' intent to file this emergency motion to expedite the same day and a call-back number in compliance with 6th Circuit Rule 27(c)(1). Further, a notice of appeal, the order appealed from, and the underlying opinion and judgment are attached in compliance with 6th Circuit Rule 27(c)(2).

               *s/Andrew G. Braniff*
               ANDREW G. BRANIFF
                Attorney

Date: February 27, 2026

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>*s/Andrew G. Braniff*</u>
ANDREW G. BRANIFF
Attorney

Date: February 27, 2026