No. 26-1225

---

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

     Defendants-Appellees,

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

     Intervenors-Appellees.

---

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Hala Y. Jarbou

---

## DEFENDANTS-APPELLEES' RESPONSE IN OPPOSITION TO PLAINTIFF-APPELLANT'S MOTION TO EXPEDITE

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Elections & Municipal Affairs Division
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P64713)

Dated:  March 6, 2026

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................ii

Statement of Issue Presented ..................................................1

Introduction.........................................................................2

Relevant Proceedings in the Lower Court .................................3

Argument.............................................................................5

I.    Appellant has not demonstrated good cause to expedite this
      appeal. ........................................................................5

      A.    This is not an election case that seeks to challenge or
            clarify the laws, rules, or processes for conducting an
            election...............................................................6

      B.    Appellant did not seek expedited relief below and it is
            too later to implement any further systematic removal
            of voters. ............................................................9

      C.    Appellant has not shown that it is likely to prevail on
            the merits of the appeal. .......................................12

      D.    Appellant has not demonstrated that any irreparable
            harm will occur absent expedited consideration. ................14

II.   Even if this Court were to expedite the appeal, Appellant's
      proposed briefing schedule must be rejected...................17

Conclusion and Relief Requested.............................................18

Certificate of Compliance.......................................................19

Certificate of Service ............................................................20

Designation of Relevant District Court Documents ..............................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) .................. 11

*Libertarian Party of Ohio v. Husted,* 751 F.3d 403 (6th Cir. 2014) ......... 7

*Mi Familia Vota v. Hobbs,* 977 F.3d 948 (9th Cir. 2020) ........................ 7

*Northeast Ohio Coalition for Homeless v. Husted,* 696 F.3d 580
    (6th Cir. 2012) ..................................................................... 7

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) .... 12, 15

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) ....................................... 6

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 206 L.Ed.2d
    452 (2020) ......................................................................... 7

*Serv. Employees Int'l Union Local 1 v. Husted,* 698 F.3d 341 (6th
    Cir. 2012) .......................................................................... 6

*TGP Communications, LLC v. Sellers*, 2022 WL 17484331 (9th
    Cir. Dec. 5, 2022) ............................................................... 7

*United States v. Oregon*, 2026 U.S. Dist. LEXIS 25259 (D. Or.,
    Feb. 5, 2026) ..................................................................... 14

*United States v. Weber,* 2026 U.S. Dist. LEXIS 8545 (C.D. Cal,
    Jan. 15, 2026) ................................................................... 14

**Statutes**

52 U.S.C. § 20507 .......................................................... 9, 10, 11

52 U.S.C. § 20507(a)(3)......................................................... 11

52 U.S.C. § 20507(c)(2)(B)(i)................................................... 11

**Rules**

6th Cir. R. 27(f)...........................................................................5

## STATEMENT OF ISSUE PRESENTED

1.    A motion to expedite an appeal must show good cause for doing so.  Where this case does not involve election rules or procedures, Appellant took no action to expedite this matter below, and where the requested briefing schedule is needlessly advantageous to the Appellant, should the motion be denied?

## INTRODUCTION

Plaintiff-Appellant United States' motion to expedite does not demonstrate good cause, and, if granted, would disproportionally disadvantage Defendants-Appellees State of Michigan and Michigan Secretary of State Jocelyn Benson ("the State Defendants").

This case involves no injunction and no emergency.  Appellant seeks only to compel the State to produce a large volume of private voter registration data from the State's electronic voter registration list. The appeal does not challenge any Michigan election law, rule, or process, and its outcome will have little or no effect on the 2026 election.

Appellant's interest in expediting this matter is also limited only to this Court. It filed its complaint in the district court on September 25, 2025, and for the next four and half months—through the district court's February 10, 2026, opinion and order dismissing its complaint— never once sought expedited proceedings below. Appellant now asks this Court to compress appellate briefing into a matter of weeks without explanation.

Moreover, federal law prohibits systematic removal of voters from official lists within 90 days of a primary or general election—which

means that for this election cycle, all systematic removal of voters must cease on May 6, 2026.  Appellant's motion proposes that its reply brief be filed on April 1—leaving this Court fewer than 35 days to render its decision.  Yet Appellant does not explain why it was content to wait over four months for the lower court to decide this case, but now this Court must somehow render a final decision on the appeal in less than 35 days.

