IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

No. 26-1225

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; and STATE OF MICHIGAN,

*Defendants-Appellees*

MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; and KEELY CRIMANDO,

*Intervenors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION
CASE NO. 1:25-CV-01148

_____

**INTERVENORS-APPELLEES' BRIEF IN OPPOSITION TO UNITED STATES' MOTION TO EXPEDITE APPEAL**

Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Tel.: (202) 968-4490
abranch@elias.law

Sarah Prescott
**SALVATORE PRESCOTT
PORTER & PORTER**
105 E. Main St
Northville, MI 48167
Tel.: (248) 679-8711
prescott@spplawyers.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ ii

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................5

I.     Federal law makes voter-list maintenance a state responsibility....................5

II.    DOJ embarks on a campaign to collect voter data held by states. ..................7

ARGUMENT ...................................................................................10

I.     DOJ's failure to act expeditiously alone justifies denying its Motion. .........10

II.    There is no need to resolve this appeal before the 2026 elections. ...............12

III.   DOJ cannot force a voter purge before the 2026 elections. .........................18

CONCLUSION .................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) ............................................................................18

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ...............................................................................................5

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ............................................................... 17, 18

*Foster v. Love*,
  522 U.S. 67 (1997) .............................................................................................5

*Fouts v. Warren City Council*,
  No. 23-1826, 2023 WL 6467366 (6th Cir. Oct. 4, 2023) .............................12

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) ...........................................................................................6

*In re Walsh*,
  229 F.App'x 58 (3d Cir. 2007) ........................................................................12

*Libertarian Party of Ohio v. Husted*,
  751 F.3d 403 (6th Cir. 2014) ...........................................................................15

*Mi Familia Vota v. Hobbs*,
  977 F.3d 948 (9th Cir. 2020) ...........................................................................15

*Nader v. Land*,
  115 F.App'x 804 (6th Cir. 2004) .......................................................................2

*Ne. Ohio Coal. for Homeless v. Husted*,
  696 F.3d 580 (6th Cir. 2012) ...........................................................................15

*Pub. Int. Legal Found. v. Benson*,
  136 F.4th 613 (6th Cir. 2025) ................................................................. *passim*

*Pub. Int. Legal Found. v. Benson,*
    721 F.Supp.3d 580 (W.D. Mich 2024)...............................................3, 17, 20

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024)...........................................................6

*TGP Commc'ns, LLC v. Sellers*,
    No. 22-16826, 2022 WL 17484331 (9th Cir. Dec. 5, 2022).........................15

*United States v. Benson*,
    No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026)...............1

*United States v. Clarke*,
    573 U.S. 248 (2014)......................................................................19

*United States v. Oregon*,
    No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026)....................1, 9

*United States v. Weber*,
    No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ..............1, 9

## Statutes

52 U.S.C. §20501 ..............................................................................6

52 U.S.C. §20507 .......................................................................... *passim*

52 U.S.C. §21083 ..............................................................................6

52 U.S.C. §21085 ..............................................................................7

Mich. Comp. Laws §168.509gg ............................................................8

## Other Authorities

H.R. Rep. No. 107-329 (2001) ..............................................................7

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of
    Justice Department Requests for Voter Information*, Brennan Ctr. for
    Just. (updated Mar. 4, 2026), https://perma.cc/Z42M-MTVG .....................7

# INTRODUCTION

This case concerns whether federal law entitles DOJ to demand the full, unredacted copy of Michigan's statewide voter registration list, including sensitive voter data protected from disclosure by state law. It is one of 30 cases DOJ has filed in the past six months across the country demanding unredacted state voter files. Though its effort to collect this data is unprecedented, DOJ claims it seeks the lists to assess the states' compliance with their voter-list-maintenance obligations under the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). Three district courts—including the court below—have so far reached the merits of DOJ's claims, and each dismissed DOJ's Complaint. *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789, at *11 (W.D. Mich. Feb. 10, 2026); *United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026). These courts collectively have held that DOJ's legal claims are fatally defective for multiple, independent reasons. When this appeal reaches the merits stage, Intervenors will demonstrate that there is no shortage of grounds on which this Court can affirm the district court's dismissal.

