No. 26-1225

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of
Michigan; STATE OF MICHIGAN,

Defendants-Appellees,

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN
ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE;
KEELY CRIMANDO

Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION CASE NO. 1-25-cv-01148
The Honorable Hala Y. Jarbou

BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of counsel)*

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION...................................................................................... 1

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................... 1

STATEMENT OF JURISDICTION......................................................... 2

STATEMENT OF PERTINENT AUTHORITITES................................ 2

STATEMENT OF THE ISSUE................................................................ 3

STATEMENT OF THE CASE .................................................................. 3

SUMMARY OF ARGUMENT ................................................................ 11

STANDARD OF REVIEW...................................................................... 12

ARGUMENT ......................................................................................... 13

I.    THE DOJ IS ENTITLED TO MICHIGAN'S SVRL
      UNDER THE CRA ......................................................................... 13

      A.    Michigan's SVRL qualifies as a "record[]" or
            "paper[]"subject to the Attorney General's
            demand under the CRA ....................................................... 14

      B.    The district court properly rejected defendants'
            alternative arguments under the CRA .............................22

1.  Courts play a limited role in assessing the
    Attorney General's demand under Title III ................ 23

2.  The DOJ satisfied the CRA's requirements ................ 30

II.  None of defendants' privacy-related arguments has merit ........... 38

A.  The DOJ's demand complied with the Privacy Act .............. 38

B.  The E-Government Act does not prevent the DOJ from
    obtaining data supporting its NVRA claim .......................... 40

C.  The Driver's Privacy Protection Act does not allow
    Secretary Benson to deny the DOJ list maintenance
    data ................................................................................................ 43

D.  Federal law preempts any contrary Michigan law .............. 44

CONCLUSION .................................................................................... 48

DESIGNATION OF RELEVANT RECORD ITEMS

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                               **PAGE**

*Alabama ex rel. Gallion v. Rogers,*
187 F. Supp. 848 (M.D. Ala. 1960),
*aff'd sub nom. Dinkens v. Attorney General of the U.S.,*
285 F.2d 430 (5th Cir. 1961) ........................................................... 23

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013) ................................................................. 46, 47, 48

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................... 13

*Becker v. United States,*
451 U.S. 1306 (1981) ................................................................ 28, 29
452 U.S. 912 (1981) ....................................................................... 29
452 U.S. 935 (1981) ....................................................................... 29

*Booth Family Trust v. Jeffries,* 640 F.3d 134 (6th Cir. 2011) ................. 12

*Bostock v. Clayton Cnty.,* 590 U.S. 644 (2020) ...................................... 33

*Buckman Co. v. Pls.' Legal Comm.,* 531 U.S. 341 (2001) ....................... 48

*Coleman v. Kennedy,*
313 F.2d 867 (5th Cir. 1963) (per curiam) ......................... 26-27, 36, 48

*Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363 (2000) ............ 47, 48

*Doe v. Chao,* 540 U.S. 614 (2004) ......................................................... 38

*Donaldson v. United States,* 400 U.S. 517 (1971) .............................. 25, 28

*Ebu v. United States Citizenship & Immigration Servs.,*
134 F.4th 895 (6th Cir. 2025) .......................................................... 35

**CASES (continued):** **PAGE**

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.*,
356 F. Supp. 3d 85 (D.D.C.),
*vacated and remanded on other grounds*,
928 F.3d 95 (D.C. Cir. 2019) .......................................................42-43

*Ex parte Siebold*, 100 U.S. 371 (1880) ............................................. 46, 47

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ..........................................................................32

*Foster v. Love*, 522 U.S. 67 (1997).....................................................47

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ...............................35

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006)...............................................36

*Heckler v. Chaney*, 470 U.S. 821 (1985).................................................26

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962),
*aff'd sub. nom. Coleman v. Kennedy* ....................................................27

*Judicial Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019).......................................... 15, 16, 46

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ..............................23, 27

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................. *passim*

*Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018)..............................47-48

*McIntyre v. Morgan*, 624 F. Supp. 658 (S.D. Ind. 1985).........................21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ..........................................................................35

**CASES (continued):** **PAGE**

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601 (2019)......34

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016).........16

*Project Vote/Voting for Am., Inc. v. Long*,
   682 F.3d 331 (4th Cir. 2012) ................................................................16

*Public Interest Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) ..............................................................33-34

*Rahman v. Bondi*, 131 F.4th 399 (6th Cir. 2025) ..................................35

*Reno v. Condon*, 528 U.S. 141 (2000)....................................................44

*Royal Truck & Trailer Sales and Service, Inc. v. Kraft*,
   974 F.3d 756 (6th Cir. 2020) ......................................................... 12, 13

*Schmitt v. City of Detroit*, 395 F.3d 327 (6th Cir. 2005).........................39

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ....................................39

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ...........................4, 5

*United States v. Fausto*, 484 U.S. 439 (1988) ........................................32

*United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006) ..22

*United States v. Lynd*, 301 F.2d 818 (1962)...........................................26

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ..... 28, 29, 30, 37

*United States v. Mississippi*, 380 U.S. 128 (1965).................................21

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .........................27

*Webster v. Doe*, 486 U.S. 592 (1988).....................................................26

**CASES (continued):**                                          **PAGE**

*Wyeth v. Levine,* 555 U.S. 555 (2009) .......................................................48

**STATUTES:**

Civil Rights Act of 1960 (CRA)
     52 U.S.C. 20701 *et seq.* ............................................................ 4, 35
     52 U.S.C. 20701 .......................................................... *passim*
     52 U.S.C. 20703 .......................................................... *passim*
     52 U.S.C. 20704 ............................................................. 5, 8, 9
     52 U.S.C. 20705 .......................................................... *passim*

Civil Rights Act of 1964
     42 U.S.C. 2000e-2 ...................................................................36

National Voter Registration Act of 1993 (NVRA)
     52 U.S.C. 20501 *et seq.* .................................................................1
     52 U.S.C. 20501(a)(3) ..........................................................37
     52 U.S.C. 20501(6) ...............................................................32
     52 U.S.C. 20501(b)(1) ..........................................................37
     52 U.S.C. 20501(b)(3) .............................................................5
     52 U.S.C. 20507(i)(1) ........................................................ 5, 33
     52 U.S.C. 20507(a)(4)(A) ........................................................5
     52 U.S.C. 20502(a)(4)(B) ........................................................5
     52 U.S.C. 20507(a)(4)(A)-(B) ...............................................33
     52 U.S.C. 20510(a) ........................................................ 33, 44

Driver's Privacy Protection Act of 1994
     18 U.S.C. 2721(b)(1) ..............................................................43
     18 U.S.C. 2721 .........................................................................8
     18 U.S.C. 2721(a) ...................................................................43
     18 U.S.C. 2725(1) ...................................................................43
     18 U.S.C. 2725(3)-(4) .............................................................43

Fair Housing Act of 1968
     42 U.S.C. 3604-3606 ..............................................................36
     42 U.S.C. 3617 ........................................................................36

