No. 26-1225

============================

**In the
United States Court of Appeals for the Sixth Circuit**

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of the State of Michigan, et al.,
*Defendants-Appellees*,

LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al.,
*Intervenors-Appellees*.

_____

**On Appeal from the
United States District Court for
the Western District of Michigan**

_____

**Brief *Amicus Curiae* of
America's Future and
Citizens United
in Support of Plaintiff-Appellant and Reversal**

_____

KERRY L. MORGAN
  Wyandotte, MI  48192
MICHAEL BOOS
  Washington, DC  20003
PATRICK M. MCSWEENEY
  Powhatan, VA  23139
RICK BOYER
  Lynchburg, VA  24506

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
*Counsel of Record
*Attorneys for Amici Curiae*
March 30, 2026

============================

## DISCLOSURE STATEMENT

The *amici curiae* herein, America's Future and Citizens United, through their undersigned counsel, submit this Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A).  These *amici curiae* are non-stock, nonprofit corporations, neither of which has any parent company, and no person or entity owns them or any part of them.

*s/William J. Olson*
William J. Olson

**TABLE OF CONTENTS**

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.   THE COURT BELOW WAS MISTAKEN IN LIMITING THE STATUTORY
     TEXT OF THE CRA TO COVER ONLY RECORDS RELATING TO VOTER
     LISTS AND NOT THE LISTS THEMSELVES . . . . . . . . . . . . . . . . 2

     A.  Civil Rights Act . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.  National Voter Registration Act. . . . . . . . . . . . . . . . 9

     C.  Help America Vote Act. . . . . . . . . . . . . . . . . . . . . 10

II.  THE COURT BELOW CORRECTLY REFUSED TO REVIEW THE
     GOVERNMENT'S "PURPOSE AND BASIS" FOR ITS INFORMATION
     REQUEST AND THIS COURT ALSO SHOULD DECLINE TO DO SO . . . . . . . 12

III. THE CHINESE GOVERNMENT MAY HAVE BEEN ALLOWED GREATER
     ACCESS TO VOTER ROLLS THAN THE FEDERAL GOVERNMENT . . . . . . . 14

IV.  MICHIGAN VOLUNTARILY SHARES ITS VOTER LIST WITH OTHER
     STATES AND NON-GOVERNMENTAL ORGANIZATIONS, BUT REFUSES
     TO COMPLY WITH FEDERAL LAW MANDATING DISCLOSURE TO THE
     FEDERAL GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page

**CONSTITUTION**

U.S. Constitution, Article II, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

52 U.S.C. § 20507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9
52 U.S.C. § 20701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
52 U.S.C. § 20703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*
52 U.S.C. § 21083 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 11
MCL § 168.509 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**CASES**

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
     447 U.S. 102 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96 (1989) . . . . . . . . . 6
*Kennedy v. Lynd*, 306 F.2d 222 (1962) . . . . . . . . . . . . . . . . . . . 8, 13
*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) . . . . . . . . . . . . . 11, 12
*United States v. Jackson*, 635 F.3d 205 (6th Cir. 2011) . . . . . . . . . . . . . . 6
*United States v. Weber*, 2026 U.S. Dist. LEXIS 8545 (C.D. Cal. 2005) . . . . 12
*Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) . . . 10

