No. 26-1225

## In the
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

    Defendants-Appellees,

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

    Intervenors-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Hala Y. Jarbou

## BRIEF FOR DEFENDANTS-APPELLEES

<div style="margin-left:40%">

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P55439)

</div>

Dated: April 13, 2026

# CORPORATE DISCLOSURE

State government and state agencies are excepted from filing a corporate affiliate/financial interest disclosure statement.

# TABLE OF CONTENTS

Page

Corporate Disclosure ...................................................................................i

Table of Contents .......................................................................................ii

Table of Authorities....................................................................................v

Statement in Support of Oral Argument.................................................xi

Jurisdictional Statement............................................................................1

Statement of Issues Presented...................................................................2

Introduction ................................................................................................3

Statement of the Case ................................................................................5

    A.    NVRA's voter list maintenance requirements.......................5

    B.    HAVA's voter list maintenance requirements.......................7

    C.    Michigan's list maintenance program. .................................9

        1.    Removing deceased voters ...........................................9

        2.    Removing voters who change addresses.....................10

        3.    Michigan's removal program is effective.....................13

    D.    DOJ's records demand. .......................................................14

    E.    Proceedings below. ..............................................................16

Standard of Review ..................................................................................18

Summary of Argument.............................................................................19

Argument...................................................................................................21

I.  The DOJ has failed to preserve, or has forfeited, their argument on appeal where they failed to make any substantive argument in the lower court. ....................................21

    A.  The general rule is that arguments not presented below will not be entertained on appeal. ..............................22

    B.  The DOJ presents no "exceptional circumstances" warranting review of their unpreserved arguments. ...........25

II.  The district court did not err in dismissing the complaint where the DOJ failed to set forth a plausible claim for relief under the Civil Rights Act of 1960...............................................26

    A.  The district court correctly held that Michigan's SVRL is not subject to production or inspection under the CRA.......................................................................................27

    B.  The CRA does not prohibit Michigan from following its voter privacy law by excluding or redacting sensitive voter information. ...............................................................30

        1.  The plain language of the CRA does not prohibit redaction of sensitive voter information......................30

        2.  DOJ does not need sensitive voter information to assess Michigan's list maintenance program..............39

    C.  The DOJ's demand failed to state a proper "basis and purpose" for requesting unredacted voter records. ..............41

        1.  DOJ did not state a "basis" in its demand...................42

        2.  The DOJ did not state a proper "purpose." .................47

            a.  Ascertaining compliance with routine list maintenance requirements is not a proper purpose under the CRA. .....................................48

            b.  The DOJ's stated purpose is a pretext for otherwise improper purposes............................52

III. While the District Court did not address the State Defendants' arguments based on privacy requirements, this Court can affirm the dismissal on those alternative grounds. .....58

A. DOJ must comply with federal privacy laws to collect and maintain a system of records. ........................................58

1. DOJ's request violates the Privacy Act. .......................59

2. DOJ's request violates the E-Government Act............63

3. DOJ's demand violates the DPPA. .............................64

Conclusion and Relief Requested...........................................................66

Certificate of Compliance.......................................................................67

Certificate of Service .............................................................................68

Designation of Relevant District Court Documents..............................69

# TABLE OF AUTHORITIES

Page

**Cases**

*Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................. 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 19

*Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000 (6th Cir. 2022) ......................................................................................... 23

*Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745 (6th Cir. 2005) .......... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................ 19

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ................. 61

*Bufkin v. Collins*, 604 U.S. 369 (2025) ............................................... 42

*Byrd v. Haas,* 17 F.4th 692 (6th Cir. 2021) ........................................ 22

*CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ................................ 48

*CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456 (5th Cir. 2018) ........ 46

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) .............................. 35

*Department of Commerce v. New York*, 588 U.S. 752 (2019) ................. 57

*Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) ................. 47

*Donaldson v. United States*, 400 U.S. 517 (1971) ................................ 57

*Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) .............................. 56

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ...................................... 63

*Fitzgerald Truck Parts & Sales, LLC v. United States*, 132 F.4th 937 (6th Cir. 2025) ....................................................................... 27

*Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) ....... 41

*Foster v. Barilow*, 6 F.3d 405 (6th Cir. 1993) ......................................... 23

*Hammon v. DHL Airways, Inc.*, 165 F.3d 441 (6th Cir.1999) ................ 30

*Han v. Univ. of Dayton*, 541 F. Appx. 622 (6th Cir., 2013) ................... 19

*Hayes v. Clariant Plastics & Coatings USA, Inc.,* 144 F.4th 850
   (6th Cir. 2025) ................................................................................... 58

*Honeycutt v. United States*, 581 U.S. 443 (2017) ................................... 28

*Hormel v. Helvering*, 312 U.S. 552 (1941) ............................................. 58

*Husted v. A. Philip Randolph*, 138 S. Ct. 1833 (2018) ....................... 7, 31

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .............................. 35

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ........................... 35, 56

*J.B-K. ex rel. E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*,
   48 F.4th 721 (6th Cir. 2022) ............................................................. 27

*Jama v. Dep't of Homeland Security,* 760 F.3d 490 (6th Cir. 2014) ....... 18

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ............................... 43, 51

*Libertarian Party of Va. v. Alcorn*, 826 F.3d 708 (4th Cir. 2016) ........... 31

*Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580 (6th Cir. 2002) ................... 22

*Ohio Telecom Assoc. v. Federal Communications Comm.,* 150 F.4th
   694 (6th Cir. 2025) ........................................................................... 49

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th
   Cir. 2012) .......................................................................................... 37

*Public Int. Legal Found. v. Benson*, __ F. Supp. 3d __ (W.D. Mich.,
   2024) ................................................................................................. 10

*Public Interest Legal Found. v. Bellows*, 92 F.4th 36 (4th Cir.
   2024) ................................................................................................. 37

*Public Interest Legal Found. v. North Carolina State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) ..............................................37

*Pulsifer v. United States*, 601 U.S. 124 (2024)...........................................43

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)........................................27

*Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008)..................23

*Smiley v. Holm*, 285 U.S. 355 (1932) .......................................................31

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ......................................................................................................47

*Steelcase, Inc. v. United States*, 165 F.3d 28 (6th Cir. 1998).................34

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986).................30

*The Effects of the Voting Rights Act: A Case Study*, 72 Wash. U. L.Q. 725 (1994) ..................................................................................50

*Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833 (6th Cir. 1996) .......23

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)..............................................18, 19

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) ........37

*United States v. Gradwell*, 243 U.S. 476 (1917) ....................................31

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995 ............39, 41, 56

*United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750 (6th Cir. 1999) ....................................................................................22

*United States v. Weber*, ___ F. Supp. 3d ___, 2026 WL 118807 (C.D. Ca., Jan. 15, 2026)........................................................ 36, 45, 54, 61

*Voting Rights; Mechanism for Social* Change, 76 Ala. L. Rev. 603 (2025) .................................................................................................50

*White v. Anchor Motor Freight, Inc.*, 899 F.2d 555 (6th Cir. 1990)........23

**Statutes**

5 U.S.C. § 552a ............................................................ 16, 59, 60, 63

18 U.S.C. § 2721(b)(1) ................................................... 15, 65

18 U.S.C. § 2721(b)(1) ........................................................ 65

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1294(1) ............................................................. 1

52 U.S.C. § 20501(3) ......................................................... 51

52 U.S.C. § 20507 ........................................................ *passim*

52 U.S.C. § 20507(a) ....................................... 6, 26, 39, 40

52 U.S.C. § 20507(a)(3) ................................................. 6, 39

52 U.S.C. § 20507(b)(1) ...................................................... 6

52 U.S.C. § 20507(i) ................................................. 15, 36, 49

52 U.S.C. § 20507(i)(1) .............................................. 15, 36

52 U.S.C. § 20510 ........................................................... 49

52 U.S.C. § 20701 ........................................................... 28

52 U.S.C. § 20704 ...................................................... 34, 38

52 U.S.C. § 21083(a)(5)(A)(i) ....................................... 32, 36

52 U.S.C. § 21083(a)(2)(B)(ii) ......................................... 8, 9

52 U.S.C. § 21083(a)(5)(A)(ii) .......................................... 8

52 U.S.C. § 552a(a)(5) ..................................................... 61

Mich. Comp. Laws § 15.243(1)(a) ..................................... 33

Mich. Comp. Laws § 168.492a ............................................ 6

Mich. Comp. Laws § 168.493b..............................................................32

Mich. Comp. Laws § 168.499b..............................................................32

Mich. Comp. Laws § 168.509...............................................................8

Mich. Comp. Laws § 168.509n ............................................................9

Mich. Comp. Laws § 168.509p .............................................................8

Mich. Comp. Laws § 168.509q..............................................................8

Mich. Comp. Laws § 168.509r ..............................................................8

Mich. Comp. Laws § 168.509o...........................................................8, 9

Mich. Comp. Laws § 168.509aa...........................................................11

Mich. Comp. Laws § 168.509aa(1) ......................................................11

Mich. Comp. Laws § 168.509aa(4) ......................................................11

Mich. Comp. Laws § 168.509aa(5) ......................................................12

Mich. Comp. Laws § 168.509dd(1) ......................................................13

Mich. Comp. Laws § 168.509ff ...........................................................32

Mich. Comp. Laws § 168.509gg......................................................*passim*

Mich. Comp. Laws § 168.509gg(2) ......................................................33

Mich. Comp. Laws § 168.509o(5) ........................................................10

Mich. Comp. Laws § 168.509q(1)(a) ...................................................32

Mich. Comp. Laws § 168.509q(1)(f)......................................................32

Mich. Comp. Laws § 168.509r(2)(a) .....................................................64

Mich. Comp. Laws § 168.509r(4)..........................................................32

Mich. Comp. Laws § 168.509r(5)..........................................................13

Mich. Comp. Laws § 168.509r(7)........................................................13

Mich. Comp. Laws § 168.509r(8)........................................................13

Mich. Comp. Laws § 168.509z(a) ......................................................10

Mich. Comp. Laws § 168.510...........................................................10

Mich. Comp. Laws § 168.759...........................................................32

Mich. Comp. Laws § 257.208c(3)(a) .................................................33

Mich. Comp. Laws § 257.307(11)(e) .................................................33

Mich. Comp. Laws § 333.2815.........................................................10

Mich. Comp. Laws § 333.2833.........................................................10

Mich. Comp. Laws § 333.2804(4) .....................................................10

## Rules

Fed. R. App. P. 3(a)(1) ......................................................................1

Fed. R. App. P. 4(a)(1) ......................................................................1

## Constitutional Provisions

Mich. Const. 1963, art. 2, § 2 ............................................................6

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendants-Appellees Michigan Secretary of State Jocelyn Benson and the State of Michigan do not request oral argument because they believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the district court's well-reasoned opinion. Additionally, the issues raised in this appeal are reasonably resolved by both recent and long-established law.