Lastly, Appellant's proposed briefing schedule would allow itself 21 days to draft and file its brief while affording the State Defendants (and any supporting amici) only seven 7 days to respond.  There is no justification for such a one-sided abbreviation.  Even if the Court decided to expedite this matter, the State Defendants would request the same 21 days as the Appellant requests for itself.

## RELEVANT PROCEEDINGS IN THE LOWER COURT

The United States filed its complaint in the district court on September 25, 2025.  (R. 1, Page ID # 1-19.)  The State Defendants were served on October 9, 2025.  (R. 10, Page ID # 91-92.)

The State Defendants moved to extend the time for their first responsive pleading by two weeks to November 12, 2025, and the

3

United States stated that—while it did not concur—it would not oppose the motion. (R. 11, Page ID # 93-95.) The district court granted the extension. (R. 15, Page ID # 107.)

On November 10, 2025, the State Defendants requested another two-week extension of time, and again the United States did not oppose the motion. (R. 19, Page ID # 164-166.) The district court granted that extension, as well. (R. 25, Page ID # 229.)

The State Defendants filed their motion to dismiss and brief in support on November 26, 2026. (R. 39, Page ID # 438-439; R. 40, Page ID # 440-512.) Intervenors filed their motion to dismiss on December 9, 2026. (R. 47, Page ID # 563-613.) The United States filed its response to those motions on December 26, 2025. (R. 53, Page ID # 664-698.) The State Defendants and Intervenors filed their replies on January 9, 2026. (R. 58, Page ID # 709-727; R. 60, Page ID # 729-748.) The lower court entered its opinion and order granting the motions to dismiss on February 10, 2026. (R. 67, Page ID # 892-914; R. 68, Page ID # 915.)

The United States did not file any motions to expedite either the district court's determination of any of the motions before it, or the determination of the case as a whole.

4

# ARGUMENT

## I.    Appellant has not demonstrated good cause to expedite this appeal.

Local Rule 27(f) requires that a motion to expedite an appeal show good cause.  6th Cir. R. 27(f).

Appellant raises two reasons to expedite this appeal and shorten the briefing schedule:  first, that this appeal involves only "legal issues" of statutory interpretation; and second, that an expedited appeal will "allow the United States to confirm that Michigan's voter rolls are composed solely of individuals who are eligible to vote."  (Doc. # 6-1, pp 10, 15.)  Neither of these stated grounds present good cause to expedite.

Further, there is not good cause to expedite the appeal where no action was undertaken to seek emergency relief below or expedite the lower court's determination.  Also, the request to expedite is already too late where—under Appellant's proposed schedule—less than 35 days remain after the filing of the reply brief before federal law prohibits any further systematic removal of voters before the November 2026 election, and so any "confirmation" of Michigan's voter rolls by Appellant would now occur too late for any action to be taken in this cycle.

**A.    This is not an election case that seeks to challenge or clarify the laws, rules, or processes for conducting an election.**

Appellant invokes the practice of federal courts to expedite appeals in "election cases" due to their "time-sensitive" nature, and it asks this Court to treat this appeal the same way.  But that description is inapt, and this case is not at all like the cases that this Court has previously expedited in consideration of an impending election.

To be sure, lawsuits challenging laws or rules about how elections will be conducted are subject to time limitations—often extremely short ones—generally meaning that last-minute changes to election procedures are strongly disfavored.  *Serv. Employees Int'l Union Local 1 v. Husted,* 698 F.3d 341, 345 (6th Cir. 2012) (citing *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion . . . As an election draws closer, that risk will increase.")).  The Supreme Court reaffirmed that principle in *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (staying portions of an injunction modifying process for mailing ballots on eve of primary election).

Appellant attempts to draw comparisons to prior decisions of this Court expediting elections cases, including *Libertarian Party of Ohio v. Husted,* 751 F.3d 403, 412 (6th Cir. 2014) (expediting appeal of a denial of preliminary injunction that would have required a candidate to be listed on ballots and prohibited printing of ballots pending appeal), *Northeast Ohio Coalition for Homeless v. Husted,* 696 F.3d 580, 583 (6th Cir. 2012) (expediting appeal of constitutional challenge to state disqualification of provisional ballots due to poll worker error), and the Ninth Circuit in *Mi Familia Vota v. Hobbs,* 977 F.3d 948, 951 (9th Cir. 2020) (expediting briefing in appeal of constitutional challenge to voter registration deadline as applied during the COVID-19 pandemic) and *TGP Communications, LLC v. Sellers*, 2022 WL 17484331, at *2 (9th Cir. Dec. 5, 2022) (expediting appeal in a case involving vote tabulation).