But there is no emergency here, nor any reason why this appeal should not be heard in the normal course. Up until this point, DOJ has not made any such claim or acted like litigants act when pursuing a time-sensitive action. Not only did DOJ

never move to expedite below, it moved to *stay* the case for an indefinite period. R.8, PageID#87-88.[1] Nor did DOJ oppose multiple extensions of Secretary Benson and Michigan's ("State Defendants") responsive-pleading deadline. State Defendants' First Motion for Extension, R.11, PageID#94 ("Plaintiff's counsel indicated that they do not oppose the motion for an extension."); State Defendants' Second Motion for Extension, R.19, PageID#165 (same). Consequently, the court extended the State Defendants' motion-to-dismiss deadline by four weeks. Order, R.15, PageID#107; Order, R.25, PageID#229. DOJ then took the full 30 days to file its opposition, and, once the court dismissed the case, took more than two weeks to notice its appeal. Even now, DOJ requests that its opening brief be due more than five weeks after the district court's opinion and order below. Quite audaciously, however, it asks that Appellees' briefs be due just *one* week later, and gives itself the same time to file its reply. Mot. at 3. Not only would that lopsided schedule substantially prejudice Appellees, there is simply no reason to rush this appeal, which threatens serious harm to millions of Michigan voters whose private, personal data is at stake. And DOJ's failure to move expeditiously independently justifies denying its Motion. *See Nader v. Land*, 115 F.App'x 804, 806 (6th Cir. 2004) ("[The Court] den[ies] the

---

[1] The court denied DOJ's request for an indefinite stay; however, it granted the request in part by extending DOJ's deadline to respond to Intervenors' motion to intervene by more than a month. Order, R.9, PageID#90.

motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously.").

DOJ's asserted reasons for expedition also fall apart on scrutiny. This case has nothing to do with the "security and sanctity" of the 2026 elections. Mot. at 2. Nor is the case about whether Michigan will "clean its voter rolls prior to the election this fall." *Id*. at 9. In fact, DOJ neither alleges Michigan failed to perform sufficient list maintenance, nor requests any relief that would require Michigan to remove voters from its rolls. DOJ alleged that it had *not even determined if it believes* that Michigan has failed to engage in sufficient list maintenance. *See* Complaint, R.1, PageID#14, 17-18 (asserting DOJ lacks the information necessary to "evaluat[e]" or "determine" whether Michigan's list-maintenance procedures were noncompliant with federal law). The *only* relief DOJ seeks is to compel the state to turn over Michigan's unredacted voter list. *Id.*, PageID#18-19. Full stop.

Federal courts regularly adjudicate claims that more directly accuse states of violating the laws DOJ invokes here, without any suggestion that the "security and sanctity" of elections is at stake in the interim; indeed, often those cases take years to complete. *E.g.*, *Pub. Int. Legal Found.* ("*PILF*") *v. Benson*, 721 F.Supp.3d 580 (W.D. Mich. 2024) (complaint filed in 2021), *aff'd*, 136 F.4th 613 (6th Cir. 2025) (affirming summary judgment against NVRA challenge to Michigan's list-maintenance efforts), *cert. denied*, No. 25-437, 2020 WL 568298 (Mar. 2, 2026).

3

DOJ is still many steps away from even *beginning* that process. In fact, in district court, DOJ never moved for summary judgment or for an order requiring the production of records. Consequently, there was nothing before that court (and therefore nothing before this Court) that could lead to imminent record production. Even if this Court reversed the dismissal, all that would happen is the case would be remanded.