**STATUTES (continued):**                                    **PAGE**

Help America Vote Act of 2002 (HAVA):
    52 U.S.C. 20901 *et seq.* ...................................................................... 1
    52 U.S.C. 21083(a) .......................................................................... 42
    52 U.S.C. 21083(a)(1)(A) ........................................................ 5, 33, 42
    52 U.S.C. 21083(a)(2)(A) .............................................................. 5, 33
    52 U.S.C. 21083(a)(5)(A)(i)-(ii) ......................................................... 6
    52 U.S.C. 21083(a)(5)(A)(iii) ............................................................ 6
    52 U.S.C. 21111 ............................................................................ 33

Privacy Act of 1974
    5 U.S.C. 552a ................................................................................. 8
    5 U.S.C. 552(f)(1) .......................................................................... 39
    5 U.S.C. 552a(a)(1) ....................................................................... 39
    5 U.S.C. 552a(b) ........................................................................... 39

Voting Rights Act of 1965
    52 U.S.C. 10301-10306 .................................................................. 36
    52 U.S.C. 10309 ........................................................................... 36

8 U.S.C. 1445(f) ................................................................................... 19

8 U.S.C. 1449 ....................................................................................... 19

8 U.S.C. 1454 ....................................................................................... 19

8 U.S.C. 1454(a) ................................................................................... 19

10 U.S.C. 130c(d)(2)(C) ......................................................................... 18

13 U.S.C. 214 ....................................................................................... 18

26 U.S.C. 7602(a) (1954 ed.) .................................................................. 25

26 U.S.C. 7604(a) (1954 ed.) .................................................................. 25

28 U.S.C. 1291 ...................................................................................... 2

**STATUTES (continued):**                                                **PAGE**

28 U.S.C. 1331 ......................................................................................2

28 U.S.C. 1343 .......................................................................................2

30 U.S.C. 1732(b) ................................................................................ 18

31 U.S.C. 3733 .....................................................................................28

44 U.S.C. 3501 note
    E-Government Act of 2002,
    Pub. L. No. 107-347, 116 Stat. 2899 ................................... 40-41
    § 208(b)(1)(A)(ii) ............................................................41, 42, 43
    § 208(b)(1)(B)(i) .................................................................. 41, 42
    §201 ............................................................................................ 41
    §205 (b)(1)(A)(ii)(II) ................................................................. 41

44 U.S.C. 3502 ................................................................................ 41, 42

44 U.S.C. 3502(3)(A) ................................................................ 41, 42, 43

44 U.S.C. 3502(10) ............................................................................. 41

44 U.S.C. 3572(f) ............................................................................... 18

52 U.S.C. 10101 ..................................................................................36

Pub. L. No. 86-449, § 601, 74 Stat. 90 ...............................................3, 35

Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 ...........................................38

Mich. Comp. Laws
    257.208c .............................................................................. 45, 46
    257.208c(3)(a) ............................................................................45
    168.509gg .................................................................................46
    257.40b .....................................................................................45

**CONSTITUTIONAL PROVISIONS:**                    **PAGE**

U.S. Const. art. I, § 4, cl. 1 .......................................................46

U.S. Const. art. VI, cl. 2 ...........................................................48


**RULES:**

Fed. R. App. P.
    2 .........................................................................................49
    40(a)(1)...............................................................................49
    41(b) ...................................................................................49

Fed R. Civ. P.
    12(b)(6).....................................................................9, 12, 29


**REGULATIONS:**

68 Fed. Reg. 47610-01 (Aug. 11, 2003)..................................40

70 Fed. Reg. 43904-01 (July 29, 2005) ..................................40

82 Fed. Reg. 24147-01 (May 25, 2017) ..................................40

**LEGISLATIVE MATERIALS:**

106 Cong. Rec. 7767 ................................................................27

**MISCELLANEOUS:**

Election Administration and Voting Survey 2024
Comprehensive Report: A Report from the U.S. Election Assistance
Commission to the 119th Congress
(https://tinyurl.com/yc26fnj5)............................................. 7

**MISCELLANEOUS (continued):**                                    **PAGE**

United States Election Assistance Commission (EAC) *Studies and Reports*, (https://www.eac.gov/research-and-data/studies-and-reports) .. 7

Merriam-Webster's Collegiate Dictionary (10th ed. 2002) ..................... 43

Michigan Department of State, Register to Vote, https://www.michigan.gov/sos/elections/voting/register-to-vote#HowToRegister (last visited Mar. 23, 2026) ......................... 17

The American Heritage College Dictionary (4th ed. 2002) .................... 43

The Federalist No. 59 (C. Rossiter ed. 1961) ........................................ 46

U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited March 12, 2026) ........................................................................... 22

Webster's New World Dictionary of the American Language (8th coll. ed. 1960) ........................................ 16

Webster's Third New International Dictionary (1966 ed. unabridg.) ................................................ 17-18

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The United States requests oral argument. This appeal raises important issues of first impression in this Circuit regarding the proper application of Title III, Section 303, of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20703. Oral argument likely would assist the Court in understanding the record and resolving the issues presented.

## INTRODUCTION

The United States Department of Justice (DOJ) brought this case against the State of Michigan and Michigan Secretary of State Jocelyn Benson (collectively, Michigan) alleging, *inter alia*, that Michigan violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq.*, which entitles the Attorney General, or her representative, to demand certain records pertaining to elections for federal office. Specifically, the DOJ alleged that Michigan violated the CRA by refusing a demand for an electronic, unredacted copy of Michigan's Statewide Voter Registration List (SVRL) to determine Michigan's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.*

1

Although the district court properly rejected the vast majority of Michigan's and the intervenors' (collectively, Defendants) arguments in favor of dismissal, the district court nevertheless granted Defendants' Motions to Dismiss the DOJ's Title III claim on the sole ground that the SVRL was neither a "record[]" nor "paper[]" that "c[a]me[] into [the] possession" of Secretary Benson and thus did not have to be disclosed under the CRA. Because the district court misinterpreted this provision of the CRA, this Court should reverse the district court's judgment and remand with instructions for the district court to order Secretary Benson to produce the requested SVRL.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 1343. That court entered a final Order granting Defendants' Motions to Dismiss on February 10, 2026. Opinion, R. 67. The United States filed a timely Notice of Appeal on February 25, 2026. R. 70. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF PERTINENT AUTHORITIES

Pertinent statutes are included in an addendum to this brief.

## STATEMENT OF THE ISSUE

The Civil Rights Act of 1960 requires "[e]very officer of election" to "retain and preserve . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in [a federal] election" for a prescribed period after that election. 52 U.S.C. 20701. Upon proper demand from the Attorney General or her representative, any "person having custody, possession, or control of such record or paper" must make it "available for inspection, reproduction, and copying." 52 U.S.C. 20703.

The question presented is whether a statewide voter registration list qualifies as such a "record[]" or "paper[]."

## STATEMENT OF THE CASE

1. a. Title III of the Civil Rights Act (CRA) of 1960 is entitled "Federal Election Records." Pub. L. No. 86-449, § 301, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and, on request, to produce voter registration records pertaining to federal elections. *Kennedy v. Lynd,* 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*).