**MISCELLANEOUS**

Hans von Spakovsky & J. Adams, "Maintaining Accurate Voter
     Registration Rolls: The Need to Rehabilitate the ERIC Program or
     Form an Alternative," *The Heritage Foundation (*Apr. 19, 2023) . . 16, 17
John Solomon & Jerry Dunleavy, "Britain had meltdown when China
     hacked voter files, but U.S. intel kept it secret in America,"
     *Just The News* (Mar. 16, 2026) . . . . . . . . . . . . . . . . . . . . . . . 14
Kris Kobach, "Interstate Voter Registration Data Crosscheck,"
     Presentation to the Presidential Commission on Election
     Administration (Sept. 20, 2013) . . . . . . . . . . . . . . . . . . . . . . 17, 18
Kristi Stahr & Michael Greibrok, "THE GREAT EXIT: Why States
     are Leaving Politically Driven ERIC and Why More States
     Should Follow," *Foundation for Government Accountability*
     (Dec. 12, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Office of the Secretary of State, "Secretary of State Wes Allen officially
    withdraws from ERIC Organization" (Jan. 16, 2023) . . . . . . . . . . . . 17
Roxana Hegeman, "Multistate voter database suspended in lawsuit
    settlement," *Associated Press* (Dec. 10, 2019). . . . . . . . . . . . . . . . . 18
Russ Feingold, "The Crosscheck Voter Database Is a Security Threat,"
    *The Nation* (Feb. 2, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* America's Future and Citizens United are nonstock, not-for-profit organizations, exempt from federal income taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code, dedicated, *inter alia*, to the correct construction, interpretation, and application of law. *Amici* participate actively in the public policy process and have filed numerous *amicus curiae* briefs in federal and state courts. These *amici* recently filed *an amicus* brief at the Ninth Circuit in two similar cases: *U.S. v. Oregon*, No. 26-1231, and *U.S. v. Weber*, No. 26-1232; *see* Brief *Amicus Curiae* of America's Future and Citizens United in Support of Plaintiff-Appellant and Reversal (Mar. 25, 2026).

## STATEMENT OF THE CASE

On July 21, 2025, the Department of Justice ("DOJ") served upon the Michigan Secretary of State a request for, *inter alia*, "'a current electronic copy of [Michigan's] computerized' voter registration list." *United States v. Benson*, 2026 U.S. Dist. LEXIS 27501, at *3 (W.D. Mich. 2026) ("*Benson*"). The request cited as authority the Help America Vote Act of 2002 ("HAVA"), 52

---

[1] Counsel for the parties have consented, not objected, or taken no position with respect to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

U.S.C. § 21083; the National Voter Registration Act of 1993 ("NVRA"), 52

U.S.C. § 20507; and the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20703.

*Benson* at *2.

The request was made pursuant to the DOJ's investigation of "several

purported anomalies within Michigan's voter registration data:  a high percentage

of registered voters, a low confirmation notice rate, a low voter removal rate,

and a high duplicate registration rate," and questions regarding "Michigan's

compliance with HAVA's requirements relating to the provision of unique voter

identifiers."  *Id.* at *24.

The U.S. District Court for the Western District of Michigan concluded

that the DOJ could not require release of the voter list because "HAVA, the

NVRA, and the CRA do not allow the United States to obtain the records at issue

in this case."  *Id.* at *34.

## ARGUMENT

**I.    THE COURT BELOW WAS MISTAKEN IN LIMITING THE
STATUTORY TEXT OF THE CRA TO COVER ONLY RECORDS
RELATING TO VOTER LISTS AND NOT THE LISTS
THEMSELVES.**

Before ruling for Michigan, the district court rejected all of the state's

arguments as to why it could refuse to share the voter registration lists used in

federal/state elections.  However, the court adopted an argument suggested by the Intervenor-Defendant, allowing it to dismiss DOJ's complaint.

**A. Civil Rights Act.**

Central to the district court's opinion was that the text of Section 301 of the Civil Rights Act first requires all state "officers of election" to preserve records with respect to federal elections:

> Every officer of election shall **retain and preserve**, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for [federal offices] are voted for, **all records and papers which come into his possession** relating to any application, **registration**, payment of poll tax, or other act requisite to voting in such election, except that … if a State … designates a **custodian** … then … the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian.  [52 U.S.C. § 20701 (emphasis added).]

The "custodian," here is the Michigan Secretary of State, who inherited the 22-month retention obligation from the officers of election.  *Id.*  Then, another section of the CRA makes a clear grant of power to the U.S. Attorney General to require states to release any information related to voting upon demand.  Section 303 states:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, **upon demand in writing by the Attorney General** or his representative directed to the person having **custody, possession, or control** of such record or paper, be

3

**made available** for inspection, reproduction, and copying at the principal office of such **custodian** by the Attorney General or his representative.  This demand shall contain a statement of the **basis and the purpose** therefor.  [52 U.S.C. § 20703 (emphasis added).]

To its credit, the district court correctly rejected an argument found persuasive by certain other courts in restricting the language of the CRA to cover only investigations of racial bias in election procedures:

> The **CRA** aids the Attorney General in assessing states' compliance with federal election law and **protecting voting rights**; the **NVRA** is a federal election law that **protects voting rights**.  *See* 52 U.S.C. § 20501(a)(1) ("[T]he right of citizens of the United States to vote is a fundamental right[.]"); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("The right of **suffrage can be denied by a debasement or dilution** of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." …).  Thus, the DOJ may use the CRA to investigate possible violations of the NVRA. [*Benson* at *26 (emphasis added).]