# JURISDICTIONAL STATEMENT

On February 10, 2026, the district court dismissed the case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, (R. 67, R. 68), and entered a final order on February 23, 2026. (R. 69). Plaintiff filed a notice of appeal on February 10, 2026, (R. 70), which was timely under Fed. R. App. P. 3(a)(1), 4(a)(1), and 26(a)(1)(A)–(C). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Department of Justice has forfeited arguments concerning how records that "come into possession" of election officials under Title III of the Civil Rights Act should be interpreted, where they made no substantive argument on that issue before the district court?

2. Whether the Attorney General's request for Michigan's entire electronic Qualified Voter File exceeded the statutory authority for such requests under Title III of the Civil Rights Act?

3. Whether this Court should decline to consider privacy arguments not decided by the district court, and instead remand them to the district court for consideration only if the district court's dismissal is reversed?

4. Whether federal and state privacy laws protect against the unredacted disclosure to the federal government of sensitive personal information for every voter in the state?

## INTRODUCTION

The United States of America, through the U.S. Department of Justice (DOJ), appeals the district court's dismissal of its complaint seeking to compel the production of Michigan's entire, unredacted electronic voter roll through a request made under Title III of the Civil Rights Act of 1960 (CRA). This Court should affirm.

The DOJ's arguments on appeal suffer from a threshold defect: they are a mix of issues either not raised below or not reached by the district court. This Court should decline to consider those issues for the first time on appellate review.

Even if the Court were to exercise its discretion to reach the merits, the DOJ's arguments fail.

First, the DOJ argues that the district court interpreted the CRA too narrowly in defining what records and papers "come into [the] possession" of state election officials. But the DOJ cites no binding—or even persuasive—authority in support of its preferred construction and instead, rests almost entirely on an ordinary dictionary definition of "possession," with no serious examination of the statute's language, context, or history.

Second, the DOJ disputes the application of federal and state privacy laws to its request for voters' private information, but in the absence of any decision by the district court as to those issues, it is not clear what error they seek to have this Court correct. In any event, the DOJ's analysis of the privacy laws is erroneous and unconvincing.

Third, even if the Court concludes that the DOJ's CRA arguments are properly before it and credits the DOJ's interpretation of "come into possession," this Court should still affirm the district court's opinion on alternate grounds.

The CRA does not compel the unredacted disclosure of sensitive personal information, and the DOJ's demand independently failed to satisfy the statute's mandatory "basis and purpose" requirement. The DOJ failed to state its "basis" in its demand. And the DOJ's stated purpose—assessing NVRA and HAVA compliance—is not a cognizable purpose under the CRA. And its inconsistent public statements about its true intentions further undermine any claim of a legitimate statutory purpose.

This Court should affirm the well-reasoned opinion of the district court.

# STATEMENT OF THE CASE

Because the DOJ sought Michigan's voter registration list (SVRL) for the alleged purpose of assessing the State's list maintenance program, a brief overview of the law and Michigan's procedures is helpful.

## A.     NVRA's voter list maintenance requirements.

The National Voter Registration Act (NVRA) was enacted "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "to make it possible for Federal, State and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b).  Section 8 establishes procedures for voter registration, including protections aimed at ensuring "each eligible applicant" is registered to vote and preventing hasty removals of registrants from voter rolls.  52 U.S.C. § 20507.

Section 8 permits removal of a registrant's name only in narrow circumstances: at the registrant's request, due to "criminal conviction or

mental incapacity,"[1] or through a "general program that makes reasonable efforts to remove" voters rendered ineligible by death or change of address. 52 U.S.C. § 20507(a)(3), (4). The NVRA, however, does not require states to comply with any particular program or to immediately remove every voter who may have become ineligible. Rather, a state must "conduct a general program that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible . . . ." 52 U.S.C. § 20507(a)(4)(A)-(B) (emphasis added).

Any removal program implemented under subsection (a)(4) must be "nondiscriminatory," 52 U.S.C. § 20507(b)(1), and "not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote" except:

> (2) . . . that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the

---

[1] Michigan law prohibits both registering to vote and voting by persons while serving sentences of imprisonment, Mich. Const. 1963, art. 2, § 2, Mich. Comp. Laws §§ 168.492a, 168.758b, but does not require that previously existing registrations be canceled upon incarceration. Michigan law does not address mental capacity in the context of voter registration. Mich. Const. 1963, art. 2, § 2.

official list of eligible voters if the individual) has not either notified the applicable registrar . . . or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

(B) has not voted . . . in 2 or more consecutive general elections for Federal office. [52 U.S.C. § 20507(b)(2).]

A state may craft its own voter removal program to comply with subsection (a)(4). 52 U.S.C. § 20507(c)(1). *See also Husted v. A. Philip Randolph*, 584 U.S. 756, 777 (2018).

Removal based on a change of residence is similarly restricted. A registrant may be removed only if the registrant (1) confirms in writing that the registrant has moved out of the registrar's jurisdiction, or (2) fails to respond to a specific type of notice sent by the registrar in conformity with subsection (d)(2), and the registrant has not voted in the two general elections following the transmission of the notice to the registrant. 52 U.S.C. § 20507(d)(1)-(2). If a registrar receives change of residence information under (d)(1) and (2), the registrar "shall correct" the voter registration list. 52 U.S.C. § 20507(d)(3).

## B.    HAVA's voter list maintenance requirements.

In addition to NVRA, the Help America Vote Act (HAVA) of 2002 requires each state to "implement, in a uniform and nondiscriminatory

manner, a single, uniform, official, . . . computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A).[2]  This "list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State."  52 U.S.C. § 21083(a)(1)(A)(viii).

Michigan complied with these requirements by creating the qualified voter file (QVF) as the State's electronic statewide voter registration list.  Mich. Comp. Laws §§ 168.509m(1)(a), 509o, 509p, 509q, 509r.

HAVA further requires that list maintenance ensure only ineligible or unregistered voters are removed, 52 U.S.C. §

---

[2] HAVA requires applicants provide their driver's license number or the last four digits of their social security number when registering for a federal election.  52 U.S.C. § 21083(a)(5)(A)(i).  Michigan's registration application, applicable to all elections, reflects this requirement.  *See* ED-121: Michigan Voter Registration Application and Change of Address Form (accessed April 13, 2026.)  If a voter has neither a valid license nor social security number, a state must assign that voter a unique identifier, however, the identifier may be the same as that required under § 21083(a)(1)(A).  52 U.S.C. § 21083(a)(5)(A)(ii).  Michigan uses one, unique identifier for purposes of HAVA.

21083(a)(2)(B)(ii), and that safeguards prevent eligible voters from being removed in error, 52 U.S.C. § 21083(a)(4)(B).  HAVA's provisions parallel or incorporate NVRA.

### C.  Michigan's list maintenance program.

Michigan's list-maintenance program makes more than a reasonable effort to remove ineligible voters.  The Secretary of State is responsible for coordinating the requirements under NVRA.  Mich. Comp. Laws § 168.509n.  The Department of State's website includes a description of Michigan's list-maintenance activities.[3]

### 1.  Removing deceased voters

The Secretary uses the Social Security Death Index at least monthly to cancel registrations of deceased voters in QVF and makes that information available to local clerks.  Mich. Comp. Laws § 168.509o(4).  County clerks separately forward monthly lists of recently deceased residents to city and township clerks, who cancel those

---

[3] *See* Michigan Department of State, Voter registration cancellation procedures, available at Voter registration cancellation procedures (michigan.gov) (accessed April 13, 2026).

registrations.  Mich. Comp. Laws § 168.510; *see also* Mich. Comp. Laws §§ 333.2804(4), 333.2815, 333.2833.

The State also uses death information received from the Electronic Registration Information Center (ERIC), a bipartisan interstate data-sharing group with the aim of keeping voter rolls complete, up to date, and accurate.[4]

This Court recently confirmed that Michigan's program for removing deceased voters from its voter list is a "reasonable" program under NVRA.  *See Public Interest Legal Found. v. Benson (PILF)*, 721 F. Supp. 3d 580 (W.D. Mich., 2024), aff'd 136 F.4th 613 (6th Cir. 2025), cert denied Mar. 2, 2026.