Those cases, however, have little in common with this case.  Here, the appeal does not involve any injunction of election procedures. Instead, Appellant seeks only to compel the additional disclosure of information from the State, and the connection to elections is tangential and based only on the nature of the information sought.  This is not a

7

ballot access case or a challenge to state laws governing the processing or tabulation of ballots.  Appellant does not challenge any process related to the administration of an election, such as procedures related to the casting or tabulating ballots.  Simply put, whether Appellant prevails in this appeal or not, the outcome of this case will have little or no effect on how an election is administered or conducted.

Appellant admits in its motion that the objective is to "confirm that Michigan's voter rolls are composed solely of individuals who are eligible to vote."  (Doc # 6-1, p 15.)  Appellant did not allege in the complaint (or argue in the instant motion) that Michigan's election laws or procedures violate the Civil Rights Act (CRA), the Help America Vote Act (HAVA), or the National Voter Registration Act (NVRA).  Rather, this case is about Appellant's desire to "confirm" whether Michigan is complying with its routine list maintenance obligations under federal law.

Even putting aside genuine questions of whether such "confirmation" is consistent with Congress' assignment of list maintenance duties to the states (see 52 U.S.C. § 20507), Appellant cites no authority that would obligate the State Defendants to accept or

act upon Appellant's findings without question or review of their own. In other words, even if Appellant was to prevail and obtain the information it seeks, there is no certainty of any effect or change for Michigan's upcoming elections.

In short, this is just not the type of "election" case entitled to expedited review. If this appeal is to be expedited, it should be because Appellant makes a showing of good cause under the particular circumstances of this case, rather than relying on inapt analogies to how this Court handles a class of cases to which this appeal does not belong.

### B. Appellant did not seek expedited relief below and it is too late to implement any further systematic removal of voters.

In its motion, Appellant asserts that the timing of this appeal is "not of the United States' making," but that argument does not hold up to scrutiny for several reasons.

First, Appellant did not any seek emergency relief in the lower court, and never once attempted to expedite the lower court determination it now seeks to appeal. And while Appellant did not concur in the State Defendants requested extensions, it essentially

acquiesced by not opposing them.  Had the Appellant believed that this

case was an emergency, it would certainly have taken a different

position with respect to those requests.  Simply put, Appellant never

expressed any concern over the passage of time in the lower court.

Now, on appeal, it has suddenly decided this matter is urgent and

requires expedited review.

 However, Appellant's perception of an emergency is already too

late.  With respect to any voter removal program, the NVRA requires

that a state must generally complete any program to remove voters

from official lists not later than 90 days before a primary or general

election for Federal office:

> A State shall complete, not later than *90 days* prior to the
> date of a primary or general election for Federal office, any
> program the purpose of which is to *systematically remove* the
> names of ineligible voters from the official lists of eligible
> voters.

52 U.S.C. § 20507(c)(2)(A) (emphasis added).  Exceptions to this

prohibition include only removal at the request of the voter, death of the

voter, or due to criminal conviction or mental incapacity.  52 U.S.C. §

20507(c)(2)(B)(i), 52 U.S.C. § 20507(a)(3), (4)(a).  See also *Arcia v. Fla.*

*Sec'y of State*, 772 F.3d 1335, 1345 (11th Cir. 2014) (removals based on citizenship not a listed exception).

For this election cycle, the ninetieth day before Michigan's August 4, 2026, primary is May 6, 2026, and the ninetieth day before the November 3, 2026, general election is August 5, 2026.[1] Given these dates, any systematic removal in Michigan must cease by May 6 until after the November 3 election. Appellant's motion proposes that its reply brief would be filed on April 1—leaving just 35 days for this Court to reach a decision before May 6. But as a practical matter, there is even less time for this Court's decision to have any meaningful effect for this election cycle.