DOJ's claim that this case concerns "the specter of noncitizen[s]" on Michigan's voter list, Mot. at 16, is also at odds with the Complaint, which *never* mentions anything of the sort. Instead, it claims it needs voters' private personal data to investigate whether Michigan is in compliance with the NVRA's and HAVA's list-maintenance procedures, but it states no basis to believe Michigan is not in compliance with its modest list-maintenance obligations, which only require it to engage in reasonable efforts to remove names from the voter list when a voter becomes ineligible due to death or change in residence. *See* 52 U.S.C. §20507(a)(4). Further, Michigan explained to DOJ that individuals must affirm their citizenship before they may appear on the rolls, and that it cancels noncitizen registrations. State Defendants' Motion to Dismiss, Ex. E, R.39-6, PageID#512.

The errors continue. DOJ claims that Michigan's "next federal election is rapidly approaching on November 3, 2026." Mot. at 2. In fact, Michigan's next federal election is the primary on August 4, 2026. Since any program to

systematically remove voters from Michigan's rolls must be completed 90 days *before* that primary, *see* 52 U.S.C. §20507(c)(2)(A), any such program that DOJ ultimately seeks to force upon Michigan (which, again, it does not request) would have to be completed by May 6, 2026. Any such mass removal of voters would be impossible on that timeline, both because of the calendar and because the NVRA's procedural safeguards forbid the hurried mass voter purge DOJ presses. *See id.* §20507(a)(3)-(4), (b)-(d).

DOJ has failed to show the requisite "good cause" to expedite this appeal. 6th Cir. R. 27(f). Its Motion to Expedite ("Motion" or "Mot.") should be denied.

## BACKGROUND

### I.    Federal law makes voter-list maintenance a state responsibility.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). Accordingly, the Constitution assigns states the default responsibility for determining voter eligibility and maintaining voter lists. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id*. at 5, and confirm that states are the custodians of voter-registration data. Congress in 1993 enacted the

5

NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the states' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see* 52 U.S.C. §20501(b). That law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. §20507(a), including maintaining voter lists, *id*. §20507(c)-(g).

The NVRA imposes restrictions on whether, when, and how a state may cancel a voter's registration. *See id.* §20507(a)(3)-(4), (b)-(d). It also imposes a modest obligation on states to "conduct a general program that makes a reasonable effort to remove" voters ineligible due to death or change in residence. *Id*. §20507(a)(4). Even so, it requires that "any program . . . to systematically remove" voters from the rolls to be completed 90 days before the next federal "primary or general election." *Id*. §20507(c)(2)(A).

After the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain voter-registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. §21083(a)(1), (2)(A). HAVA mandates this list be "defined, maintained, and administered at the State level," *Id*. §21083(a)(1)(A), and it commands that the "specific choices on the

6

methods of complying with" HAVA "shall be left to the discretion of the State," *id*.

§21085. Indeed, HAVA's legislative history stressed the importance of maintaining

our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the
> state and local level. This system has many benefits that must be
> preserved. The dispersal of responsibility for election administration
> has made it impossible for a single centrally controlled authority to
> dictate how elections will be run, and thereby be able to control the
> outcome. This leaves the power and responsibility for running elections
> where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31-32 (2001). And, while HAVA requires states to create

their own centralized statewide voter-registration lists, nothing in the law obligates

them to disclose records in any manner, including to the federal government.

## II.    DOJ embarks on a campaign to collect voter data held by states.

Last year, DOJ launched an unprecedented campaign to demand access to

states' voter files, which include sensitive information about each registered voter.

As part of that effort, DOJ sent demands for statewide voter lists to nearly every

state. The vast majority have refused to turn over their unredacted lists.[2] In response,

DOJ has now sued 29 states and the District of Columbia to compel disclosure.[3]

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Mar. 4, 2026), https://perma.cc/Z42M-MTVG.

[3] *See* Martinez-Ochoa et al., *supra* note 2.