The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions

3

against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach,* 383 U.S. 301, 313 (1966). To that end, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Section 301 of Title III requires that "[e]very officer of election . . . retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701.

The key provision at issue here, Section 303, authorizes the Attorney General or her representative to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying." 52 U.S.C. 20703. Such demand "shall contain a statement of the basis and the purpose therefor." *Ibid.*

The Attorney General and her representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding.

4

52 U.S.C. 20704. And, should it be necessary, the Attorney General may seek the aid of a district court, which may "compel the production of such record or paper." 52 U.S.C. 20705.

b.  Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *South Carolina*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers . . . come into [election officials'] possession," 52 U.S.C. 20701. Relevant here are the NVRA and HAVA, which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and thus "protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3).

The NVRA's requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B).

HAVA requires States to implement a centralized computerized SVRL, and to engage in reasonable efforts at maintaining that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application

5

for voter registration "unless the application includes" a numeric identifier—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

2. In the summer of 2025, the DOJ sent a series of letters to Secretary Benson, demanding, *inter alia,* an electronic, unredacted copy of Michigan's SVRL that the State maintains under the NVRA and HAVA. DOJ July, 2025 Letter, R. 47-2; DOJ August 14, 2025 Letter, R. 39-4. In these letters, the DOJ requested "information regarding [Michigan's] procedures for complying with the statewide voter registration list maintenance provisions of the [NVRA]" and listed alleged irregularities with Michigan's voting rolls. The DOJ stated that the purpose of its demand was "to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA." DOJ July, 2025 Letter, R. 47-2, Pg. ID 214.

6

These letters identified Election Administration and Voting Survey (EAVS) data that was out of step with national averages.[1] These anomalies included, but were not limited to, sending confirmation notices to verify eligibility to only 4.5 percent of its voting population—significantly below the national average of 19.5 percent; removing only 4.2 percent of registered voters—well below the national average of 9.1 percent; and a high number of duplicate registrations. DOJ July, 2025 Letter, R. 47-2, Pg. ID 601-602; *see* Opinion, R. 67, Pg. ID 907. The DOJ also noted that it had received a complaint regarding Michigan's compliance with HAVA's requirements regarding unique voter identifiers.

---

[1] The United States Election Assistance Commission (EAC) publishes a biennial EAVS report, which consists of "an analysis of state-by-state data that covers various topics related to the administration of federal elections." EAC, *Studies and Reports*, https://www.eac.gov/research-and-data/studies-and-reports (last visited Mar. 20, 2026). The 2024 EAVS report explains that, as part of the 2024 EAVS, states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from its voter lists. EAC, 2024 EAVS Report, (published June 2025), https://tinyurl.com/yc26fnj5, at 7.

In response to any federal privacy concerns Secretary Benson had with the request, the DOJ cited Section 304 of the CRA, which precludes, with limited exceptions not applicable here, the Attorney General, her representatives, and DOJ employees from "disclos[ing] any record or paper . . . or any reproduction or copy" produced pursuant to the DOJ's demand. DOJ August 14, 2025 Letter, R. 39-4, Pg. ID 501 (citing 52 U.S.C. 20704).

Secretary Benson refused the DOJ's demand, citing the federal Privacy Act, 5 U.S.C. 552a, and the Driver's Privacy Protection Act, 18 U.S.C. 2721, claiming that the DOJ's obligation to ensure compliance with the NVRA and HAVA was not a "necessary and lawful purpose" that required Michigan to provide the unredacted SVRL. Mich. September 9, 2025 Letter, R. 47-4 Pg. ID 608-609. Instead, she provided the DOJ with the "public version" of the SVRL an ordinary citizen would be entitled to under the NVRA's public-inspection provision. Mich. September 9, 2025 Letter, R. 47-4, Pg. ID 609.

3. In September 2025, the DOJ sued Secretary Benson and the State of Michigan, alleging, *inter alia*, that the Secretary's refusal to provide the United States an electronic, unredacted copy of Michigan's

SVRL violated Title III of the CRA. Complaint, R. 1. Michigan, along with intervenors, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mich. Mot. to Dism., R. 39; Intervenor-Defendants' Mot. to Dism., R. 47.

4. On February 10, 2026, the district court entered its order granting defendants' motions to dismiss on the sole ground that the SVRL was neither a "record[]" nor "paper[]" that "c[a]me[] into [the] possession" of Secretary Benson. Order, R. 68.

To be sure, the district court rejected the vast majority of Defendants' arguments in favor of dismissal. The court first rebuffed challenges to the DOJ's "basis and purpose" for its request, 52 U.S.C. 20703, concluding that ensuring compliance with the NVRA and HAVA was a proper purpose and that the cited irregularities with Michigan's elections data provided a sufficient basis for the demand. Opinion, R. 67, Pg. ID 907-908. The district court further rejected Defendants' arguments that the CRA could not be used to enforce the NVRA because the CRA preceded the NVRA by "several decades" and that it could only be used to investigate racial discrimination in voting. Indeed, "[t]here is no rule of statutory interpretation," the court explained, that "prevents a

9

statute from interacting with, or being used in conjunction with, subsequently enacted statutes." Opinion, R. 67, Pg. ID 908. The district court also rejected defendants' assertion that the scope of the CRA is limited to "the remediation of racially discriminatory voter registration practices" because "the CRA's text includes no such limitation" and the "NVRA is a federal election law that protects voting rights." Opinion, R. 67, Pg. ID 908. The district court also concluded that the DOJ's request was reasonably relevant to investigating Michigan's compliance with the NVRA. Opinion, R. 67, Pg. ID 909.

Despite rejecting many of Defendants' arguments, the district court accepted an argument from the intervenors that Michigan's SVRL is not a "record[ or] paper[]" subject to the CRA, because it did not "come into [the] possession" of Secretary Benson. 52 U.S.C. 20701; Opinion, R. 67, Pg. ID 905-914. In the district court's view, the SVRL is a self-generated document, and such documents do not "come into [an election official's] possession." 52 U.S.C. 20701. Therefore, the SVRL, the district court held, falls outside the scope of Section 20701 and thus cannot be demanded by the Attorney General or her representative under Section 20703. Opinion, R. 67, Pg. ID 909-910.

10

Accordingly, the district court dismissed the DOJ's Title III claim without reaching Defendants' arguments that the Attorney General's demand allegedly violated various state and federal privacy laws.[2] Opinion, R. 67, Pg. ID 913.

## SUMMARY OF ARGUMENT

The district court erred in dismissing the DOJ's Title III claim on the ground that an SVRL falls outside the scope of the CRA because it is a self-generated document that does not "come[] into [the] possession" of a state election official. The CRA's text, however, does not exclude self-generated documents. At most, the distinction between records "com[ing] into [one's] possession" and being "in [one's] possession," is a temporal one—not a distinction between obtaining records from an outside source and through self-generation. Thus, the Attorney General, or her representative, is entitled to preproduction and copying of a state's SVRL through the CRA to assess a state's compliance with the NVRA and HAVA.