The court even conceded that "Michigan's voter registration list is relevant to investigating the State's compliance with the NVRA."  *Id*. at *27.  Actually, access to the registration list is more than just "relevant;" it is essential.  Without knowing who is on the list, the DOJ has no way to investigate whether the list includes non-citizens, deceased persons, duplicate names, or persons whose rights may have been removed or suspended for felony convictions.  Without the

4

list, the "investigation" consists of nothing more than taking the state's word that its voter registration list is accurate.

Despite agreeing with all of DOJ's rebuttals to Michigan's arguments, the district court went on to interpret the CRA to undermine any meaningful federal investigative authority.  The court accepted the Intervenor Defendants' argument that "a voter registration list is not a 'record' that 'c[a]me into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election,'" and that "this language refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials."  *Id.* at *27-28.  The court ruled that "[i]n order to give effect to the phrase 'come into [their] possession' and prevent it from being surplusage, the Court interprets the phrase as **referring to only those documents that state election officials receive from prospective voters**."  *Id.* at *29 (emphasis added).

The court's decision to give this curious interpretation to the phrase "come into [their] possession" has the effect of undermining the entire provision, which the court concedes was written to "aid the Attorney General in assessing the

5

states' compliance with federal election laws and protecting voting rights." *Id.* at *26.

Language of a statute is the starting point for its interpretation. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). It "should also be the ending point if the plain meaning of that language is clear." *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) (citation omitted). A statute must, if possible, be construed in such a way that every word has effect. *See Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96, 103 (1989).

Moreover, the court focused on the words "come into," but the term "possession" is the keyword. The phrase "come into," standing alone as construed by the District Court, is limited to documents "receive[d] from prospective voters." *Benson* at *29. But the word "possession" itself contains no such limitation. Here the District Court stands mute. The question is whether the election official possesses "papers or documents" relating to any act requisite to voting. As the statute says, "all records and papers which come into his possession relating to any … act requisite to voting."

6

Additionally, in the phrase "any … act requisite to voting," "any" means "any," not just some papers. Thus, a record or paper includes all records or papers pertaining to any act requisite to voting. A voter registration list is created by the election official. It is a record or paper? Yes. Does it pertain to any act requisite to voting? These *amici* believe it plainly does.

Michigan law does not provide a specific definition of "voter registration list." Nor need it do so. The term can be understood to refer to the records of registered voters maintained within the Qualified Voter File ("QVF"), which serves as the official and comprehensive voter registration database for the state. *See* MCL § 168.509o; § 168.509m. The QVF has effectively replaced older systems, such as physical registration cards and lists, as the primary mechanism for maintaining voter registration information.

The voter registration list sought by the United States clearly includes records of registered voters maintained within the QVF. For our purposes here, the only question then is whether or not such records in the QVF system pertain to any act requisite to voting? Obviously, the Secretary of State thinks so, because that office utilizes the system for elections. Whether creating,

7

maintaining, or referencing that state system by the defendant, they are undeniably acts requisite to voting.  As such, it must be disclosed.

Nevertheless, the district court allowed this one phrase in the CRA to render the entire statutory power toothless.  The Fifth Circuit has taken a different view, noting in 1962 that "[t]he incorporated standard of § 1974 [today § 20701] is sweeping.  Every election officer is required to retain and preserve '… all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting' in the specified elections for federal offices."  *Kennedy v. Lynd*, 306 F.2d 222, 226 (1962).  The Fifth Circuit properly interpreted "come into his possession" to include all **records received from a registrar's predecessor**, not just **from voters**, as the district court ruled here.  "[W]hatever has come into his custody, possession or control from his predecessors, he must faithfully keep under the sanction of a fine or imprisonment if he 'wilfully fails to' retain and preserve them as required.'"  *Id.* at 230.

The Fifth Circuit's reading, unlike the district court's here, does justice to Congress' instruction to preserve "all" records.  More importantly, it "gives effect" to the entire statute, instead of fixating on the phrase "comes into his

8

possession" to the point of eliminating the DOJ's ability to compel the records most probative in any investigation into "the states' compliance with federal election laws," *i.e.*, the voter list itself.