### 2.    Removing voters who change addresses.

The Secretary notifies local clerks of driver's license address changes and out-of-state license issuances, Mich. Comp. Laws § 168.509z(a), (b), and she participates in multistate programs—including ERIC—to verify voter residency.  Mich. Comp. Laws § 168.509o(5). Like deceased voters, the Secretary receives information from ERIC

---

[4] *Id.*

when a voter registers in another state, and that information is used to commence the cancellation process for that voter.[5]

Under section 509aa, a "clerk may use change of address information supplied by the United States postal service or other reliable information received by the clerk that identifies registered voters whose addresses may have changed as provided in this section." Mich. Comp. Laws § 168.509aa(1). Section 509aa goes on to provide for how a clerk must proceed if the clerk receives "reliable information" that a voter has "moved his or her residence" either "within the city or township," § 509aa(2)(a)-(c), or "to another city or township," § 509aa(3)(a)-(c). In both cases, the voter must be sent a notice that requests the voter to verify or correct the address information within 30 days before the next election. If notices are returned as undeliverable to the issuing clerk under either § 509aa(2) or (3), "the clerk shall identify the registration record of a voter as challenged[.]" Mich. Comp. Laws § 168.509aa(4).

---

[5] *See* Michigan Department of State, Bureau of Elections, Voter registration cancellation procedures (michigan.gov) (accessed April 13, 2026.)

Similarly, subsection 509aa(5) provides that "[i]f the department of state receives notice that a registered voter has moved out of state by receiving a surrendered Michigan driver license of that registered voter, the secretary of state shall send" to the voter notice that requests the voter to verify or correct the address information within 30 days before the next election. Mich. Comp. Laws § 168.509aa(5). For voters who receive notices under § 509aa(3) (in-state move to another jurisdiction) or § 509aa(5) (out-of-state move), the voters must receive information that their registrations will be cancelled after the second November general election after which the notice was sent.[6] The sending of these notices to these voters starts the cancellation countdown clock running.[7]

The Secretary must also create and maintain "an inactive voter file" for registrants who fail to vote for six years or confirm residency

---

[6] A list of voters who have received notices under section 509aa must be made available for inspection by the Secretary and/or local clerks. Mich. Comp. Laws § 168.509ff(1)-(2).

[7] *See* Election Officials' Manual, Chapter 2, Voter Registration, pp 15-22, available at https://www.michigan.gov/documents/sos/II_Voter_Registration_265983_7.pdf, and Election Officials' Manual, Chapter 2, Addendum: Voter Registration Cancellation, Challenge, and Correction, September 2024, (Chapter 2, Addendum: Voter Registration Cancellation, Challenge, Correction, (accessed April 13, 2026).

information.  Mich. Comp. Laws § 168.509r(5), (6).  However, "[w]hile the registration record of an elector is in the inactive voter file, the elector remains eligible to vote and his or her name must appear on the precinct voter registration list."  Mich. Comp. Laws § 168.509r(7).  But if an inactive voter "votes at an election by absent voter ballot, that absent voter ballot must be marked" as a "challenged ballot[.]"  Mich. Comp. Laws § 168.509r(8).[8]

Michigan recently adopted a new administrative rule recognizing that the failure to vote for 20 years or more is reliable information that a voter may have moved. This triggers a cancellation notice in the same manner as other reliable information.  *See* AACS, R. 168.252(2)(a).[9]

### 3.    Michigan's removal program is effective.

Since 2019 the Michigan Bureau of Elections, in conjunction with local clerks, has engaged in rigorous list maintenance practices under

---

[8] In addition, local clerks are authorized to conduct programs to remove voters from the QVF.  *See* Mich. Comp. Laws § 168.509dd.

[9] *See* ars.apps.lara.state.mi.us/AdminCode/DownloadAdminCodeFile?FileName=R 168.251 to R 168.262.pdf&ReturnHTML=True (accessed April 13, 2026.)

Secretary Benson's supervision.[10]  From 2019 to March 2025, the Bureau and local clerks canceled more than 1.4 million voter registrations, including 635,052 for deceased voters, 588,247 for voters who failed to respond to change-of-residence notices and had no subsequent voter activity, and 18,489 at voters' own request.[11]  In April 2025 alone, roughly 310,000 registrations were cancelled for address changes,[12] and approximately 573,000 voter registrations are slated for cancellation in 2027 or 2029 based on the two-federal election cycle.[13]

### D.    DOJ's records demand.

On July 21, 2025, the DOJ demanded, among other things, a description of Michigan's list maintenance activities, answers to six questions regarding Michigan's Election Assistance Commission's Election Administration and Voting Survey (EAVS) results, and "[t]he current electronic copy of Michigan's computerized statewide voter registration list" with "all fields in the list."  (R. 39-2, Page ID # 491.)

---

[10]  *See* Department of State, Voter registration cancellation procedures (michigan.gov) (accessed April 13, 2026).

[11] *Id.*

[12] *Id.*

[13] *See* Voter registration statistics (accessed April 13, 2026.)

The DOJ cited NVRA's provision requiring states to "maintain for at least 2 years" and to "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]"  52 U.S.C. § 20507(i)(1).  The DOJ later confirmed that it wanted "an unredacted statewide voter registration list by August 18, 2025."  (R. 39-3, Page ID # 499.)

On August 14, 2025, the DOJ clarified that it wanted "all fields" of Michigan's voter registration list, including "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]"  (R. 39-4, Page ID # 499.)  The DOJ added the CRA and HAVA as bases for its demand, and asserted that the produced list "is subject to federal privacy protections" under CRA, HAVA, and the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721(b)(1).  (R. 39-4.)

The Secretary responded on September 2, 2025.  (R. 39-5, Page ID # 503.)  With respect to the voter list demand, she explained that state election law exempts from public disclosure the full dates of birth, driver's license numbers, and the last four digits of social security

15

numbers. (*Id.*, Page ID # 504) (citing Mich. Comp. Laws § 168.509gg). The Secretary also disagreed that the Privacy Act, 5 U.S.C. § 552a, or the DPPA, apply to protect or permit the disclosure of the requested sensitive information. (*Id.*, Page ID # 504-05.) The response further noted that courts have permitted the redaction of sensitive information in voter registration records under NVRA. (*Id.*, Page ID # 505.) The Secretary confirmed that Michigan would produce the public version of its SVRL. (*Id.*) On September 9, 2025, the Secretary reiterated the concerns in connection with the list demand and answered the DOJ's EAVS questions. (R. 39-6, Page ID # 506.)

The Secretary provided the DOJ a copy of Michigan's public version of its SVRL, the QVF, including the unique identifiers assigned Michigan voters, along with the inactive voter file, on September 15, 2025. Because the QVF is a live database, the production was a snapshot of Michigan's list on the date the report was generated.

### E.    Proceedings below.

The DOJ filed its three-count complaint on September 25, 2025. (R. 1, Page ID # 1.) In Count I, the DOJ sought to enforce its demand for the unredacted version of Michigan's SVRL under the CRA. (*Id.*,

Page ID # 16.)  In Counts II and III, the DOJ sought to do the same

under the NVRA and HAVA.  (*Id.*, Page ID # 16-18.)  For relief, the DOJ

sought various declarations and an order directing State Defendants to

provide a current, unredacted copy of its SVRL.

The Michigan Alliance for Retired Americans (MARA) and two

members moved to intervene (R. 5, Page ID # 27), as did the League of

Women Voters (R. 17, Page ID # 109).  The district court granted

MARA's motion but denied intervention by the League of Women

Voters.  (R. 45, Page ID # 45, Page ID # 549.)

The State Defendants filed their motion to dismiss on November

26, 2025 (R. 38, Page ID # 438), and Intervenors filed their motion on

December 9, 2025.  (R. 47, Page ID # 563).[14]

The DOJ filed a response in opposition to the State Defendants'

motion and purportedly to the Intervenors' motion on December 26,

2025.  (R. 53, Page ID # 664.)  The State Defendants filed a reply in

---

[14] Amicus briefs in support of Defendants' motion were filed by the Democratic National Committee (R. 42, Page ID # 517), the LWV (R. 48, Page ID # 614), a multi-state coalition (R. 62, Page ID # 751), and a group of former DOJ employees, (R. 64, Page ID # 820.)  But the District Court denied the motions.  (R. 68, Page ID # 915.)

support of their motion (R. 60, Page ID # 729), as did Intervenors (R. 58, Page ID # 714), on January 9, 2026.

Intervenors also filed as supplemental authorities the district court decisions in the DOJ's parallel cases in California (R. 63, Page ID # 782), and Oregon (R. 66, Page ID # 861).

The district court issued its opinion granting the motions to dismiss on February 10, 2026, (R. 67, Page ID # 892, Opinion), and entered an order the same day (R. 68, Page ID # 915).  Judgment was entered on February 23, 2026.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal of a complaint for failure to state claim.  *Jama v. Dep't of Homeland Security,* 760 F.3d 490, 494 (6th Cir. 2014).  When considering a motion to dismiss for failure to state a claim, although a court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). The court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434.

To survive dismissal, the plaintiff's claim must also be plausible. *Twombly*, 550 U.S. at 555. The inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The Court, "in using its 'judicial experience and common sense,' should not accept unwarranted inferences of facts cast in form of factual allegations." *Han v. Univ. of Dayton*, 541 F. Appx. 622, 628 (6th Cir., 2013).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's opinion and order dismissing the DOJ's complaint against Michigan Secretary of State Jocelyn Benson and the State of Michigan for at least four reasons.

*First*, the DOJ's principal argument regarding what "come into possession" means in the context of an Attorney General request to state officials under Title III of the CRA was not raised below. Although the Intervenors raised the issue in their motion to dismiss, the DOJ offered no analysis of that phrase in its district court brief. As a result, this argument is forfeited and not properly before this Court.