Appellant argues that it wants this information to "confirm" that Michigan's voter rolls contain only eligible voters. (Doc. # 6-1, p 15.) Of course, this claim conflicts with the language of the NVRA, in which Congress entrusted that process to the states. 52 U.S.C. § 20507. In fact, this Court held just last year that Michigan's list maintenance

---

[1] See https://www.michigan.gov/sos/-/media/Project/Websites/sos/Election-Administrators/Election-Dates.pdf?rev=92c677694ef34a6b8e2deba08754741f&hash=4BF38DFEA291F1A56213EBC3CA7E2413 (accessed March 6, 2026.)

program for the removal of deceased voters satisfied the requirements of the NVRA. *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 626-27 (6th Cir. 2025), cert denied __ U.S. __, (U.S. Mar. 2, 2026). But even so, Appellant's motion does not describe what efforts it plans to take to "confirm" the over 7.3 million active registered voters in Michigan[2], how long it estimates that "confirmation" process might take, or how much time Michigan would be given to review and act upon Appellant's recommendations.

It is dubious that any serious effort at assessing the eligibility of 7.3 million voters could be completed in less than 35 days. As a result of Appellant's failure to seek any expedited or emergency relief in the lower court, that ship has already all but sailed.

### C.    Appellant has not shown that it is likely to prevail on the merits of the appeal.

Appellant argues that there is good cause to expedite because this case presents an "important purely legal question." (Doc. # 6-1, p 10.)

---

[2]Michigan Voting Dashboard, https://app.powerbigov.us/view?r=eyJrIjoiMTk3MjM4ZWQtMTlkZi00N2QxLTk5ZTktODdhYjk3YTVmMzk3IiwidCI6ImQ1ZmI3MDg3LTM3NzctNDJhZC05NjZhLTg5MmVmNDcyMjVkMSJ9 (last accessed March 6, 2026).

But it cites no authority holding that "important purely legal questions" equate to good cause to expedite.  Indeed, many appeals to this Court could as easily boast of "important legal questions," but not all are entitled to expedited review.  Expedited review is, by its nature, an exception and not the rule.

Appellant's argument then proceeds to discuss the strength of its claims and—without directly addressing—its likelihood of prevailing on the merits.  This argument is essentially a summarized restatement of Appellant's brief in the lower court and does little to demonstrate its likelihood of prevailing on appeal.  Much like in the lower court, Appellant fails to cite any authority squarely on point that establishes its position is demonstrably correct.  Instead, Appellant's argument shows, at best, an arguable question of statutory interpretation.  But that does little to establish good cause for expediting the appeal.  If anything, it suggests the opposite; a serious question for which this Court would benefit from thorough briefing with adequate time to consider the arguments presented by all parties and any amici.

Moreover, any consideration of the likelihood of Appellant's success on the merits ought to consider contrary decisions by other

courts.  Appellant has also sought essentially the same sensitive voter information from other states and has brought similar legal actions that have likewise been dismissed.  In *United States v. Weber,* 2026 U.S. Dist. LEXIS 8545 (C.D. Cal, Jan. 15, 2026), the district court granted motions to dismiss after concluding that the Appellant's similar CRA, HAVA, and NVRA claims in that case all failed as a matter of law.  (See R. 63, Page ID # 782-783.)  And in *United States v. Oregon*, 2026 U.S. Dist. LEXIS 25259 (D. Or., Feb. 5, 2026), the district court likewise held that Appellant's complaint seeking sensitive voter data failed to state a claim under the NVRA, HAVA, or CRA.

While out-of-circuit district court decisions might not be determinative of this appeal as a whole the simple fact that a growing number of federal judges have found Appellant's arguments to be unpersuasive weighs against the likelihood that Appellant will prevail on the merits.

## D.    Appellant has not demonstrated that any irreparable harm will occur absent expedited consideration.

Appellant's motion makes passing reference to "irreparable harm" that will occur "to voters of Michigan and the United States in enforcing

14

laws designed to protect the sanctity of elections," and that its appeal "will become moot considering the impending federal election." (Doc. 6-1, p 9.) But Appellant does not elaborate or explain what supposed harm will occur to either the voters or the United States.

Again, Appellant's complaint does not claim that Michigan does not perform voter list maintenance, or even that its program does not satisfy the requirements of federal law. And this Court already held that Michigan's list maintenance program for the removal of deceased voters satisfied the "reasonable effort" standard required by the NVRA. *Pub. Int. Legal Found.*, 136 F.4th at 626-27. Instead, Appellant's argument is that—for reasons it has not explained either in this motion or in its briefing below—the information the State of Michigan has already provided to it is not enough for it to "confirm" whether Michigan's program is sufficient. Appellant has also not explained why even the publicly available voter list is not adequate for it to identify "duplicate names" on the list. (See R. 1, Page ID # 18, ¶65.)