On July 21, 2025, DOJ demanded Secretary Benson provide Michigan's voter list. Complaint, R.1, PageID#10-12. DOJ later explained that it sought the list "to determine Michigan's compliance with both the NVRA's and HAVA's voter list maintenance requirements." *Id.*, PageID#13. Secretary Benson notified DOJ on September 2 that she would provide DOJ with a redacted list containing most of the information DOJ demanded, but excluding sensitive voter information protected from disclosure under state law, such as driver's license numbers, partial social security numbers, and full dates of birth. State Defendants' Brief in Support of Motion to Dismiss, Ex. D, R.39-5, PageID#504-505; *see also* Mich. Comp. Laws §168.509gg(1)-(2). A week later, the Secretary sent another letter that provided detailed information about Michigan's list-maintenance practices. *Id.*, Ex. E, R.39-6, PageID#507-512. DOJ never responded to either letter. Instead, it sued the State Defendants on September 25.

On September 30, Intervenors moved to intervene under Rule 24. R.5. The next day, DOJ moved to stay the case, citing the government shutdown, R.8. The district court denied the request in part. Order, R.9. Over DOJ's objections, the court granted intervention. Order, R.46.

While intervention was pending, Intervenors filed a proposed motion to dismiss on November 12. R.23. After twice requesting and receiving extensions of their responsive-pleading deadline—without opposition by DOJ—the State

Defendants also moved to dismiss, on November 26. R.38. DOJ waited 30 days to respond to the motions to dismiss, filing its opposition on December 26. R.53. DOJ neither moved to expedite consideration of those motions, nor did it seek summary judgment or other affirmative relief.

On February 10, 2026, the court granted the motions to dismiss. Order, R.68. The court dismissed DOJ's HAVA claim because "HAVA lacks any provision related to disclosure" and DOJ "d[id] not allege that Michigan has failed to conduct list maintenance." Opinion, R.67, PageID#895. The court dismissed DOJ's NVRA claim, concluding "Congress did not intend to mandate the disclosure of voters' personal information because that information is not about the voter list maintenance process." *Id.*, PageID#904. And the court dismissed DOJ's claim under the Civil Rights Act of 1960 ("CRA"), reasoning that, under the statute's plain text, election officials need only disclose "documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials." *Id.*, PageID#910.[4]

---

[4] The district courts that dismissed DOJ's parallel suits for California's and Oregon's unredacted voter lists held, instead, that DOJ failed to allege a sufficient factual basis for its investigation, and that DOJ's purported purpose of assessing compliance with the NVRA and HAVA was outside the scope of the CRA, among other shortcomings. *See Weber*, 2026 WL 118807, at *8-12; *Oregon*, 2026 WL 318402, at *7-10.

The court entered judgment on February 23. R.69. DOJ noticed its appeal on February 25, R.70, and moved to expedite on February 27.

## ARGUMENT

### I.     DOJ's failure to act expeditiously alone justifies denying its Motion.

DOJ has not acted to expeditiously pursue this matter and has never characterized it as an emergency until filing this Motion. It waited weeks to even notice its appeal. DOJ claims in this Motion, for the first time, that the matter must be resolved on a highly expedited timeframe. Further, DOJ's proposed schedule would give it more than five weeks to prepare its own merits brief from when the district court granted the motions to dismiss while giving Appellees only one week to prepare their responses. This is undoubtedly because DOJ is concerned that its own delays have put it in a position where it will be difficult for it to use any data it may obtain to make more concrete allegations that Michigan has somehow fallen short in its list-maintenance procedures. However, its unprecedented demands for private voter data seriously threaten voters (as well as the delineation of responsibility for election administration set out in the Constitution and federal law), and Defendants should have a full and fair opportunity to address both DOJ's inchoate claims and explain why its demands are contrary to law.

As this Court has previously held, when a litigant fails to proceed expeditiously, that is reason alone to deny its motion to expedite. This is such a case.