---

[2] The district court also rejected the United States' separate claims for relief under the NVRA and HAVA (independent of the CRA). Opinion, R. 67, Pg. ID 892-904. The United States does not challenge those separate holdings in this appeal.

Aside from the district court's erroneous interpretation of Section 20701, that court properly rejected defendants' other arguments in favor of dismissal. The DOJ's demand stated a sufficient basis and purpose and could not be second-guessed by courts. Nor was DOJ restricted from using the CRA to investigate matters beyond the remediation of racially discriminatory voter registration practices, such as Michigan's compliance with the NVRA and HAVA. And while the district court did not reach any of defendants' various privacy-related arguments, this Court should reject those facially meritless contentions once and for all.

## STANDARD OF REVIEW

This Court reviews an order granting a motion to dismiss under Rule 12(b)(6) de novo. *Booth Family Trust v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011). All well-pleaded factual allegations are to be construed "in the light most favorable to the plaintiff," must be "accept[ed] . . . as true," and "all reasonable inference[s]" must be "draw[n]" in "favor of the plaintiff." *Royal Truck & Trailer Sales and Service, Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (internal citation omitted).

A motion to dismiss must be denied so long as the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is

12

plausible on its face.'" *Kraft*, 974 F.3d at 758 (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679.

## ARGUMENT

### I.    The DOJ is entitled to Michigan's SVRL under the CRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Lynd II*, 306 F.2d at 226, to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General, or her representative, with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and

13

copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, if the State election officer has rejected it, the Attorney General may seek an order from a federal district court "to compel the production of such record or paper." 52 U.S.C. 20705.

The requested SVRL qualifies among the "records and papers" that election officials must "retain and preserve" under Section 301 and that the Attorney General may demand under Section 303. The district court was wrong to conclude otherwise but correctly rejected defendants' alternative arguments under the CRA.

### A. Michigan's SVRL qualifies as a "record[]" or "paper[]" subject to the Attorney General's demand under the CRA.

Section 301 of the CRA requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered election, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." Those same records or papers are subject to demand by the Attorney General or her representative. 52 U.S.C. 20703.

14

According to the district court, the SVRL is not such a "record[]" or "paper[]" because it is self-generated by the State and therefore does not "come[] into [the] possession" of election officials, 52 U.S.C. 20701. In the district court's view, Section 20701 applies only to those "documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials." Opinion, R. 67, Pg. ID 910. This reading, which even the district court acknowledged "may seem needlessly pedantic," Opinion, R. 67, Pg. ID 911-912, is both novel and incorrect.

Federal courts have rejected similar attempts to limit the scope of voting records under other statutes. In *Judicial Watch, Inc. v. Lamone*, the defendants argued that a "voter list is not a 'record' under Section 8(i)" of the NVRA, and even if it was, Maryland law allowed election officials to "limit the production of voting-related records more strictly than the NVRA." 399 F. Supp. 3d 425, 434 (D. Md. 2019). The court disagreed. It explained that Maryland misunderstood the NVRA's requirements and the plaintiff was entitled to the registered voter list because "a voter list is simply a partial compilation of voter registrations" encompassed by the Act. *Id.* at 442 (internal quotation marks omitted).

15

The court also was persuaded that the "focus on the information sought" was significant "rather than the particular language used to characterize that information." *Id.* at 440 (citing *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1329, 1343 (N.D. Ga. 2016) (court rejected defendant's argument that plaintiff could not obtain voter list)); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 337 (4th Cir. 2012) (finding "all records" under Section 8(i)(1) included voter registration records).

Moreover, there is no reason to attribute such a "pedantic distinction" to Congress. Opinion, R. 67, Pg. ID 913. The plain terms of Section 20701 dictate otherwise. An officer "come[s] into . . . possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). Secretary Benson acquired the relevant records from individual voters in the course of carrying out her duties as Secretary of State. The Secretary "comes into . . . possession" of a covered "record" every time an individual voter adds or changes their registration information electronically, at the DMV, at a local polling place, or

16

through a volunteer voter drive. By coming into possession of those individual records, Secretary Benson merely aggregates them together into a simple record, the SVRL. Because Michigan requires voters to cancel via "written request"[3] to an election official, the voter registrar processes a voter registration cancellation, and the moment that it is reflected in the SVRL, Secretary Benson has then "come[] into . . . possession" of that voter's record.

Even if one were to accept the limitation that SVRLs are "self-generated" documents, the word "come" cannot create a carve-out for self-generated documents. *See* Opinion, R. 67, Pg. ID 910 (contrasting "come into possession" with "in the possession of"). Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance. *See Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) ("to enter upon or into

---

[3] *See* Michigan Department of State, Register to Vote, https://www.michigan.gov/sos/elections/voting/register-to-vote#HowToRegister (last visited Mar. 23, 2026).

17

possession of:  acquire esp. as an inheritance"). Numerous statutes use similar phrases to regulate acquiring information or property *through improper means* or to trigger duties to act based on acquiring information or property *at a particular time*.[4] Following this focus on the *how* and *when* an individual gains possession of a record or paper, 52 U.S.C. 20701 places a duty of retention and preservation only on those officers who acquire a record or paper in the course of administering one of the elections mentioned in that provision—and then only "for a period of twenty-two months from the date" of that same election.

The distinction between records "com[ing] into [one's] possession" and being "in [one's] possession," then, is a temporal one—not a distinction between obtaining records from an outside source and through self-generation—as is shown by the very example that the district court cites as "draw[ing] an explicit distinction between

---

[4] *See, e.g.*, 44 U.S.C. 3572(f) ("comes into possession of such information by reason of his or her being an officer"); 13 U.S.C. 214 (similar); 30 U.S.C. 1732(b) ("as soon as practicable after it comes into the possession of the Secretary"; "30 days after such information comes into the possession of the Secretary"); 10 U.S.C. 130c(d)(2)(C) (prescribing disclosure timing rules for sensitive information that "came into possession or under the control of the United States more than 10 years before the date on which the request is received").

possessing something and having something come into one's possession," Opinion, R. 67, Pg. ID 910 (citing 8 U.S.C. 1454). Section 1454(a) of Title 8 imposes dual obligations: If a certificate of naturalization or declaration of intention is lost, "the applicant or any other person who shall have" the certificate or declaration at that time "is required to surrender it to the Attorney General," but so too "the applicant or any other person who . . . may come into possession of it" at a later time must likewise surrender the document. 8 U.S.C. 1454(a). Thus, the phrase "come into possession" implies a temporal change in circumstances. Reading that distinction as one between documents that a person obtains from an outside source and documents that a person generates for himself, in contrast, would make little sense because no applicant or private person can create a certificate of naturalization nor can any "other person," 8 U.S.C.1454(a), create a declaration of intention for a separate declarant. *See* 8 U.S.C. 1445(f), 1449.