## B.  National Voter Registration Act.

Supplementing the CRA requirement of disclosure to the Attorney General, the NVRA requires voter information to be available for inspection by the general public.  When records are withheld, NVRA provides the general public with a private cause of action if voter records are denied, in the interest of helping ensure transparent and accurate voter records.  NVRA Section 8(i) states:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.  (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.  [52 U.S.C. § 20507(i).]

In its text, the NVRA spells out its purposes:

9

The NVRA has four enumerated purposes: (1) to establish procedures that will increase the number of **eligible** citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of **eligible** citizens as voters in elections for Federal office; (3) to protect the **integrity** of the electoral process; and (4) to ensure that **accurate** and current voter registration rolls are maintained. [52 U.S.C.] § 20501(b). [*Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1079 (10th Cir. 2025) (emphasis added).]

The reasons advanced by the Department of Justice to be given access to the voter registration list fit nicely into these categories, giving the federal government the ability to see if Michigan is allowing persons to vote who are not eligible to vote, and thus is violating "the integrity of the electoral process," so that the federal government can ensure that the voter list is "accurate and current."

## C.  Help America Vote Act.

The district court acknowledged that:

HAVA requires states to maintain, "in a uniform and nondiscriminatory manner, a single uniform, official, centralized, interactive computerized statewide voter registration list" containing the names of all registered voters and their pertinent personal information.  52 U.S.C. § 21083(a)(1)(A).  [*Benson* at *5-6.]

The court also noted that HAVA also mandates that states "'make[] a reasonable effort to remove registrants who are ineligible to vote from the

10

official list of eligible voters.' [52 U.S.C.] § 21083(a)(4)(A)" and also "requires states 'to ensure that voter registration records in the State are accurate and are updated regularly,' and to implement '[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.' [52 U.S.C.] § 21083(a)(4)(B)." *Benson* at *6. Despite this unequivocal language imposing enforceable duties upon state officials, the court concluded that the United States cannot obtain Michigan's voter registration list because "HAVA lacks any provision related to disclosure." *Id*.

Such crimped analysis disregards the clear intent of Congress to mandate that states exercise conduct prescribed in HAVA, as well as the President's duty to "take Care" that those federal statutory obligations are "faithfully executed." U.S. Constitution, Article II, § 3. The authority of the President's Attorney General to enforce the duties imposed by HAVA necessarily accompany establishment of those duties by Congress. No explicit authority needs to be granted by HAVA to enable the Attorney General to conduct the appropriate investigation to determine whether a state has complied with its HAVA obligations. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 577 (1992) ("Congress [may not] transfer from the President to the courts [his] most

11

important constitutional duty, to 'take Care that the Laws be faithfully executed,' Art. II, § 3").

## II.   THE COURT BELOW CORRECTLY REFUSED TO REVIEW THE GOVERNMENT'S "PURPOSE AND BASIS" FOR ITS INFORMATION REQUEST, AND THIS COURT ALSO SHOULD DECLINE TO DO SO.

The district court correctly acknowledged that it had no role in weighing the Attorney General's stated "basis and purpose" required under 52 U.S.C. § 20703, stating:  "the CRA does not allow courts to evaluate the substance of the DOJ's purported basis and purpose."  *Benson* at *24-25.  Since it is almost certain that the appellees will revive this rejected argument on appeal, these *amici* address it here.

Where the DOJ has sought a court order for state disclosure under CRA, some district courts have allowed the states to challenge the "basis and purpose" underlying the DOJ's demand.  For example, in *United States v. Weber*, 2026 U.S. Dist. LEXIS 8545 (C.D. Cal. 2005), the district court not only allowed such a challenge, but also determined that the "purpose and basis" which the government proffered for its request was an "obfuscation of its true motives," hidden "under the guise of a pretextual investigative purpose."  *Id*. at *33.