*Second,* the district court correctly dismissed the complaint because Michigan's QVF is not a record that "came into possession" of state election officials. The CRA's possession requirement is best understood to reach the applications and documents provided to election officials by voters—not derivative records created by the State itself. The QVF is the latter.

*Third*, and alternatively, this Court should affirm dismissal where the CRA does not require the production of sensitive voter information, and where the DOJ's demand failed to include a proper "basis" and "purpose" for the unredacted voter records, as required by the CRA. The DOJ's demand letter contained no "basis" and the enforcement of HAVA and NVRA alone are not sufficient purposes to support a record request under the CRA. Further, the DOJ has made inconsistent public

20

statements about the purpose for which it intends to use this vast volume of private information about millions of voters, suggesting its stated purpose is pretextual.

*Fourth,* the DOJ's federal privacy law arguments were not discussed or decided by the district court. If the Court does not affirm outright, it should remand for the district court to decide those questions in the first instance. But even if this Court reaches them, the DOJ's demand for vast quantities of private information about every Michigan voter violates the federal Privacy Act, privacy protections under the E-Government Act and the DPPA.

## ARGUMENT

**I.    The DOJ has failed to preserve, or has forfeited, their argument on appeal where they failed to make any substantive argument in the lower court.**

The DOJ's principal argument on appeal is whether Michigan's electronic SVRL constitutes a "record" or "paper" that "comes into" the possession of the Michigan Secretary of State for purposes of the CRA. (Doc. 25, Page ID # 25-34.) But DOJ never made this argument in the district court. Although DOJ's brief acknowledges that the Intervenors had raised the issue in their motion to dismiss, DOJ offered no

21

substantive response.  (R. 53, Page ID # 668, n. 1, Page ID # 674.)  The district court ultimately dismissed the CRA claim on that basis.

Because the DOJ failed to address this issue in the lower court, this issue has not been preserved for appeal and their argument is subject to the forfeiture rule.  In the absence of any offer of an "exceptional situation," this Court should not consider an issue raised for the first time on appeal.

## A.	The general rule is that arguments not presented below will not be entertained on appeal.

This Court is "a court of review, not of first view."  *Byrd v. Haas,* 17 F.4th 692, 700 (6th Cir. 2021).  It "does not ordinarily address new arguments raised for the first time on appeal," *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002), and its "function is 'to review the case presented to the district court, rather than a better case fashioned after an . . . unfavorable order.' " *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) (citation omitted).

Generally, an argument not raised before the district court is waived on appeal to this Court.  *See United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 759 (6th Cir. 1999); *Thurman v. Yellow*

*Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990).  Two policies justify this rule:  first, it eases appellate review "by having the district court first consider the issue," and second, it prevents litigants from being surprised by new arguments on appeal.  *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 552 (6th Cir. 2008) (quoting *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993)).  While this Court has discretion to deviate in "exceptional circumstances" or to prevent a "miscarriage of justice," it rarely does so.  *Scottsdale,* 513 F.3d at 552–53.  Indeed, forfeiture applies even where a party fails to raise an issue unintentionally.  *Bannister v. Knox Cnty. Bd. of Educ.,* 49 F.4th 1000, 1011 (6th Cir. 2022).

Here, the DOJ argues that Michigan's electronic SVRL is a record that is subject to production under the CRA.  (Doc. 25, Page ID # 25-34.)  Specifically, the DOJ disputes the district court's holding that the SVRL falls outside the scope of "records" or "papers" that "come into possession" of Michigan's election officials.  (*Id.*, Page ID # 30-33.)  But the DOJ did not make any argument before the lower court addressing how the CRA's "come into possession" language should be interpreted.

23

Instead, the DOJ's arguments regarding the CRA relied exclusively on arguments that addressed other aspects of Defendants' motions to dismiss, such as whether Title III was limited to investigations of racial discrimination, whether the CRA permitted procedural challenges to the Attorney General's record requests, and whether the Attorney General was entitled to unredacted copies of electronic federal election records. (R. 53, Page ID # 670-677.) Significantly, the DOJ's combined response in opposition to the motions to dismiss expressly acknowledged that the Intervenors contested whether electronic voter rolls (such as Michigan's QVF) fall within records that "come into possession" of election officials under § 20701 of the CRA—yet it offered no response. (R. 53, Page ID # 675.) Instead, the DOJ merely insisted that the scope of the Attorney General's demand is "not open to judicial review or ascertainment." *Id.*

As a result, the DOJ presented no argument to the district court concerning whether Michigan's SVRL is a record that "come[s] into possession" of election officials. But this very question is ultimately what the district court based its holding upon. The DOJ now asks this Court to consider statutory construction arguments it never presented

24

below.  But because the DOJ neglected to offer any counter argument about the interpretation of "come into possession" in opposition to the Intervenor's motion to dismiss, its argument was not presented to the district court and so it must be considered forfeited on appeal.

### B.    The DOJ presents no "exceptional circumstances" warranting review of their unpreserved arguments.

Further, the DOJ has not offered any argument suggesting that this case presents any "exceptional circumstances" that would warrant the rare exercise of this Court's discretion to hear arguments raised for the first time on appeal.

Presumably, the DOJ will reply that its failure to advance the argument below was inadvertent.  But as noted above, a mistake does not avoid forfeiture.  To the extent the DOJ argues its appeal presents important issues, every appellant believes that to be true, but that belief does not create an exceptional circumstance.

Nor would this Court's refusal to consider the DOJ's argument result in any manifest injustice.  The State Defendants answered the DOJ's questions regarding list maintenance and produced a copy of the QVF, excepting only the sensitive voter information.  This is the same

information Michigan has previously provided to the DOJ for list maintenance purposes. [15] The DOJ thus has sufficient information to review whether Michigan's program makes a reasonable effort to remove voters who have died or changed address. 52 U.S.C. § 20507(a).

Because DOJ's arguments disputing the interpretation of "come into possession" under § 20701 of the CRA are not properly before this Court, the district court's determination on that issue should be affirmed.

## II.    The district court did not err in dismissing the complaint where the DOJ failed to set forth a plausible claim for relief under the Civil Rights Act of 1960.

The DOJ does not challenge the district court's dismissal of its claims under HAVA or the NVRA and raises only arguments addressed to its claim under the CRA (and, as discussed further below, opposing the Defendants' privacy arguments). But even if this Court considers the DOJ's arguments regarding the interpretation of the CRA, they

---

[15] In response to a previous request from DOJ in 2017, former Michigan Secretary of State Ruth Johnson also only provided the public information contained in the QVF. *See* MI SOS has "no authority" to spurn Trump's voter fraud commission request for voter data (accessed April 13, 2026.)

provide no basis for reversal. And even if this Court were to disagree with the district court's interpretation, affirmance is independently warranted because the CRA does not compel unredacted disclosure of sensitive personal information, and the DOJ has not articulated a valid basis and purpose for its demand.

### A. The district court correctly held that Michigan's SVRL is not subject to production or inspection under the CRA.

The district court correctly held that Michigan's QVF does not fall within the CRA's production requirement. This Court reviews that legal conclusion de novo. *Fitzgerald Truck Parts & Sales, LLC v. United States*, 132 F.4th 937, 942 (6th Cir. 2025), reh'g denied, No. 24-5078, 2025 WL 1512190 (6th Cir. May 21, 2025). Statutory interpretation begins with the text, read in light of "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). Where Congress has not defined a term, contemporaneous dictionaries may assist. *J.B-K. ex rel. E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir. 2022).

Applying those principles here, the district court's construction was correct.

The CRA requires election officials to retain "all records and papers *which come into [their] possession* relating to any application, registration, . . . or other act requisite to voting." 52 U.S.C. § 20701 (emphasis added). Upon written demand by the Attorney General, any such record must be made available for inspection and copying. 52 U.S.C. § 20703.

The district court correctly opined that Michigan's QVF is not a record or paper that "come[s] into the possession" of the Secretary of State—it is a record the State itself created. The district court reasoned that "come into the possession" connotes a "process by which someone *acquires* an item from an external source," (R. 67, Page ID # 910) (emphasis in original), drawing support from *Honeycutt v. United States*, 581 U.S. 443, 449 (2017), *Black's Law Dictionary*, and elsewhere in over a half-dozen federal statutes. *Id.* The court further noted that this reading is reinforced by the surrounding statutory language— records " 'relating to any application, registration, payment of poll tax, or other act requisite to voting in such election' "—which points to

documents submitted by voters, not databases compiled by the state. (R. 67, Page ID # 910-911.) The court also noted that this reading is consistent with the historical context at the time the CRA was passed by Congress. (R. 67, Page ID # 911.) Ultimately, the district court concluded that the CRA was not designed to facilitate the disclosure of voter data or information (e.g. Michigan's electronic SVRL), but rather, "it requires the disclosure of documents, such as the voter applications that a state might be improperly discarding." *Id.*

In contrast, the DOJ relies largely on a *Webster's* definition of "possession" and its own reading of the CRA as referring to a temporal distinction rather than the creator of the record. (Doc. 25, Page ID # 28-30). But the DOJ cites little or no authority supporting its "temporal" construction of the CRA, and no controlling authority or cases on point. As a result, the DOJ's argument does little to demonstrate any clear or plain error by the district court, or to explain why it is necessary for this Court to reverse it.

But even if this Court were to disagree with the district court's interpretation, the Court should still affirm where DOJ's claim under the CRA failed for additional reasons. *See Hammon v. DHL Airways,*

*Inc.,* 165 F.3d 441, 445 (6th Cir.1999) ("an appellate court may affirm a district court where the district court reached the right result for the wrong reason").