More pointedly, Appellant has not explained why the normal briefing period will cause any harm—let alone irreparable harm—to its ability to "confirm" the efficacy of Michigan's list maintenance program.

Appellant's argument conflates its self-directed confirmation efforts with some kind of change being made to the voter list prior to the election.  But the relief sought in the complaint does not include any changes to Michigan's list maintenance program, and it is far from clear that *any* changes to that program would be necessary even if Appellant received the sensitive voter information it demanded.  Presumably, if Appellant is able to "confirm" that Michigan's lists are accurate, no changes would be necessary at all.  Regardless, this case is about only the Appellant's authority to demand confidential voter information.  If Appellant were to prevail in this case, the records sought will still be available at that time.  Appellant has not identified any irreparable harm that will occur in the interim.

Also, while Appellant invokes unspecified harm to Michigan voters, it notably offers no analysis balancing such supposed harm against any irreparable harm caused to the same voters by the release of their private, sensitive information to the federal government, including their full dates of birth, state driver's license or personal identification numbers, or the last four digits of their social security numbers.  (See R. 39, Page ID # 461.)

**II.    Even if this Court were to expedite the appeal, Appellant's proposed briefing schedule must be rejected.**

Lastly, even if this Court were to conclude that expediting the appeal is appropriate, the briefing schedule proposed by Appellant should be rejected.  Appellant's requested schedule has its merits brief due on March 18 (19 calendar days from the date of this motion), with the State Defendants' merits brief due just seven days later on March 25.  On its face, this schedule gives Appellant 12 more days to draft its arguments than it would provide to the State Defendants.  But it is even more unbalanced where the district court opinion was issued on February 10.  (R. 67, Page ID # 892-914; R. 68, Page ID # 915.)  So, Appellant will have had 36 days to develop its arguments attacking the conclusions and reasoning of the district court, while giving the State Defendants just a week to respond to those arguments.

Even if expedited consideration were appropriate, there is no justification for giving a demonstrable advantage to one party over another.  If this Court decides to accelerate the briefing schedule, the State Defendants request that they be allowed at least 21 days following the filing of Appellant's brief to file their brief on the merits.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants-Appellees State of Michigan and

Michigan Secretary of State Jocelyn Benson respectfully request that

this Honorable Court deny the Plaintiff-Appellant United States of

America's motion to expedite or, in the alternative, deny the United

States' proposed briefing schedule and substitute a briefing schedule

that equitably apportions the time among the parties.

Respectfully submitted,

*/s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P64713)
grille@michigan.gov

Dated:  March 6, 2026

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This motion response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this motion contains no more than 5,200 words.  This document contains 3,244 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

/s/ Erik A. Grill
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P64713)
grille@michigan.gov

19

## CERTIFICATE OF SERVICE

I certify that on March 6, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P64713)
grille@michigan.gov

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 09/25/2025 | R. 1 | 1-19 |
| Summons | 10/09/2025 | R. 10 | 91-92 |
| Defendants' Motion to Extend Time to File First Responsive Pleading | 10/22/2025 | R. 11 | 93-95 |
| Order | 10/27/2025 | R. 15 | 107 |
| Defendants' Second Motion to Extend Time to File First Responsive Pleading | 11/10/2025 | R. 19 | 164-166 |
| Order | 11/12/2025 | R. 25 | 229 |
| Defendants Michigan Secretary of State Jocelyn Benson's and State of Michigan's Brief in Support of Motion to Dismiss | 11/26/2025 | R. 39 | 440-512 |
| Certificate of Concurrence | 11/26/2025 | R. 40 | 513-514 |
| Motion to Dismiss Defendant-Intervenors Michigan Alliance for Retired Americans, Donald Duquette and Keely Crimando | 12/09/2025 | R. 47 | 563-613 |

| | | | |
|---|---|---|---|
| United Sates' Memorandum of Law in Opposition to Defendants' Motion to Dismiss | 12/26/2025 | R. 53 | 664-698 |
| Intervenors' Reply in Support of Motion to Dismiss | 01/09/2026 | R. 58 | 709-727 |
| Defendants Michigan Secretary of State Jocelyn Benson's and State of Michigan's Reply Brief in Support of Motion to Dismiss | 01/09/2026 | R. 60 | 729-748 |
| Intervenors' Notice of Supplemental Authority | 01/22/2026 | R. 63 | 782-819 |
| Opinion | 02/10/2026 | R. 67 | 892-914 |
| Order | 02/10/2026 | R. 68 | 915 |