Indeed, until this Motion, nothing about DOJ's pursuit of this matter has been expeditious. DOJ filed its Complaint nearly six months ago, on September 25, 2025. R.1. But it *never* moved for affirmative relief or to expedite the proceedings below. Quite to the contrary, a week after suing, DOJ moved to stay the case, citing the government shutdown. DOJ's Motion to Stay, R.8. The only reason the case continued to move forward is because the district court *denied* in part DOJ's stay request. Order, R.9. After that, DOJ did not oppose multiple requests by the State Defendants to extend their responsive pleading deadline. R.11; R.19. As a result, that motion to dismiss was not filed until November 26. R.38. DOJ then waited a full 30 days to file its oppositions to Intervenors' and the State Defendants' motions. *See* R.53. The district court issued its order dismissing the case on February 10. R.68. DOJ then took more than two weeks to notice its appeal. R.70. Even now, DOJ requests that its opening brief be due over five weeks after the district court's opinion and order below (while asking that Appellees have just one week to respond to that brief). Mot. at 3.

DOJ's leisurely pace in district court undercuts any claim that this case is so urgent that it requires an "immediate ruling" from this Court. *Id.* at 2. And it also independently justifies denying the Motion. *See Nader*, 115 F.App'x at 806 ("[The Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *see also Fouts v. Warren City Council*, No. 23-

11

1826, 2023 WL 6467366, at *2 (6th Cir. Oct. 4, 2023) (denying motion to expedite appeal when plaintiff "failed to show that he acted expeditiously in filing his federal lawsuit"); *cf. In re Walsh*, 229 F.App'x 58, 61 (3d Cir. 2007) (denying motion to expedite appeal when it was not "made promptly").

Moving so quickly would not only prejudice Appellees, it would give short shrift to the important issues in this case. The CRA was passed in 1960, but not until last fall has any litigant asked a court to decide whether it can be used to investigate a state's list-maintenance obligations under the NVRA or HAVA. DOJ has filed 30 suits demanding unredacted copies of the states' voter lists. *See supra* Background §II. To date, three district courts, including below, have dismissed those cases for varying reasons. *See supra* at 9 & n.4. Motions to dismiss remain pending in many others that may help inform this Court's judgment. This Court should not take lightly, or rush to resolve, a case where such important questions hang in the balance. And, DOJ's failure to act with urgency until now is reason on its own to ensure that this matter gets the considered time and attention it deserves.

## II.    There is no need to resolve this appeal before the 2026 elections.

DOJ's own lackadaisical pace reflects the reality that no emergency exists. DOJ attempts to rewrite this case in its Motion, but it simply is not true that this case is about whether Michigan's elections will be "secure" or whether ineligible voters will be "registered to vote in its elections." Mot. at 3. Nor is the suit about whether

there will be a "fair election in 2026." *Id*. at 14. Neither in DOJ's Complaint nor in its pre-Complaint correspondence with Michigan did DOJ *ever allege* that Michigan's voter-list-maintenance efforts are deficient in any way. R.1 (Complaint), R.39-2 to 39-6 (correspondence). To the contrary, DOJ made clear it does *not* have a reason to conclude Michigan has fallen short in its list-maintenance obligations. *See, e.g.*, Complaint, R.1, PageID#14, 17-18 (stating that DOJ lacks the information necessary to "evaluat[e]" or "determine" whether Michigan's list-maintenance procedures complied with federal law). That is unsurprising because last year a panel of this Court unanimously held that "Michigan's multi-layered efforts" at list maintenance were "more than reasonable" and satisfied its NVRA obligations. *PILF*, 136 F.4th at 628, *reh'g en banc denied* 2025 WL 2214199 (Jul. 9, 2025) ("No judge has requested a vote on the suggestion for rehearing en banc.").

*This suit* is solely about whether the NVRA, HAVA, or CRA entitles DOJ to demand Michigan's unredacted voter list. And *this appeal* is solely about whether DOJ's claims can survive Rule 12(b) motions. There is simply no rush to resolve this case in advance of the 2026 elections, particularly when DOJ's claimed "emergency" regarding the status of Michigan's voter rolls is based (at best) on insinuation, not any asserted facts. The most DOJ can even muster in its Motion is to suggest that there are "discrepancies" in Michigan's voter rolls apparent in Michigan's self-reported election data. Mot. at 14. But this misstates the record: DOJ did *not* allege