In any event, even if the district court's distinction between self-generated records and papers and those acquired from another source had merit, it would be irrelevant in all but the most marginal cases. Sections 20701 and 20703 focus on individual "officer[s] of election" and

19

"person[s] having custody, possession, or control of such record[s] or paper[s]." So even if someone in Secretary Benson's office generated the requested record and, according to the district court, therefore did not "come into . . . possession" thereof herself, any *other* "officer of election" within the Secretary's office that later acquired the record has indeed "come into . . . possession" of the record under the district court's view and was obligated to "retain and preserve" it. 52 U.S.C. 20701. And Secretary Benson, now "having custody, possession, or control of such record or paper," must "ma[k]e [it] available for inspection, reproduction, and copying." 52 U.S.C. 20703.

Finally, the district court's "conclusion that [52 U.S.C. 20701] requires officials to preserve [only] *voters'* submissions to the State," Opinion, R. 67, Pg. ID 911 (emphasis added), commits the same error that the district court identified in some of Defendants' arguments (*see* p. 35, *infra*): it imposes a "limitation" nowhere contained in the statute. Opinion, R. 67, Pg. ID 908. Section 301 requires an election official to "retain and preserve . . . *all* records and papers which come into his possession *relating to* any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701

20

(emphasis added). Nothing in that text restricts "all records and papers" to only those records and papers submitted by voters; even assuming that the examples of documents in the statute each "refers to something that the voter submits or does," Opinion, R. 67, Pg. ID 911, that does not mean that every record or paper "*relating to*" those examples, 52 U.S.C. 20701 (emphasis added), likewise comes from a voter. *See United States v. Mississippi,* 380 U.S. 128, 134 (1965) (stating broadly that "records of voting registration [must] be kept" under Title III); *McIntyre v. Morgan,* 624 F. Supp. 658, 664 (S.D. Ind. 1985) (identifying "voting registration records, poll lists," and "tally sheets" as among those documents encompassed by Section 301).

Construing Title III to not include the SVRL itself would paralyze the United States' ability to enforce various federal voting laws. To ascertain whether a jurisdiction engages in practices that violate the NVRA, for example, the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the electronic SVRL, so as to assure herself that the applications are being properly processed and that reasonable list maintenance efforts have been practiced. *See Lynd II*, 306 F.2d at 228. That is why, in two matters

21

against Georgia and Texas back in 2006 and 2008, the United States obtained the SVRLs, including drivers' license numbers and the last four digits of the Social Security numbers, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.[5] The district court's reading would effectively carve out vast numbers of federal election records, including SVRLs, which was plainly not the intention of Congress in passing such "sweeping" legislation. *Lynd II*, 306 F.2d at 226.

## B. The district court properly rejected defendants' alternative arguments under the CRA.

Defendants raised several additional reasons why they believed that the Attorney General was not entitled to the SVRL under Title III. They argued that the Attorney General had not stated a sufficient "basis and purpose," Br. in Supp. Mot. to Dism., R. 39, Pg. ID 465-466; Intervenor-Defendants' Mot. to Dism., R. 47, Pg. ID 590; that the CRA cannot be used to enforce the NVRA, Br. in Supp. Mot. to Dism., R. 39,

---

[5] *See* Compl., *United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), Dkt. 1. The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See Georgia, supra*, at Dkt. 4 (filed Oct. 27, 2006). The Texas matter was resolved by a Memorandum of Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited March 12, 2026).

Pg. ID 466; and that the CRA can only be used to rectify claims of racial discrimination, Br. in Supp. Mot. to Dism., R. 39, Pg. ID 466-468; Intervenor-Defendants' Mot. to Dism., R. 47, Pg. ID 589, 591. The district court properly rejected them all, and none provides a basis to affirm.

### 1. Courts play a limited role in assessing the Attorney General's demand under Title III.

a. Courts undertake a limited role in evaluating the sufficiency of a demand under 52 U.S.C. 20703. The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and the "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (internal quotation marks omitted).

i. By seeking records required to be maintained under Section 20701, the DOJ initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd II*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [52 U.S.C. 20703] written demand for

inspection of records and papers covered in [52 U.S.C. 20701], the person against whom an order for production is sought under [52 U.S.C. 20705] has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's special statutory proceeding limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a State official responding to the Attorney General's demand for federal election records may not utilize litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.*

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd II*, 306 F.2d at 226—which the district court largely followed, *see* pp. 27-30*, infra*—is consistent with subsequent Supreme Court

24

precedent. In *Donaldson v. United States*, the Court addressed a provision of the Internal Revenue Code that authorized the Secretary of the Treasury, for "the purpose of ascertaining the correctness of any [tax] return . . . or collecting any such liability[,] to summon the person liable for tax[,] or any person having possession, custody, or care of books of account containing [relevant] entries . . . to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry." 400 U.S. 517, 517, 524 (1971) (quoting 26 U.S.C. 7602(a) (1954 ed.); ellipses and parentheses omitted). A neighboring provision "grant[ed] the district courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production.'" *Ibid.* (quoting 26 U.S.C. 7604(a) (1954 ed.)).

The Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Id.* at 528-529; *see Lynd II*, 306 F.2d at 226 (allowing judicial determination of whether

25

"written demand has been made" and whether the custodian "ha[s] been given reasonable notice of the proceeding").

ii. Beyond a summary procedure, the CRA calls for a limited substantive review as well. "[T]he factual foundation for, or the sufficiency of" the statement of basis and purpose "is not open to judicial review or ascertainment." *Lynd II*, 306 F.2d at 226; *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*). There is "no justification" for requiring detailed descriptions of the facts giving rise to the Attorney General's demand. *Lynd I*, 301 F.2d at 822.

Nothing in the statute provides a meaningful standard against which courts could ascertain the sufficiency of the Attorney General's stated basis and purpose. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that she may demand, 52 U.S.C. 20701, and a requirement that she communicate in writing "the basis and the purpose" for her request, 52 U.S.C. 20703—not any standard against which to measure her statement of basis and purpose.

Instead, the Attorney General need only "identify in a general way the reasons for [her] demand" for federal election records. *Coleman v.*

26

*Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (quoting 106 Cong. Rec. 7767). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible* violations of a Federal statute." *Ibid.* (emphasis added); *see, e.g., Bruce*, 298 F.2d at 861 ("'The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.'"); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962) (verbatim), *aff'd sub. nom. Coleman v. Kennedy, supra; cf. United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950) (concluding that an administrative body to which a statute delegates investigative and accusatory duties may take steps to inform itself as to whether there is probable violation of the law). Accordingly, the only "matters open for determination" by the court when a recipient of the Attorney General's demand challenges that demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226.

b. The district court hewed closely to the Fifth Circuit's CRA precedent as well as this Court's own precedent in "constru[ing] a request

27

for records under the CRA as a form of administrative subpoena." Opinion, R. 67, Pg. ID 905. "The CRA's language is similar to that of 31 U.S.C. § 3733, a provision of the False Claims Act that allows the DOJ to issue 'civil investigative demands' requiring the production of documents or compelling testimony," and this Court has "held that civil investigative demands are a type of administrative subpoena." *Ibid.* (citing *United States v. Markwood*, 48 F.3d 969, 975-976 (6th Cir. 1995)). Because the Title III request is akin to "an administrative subpoena," the district court recognized "both procedural and substantive consequences." Opinion, R. 67, Pg. ID 905.

i. Procedurally, a court's "determin[ation of] the propriety of an administrative subpoena" calls only for "'a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available.'" Opinion, R. 67, Pg. ID 906 (quoting *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (Rehnquist, J., in chambers) (quoting *Donaldson*, 400 U.S. at 529)).[6] And

---

[6] *Becker* was an order issued by the Circuit Justice on an application for a temporary stay. *See* 451 U.S. 1306 (1981) (Rehnquist, J., in chambers) (continuing temporary stay pending review by the Court). The

"discovery is generally disallowed absent extraordinary circumstances." *Ibid.* (quoting *Markwood*, 48 F.3d at 982).