12

That California district court ruling violated a rule long ago recognized by the Fifth Circuit, that under the CRA "[o]n the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding.… [T]he factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand … is not open to judicial review or ascertainment." *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). The Fifth Circuit correctly recognized the authority of Congress to delegate this "sweeping" investigative authority to the Attorney General and the courts' consequent removal from the equation. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress. The Attorney General is entitled to have made available for his 'inspection, reproduction and copying' in the custodian's office 'any record or paper' which [the CRA section] requires 'to be retained and preserved.' The incorporated standard of [the CRA section] is sweeping." *Id.*

The statute tells the Attorney General what she must do to obtain the requested records. The Attorney General here has done so and is accordingly entitled to production by the state. The district court here properly recognized it lacked authority to question whether the stated "purpose and basis" is pretextual.

13

This Court should also reject any such arguments that may be raised by appellee here.

## III.    THE CHINESE GOVERNMENT MAY HAVE BEEN ALLOWED GREATER ACCESS TO VOTER ROLLS THAN THE FEDERAL GOVERNMENT.

There is a degree of irony in knowing that some states have handled their voter registration rolls in such an irresponsible manner that nations which may be hostile to our nation have been allowed access.  "U.S. intelligence [has known] since 2020 that Beijing also gained access to American voter registration data, according to documents … and interviews with officials with direct knowledge."[2]

> "[Redacted] Chinese intelligence officials analyzed multiple U.S. states' [Redacted] election voter registration data, [Redacted] to conduct public opinion analysis on the 2020 US general election," stated a once highly classified April 2020 National Intelligence Council memo entitled "Cyber Operations Enabling Expansive Authoritarianism."  [*Id*.]

If true, states should be more concerned that voter registration lists have been exposed to a potentially hostile country, and less concerned that the federal government would be able to help ensure that those voter rolls are accurate.

---

[2]  John Solomon & Jerry Dunleavy, "Britain had meltdown when China hacked voter files, but U.S. intel kept it secret in America," *Just The News* (Mar. 16, 2026).

14

## IV.    MICHIGAN VOLUNTARILY SHARES ITS VOTER LIST WITH OTHER STATES AND NON-GOVERNMENTAL ORGANIZATIONS, BUT REFUSES TO COMPLY WITH FEDERAL LAW MANDATING DISCLOSURE TO THE FEDERAL GOVERNMENT.

For some time, Michigan has been sharing its voter registration information with about half of the states who, like Michigan, are members of the Electronic Registration Information Center ("ERIC"), a non-governmental nonprofit entity.  Founded in 2012, ERIC currently has 25 member states and the District of Columbia.  ERIC's website explains that member "states securely submit voter registration and motor vehicle department data to ERIC," supposedly to "help states improve the accuracy of … voter rolls, increase access to voter registration for all eligible citizens, reduce election costs, and increase efficiencies in elections."[3]  However, the actual activities of EPIC appear shrouded in mystery.  One report on ERIC asserts that ERIC's primary goal is increasing voter registration:

> While ERIC is supposed to help participating states maintain accurate voter rolls, the organization seems to be more interested in **increasing voter registration**….  ERIC [requires] member states to **send voter registration information to potentially eligible but**

---

[3]  Electronic Registration Information Center website homepage.

**unregistered individuals** at least 15 days before the state's registration deadline.[4]

Even more disturbingly, that report indicates that, once a state like Michigan provides voter registration information to the non-governmental ERIC, ERIC then provides that voter registration information to other private organizations for political purposes.

> ERIC's founder, David Becker … is also the Executive Director and Founder of the Center for Election Innovation & Research (CEIR).… **ERIC shares data collected by the states with third parties like CEIR for political purposes** … Pennsylvania's secretary of state [in 2023] sent a letter to ERIC demanding that they stop sharing data with third parties for get-out-the-vote efforts. [*Id.* (emphasis added.)]

Apparently several states have found these charges about ERIC to be credible. In 2022-2023:

> [s]everal states [withdrew] from ERIC over credible claims of bias, lack of transparency, and **questions about data sharing and usage**, among other reasons.… Louisiana cited concerns about "questionable funding sources and that **possible partisan actors**

---

[4] Kristi Stahr & Michael Greibrok, "THE GREAT EXIT: Why States are Leaving Politically Driven ERIC and Why More States Should Follow," *Foundation for Government Accountability* (Dec. 12, 2023) at 5 (emphasis added).