**B. The CRA does not prohibit Michigan from following its voter privacy law by excluding or redacting sensitive voter information.**

The State Defendants argued below that the CRA neither compels the production of sensitive voter information nor otherwise precludes the exclusion or redaction of such information before a record or paper is produced. (R. 39, Page ID # 468-471.) The district court did not address this argument, but it provides an independent basis for affirmance.

**1. The plain language of the CRA does not prohibit redaction of sensitive voter information.**

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). "[T]imes, places and manner . . . [are] comprehensive words [that] embrace authority to

provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of elections returns." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). *See also Husted*, 584 U.S. at 774; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013).

The Framers of the Constitution entrusted the states with administering elections because local governments are better informed regarding the situations of the people they govern. *United States v. Gradwell*, 243 U.S. 476, 484 (1917). "All other things being equal, it is generally better for states to administer elections.... [L]ocal administration ... allows for great individual input and accountability." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 715-16 (4th Cir. 2016). Even so, Congress may preempt state laws governing elections. *See* U.S. Const. art. I, § 4, cl. 1 ("Congress may at any time by Law make or alter such Regulations . . . ."). Congress exerts its preemptory authority through "positive and clear statutes." *Gradwell*, 243 U.S. at 485.

Michigan determined that voters have a right to privacy with respect to certain information contained in their registration record. State law specifies the content of Michigan's QVF, which includes full names, residential address, full dates of birth, driver's license or personal identification numbers (if the voter has one), and the digitized signatures of voters. Mich. Comp. Laws § 168.509q(1)(a)-(b), (g). The QVF may also contain the last four digits of a voter's social security number. *See* Mich. Comp. Laws §§ 168.493b, 168.509ii, 168.759; 52 U.S.C. § 21083(a)(5)(A)(i).[16]

While much of this information is publicly available, *see*, *e.g.*, Mich. Comp. Laws §§ 168.509ff, 168.509gg, Michigan law exempts from disclosure a voter's driver's license number, the month and day of a voter's birth, and the last four digits of a voter's social security number from public disclosure. Mich. Comp. Laws § 168.509gg(1), (2).[17]

---

[16] The QVF also includes voting history for a period of five years, Mich. Comp. Laws § 168.509q(1)(f), and a file of inactive voters, Mich. Comp. Laws § 168.509r(4). The Secretary produced the inactive voter file, but not voting history since DOJ did not request that data.

[17] The Michigan Election law also protects from disclosure information regarding persons pre-registering to vote, *see* Mich. Comp. Laws, § 168.509gg(3), and persons registered under the State's address confidentiality program, *see* Mich. Comp. Laws §§ 168.499b, 168.509q, 168.759.

Following Michigan law, the Secretary provided only the public version of the QVF in response to DOJ's requests.[18]

The DOJ notes that under Michigan's Motor Vehicle Code, the Secretary "may" disclose driver's license numbers to a federal agency "for carrying out the agency's functions."  Mich. Comp. Laws § 257.208c(3)(a).  (Doc 25, Page ID # 56-57.)[19]  But "may" is permissive, and regardless § 509gg contains no exceptions.  Further, as discussed below in II.B.2., the DOJ has not shown or explained why it requires voters' driver license and social security numbers to review the reasonableness of Michigan's list maintenance program.

The DOJ further argues that the CRA preempts Michigan's privacy statutes.  (Doc 25, Page ID # 56-60.)  But the DOJ did not make

---

[18] Michigan's Freedom of Information Act also contains an exemption for personal information the disclosure of which would constitute an "unwarranted invasion of an individual's privacy." Mich. Comp. Laws § 15.243(1)(a).

[19] The DOJ cites Mich. Comp. Law § 257.208c(2), but that section mandates the Secretary disclose driver's license information if she must do so to carry out *her* functions under federal law.  Further, social security numbers are highly restricted and may only be disclosed under limited circumstances, including when disclosure is "otherwise required by law[.]"  Mich. Comp. Laws § 257.307(11)(e).  The CRA does not require the disclosure of social security numbers.  Further, subsection 509gg(2) contains no exception.  Mich. Comp. Laws § 168.509gg(2).

a preemption argument below and thus waived or forfeited this argument on appeal for the same reasons discussed above. *See* I.A.B. Moreover, nothing in the CRA's plain text prohibits Michigan from redacting or excluding this sensitive voter information from production. Section 20703 simply states that "[a]ny record or paper required" to be "retained and preserved" under § 20701 shall be "made available[.]" It says nothing about the content of those records or whether sensitive information must be disclosed in unredacted form. Section 20704 prohibits the DOJ from disclosing "any record or paper produced" under § 20703 "except to Congress and any committee," and "governmental agencies," 52 U.S.C. § 20704, but neither provision expressly or impliedly preempts Michigan's privacy law. *See, e.g., Steelcase, Inc. v. United States*, 165 F.3d 28 (6th Cir. 1998) ("[I]t would [ ] be inappropriate for this Court to read into the statute phantom requirements that the plain language does not begin to support.").

The CRA covers "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers and effects." *Kennedy v. Lynd*, 306 F.2d 222, 226, 231 (5th Cir. 1962) (referencing records containing the "names, identities or addresses of

persons thought to have received discriminatory treatment"). *Lynd* stated that review may be had as to "whether or not any specified paper or records comes within" the CRA. *Lynd*, 306 F.2d at 226. And it recognized that in the event a demand is "oppressive or burdensome" a court's review "include[s] the power and duty to issue protective orders [.]" *Id.* at 230. Another court observed in response to a denial of records that it was not "claimed" the records were "privileged, or exempt from discovery for any sound reason of public policy," or that "an inspection of these records would be oppressive," or an "unlawful invasion of any personal constitutional right of any respondent[.]" *In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962), aff'd sub nom. *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

These decisions contemplate instances where production of the records may not be had in the form or manner requested, and that a reviewing court may issue appropriate orders. This is consistent with Title III's purpose. "The Act is not designed or intended as a general discovery proceeding," rather it "merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in [ ] Federal elections after May 6, 1960." *In re*

*Gordon,* 218 F. Supp. 826, 827 (S.D. Miss. 1963).  "It is [ ] a mistaken view to assume that such investigation of such records is an unlimited discovery device which may be employed and used without restraint and in the place and stead" of ordinary discovery procedures.  *Id.*

Given the plain language of the CRA and its purpose, "DOJ's access to voters' sensitive information is not automatic." *United States v. Weber*, ___ F. Supp. 3d ___, 2026 WL 118807 at * 9 (C.D. Ca., Jan. 15, 2026).  This conclusion is reinforced by history and analogous precedent.  Notably, driver's license numbers and partial social security numbers were not required for voter registration until HAVA's passage in 2002 so Congress could not have contemplated or intended this private, sensitive information to be subject to a DOJ demand under Title III of the CRA enacted four decades earlier.  *See* 52 U.S.C. § 21083(a)(5)(A)(i).

Moreover, courts interpreting NVRA's comparable public inspection requirement, 52 U.S.C. § 20507(i)(1), have permitted states to exclude or redact driver's license numbers, social security numbers,

and full dates of birth on privacy grounds. (R. 39, Page ID # 472-477.)[20]

*See also Public Interest Legal Found. v. Bellows*, 92 F.4th 36 (4th Cir. 2024); *Public Interest Legal Found. v. North Carolina State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) (agreeing with the North Carolina Board of Elections "that the Privacy Act, the Driver Protection Act, and any other statutory restrictions placed on the release of documents obtained through the SAVE system, may preclude the disclosure of documents obtained by the Board from the DMV and USCIS."); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014).

These courts also recognized that compelled disclosure of sensitive voter information could depress voter registration, contrary to the purpose of the NVRA. *See, e.g.*, *True the Vote*, 43 F. Supp. 3d at 738 ("Existing voter registrants and potential registrants who knew that their birthdates, along with their names, addresses, and potentially

---

[20] The lower court declined to follow these cases to the extent the DOJ was the party requesting records under NVRA. (R. 67, Page ID # 899-900.) But the court later concluded that the QVF was not a record for purposes of the NVRA, rendering its earlier statement largely dicta. (*Id.*, Page ID # 900-904.)

other identifying information, could be disclosed to any requester without restriction on further dissemination of the personal information 'would understandably be hesitant to make such information available for public disclosure.' " (citation omitted).)

While DOJ's standing to request voting records may be different than members of the public, the concerns articulated in these cases regarding the disclosure of sensitive identifying information apply equally to demands under the CRA, including the potential for depressing voter registration. That the CRA prohibits DOJ from disclosing any record produced under the act except to "Congress and any committee," and "governmental agencies," does nothing to assuage concern. 52 U.S.C. § 20704. Indeed, this is a vast array of people and agencies who may obtain the voters' sensitive information. And as discussed below in II.C.2.b., DOJ has made conflicting public statements about what this sensitive voter information will be used for and who will have access to it justifying Michigan's concern. *See, e.g,* *Oregon,* 2026 WL 318402 at * 10-11.

### 2. DOJ does not need sensitive voter information to assess Michigan's list maintenance program.

Even accepting DOJ's stated purpose, it does not need the sensitive information demanded. The relevancy of the records sought is reviewable. (R. 67, Page ID # 906) (quoting *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995.) *See also, Lynd*, 306 F.2d at 226.

Again, NVRA requires states to "conduct a general program that makes a reasonable effort to remove" the names of voters rendered ineligible by death or change of address. 52 U.S.C. § 20507(a)(3), (4). It does not require any particular program or immediate removal of every voter who may have become ineligible. *PILF*, 136 F.4th at 624. Rather, Michigan must make "a serious attempt that is rational and sensible; the attempt need not be perfect, or even optimal, so long as it remains within the bounds of rationality." *Id.* at 625. The NVRA does not require "quantifiable" proof of the reasonableness of Michigan's efforts. *Id.* at 624-26.