that Michigan's election data evidenced improper list-maintenance procedures. Rather, DOJ sent a letter to Michigan asking it to *explain* its list-maintenance procedures in light of questions DOJ had about Michigan's voter-registration data. R. 34-3. Michigan did so, providing a detailed response discussing how its robust list-maintenance procedures comply with federal law and noted that since 2019 it "has cancelled more than 1.4 million registrations." R. 34-7, PageID#410-414. DOJ has never disputed Michigan's explanation or given any reason to doubt that Michigan's list-maintenance efforts were sufficient. *See PILF*, 136 F.4th at 627-28 (holding "Michigan has taken rational, sensible steps to maintain accurate voter rolls"). This innuendo, devoid of any factual showing that a real-world problem with Michigan's voter list exists, cannot support DOJ's suggestion that there is an "emergency" requiring the Court's attention.

DOJ cannot justify its Motion based on the supposed need to "clean [Michigan's] voter rolls prior to the election this fall," Mot. at 9, because it neither alleges Michigan failed to conduct sufficient removals, Complaint, R.1, PageID#16-18, nor requests any relief that would require any voter removals, *id.*, PageID#18-19. All DOJ alleged is that Michigan violated the NVRA, HAVA, and CRA by failing to disclose its unredacted voter list. *Id.*, PageID#18. As relief, DOJ demands that unredacted list. *Id.*, PageID#18-19. In light of the actual claims and relief at issue, the "security and sanctity of elections in Michigan" is not at stake here. Mot. at 2.

14

This also distinguishes this case from the cases that DOJ cites where courts expedited appeals. *Id.* at 9 (citing cases). Unlike here, those cases involved injunctions that would have directly impacted the administration of upcoming elections. *See Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (expediting appeal of denial of injunction to put candidate's name on ballot); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 583 (6th Cir. 2012) (expediting appeal of injunction to count ballots cast in the wrong precinct or with deficient ballot affirmations); *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 951 (9th Cir. 2020) (expediting appeal of injunction of voter registration deadline on eve of election).[5]

DOJ's Motion seems to assume that, if it succeeds on appeal, it will be entitled to immediate production of Michigan's unredacted voter list. That is wrong. DOJ did not move for summary judgment, nor did it move to compel the production of records, as it did in many of the 30 parallel cases it brought across the country. There was nothing before the district court (and therefore nothing before this Court) that could lead to imminent production of records. Rather, the only pending motions in district court were the motions to dismiss. Intervenors will show in this appeal why

---

[5] Even farther afield, DOJ cites *TGP Commc'ns, LLC v. Sellers*, where the Ninth Circuit expedited an appeal of an order denying a preliminary injunction for a member of the press to attend briefings about an election in which votes were still being counted. No. 22-16826, 2022 WL 17484331, at *1 (9th Cir. Dec. 5, 2022).

that dismissal was appropriate, but even if this Court reversed, all that will happen is the matter will be remanded to the district court for further proceedings.

Even if DOJ prevailed on remand (and in any further appeals), its only relief would be to obtain and inspect Michigan's unredacted voter list. However, it is highly unlikely DOJ would find any violation of federal law, as this Court just last year affirmed a district court's decision (made after the benefit of discovery) that Michigan does more than enough to fulfill its NVRA obligations. *See PILF*, 136 F.4th at 627-28. Assuming further that DOJ would believe, after reviewing the list, that it has a viable claim against Michigan for not complying with the NVRA or HAVA, DOJ would then need to bring a *new* lawsuit alleging a violation of those statutes, and then prevail through any appeals, before it could force Michigan to undertake additional, unspecified list-maintenance efforts. Given these contingencies, DOJ's argument that an expedited appeal is "necessary to secure the elections in Michigan, and permit Michigan the time to clean its voter rolls prior to the election this fall," Mot. at 9, is hyperbolic, premature, and simply incorrect.