The district court, however, did not fully embrace this approach below. Because the DOJ had brought its CRA claim "alongside claims under the NVRA and HAVA," the district court applied Rule 12(b)(6)'s ordinary pleading standards. *Ibid.* That was an error, because substance must control over form; where the DOJ has brought a claim under 52 U.S.C. 20705, which creates a summary proceeding akin to an enforcement proceeding, the inclusion of other claims cannot change the nature of the Title III claim.[7] However, this error did not appear to affect the outcome in this case as defendants' arguments (other than the meaning of "comes into . . . possession," *see* pp. 14-22, *supra*) failed even under the ordinary pleading standards of the Rules of Civil Procedure. *See* pp. 30-37, *infra*.

---

subsequent history indicates that the stay was continued, 452 U.S. 912 (1981), and later vacated and denied, 452 U.S. 935 (1981).

[7] *Lynd II* supports that conclusion. There, the Fifth Circuit explained that any pleadings that are filed do not need to "satisfy usual notions under the Federal Rules of Civil Procedure." 306 F.2d at 225-226. It does not alter the summary nature of the CRA proceeding.

ii. Substantively, the district court recognized that its "role in the enforcement of an administrative subpoena is a limited one." Opinion, R. 67, Pg. ID 906 (quoting *Markwood*, 48 F.3d at 976); *accord Lynd II*, 306 F.2d at 225. In its view, a court "must 'decide whether the agency has met the statutory requirements pertaining to the issuance and enforcement of the subpoena'" and ensure that the "investigation ha[s] a legitimate purpose, that its inquiry may be relevant to that purpose, that it d[oes] not already have the [requested] information and that it otherwise [has] followed any statutory requirements." Opinion, R. 67, Pg. ID 906 (quoting *Markwood*, 48 F.3d at 978). Although the scope of the inquiry described by the district court goes further than appropriate, *see* pp. 23-27, *supra,* the district court correctly concluded that the United States satisfied its burdens even under the district court's understanding of the law (as discussed next).

**2. The DOJ satisfied the CRA's requirements.**

a. As the district court recognized, the DOJ satisfied the statutory criteria under the CRA by stating a proper "basis and purpose" for its demand, 52 U.S.C. 20703; the DOJ stated in its demand that it was seeking to enforce the NVRA and HAVA, cited "several purported

30

anomalies within Michigan's voter registration data," and had received a "complaint regarding Michigan's compliance with HAVA's requirements relating to the provision of unique voter identifiers," Opinion, R. 67, Pg. ID 907. Though Michigan "dispute[d] the accuracy of DOJ's claims about the State's list maintenance practices," the "CRA does not allow courts to evaluate the substance of the DOJ's purported basis and purpose." Opinion, R.67, Pg. ID 907-908; *see Lynd II*, 306 F.2d at 226.

b. The district court also correctly held that the DOJ's asserted purpose—to assess compliance with the NVRA and HAVA—was legally legitimate under the CRA. Defendants had contended that "the DOJ cannot use the CRA's disclosure provision to investigate potential violations of the NVRA." Opinion, R. 67, Pg. ID 908-909.

i. According to Michigan, "[t]he CRA preexisted NVRA and HAVA, and thus Congress could not have meant that a valid 'basis' or 'purpose' for demanding records under the CRA was to examine compliance with those acts." Br. in Supp. Mot. to Dism., R. 39, Pg. ID 466; *see also* Intervenor-Defendants' Mot. to Dism., R. 47, Pg. ID 589. But as the district court observed, "[t]here is no rule of statutory interpretation that

31

prevents a statute from interacting with, or being used in conjunction with, subsequently enacted statutes." Opinion, R. 67, Pg. ID 908.

Indeed, the opposite is true: "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *see United States v. Fausto*, 484 U.S. 439, 453 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."). Once the NVRA—a statute devoted to increasing voting by eligible citizens in federal elections and protecting the integrity of the electoral process, *see* 52 U.S.C. 20501(b)—was passed, its enforcement certainly became a permissible "purpose" under Title III of the DOJ's demand for a State's SVRL.[8]

---

[8] Relatedly, intervenors argued that, because "driver's license numbers and partial social security numbers were not required to be provided on voter registration forms until HAVA was enacted in 2002, the Congress that enacted Title III in 1960 would not have intended the statute's reach to extend to the disclosure of such information." Intervenor-Defendants' Mot. to Dism., R. 47, Pg. ID 592–593 (citation

32

The lack of a comparable tool for records inspection by the Attorney General in the subsequently enacted NVRA and HAVA supplies additional support for the DOJ's position. Both statutes impose record-keeping requirements and may be enforced by the Attorney General. *See* 52 U.S.C. 20507(a)(4)(A)-(B), 20507(i)(1), 20510(a) (NVRA); 52 U.S.C. 21083(a)(1)(A), (a)(2)(A), 21111 (HAVA). Yet neither statute provides its own equivalent to 52 U.S.C. 20703.

The NVRA has a *public*-inspection requirement. It requires a State, with minor exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). Because of the privacy concerns associated with public inspection, courts have read into the public-inspection provision an option for States to redact "uniquely or highly sensitive personal information," *Public Interest Legal Found., Inc.*

---

omitted). But Congress's "expectations" of how a statute may be applied in light of present circumstances do not control the meaning of the statute. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).

*v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases)—a limitation that may apply even when the Attorney General seeks to inspect those same records. And HAVA has no explicit inspection provision, for the Attorney General or otherwise.

It is implausible that Congress intended for the Attorney General to lack the ability to inspect complete records so pertinent to her enforcement authority under the NVRA and HAVA. Because it is well-settled that "Congress legislates against the backdrop of existing law," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted), a better inference is that Congress saw no need to provide an inspection provision for the Attorney General in these later-enacted statutes, because the CRA provided a pre-existing investigative tool.

ii. Defendants further argued that the CRA was intended only "to enable the federal government to investigate and remediate racially discriminatory voting practices, namely, efforts to prevent eligible minority voters from voting or registering to vote." Br. in Supp. Mot. to Dism., R. 39, Pg. ID 466-467; *see also* Intervenor-Defendants' Mot. to Dism., R. 47, Pg. ID 589. The district court rightly rejected this argument.