**may have access to ERIC network data for political purposes**, potentially undermining voter confidence" in ERIC's operations….[5]

Likewise, Alabama withdrew from ERIC in January of 2023. Secretary of State Wes Allen "expressed concerns over a private organization having access to the private data of Alabama citizens, including the driver's license numbers, contact information and partial social security numbers of minors. 'Providing the private information of Alabama citizens, including underage minors, to an out of state organization is troubling to me and to people that I heard from as I traveled the state for the last 20 months,' Allen said. 'That is no longer a concern because the data uploads of that information from Alabama to ERIC is over.'"[6]

Before its affiliation with ERIC, Michigan shared personal data with the "Interstate Crosscheck" program ("IC"), beginning by 2012.[7] The IC program also collected partial SSNs and driver's license numbers, but they were not encrypted. The program was eventually permanently suspended after litigation

---

[5] Hans von Spakovsky & J. Adams, "Maintaining Accurate Voter Registration Rolls:  The Need to Rehabilitate the ERIC Program or Form an Alternative," *The Heritage Foundation (*Apr. 19, 2023) (emphasis added).

[6] Office of the Secretary of State, "Secretary of State Wes Allen officially withdraws from ERIC Organization" (Jan. 16, 2023).

[7] Kris Kobach, "Interstate Voter Registration Data Crosscheck," Presentation to the Presidential Commission on Election Administration (Sept. 20, 2013).

17

against the state of Kansas by the ACLU over privacy concerns.[8]   But Michigan continued to use the IC until 2018, although ERIC's somewhat more secure system was available beginning in 2012 (the year Michigan signed on with IC), according to ERIC's website.[9]

Like ERIC, IC collected personal identifiers, including voter ID numbers and partial Social Security numbers.[10]   But IC had little to no encryption. Former Senator Russ Feingold (D-WI) called out the IC system as "a glaring security risk, as it uses minimal IT security and its operators have demonstrated a disregard for basic cybersecurity protocol.  The result?   Information of millions of voters is vulnerable to hacking, tampering, and manipulation."[11]   He noted that the information in the IC servers was "[s]hared just with the click of an email with minimal encryption."  *Id*.  IC's data was "stored on a standard server in Arkansas, which the state readily admits is insecure.  Data stored on it is

---

[8]   Roxana Hegeman, "Multistate voter database suspended in lawsuit settlement," *Associated Press* (Dec. 10, 2019).

[9]  "State Owned / Non Profit," *ERIC* (accessed Mar. 27, 2026).

[10]   Kris Kobach, *supra*.

[11]   Russ Feingold, "The Crosscheck Voter Database Is a Security Threat," *The Nation* (Feb. 2, 2018).

unencrypted, leaving it vulnerable to hacking and tampering." None of this, it appears, fazed Michigan.

Michigan's sudden concern over guarding the "privacy" of voters in federal elections from investigations of potential violation of federal election laws rings especially hollow given Michigan's checkered past of exposing unencrypted personal identifiers of voters for years. It is a pretext for Michigan officials determined to avoid a federal investigation into the lawfulness of state voter list maintenance practices at all costs. This Court should not provide cover, and should reverse the district court.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and remand with instructions to order that Secretary Benson immediately produce the requested unredacted Statewide Voter Registration List.

Respectfully submitted,

/s/ William J. Olson

KERRY L. MORGAN
  PENTIUK, COUVREUR & KOBILJAK, P.C.
  2915 Biddle Ave., Ste. 200
  Wyandotte, MI  48192

MICHAEL BOOS
  CITIZENS UNITED
  1006 Pennsylvania Ave. SE
  Washington, DC  20003

PATRICK M. MCSWEENEY
  3358 John Tree Hill Road
  Powhatan, VA  23139

RICK BOYER
  INTEGRITY LAW FIRM
  P.O. Box 10953
  Lynchburg, VA  24506

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
*Attorney of Record
*Attorneys for Amici Curiae*
March 30, 2026

20

## <u>CERTIFICATE OF COMPLIANCE</u>

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Plaintiff-Appellant and Reversal complies with the type-volume limitation of Rule 29(a)(5), Federal Rules of Appellate Procedure, because this brief contains 3,986 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point CG Times.

/s/ William J. Olson
William J. Olson
Counsel for *Amici*

Dated: March 30, 2026

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Plaintiff-Appellant and Reversal, was made, this 30th day of March, 2026, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

*/s/William J. Olson*

William J. Olson

Attorney for *Amici Curiae*

22