DOJ argued below it "can only meaningfully investigate and enforce federal election laws, including the list maintenance requirements of HAVA and the NVRA" if it has access to this personal voter information, and the "information is necessary to identify

duplicate registration records, registrants who have moved, and registrants who have died or otherwise are no longer eligible to vote in federal elections." (R. 53, Page ID # 675.)  The lower court agreed the information was relevant.  (R. 67, Page ID # 909.)

But it is unclear how the DOJ could perform any "meaningful" review of individual voters.  NVRA charges the states—not DOJ—with performing list maintenance on voter rolls.  *See* 52 U.S.C. § 20507(a), (c)–(g). The DOJ does not explain how or to what lists or databases it would attempt to make eligibility comparisons of Michigan's voters. Moreover, Michigan's voter registration list is updated daily, making individual comparisons of voters based on a snapshot in time prone to error.  That is why line-by-line voter information contained in Michigan's QVF would not bear on whether Michigan's program is reasonable.  Rather, compliance with NVRA (and HAVA) is principally assessed by evaluating a state's *procedures*, not individual voter data. *See, e.g., PILF*, 136 F.4th at 626-29.  To the extent the DOJ required additional information bearing on Michigan's list maintenance program, it could have requested Michigan's weekly voter cancellation

file or its NVRA cancellation list (a list of voters on the cancellation countdown).[21]

Because the CRA does not prohibit Michigan from redacting sensitive voter information and where DOJ already has a copy of Michigan's public version of the QVF, dismissal was independently warranted on this ground.

### C. The DOJ's demand failed to state a proper "basis and purpose" for requesting unredacted voter records.

The CRA expressly requires that a "written demand *shall contain a statement* of the *basis and the purpose therefor*." 52 U.S.C. § 20703 (emphasis added). But the DOJ did not satisfy this requirement.[22] It did not state a proper "basis and purpose"[23] for demanding Michigan's

---

[21] *See* Statewide Records Summaries Available by a FOIA Request, June 2024, pp 2-4, available at <u>Statewide Records Summaries Available by a FOIA Request</u> (accessed April 13, 2026).

[22] The lower court properly reviewed the DOJ's compliance with this statutory requirement under Rule 12(b)(6). (R. 67, Page ID # 905-906.) Even in a summary proceeding the DOJ's demand must be reviewed for compliance with its underling statutory requirements. (R. 67. Page ID # 906) (quoting *Markwood*, 48 F.3d at 976-77.)

[23] These words must be given their ordinary meaning, which again may be determined by consulting contemporaneous dictionaries. *J. B-K. ex rel. E.B.*, 48 F.4th at 726. The word "basis" may be understood to mean the "foundation" or "cause." The Grosset Webster Dictionary 46 (1966). And the word "purpose" means the "aim" or "objective." *Id.*, p 390.

sensitive voter information.  *See, e.g., Bufkin v. Collins,* 604 U.S. 369, 379 (2025) ("the word 'shall' imposes a mandatory command").

### 1.  DOJ did not state a "basis" in its demand.

The basis and purpose requirements are plainly intended to provide notice and to safeguard against improper fishing expeditions. *See, e.g., CFPB v. Accrediting Council for Indep. Colls. & Secondary Schs.,* 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigating demand "is measured by the stated purpose," making notification of purpose "an important statutory requirement").

Below, the DOJ dismissed the statutory requirement to articulate a "basis" for its demand as a "hyper-technical reading" of the CRA.  (R. 53, Page ID # 673.)  Likewise, in this appeal, the DOJ asserts that courts have only a "limited role" in reviewing Attorney General demands under the CRA—including, apparently, whether the demand complies with the statute.  (Doc. 25, Page ID # 36–42.)

This position is not tenable.  The CRA mandates a statement of both "the basis *and* the purpose" for the demand.  52 U.S.C. § 20703 (emphasis added).  Neither the DOJ nor the courts can read that requirement out of the statute.  *See Pulsifer v. United States*, 601 U.S.

124, 133 (2024) ("[I]n grammatical terms," the term "and" "is of course a conjunction—a word whose function is to connect specified items.") These are distinct requirements.

In *Lynd*, for example, the Attorney General "adequately stated the basis and purpose" for demanding records from the election officials in that case:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.

> The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

*Lynd,* 306 F.2d at 229 & n.6 (emphasis added). *See also, Kennedy v. Bruce,* 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman,* 208 F. Supp. at 199–200 (same).

Here, the DOJ's August 14 "demand" letter stated no "basis" at all. It simply stated: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Michigan's complete and current VRL. The *purpose* of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." (R. 39-4, Page ID # 501)

(emphasis added).  While DOJ stated the "purpose" in its August 14 letter, it did not state "the basis . . . therefor."  (*Id.*)

In its complaint, after mistakenly alleging its' demand was made in the July 21, 2025, letter, DOJ simply alleged Defendants "did not provide the requested statewide voter registration information, including the requisite HAVA unique identifiers to the Attorney General."  (R. 1, Page ID # 16, ¶¶ 55-56.)  In its response to the motions to dismiss, DOJ suggested its "basis", to the extent it had to state one and the court could review it, appeared in its July 21 letter identifying questions it had regarding Michigan's EAVS data and HAVA identifiers.  (R. 53, Page ID # 673-674; R. 39-2, Page ID # 492-494.)[24] But that letter never invoked the CRA.  *See, e.g., United States v. Galvin*, No. 25-cv-13816-LTS, 2026 WL 972129 at * 3 (D. Mass., April 9,

---

[24] The State Defendants explained the EAVS data and advised that Michigan issues HAVA-compliant identification numbers.  (R. 39-6, Page ID # 510-511; R. 39, Page ID # 478-481, 483-484.)  Regardless, EAVS data is not dispositive of a deficiency in a state's program.  *See* Congressional Research Service, *The Election Administration and Voting Survey (EAVS): Overview and 2024 Findings* (2026), https://www.congress.gov/crs-product/IF13056. ("[S]ome data may not be straightforwardly comparable across years, states, or localities. Changes in the EAVS survey instrument from one year to another and changes or differences in data collection practices or election laws, procedures, or definitions complicate comparisons.")

2026) (CRA "directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand 'contain[ed] a statement of the basis' for the demand.")

The lower court noted the combination of letters was sufficient to "collectively" put the State Defendants on notice of the "basis" for the demand. (R. 67, Page ID # 909, n 3.) Defendants disagree. The CRA requires a "demand in writing" that "contain[s] a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). The act plainly contemplates that the basis and the purpose are both contained in the "written demand" itself—not in separate writings, including a writing that pre-dates the demand and makes no mention of the CRA.

As shown by the demand in *Lynd* and similar cases, these are not difficult requirements to satisfy. Further, they serve an important purpose by providing notice and safeguarding against unsupported fishing expeditions. *Weber*, 2026 WL 118807 at *9 ("The requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is

legitimately related to the purpose of the statute.").  Without a stated

"basis," the DOJ's demand "does not identify what conduct, it believes,

constitutes an alleged violation."  *CFPB v. Source for Pub. Data, L.P.*,

903 F.3d 456, 458 (5th Cir. 2018).  In other words, the DOJ did not

identify a factual ground for why or how the Attorney General believes

Michigan is violating the NVRA or HAVA to support her demand for

millions of records containing sensitive voter data.  *Galvin*, 2026 WL

972129 at *3 ("Put simply, the statute requires a statement of <u>why</u> the

Attorney General demands production of the requested records—and, as

conveyed by the statute's use of the definite article, the statement must

be 'the' factual basis, not just a conceivable or possible basis.")

It should not be left to the demand's recipient, here the State, to

guess or piece together DOJ's "basis" for requesting records.  *See, e.g.,*

*CFPB v. Accrediting Council for Independent Colleges & Secondary*

*Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity

of a civil investigating demand "is measured by the stated purpose,"

making notification of purpose "an important statutory requirement").

The *Oregon* district court rejected a similar argument on

materially identical facts, finding that the DOJ's request contained "no

statement of a factual basis for believing Oregon violated the NVRA or HAVA" and that the DOJ's "post hoc effort to stitch together" a sufficient statement of basis failed.  2026 WL 318402 at *9.  The same is true here with respect to DOJ's similarly deficient statement.

Because the DOJ failed to articulate its "basis" for the demand, DOJ's claim failed for this reason as well.

### 2. The DOJ did not state a proper "purpose."

Title III of the CRA was "designed to secure a more effective protection of the right to vote."  *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), aff'd sub nom, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).  "Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles," e.g., the Fifteenth Amendment of the U.S. Constitution. *Rogers*, 187 F. Supp. at 853.

### a. Ascertaining compliance with routine list maintenance requirements is not a proper purpose under the CRA.

Again, the DOJ's demand simply states that the "*purpose* of [its'] request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." (R. 39-4, Page ID # 501) (emphasis added). This statement of purpose was perfunctory at best. *See CFPB*, 854 F.3d at 690 (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (cleaned up)).

Regardless, and contrary to the lower court's conclusion, (R. 67, Page ID # 908), the DOJ cannot bootstrap these acts. The CRA preexisted NVRA and HAVA by decades, thus Congress could not have meant that a valid "purpose" for demanding records under the CRA was to examine compliance with the routine list maintenance requirements of those acts. *See, e.g., Lynd*, 306 F.2d at 228 (explaining the "purpose" of Title III "is to enable the Attorney General to determine whether § 1971[25] suits or similar actions should be instituted," and the Attorney

---

[25] Recodified at 52 U.S.C. § 10101.