DOJ also fundamentally misunderstands the NVRA. The statute does not require Michigan—and certainly not the federal government—to ensure the State's "voter rolls are composed solely of individuals who are eligible to vote." Mot. at 15. Rather, the NVRA only requires Michigan to make "*reasonable* effort[s]" to remove certain categories of ineligible voters from its rolls. 52 U.S.C. §20507(a)(4)

16

(emphasis added). Those efforts "need not be perfect, or even optimal," just "within the bounds of rationality." *PILF*, 136 F.4th at 625. Nor does the NVRA "require states to *immediately* remove every voter who may have become ineligible." *PILF*, 721 F.Supp.3d at 596 (emphasis added), *aff'd*, 136 F.4th 613.[6] In light of these modest list-maintenance obligations, DOJ's suggestion that an expedited appeal is necessary to prevent the "specter" of "noncitizen and other ineligible voters remaining on [Michigan's] voter rolls" in elections "this fall," Mot. at 16, simply does not make sense, even if DOJ had brought a substantive list-maintenance claim.

DOJ's repeated references to noncitizens on Michigan's voter rolls reflect another misunderstanding of the State's list-maintenance obligations under the NVRA—and, more broadly, DOJ's failure to keep its story straight. *See id.* at 3, 7, 16. Below, DOJ never alleged that Michigan had meaningful numbers of noncitizens on its voter rolls in its demand letter to Secretary Benson, R.47-2, its Complaint, R.1, or its opposition to the motions to dismiss, R.53. As an initial matter, the NVRA's requirement of reasonable efforts to remove names from the voter list extends "only [to] those voters who become ineligible because of death or change of

---

[6] Since "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations," *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019), Michigan's list-maintenance obligations under HAVA are the same as under the NVRA. *See* 52 U.S.C. §21083(a)(2)(A)(i) (stating list-maintenance obligations under HAVA are "in accordance with" the NVRA).

address." *Bellitto*, 935 F.3d at 1195 (citing 52 U.S.C. §20507(a)(4)); *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) (similar). Regardless, Michigan explained that: (1) applicants must affirm their citizenship before being added to the voter rolls, (2) Michigan will cancel an apparent noncitizen's registration, and (3) Michigan recently identified 15 such persons, cancelled their registrations, and referred them for potential prosecution. R.39-6, PageID#512. In short, DOJ's newly raised concern about the "specter" of noncitizen voting in Michigan, Mot. at 16, provides no basis to expedite this appeal.

### III.   DOJ cannot force a voter purge before the 2026 elections.

DOJ's apparent hope to use Michigan's unredacted voter list to force the State to remove voters from its rolls en masse before the 2026 elections also rests on a misunderstanding of how the NVRA interacts with Michigan's election timeline.

DOJ claims that "Michigan's next federal election is rapidly approaching on November 3, 2026." Mot. at 15. In fact, Michigan's next federal election is the primary on August 4, 2026.[7] The difference matters. Acknowledging that "any program . . . to systematically remove" voters from Michigan's voter list must be completed 90 days before the next federal election, 52 U.S.C. §20507(c)(2)(A), DOJ calculates the date by which "Michigan must finish removing nonvoters from its

---

[7] Mich. Sec. of State, Aug.-Nov. 2026 Election Dates, https://perma.cc/YP7P-R6ZZ.

rolls" as "August 4, 2026." Mot. at 15. But since the next federal election is on August 4, any systematic removal program must be completed by *May* 6—90 days before the primary. *See* 52 U.S.C. §20507(c)(2)(A) (pegging the start of the NVRA's "Quiet Period" to 90 days before the next federal "primary or general election").

There is simply no way DOJ can succeed in its quest to force Michigan to "clean its voter rolls," Mot. at 9, before May 6. Again, to do so, DOJ would have to prevail (1) in this appeal, (2) on remand,[8] and then, if it determined it had a viable claim after reviewing Michigan's unredacted voter list, (3) in a new suit—through all appeals—with sufficient time for Michigan to conduct any hypothetical removals. Under the NVRA, all of this must occur before May 6—barely two months from now—or wait until after the November election, at which point DOJ says, puzzlingly, that its claims will be "moot." *Id.* at 9. That is impossible.