34

Defendants' argument finds no support in the statute itself. Opinion, R. 67, Pg. ID 908. Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). That includes "look[ing] to the structure, history, and purpose of the statutory scheme" as a whole. *Ebu v. United States Citizenship & Immigration Servs.*, 134 F.4th 895, 898-899 (6th Cir. 2025) (citation omitted). And this Court "normally presume[s] that Congress acts intentionally and purposely in the disparate inclusion or exclusion of phrases across the same legislation." *Rahman v. Bondi,* 131 F.4th 399, 407 (6th Cir. 2025) (internal quotation marks and citation omitted).

Here, "the CRA's text includes no . . . limitation" confining Title III's scope to voting-rights violations based upon racial discrimination. Opinion, R. 67, Pg. ID 908; *see* 52 U.S.C. 20701 *et seq.* By contrast, Congress made clear elsewhere in the CRA where it intended a remedy to be limited to racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account

35

of race or color") (codified at 52 U.S.C. 10101). That language is consistent with express limitations Congress made to remedies in other civil rights statutes. *See*, *e.g.*, 42 U.S.C. 2000e-2 (prohibiting employment practices "because of such individual's race, color, . . . or national origin" in Title VII of the CRA of 1964); 52 U.S.C. 10301-10306, 10309 (prohibiting discrimination "on account of race or color," or language minority status in the Voting Rights Act of 1965); 42 U.S.C. 3604-3606, 3617 (prohibiting discrimination in housing or rentals "because of race, color, . . . or national origin" in the Fair Housing Act of 1968). This Court should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute," *Coleman*, 313 F.2d at 868, constitutes a valid purpose of a demand for federal election records under the statute.

Moreover, "the NVRA is a federal election law that protects voting rights." Opinion, R. 67, Pg. ID 908. The statute was passed based in part on Congress's finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter

36

participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). The CRA, at the very least, empowers the Attorney General to investigate and assess compliance with other elections statutes, like the NVRA, aimed at increasing voter registration. 52 U.S.C. 20501(b)(1); Opinion, R. 67, Pg. ID 908-909.

c. Further, the district court correctly concluded that the DOJ's records request was "reasonably related" to investigating Michigan's compliance with the NVRA. Opinion, R. 67, Pg. ID 909. The DOJ had explained that it "intends to use Michigan's voter registration list to determine whether the State is properly removing ineligible voters and duplicate registrations from the rolls." *Ibid.* And the information that Michigan sought to redact was "necessary to identify duplicate registration records, registrants who have moved, and registrants who have died or otherwise are no longer eligible to vote in federal elections." *Ibid.* (quoting DOJ Resp. to Mot. to Dism., R. 53, Pg. ID 675).[9]

---

[9] It is undisputed that the DOJ does not "already have" Michigan's unredacted SVRL. *See* Opinion, R. 67, Pg. ID 906–907 (quoting *Markwood*, 48 F.3d at 978). *Cf.* Mich. Resp. to Mot. to Dism., R. 60, Pg. ID 742 (argument by Michigan that "DOJ already possesses the information *it is entitled to*—the public version of Michigan's voter list" (emphasis added)).

## II. None of defendants' privacy-related arguments has merit.

Because the district court held that Michigan's SVRL was not a "record[]" or "paper[]" subject to the Attorney General's demand under 52 U.S.C. 20703, it did not reach Defendants' privacy-related arguments. Defendants argued that the DOJ's demand for an electronic, unredacted copy of Michigan's SVRL violated three federal privacy laws as well as state law. *See, e.g.*, Br. in Supp. Mot. to Dism., R. 39, Pg. ID 468-470, 485-489. None of these arguments justifies dismissal of the DOJ's Title III claim.

### A.    The DOJ's demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896). To that end, Section 3 of the Act provides, with certain exceptions, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. 552a(b).

An agency, as defined in 5 U.S.C. 552a(a)(1), "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." 5 U.S.C. 552(f)(1) (formerly 5 U.S.C. 552(e)). By its terms, Section 3 does not apply to state and local entities. *See Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003); *see also Schmitt v. City of Detroit*, 395 F.3d 327, 329 (6th Cir. 2005) (holding that the city was not an "agency" under the statutory definition because "the Act applies only to federal agencies" (citation omitted)).

Because the Act only applies to a federal agency's *disclosure* of private information, it does not prohibit Michigan's disclosure of its SVRL to the United States. Moreover, the Act does not prevent Michigan from complying with that demand because Michigan is not a federal agency.

Said differently, the Privacy Act's prohibitions and allowances on disclosure of personal information, 5 U.S.C. 552a(b), do not apply to records that are not even in the possession of the federal government. Although the Privacy Act will control the DOJ's ability to disclose information from Michigan's SVRL, it has no bearing on the Attorney

39

General's demand to Michigan. Accordingly, that Act provides no basis to dismiss the United States' Complaint here.

Once the United States receives an electronic, unredacted copy of Michigan's SVRL, the Privacy Act limits the United States' ability to disclose that information. The full list of routine uses for the DOJ's collection of voter information can be found in the System of Records Notice (SORN) titled, JUSTICE/CRT - 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). Though defendants argued that this SORN did not cover the information that the DOJ has requested here, Br. in Supp. Mot. to Dism., R. 39, Pg. ID 486, the SORN cites NVRA, HAVA, and the Civil Rights Act of 1960—*i.e.*, the statutes underlying the DOJ's request here—as statutes for which the SORN applies to routine use.

### B. The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA claim.

Pursuant to the E-Government Act, agencies must perform a privacy impact assessment (PIA) before "initiating a new collection of information" in particular circumstances. E-Government Act of 2002,

40

Pub. L. No. 107-347, § 208(b)(1)(A)(ii), (B)(i), 116 Stat. 2899, 2921-2922 (codified at 44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). A "collection of information" is the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A), (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502). When an agency "initiat[es] a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, [and] identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons," the agency must perform a PIA. E-Government Act § 208(b)(1)(A)(ii)(II), (B)(i).

The DOJ's demand for Michigan's SVRL was not a "collection of information" and so did not trigger any need for a PIA. The Attorney General demanded Secretary Benson to provide the State's SVRL,

41

which the State was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Under HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Therefore, it is HAVA, and not the DOJ that has imposed the relevant "reporting or recordkeeping requirement[]," *i.e.*, "collection of information," on the State. 44 U.S.C. 3502(3)(A) (defining "collection of information").

Even if the DOJ's demand constituted a "collection of information," it did not "initiat[e] a new collection of information." E-Government Act § 208(b)(1)(A)(ii). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.) (*EPIC*), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502. "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, "start" (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp. 3d at 89 (citation omitted; brackets

42

in original) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from one of the same category that has existed previously"). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A), is not the "*initiat*[*ion* of] a *new* collection of information," E-Government Act, § 208(b)(1)(A)(ii) (emphasis added).

### C. The Driver's Privacy Protection Act does not allow Secretary Benson to deny the DOJ list maintenance data.

Although the Driver's Privacy Protection Act (DPPA) generally prohibits the disclosure of "personal information" obtained by a State DMV in connection with a motor vehicle record, *see* 18 U.S.C. 2721(a), 2725(1), (3)-(4), the statute explicitly permits certain governmental uses. Under 18 U.S.C. 2721(b)(1), disclosure is allowed "[f]or use by any government agency . . . in carrying out its functions," including law

43

enforcement or other regulatory enforcement purposes. *See also Reno v. Condon*, 528 U.S. 141, 145 & n.1 (2000) ("The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes," including "for use 'by any government agency . . . in carrying out its functions.'") (quoting 18 U.S.C. 2721(b)(1)).