General "is entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960").  Moreover, centralized statewide voter registration lists—like that demanded here—were not even required until the passage of HAVA in 2002.  This also suggests the DOJ's stated purpose is outside of the scope of what Congress intended Title III of the CRA to be used for.

Furthermore, NVRA has its own records disclosure provision, 52 U.S.C. § 20507(i), and both NVRA and HAVA provide the DOJ with specific enforcement mechanisms, 52 U.S.C. §§ 20510, 21111.  Congress plainly contemplated that the DOJ would pursue enforcement of routine list maintenance requirements and related records requests under NVRA and HAVA through those specific acts, not the CRA.  *See, e.g., Ohio Telecom Assoc. v. Fed. Commc'ns Comm.,* 150 F.4th 694, 715-716 (6th Cir. 2025) (discussing application of "general/specific canon" of statutory construction).

Instead, Congress's purpose in conferring the authority to demand records was to enable the federal government to investigate discriminatory voting practices, principally, efforts to prevent eligible

minority voters from voting or registering to vote.  *Lynd*, 306 F.2d at

228 ("one of the clearest purposes of the Title III proceeding is to enable

the Attorney General to assemble all of the voter record information . . .

relating to all persons as to whom there is a question concerning

infringement or denial of their constitutional voting rights.").  *See also*

H. Rep. 86-956, at 7 (1959) ("The purpose of title III is to provide a more

effective protection of the right of all qualified citizens to vote without

discrimination on account of race."); *Voting Rights; Mechanism for*

*Social Change*, 76 Ala. L. Rev. 603, 608-611 (2025) (discussing

development of voting rights legislation to remedy racial discrimination,

including the Civil Rights Act of 1960); *The Effects of the Voting Rights*

*Act: A Case Study*, 72 Wash. U. L.Q. 725, 727-28 (1994) (same).

The district court in *United States v. Oregon* reached the same

conclusion:  "*Lynd* explains that the purpose of Title III's record demand

provision is "to enable the Attorney General to determine whether §

1971 [voting rights] suits or similar actions should be instituted . . .

[and] to enable him to obtain evidence for use in such cases if and when

filed."  2026 WL 318402 at * 10 (citing *Lynd,* 306 F.2d at 228).  *See also*

*Weber*, 2026 WL 118807 at * 9 ("Though compliance with the NVRA was

cited by the DOJ as the purpose of its request, Title III was not passed as a tool for NVRA compliance.")

The DOJ's demand for Michigan's records does not purport to serve that purpose. Again, the DOJ's alleged purpose is to assess Michigan's list maintenance programs. But the mere failure to purge a voter roll of such voters does not automatically fall within the ambit of Title III. *See Bruce*, 298 F.2d at 863 & n.2 (noting that evidence indicating a failure to remove voters who moved away or died was "a matter which does not bear any particular importance to the present inquiry"). Rather, the DOJ must state a "purpose" that relates to an investigation into civil rights violations, specifically, discrimination in registration and voting.[26] It has not done so. Moreover, in its

---

[26] The NVRA was enacted, in part, "to protect" against "discriminatory and unfair registration laws and procedures" that can "disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(3). Thus, under NVRA state programs "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). At best, the DOJ may be able to use the CRA to investigate potentially discriminatory registration and voting practices. But the DOJ's demand here reveals no such purpose.

complaint, the DOJ asserted that "[m]aintaining accurate voter registration roll [sic] is a crucial tool is [sic] combatting voter fraud[.]" (R. 1, Page ID # 1.)  This suggests a very different purpose from investigating discriminatory registration and voting practices that deny or infringe upon the right to vote.

Because the DOJ has not stated a proper purpose, its CRA claim fails for this reason as well.

### b. The DOJ's stated purpose is a pretext for otherwise improper purposes.

Even if reviewing the reasonableness of Michigan's list maintenance program is a proper purpose, the DOJ's assertion of that purpose appears to be a pretext for improper purposes.

In March 2025, the President issued Executive Order No. 14248, *Preserving and Protecting the Integrity of American Elections*.[27]  The order required the Department of Homeland Security (DHS) to "review each State's publicly available voter registration list and available records concerning voter list maintenance activities as required by 52

---

[27] *See* Preserving and Protecting the Integrity of American Elections – The White House (accessed April 13, 2026.)  This Court can take judicial notice of the Executive Order.  Fed. R. Evid. 201(d).

U.S.C. 20507 [of the CRA], alongside Federal immigration databases and State records requested, . . . for consistency with Federal requirements." Section 2(b)(iii).

Shortly thereafter, the DOJ began demanding that states turn over their voter registration lists, with no redactions for sensitive information. The DOJ has made voting records demands in nearly all states and filed lawsuits similar the instant case in 30 states and the District of Columbia.[28] Top officials at DOJ have publicly stated that they are seeking Michigan's and the other states' voter data to perform its own list maintenance activities by sharing the data with other agencies, like the Department of Homeland Security, and to create a national voter file. (R. 60, Page ID # 739-740; R. 47, Page ID # 575.) *See also* Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security,* Stateline, Sept. 12, 2025, https://perma.cc/C6RQ-6ATP (quoting DOJ and DHS statements); Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll,* N.Y. Times, Sept. 9, 2025, https://perma.cc/9PM4-2A6R.

---

[28] *See* Tracker of Justice Department Requests for Voter Information | Brennan Center for Justice (accessed April 13, 2026).

Courts in California and Oregon both noted DOJ's conflicting statements as to its purpose in demanding millions of records containing sensitive voter information.  In *Weber*, the California court recounted at length discordant statements by DOJ as to its purpose in demanding sensitive voter information and what it plans to do with the data.  2026 WL 118807 at *10-12.  The statements suggested DOJ had "obfusca[ted]" its' "true motives," and instead was "on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database."  *Id.* at *10, 12. The court concluded that Congress passed the NVRA, CRA, and HAVA "to protect voting rights," and that if DOJ "wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose."  *Id.* at * 12.

In *Oregon*, the court recounted additional conduct by DOJ "raising suspicion about the purposes for which it seeks unredacted voter registration lists," specifically DOJ's letter to the Governor of Minnesota concerning immigration enforcement and demanding that the state give access to its voter roll to the DOJ.  2026 WL 318402 at * 11.  "The

context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which [DOJ] is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Id.*

Even more recently, the DOJ admitted in its parallel Rhode Island case that it is seeking the data to transfer it to the DHS to determine whether non-citizens have registered or voted. *See* ECF No. 46, *United States v. Amore*, 25-cv-00639-MSM-PAS (D.R.I. 2025).[29] And on March 31, 2026, the President issued Executive Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, which mandates the creation of "State Citizenship Lists" compiled by DHS for use by the states in federal elections.[30]

Collecting Michigan's voter data to conduct its own list maintenance and to use Michigan's list as part of creating a national voter file is not encompassed within the purpose stated in DOJ's

---

[29] *See also* Jude Joffe-Block, *The Justice Department plans to share sensitive voter data with Homeland Security*, NPR (Mar. 27, 2026), https://www.npr.org/2026/03/27/nx-s1-5764266/voter-datatrump-doj-dhs, (accessed April 13, 2026.)

[30] *See* Ensuring Citizenship Verification and Integrity in Federal Elections – The White House (accessed April 13, 2026.) This Court can take judicial notice of the Executive Order. Fed. R. Evid. 201(d).

demand, which is simply "to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." (R. 39-4, Page ID # 501, R. 53, Page ID # 673). Moreover, creating a national voter file of U.S. Citizens is beyond any purpose contemplated by the CRA. *See, e.g., In re Gordon*, 218 F. Supp. at 827 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.")

The district court correctly recognized that to support its civil investigative demand under the CRA, the DOJ had to state a proper purpose, and the demand must be made in good faith. (R. 67, Page ID # 906-907.) *See also Markwood*, 48 F.3d at 978; *Doe v. United States*, 253 F.3d 256, 271-72 (6th Cir. 2001).

The lower court accepted the DOJ's representations as to its purpose, i.e., list maintenance review under NVRA and HAVA, and rejected the State's argument that the DOJ's conflicting contemporaneous statements demonstrated its stated purpose was pretextual. (R. 60, Page ID # 740-741, 742-743.) The court concluded

"that contention goes to the truth of the DOJ's allegations" and could not "be addressed on a motion to dismiss." (R. 67, Page ID # 908.)

Federal courts can review whether an agency's stated basis for its administrative action is pretextual. *See, e.g.*, *Department of Commerce v. New York*, 588 U.S. 752, 780-784 (2019) (remanding where "decision to reinstate a citizenship question [could] not be adequately explained in terms of DOJ's request for improved citizenship data to better enforce the VRA"). Further, discovery may be had even in a summary proceeding where "extraordinary circumstances" support it, *Markwood*, 48 F.3d at 982 (cleaned up), along with a hearing, *Donaldson v. United States*, 400 U.S. 517, 529 (1971) (noting availability of "adversary hearing" in a summary proceeding). This case warrants both discovery and a hearing if this Court does not affirm dismissal of the CRA claim. Thus, any remand to the district court should include an order for a hearing after discovery regarding whether the DOJ's stated purpose for its demand is pretext.