---

[8] DOJ will not be entitled to imminent production in district court. If DOJ prevails in this appeal, the proper procedure on remand would be to proceed to discovery followed by summary judgment briefing. Indeed, a Rule 16 discovery conference had been scheduled before the motions to dismiss were granted. R.56. And even if DOJ were to take the (incorrect) position that some other procedural framework applies, Intervenors would still be entitled to discovery. Recipients of government document demands are entitled to discovery into the government's motive in issuing the demand if they can "make a showing of facts that give rise to a plausible inference of improper motive." *United States v. Clarke*, 573 U.S. 248, 254 (2014). DOJ's case was dismissed before discovery commenced, but if that dismissal is reversed, Intervenors intend to make this showing and use discovery to (among other things) demonstrate that DOJ's demand was not made in good faith.

19

This Court's most recent NVRA list-maintenance case shows why. In *PILF*, the plaintiffs sued on November 3, 2021. *See* Compl., *PILF,* 721 F.Supp.3d 580, (W.D. Mich. Nov. 3, 2021) (No. 1:21-cv-00929), 2021 WL 5154174. The district court granted summary judgment to Secretary Benson on March 1, 2024—over two years after the suit was filed. *PILF*, 721 F.Supp.3d 580. This Court affirmed on May 6, 2025. *PILF*, 136 F.4th 613. The Supreme Court denied certiorari earlier *this week*. *PILF*, 2026 WL 568298. In total, it took nearly four and one-half years to resolve that list-maintenance case. DOJ here seeks to expedite this appeal in the hopes that it can quickly get Michigan's unredacted voter list to determine if it even has a viable list-maintenance claim, and *then* successfully prevail on that hypothetical claim and achieve its desired relief—removing voters from the rolls—all by May 6, 2026. That will never happen.

The NVRA's procedural safeguards also foreclose DOJ's effort to force a mass voter purge before the 2026 elections. Consistent with its central purposes of encouraging voter registration and preventing improper removals, the NVRA strictly regulates the circumstances under which Michigan may cancel a voter's registration. *See* 52 U.S.C. §20507(a)(3)-(4), (b)-(d). The State may not, for instance, remove a voter from the rolls "on the ground that the registrant has changed residence" unless the registrant either confirms the change in writing *or* fails to respond to a duly-transmitted notice *and* has not voted or appeared to vote "in an election during the

period beginning on the date of the notice and ending on the day after the date of the *second* general election for Federal office that occurs ***after*** the date of the notice." *Id*. §20507(d)(1)(A)-(B) (emphases added). Accordingly, to systematically remove voters based on changes of residence, Michigan would have to provide notice to voters who may have moved and then *wait two full election cycles* before completing the removal. That, obviously, cannot happen before the next election. Given these safeguards in the NVRA, Congress clearly did not intend for voter removals to happen on an expedited timeline, but rather only after careful review and multiple checks to prevent improper removals, contrary to DOJ's newfound push for speed.

## CONCLUSION

The Court should deny DOJ's Motion and permit the appeal to proceed on the default schedule.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Aria Branch*
Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
abranch@elias.law
jabbuhl@elias.law
blewiston@elias.law
dzeigler@elias.law

Sarah Prescott
**SALVATORE PRESCOTT
PORTER & PORTER**
105 E. Main St.
Northville, MI 48167
Telephone: (248) 679-8711
prescott@spplawyers.com

*Counsel for Intervenors-Appellees*

## CERTIFICATE OF SERVICE & COMPLIANCE

I certify that, on Friday, March 6, 2026, I electronically filed this Response Brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished electronically by the appellate CM/ECF system.

I certify that this Response Brief containing 5,134 words is under the 5,200-word limit in accord with Fed. R. App. P. 27(d)(2)(A) and this Court's Local Rules.

I certify that this Response Brief complies with the typeface requirements and type-style requirements in Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally space typeface in 14-point Times New Roman font.

March 6, 2026

Respectfully submitted,

*/s/ Aria Branch*
Aria C. Branch
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
abranch@elias.law

*Counsel for Intervenors-Appellees*