The DOJ's demand for an electronic, unredacted copy of Michigan's SVRL falls squarely within this exception. The DOJ is a "government agency . . . carrying out [one of] its functions," 18 U.S.C. 2721(b)(1): assessing and ensuring compliance with federal elections statutes. *See* 52 U.S.C. 20510(a). In particular, the DOJ is verifying voter registration records and associated list maintenance activities by state and local entities. Under the government-function exemption in Section 2721(b)(1), the United States' use of DMV-provided information is permissible, even though the information originates from a motor vehicle record.

### D.   Federal law preempts any contrary Michigan law.

Below, Michigan argued that Michigan's privacy laws prevent disclosure of the records that the DOJ sought and that the CRA did not preclude redacting sensitive information. Br. in Supp. Mot. to Dism., R. 39, Pg. ID 468-470.  But the cited Michigan laws permit disclosure of

44

the SVRL to the federal government. Because Michigan's legal foundation for not disclosing DMV information is a statute that expressly permits it, this Court should reject any argument that state law preempts federal law based on the principle that federal law controls when there is a conflict with state law unless specifically stated by Congress.

Below, Michigan argued that state law prohibited it from disclosing the information requested by the DOJ. It cited three Michigan laws it claimed prevents it from disclosing the unredacted SVRL to the DOJ. Br. in Supp. Mot. to Dism., R. 39, Pg. ID 476. Michigan Compiled Laws Section 257.40b defines "[h]ighly restricted personal information" to include personally identifiable information. Section 257.208c governs exemptions where highly restricted personal information *can* be disclosed. Section 257.208c(3)(a) provides for disclosure "[f]or use by a federal, state, or local governmental agency, including a court or law enforcement agency, in carrying out the agency's functions[.]" By Michigan's own law, it cannot prevent the Attorney General from carrying out her function to enforce the NVRA. The Attorney General's authority to enforce the NVRA was, per the district court, a valid basis and purpose for its request. Opinion, R. 67, Pg. ID 907-908. There is no

45

disharmony between the CRA and Section 257.208c. Finally, Michigan Compiled Laws Section 168.509gg governs information exempt from freedom-of-information-act requests. This basis also fails in light of *Lamone*, where the court found that the NVRA was a sufficient basis for preempting state privacy laws. *See* 399 F. Supp. 3d at 443-445.

However, to the extent this court is unpersuaded and finds there is a conflict and must turn to preemption, Michigan's argument likewise fails and the DOJ is still entitled to the unredacted SVRL. *See Lamone*, 399 F. Supp. 3d at 443-445 (finding the NVRA preempted state law that prohibited disclosure of voter records).

While a state has broad constitutional authority over the conduct of federal elections, Congress can override those state choices. U.S. Const. art. I, § 4, cl. 1, *see Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013) (quoting The Federalist No. 59, at 362-363 (C. Rossiter ed. 1961) (A. Hamilton), then *Ex parte Siebold*, 100 U.S. 371, 392 (1880)) (finding that "[e]very government ought to contain in itself the means of its own preservation," the Constitution's Elections Clause vests in Congress "paramount" authority over federal elections, state laws to the contrary notwithstanding). The Supreme Court has explained that the

46

Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. at 384 (brackets in original)); *see also Inter Tribal Council*, 570 U.S. at 7-9 & n.1 (discussing the breadth of the Elections Clause).

A "state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption applies both "where it is impossible for a private party to comply with both state and federal law" and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-373 (citation omitted). Whether a state law poses a sufficient obstacle to implicate preemption is determined "by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* at 373; *see also Knox v.*

47

*Brnovich*, 907 F.3d 1167, 1173-1174 (9th Cir. 2018) ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009))). A state law that "undermines the intended purpose and 'natural effect'" of federal law is preempted. *Crosby*, 530 U.S. at 373.

Congress enacted broad regulations over the conduct of federal elections in the statutes at issue in this litigation. Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Lynd II*, 306 F.2d at 226. To the extent that state law prohibits Michigan from complying with the DOJ's demands—as Michigan insists state law does—that state law must yield. *See* U.S. Const. art. VI, cl. 2; *see also Inter Tribal Council*, 570 U.S. at 15 ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'") (quoting *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 347 (2001)).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district

48

court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Benson to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above.

Finally, because the district court's application of an erroneous framework has deprived the DOJ of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court [should] issue forthwith." *Lynd II*, 306 F.2d at 231; *see* Fed. R. App. P. 2, 41(b). In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. P. 2, 40(a)(1).

49

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

50

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and 6 Cir. R. 32(b) because it contains 9905words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 6 Cir. R.32(b)(1). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
  Attorney

Date: March 24, 2026

## CERTIFICATE OF SERVICE

On March 24, 2026, I filed this corrected brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
  Attorney

Case: 26-1225   Document: 25   Filed: 03/24/2026   Page: 65

## DESIGNATION OF RELEVANT RECORD ITEMS

| Document Description | Docket Entry Number | Page ID Range |
|---|---|---|
| Complaint | 1 | 1-19 |
| Defendants Michigan Secretary of State Jocelyn Benson's and State of Michigan's Brief in Support of Motion to Dismiss | 39 | 440-489 |
| Letter from Harmeet K. Dhillon to Jocelyn Benson (Aug. 14, 2025) | 39-4 | 499-502 |
| Motion to Dismiss by Defendant-Intervenors Michigan Alliance For Retired Americans, Donald Duquette, and Keely Crimando | 47 | 563-597 |
| Letter from Michael E. Gates to Jocelyn Benson (July 21, 2025) | 47-2 | 599-603 |
| Letter from Khyla D. Craine to Michael E. Gates (Sept. 9, 2025) | 47-4 | 607-613 |
| United States' Memorandum of Law in Opposition to Defendants' Motion to Dismiss | 53 | 664-685 |
| Defendants Michigan Secretary of State Jocelyn Benson's and State of Michigan's Reply Brief in Support of Motion to Dismiss | 60 | 729-748 |
| Opinion | 67 | 892-914 |
| Order | 68 | 915 |
| Notice of Appeal | 70 | 917-919 |

# ADDENDUM:  TABLE OF CONTENTS

PAGE

52 U.S.C. 20701 ...................................................................... A-1

52 U.S.C. 20703 ...................................................................... A-1

52 U.S.C. 20704 ...................................................................... A-1

52 U.S.C. 20705 ...................................................................... A-2

**52 U.S.C. 20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation.**

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**52 U.S.C. 20703. Demand for records or papers by Attorney General or representative; statement of basis and purpose.**

Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

**52 U.S.C. 20704. Disclosure of records or papers.**

Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy,

A-1

except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

**52 U.S.C. 20705. Jurisdiction to compel production of records or papers.**

The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.