**III. While the District Court did not address the State Defendants' arguments based on privacy requirements, this Court can affirm the dismissal on those alternative grounds.**

Ordinarily, this Court will not address issues the district court did not decide, and the proper course is to remand. *Hayes v. Clariant Plastics & Coatings USA, Inc.,* 144 F.4th 850, 863-864 (6th Cir. 2025). The DOJ has not identified any exceptional circumstances or injustice warranting departure from that rule. *See Hormel v. Helvering*, 312 U.S. 552, 557 (1941). Accordingly, if this Court does not affirm outright, it should remand for the district court to address the privacy issues in the first instance. If the Court does reach those issues, however, it should conclude that federal privacy laws independently bar the DOJ's demand.

**A. DOJ must comply with federal privacy laws to collect and maintain a system of records.**

The DOJ's failure to support its demand for unredacted voting records under the CRA fully warranted dismissal. Nevertheless, the complaint also failed to sufficiently allege compliance with important federal privacy laws.

## 1. DOJ's request violates the Privacy Act.

The Privacy Act, 5 U.S.C. § 552a, bars the DOJ's demand for the sensitive information of Michigan voters. The Act "protect[s] the privacy of individuals identified in information systems maintained by Federal agencies." § 2(a)(5), 88 Stat. 1896. Congress recognized "the harm to individual privacy that can occur" from the federal government's mishandling of Americans' sensitive information[.]" §§ 2(a)(2)-(3), *ibid.*

"Congress passed the Privacy Act to prevent the creation of 'formal or de facto national data banks' or 'centralized Federal information systems' because of the risks posed to the privacy of individual Americans. Congress wanted to prevent 'interagency computer data banks' so it made it 'legally impossible for the Federal Government in the future to put together anything resembling a "1984" personal dossier on a citizen,' and to ensure 'proper regard for individual privacy, the confidentiality of data, and the security of the system.'" *Weber*, 2026 WL 118807 at *18.

Under the act, federal agencies, like the DOJ, are prohibited from collecting or maintaining records related to an individual's First

Amendment activities (barring narrow exceptions), and they must comply with specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

A covered "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4). Here, the DOJ's demand for voting records, including sensitive information such as full birthdates, partial social security numbers, and driver's license numbers, fall within the Act. And if DOJ obtains these records via this lawsuit, it will result in a covered collection of records. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

But the Privacy Act prohibits collection of this data.

First, the act bars agencies like the DOJ from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Voter registration

information, like that requested by the DOJ, falls within the statutory prohibition. *See, e.g., Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"). No exception applies here, and as shown above, the CRA does not authorize the DOJ to collect and maintain unredacted registration records, and voters have not authorized the disclosure of their personal information. *See Weber*, 2026 WL 118807 at *17 ("The Privacy Act bars DOJ's request for California's unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation. And voter registration, participation in elections, as well as party affiliation are all types of political expression protected by the First Amendment.")

Second, regardless of the First Amendment issue, stringent protections apply when an agency creates or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 5 U.S.C. § 552a(a)(5), (e). Pertinent here, the Privacy Act requires the DOJ to publish a System of Records Notice, or

SORN, in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id.* § 552a(e)(4). The DOJ alleges that the records would be collected and maintained under the "SORN titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)." (R. 1, Page ID # 15, ¶ 51; Doc. 25, Page ID # 50-52.)

But SORN states that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. The regulation does not cover a voter list complete with names, addresses, and voting history, much less driver's license and social security numbers and full dates of birth. The other regulations cited by the DOJ amended certain DOJ SORNs that are likewise inapplicable here. The DOJ cannot slip collecting records of all Michigan voters under the existing 2023 SORN for maintaining investigatory files. *See, Weber*, 2026 WL 118807 at *18

("[T]he DOJ fails to identify relevant System of Records Notices (SORNs) as necessitated by the Privacy Act.") [31]

Because the DOJ's demand for unredacted voting records seek records relating to protected First Amendment activities, and these records are not subject to an existing SORN, the DOJ's efforts to collect the personal information of Michigan voters violates the Privacy Act.

### 2. DOJ's request violates the E-Government Act.

The DOJ's request for voter records also violates the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" (PIA) *before* "initiating a new collection of information . . . in an identifiable form" covering "10 or more persons." *Id.* § 208(b); *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

The DOJ seeks to collect information from Michigan, to wit, the names, addresses, and sensitive voter information contained in the

---

[31] Any new SORN must first be subject to public notice and comment regarding the nature, scope, and routine uses of the records before government collection.  5 U.S.C. § 552a(e)(4)(D).

QVF, which constitute personal information protected by the act,

triggering the PIA requirement. *See* Pub. L. No. 107–347, §

208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003). *See,*

*Weber*, 2026 WL 118807 at *19 ("The Court finds the DOJ's assertion

that the E-Government Act is not applicable to the enforcement of

HAVA and the NVRA unpersuasive because the plain text of the statute

includes the very information the DOJ is trying to collect.") The DOJ

does not allege that it completed a PIA applicable to this data on

individual voters.

### 3. DOJ's demand violates the DPPA.

Last, the DOJ's demand violates the Driver's Privacy Protection

Act (DPPA) because Michigan's voter list, the QVF, regularly receives

sensitive information directly from Michigan's driver file. The Michigan

Department of State ensures the Bureau of Elections receives certain

information from the driver file, like driver's license numbers,

associated with each person who applies for, renews, or replaces a

driver's license, permit, or identification card and who is qualified to

register to vote. Mich. Comp. Laws §§ 168.509r(2)(a), 257.307(1)(b),

28.291. The DPPA prohibits disclosing "personal information" that is

obtained in connection with a "motor vehicle record." 18 U.S.C. § 2721(a), 2721(1), (3) & (4). This prohibition extends to authorized recipients, like the Michigan Bureau of Elections, that receives information from the Department in carrying out its functions related to voter registration. 18 U.S.C. §§ 2721(b)(1), (c).

The DOJ alleges that its records demand is exempt from the DPPA because it "is *for use* by a government agency in carrying out the government agency's function to accomplish its enforcement authority[.]" (R. 1, Page ID # 13, ¶ 44) (citing 18 U.S.C. § 2721(b)(1)) (emphasis added); Doc. 25 Page ID # 55-56.) But this conclusory allegation is insufficient to plausibly establish an exemption where the DOJ has not plausibly alleged that it will "use" the millions of personal voter records to assess Michigan's compliance with NVRA or HAVA. *See, Weber*, 2026 WL 118807 at *19 ("The DOJ has not identified how the use of millions of Californians' driver's license numbers would help it understand whether California conducts a general program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence.")

Because the DOJ failed to comply with the Privacy Act, the E-Government Act, and the DPPA, the complaint was subject to dismissal on these grounds as well.

## CONCLUSION AND RELIEF REQUESTED

For all these reasons, the State Defendants respectfully request that this Honorable Court affirm the district court's dismissal of Plaintiff-Appellant United States' complaint, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-Appellees
Elections & Municipal Affairs
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

Dated: April 13, 2026

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of
Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding
the part of the document exempted by Federal Rule of Appellate
Procedure 32(f), this brief contains no more than 13,000 words.  This
document contains 12,683 words.

2.      This document complies with the typeface requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-style
requirements of Federal Rule of Appellate Procedure 32(a)(6) because
this document has been prepared in a proportionally spaced typeface
using Word 2013 in 14-point Century Schoolbook.

<div align="right">

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-
Appellees
Elections & Municipal Affairs
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

</div>

Dated: April 13, 2026

**CERTIFICATE OF SERVICE**

I certify that on April 13, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

<div align="right">

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-
Appellees
Elections & Municipal Affairs
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

</div>

68

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 09/25/2025 | R. 1 | 001-019 |
| MARA, Duquette and Crimando's Motion to Intervene as Defendants | 09/30/2025 | R. 5 | 027-082 |
| LWV of Michigan's Motion to Intervene as Defendant | 10/30/2025 | R. 17 | 109-162 |
| State Defendants' Motion to Dismiss | 11/26/2025 | R. 38 | 438-439 |
| State Defendants' Brief in Support of Motion to Dismiss | 11/26/2025 | R. 39 | 440-512 |
| DNC's Motion for Leave to File an Amicus Brief and Incorporated Brief in Support | 12/01/2025 | R. 42 | 517-543 |
| Opinion | 12/09/2025 | R. 45 | 549-561 |
| Motion to Dismiss Defendant-Intervenors MARA, Duguette and Crimando | 12/09/2025 | R. 47 | 563-613 |
| MI LWV Unopposed Motion for Leave to File Amicus Brief in Support of State Defendants' and Intervenor-Defendants' Motions to Dismiss | 12/19/2025 | R. 48 | 614-651 |

| | | | |
|---|---|---|---|
| United States' Memorandum of Law in Opposition to Defendants' Motion to Dismiss | 12/26/2025 | R. 53 | 664-698 |
| Intervenors' Reply in Support of Motion to Dismiss | 01/09/2026 | R. 58 | 709-727 |
| State Defendants Reply Brief in Support of Motion to Dismiss | 01/09/2026 | R. 60 | 729-748 |
| Amici Curiae Maryland, Minnesota, Arizona, et al Motion for Leave to File an Amicus Brief and Incorporated Brief in Support | 01/09/2026 | R. 62 | 751-781 |
| Intervenor's Notice of Supplemental Authority | 01/22/2026 | R. 63 | 782-819 |
| Unopposed Motion for Leave to File Brief of Amici Curiae Former Employees of the US Dept of Justice | 02/03/2026 | R. 64 | 820-859 |
| Intervenors' Notice of Supplemental Authority | 02/06/2026 | R. 66 | 861-891 |
| Opinion | 02/10/2026 | R. 67 | 892-914 |
| Order | 02/10/2026 | R. 68 | 915 |
| Judgment | 02/23/2026 | R. 69 | 916 |
| Notice of Appeal | 02/25/2026 | R. 70 | 917-919 |