No. 26-1225

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of
Michigan; STATE OF MICHIGAN,

Defendants-Appellees

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE
FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

Intervenors-Appellees

_____

On Appeal from the United States District Court
for the Western District of Michigan, Southern Division
No. 1:25-cv-1148
The Honorable Hala Y. Jarbou

_____

BRIEF FOR THE DEMOCRATIC NATIONAL COMMITTEE
AS AMICUS IN SUPPORT OF APPELLEES AND
SUPPORTING AFFIRMANCE ON ALTERNATIVE GROUNDS

_____

[Counsel Listed on Inside Cover]

Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A) and Sixth Circuit Rule 26.1(a), undersigned counsel certifies that amicus curiae is not a publicly-held corporation, does not issue stock, and does not have a parent corporation; consequently, no publicly-held corporation owns ten percent or more of the stock of amicus.

Dated: April 14, 2026

*/s/ Daniel J. Freeman*_____
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE ................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................2

STANDARD OF REVIEW ........................................................................3

ARGUMENT .............................................................................................4

    I.    Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand. .............................................4

        A.    Judicial Enforcement of Title III Demand Requires Independent Judgment. ...........................................................5

        B.    The District Court Erred by Excluding the Statement of Purpose from Judicial Scrutiny. .......................................8

    II.    The Title III Demand Does Not State "the Purpose Therefor" ...................12

        A.    DOJ's Demand for Michigan's Unredacted Voter File Is Unrelated to Bona Fide NVRA and HAVA Investigations. ....................13

        B.    DOJ Failed to Disclose the Actual Purpose of Its Demand for Michigan's Unredacted Voter File. ...........................................18

CONCLUSION ........................................................................................21

## TABLE OF AUTHORITIES

**CASES**

*Am. Civ. Rights Union v. Phila. City Comm'rs,*
  872 F.3d 175 (3d Cir. 2017) ............................................................... 14, 15

*Becker v. United States*, 451 U.S. 1306 (1981) ...............................................8

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ........................................... 13, 15

*Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513 (2026) ...........................................2

*Bowles v. Whitmer*, 120 F.4th 1304 (6th Cir. 2024) ...................................................3

*Brown v. Tidwell*, 169 F.3d 330 (6th Cir. 1999) .......................................................4

*CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*,
  854 F.3d 683 (D.C. Cir. 2017) ........................................................... 9, 11

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ........................................... 6, 17

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ...........................................................................11

*Dep't of Commerce v. New York*, 588 U.S. 752  (2019) ........................................13

*Donaldson v. United States*, 400 U.S. 517 (1971) ........................................... 10, 11

*EEOC v. Ferrellgas, L.P.*, 97 F.4th 338 (6th Cir. 2024) ......................................4, 7

*Foster v. Love*, 522 U.S. 67 (1997) ...............................................................7

*Hodges v. City of Grand Rapids*, 139 F.4th 495 (6th Cir. 2025) ...........................13

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) .......................................11

*Iqbal v. Ashcroft*, 556 U.S. 662 (2008) ................................................... 3, 13

*Katzenbach v. McClung*, 379 U.S. 294 (1964) ........................................................10

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ......................................................9

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)................................................ 8, 9, 10

*LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ...................7

*McLane Co., Inc. v. EEOC*, 581 U.S. 72 (2017).......................................................6

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) .........................................................11

*Okla. Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) .............................................5

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................2

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) .............. 13, 14, 20

*Rep. Nat'l Comm. v. Benson*, 754 F. Supp. 3d 773 (W.D. Mich. 2024)...................14

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) ........................................9

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
  974 F.3d 756 (6th Cir. 2020) ....................................................................................4

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ............................................................12

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ..........................................................9

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ...............................................9

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020)................................................7, 8

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ........................................7

*United States v. Brown*, 223 F. Supp. 3d 697 (N.D. Ohio 2016) ..............................4

*United States v. Ferguson*, 681 F.3d 826 (6th Cir. 2012)........................................13

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995).............................. passim

*United States v. Moody*, 206 F.3d 609 (6th Cir. 2000)...........................................10

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ...........................................5

*United States v. Powell*, 379 U.S. 48 (1964) ...................................................... passim

*United States v. Will*, 671 F.2d 963 (6th Cir. 1982) ....................................................6

*Universal Health Servs. v. United States ex. rel. Escobar*,
     579 U.S. 176 (2016) .......................................................................................19

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ......................... 7, 17

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1 .........................................................................................7

**STATUTES**

42 U.S.C. § 1306c .....................................................................................................20

42 U.S.C. § 2000a-5 ..................................................................................................10

52 U.S.C. §  20504 ....................................................................................................18

52 U.S.C. §  20506 ....................................................................................................18

52 U.S.C. §  20507 ....................................................................................................18

52 U.S.C. § 20507 ............................................................................................... passim

52 U.S.C. § 20510 ................................................................................................. 7, 20

52 U.S.C. § 20703 ................................................................................................ passim

52 U.S.C. § 20705 ......................................................................................................4

52 U.S.C. § 21083 ................................................................................................ passim

52 U.S.C. § 21085 .....................................................................................................16

52 U.S.C. § 21111 ................................................................................................. 7, 20

52 U.S.C. § 21145 .....................................................................................................16

6 U.S.C. § 111 ...........................................................................................................20

Mich. Comp. Laws § 168.509dd.................................................................................20

**REGULATIONS**

28 C.F.R. § 0.50 ........................................................................................................19

39 C.F.R. § 122.2 ......................................................................................................20

**EXECUTIVE ORDERS**

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ...............................20

**GUIDANCE**

U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024)..................14

U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (last updated Nov. 1, 2024) ...........................................................................................................14

U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* (July 2005) ......................................................16

**LEGISLATIVE HISTORY**

106 Cong. Rec. 7767.................................................................................................6

**RULES**

Fed. R. Civ. P. 81 .....................................................................................................10

Fed. R. Evid. 201 ......................................................................................................13

**SECONDARY SOURCES**

Federalist No. 59 .......................................................................................................7

Gabe Cohen et al., *Trump Is Trying to Build a Massive Voter Database. Election Officials Are Afraid of What He'll Do with It*, CNN, Apr. 5, 2026.....................20

Jack Bass, *Unlikely Heroes* (1982) .........................................................................9

Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026) ...........................................18

Press Release, U.S. Dep't of Justice, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026) ......................................................................1

Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018) ...............................................................................15

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026) ...............................................................................12

U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025) ...................................................................................................15

**INTEREST OF AMICUS CURIAE**

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.[1]  Its purposes and functions are to communicate the Democratic Party's position on issues; protect voters' rights; and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates.  The DNC represents over 770,000 voters who cast ballots in the 2024 Michigan Democratic Presidential Primary and millions more in this Circuit.

The U.S. Department of Justice (DOJ) has demanded a copy of Michigan's complete, unredacted voter registration list and has made similar demands of every state in this Circuit.  *See, e.g.*, Press Release, U.S. Dep't of Justice, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026), https://perma.cc/YR7Q-W6AZ (noting suits against 30 states and the District of Columbia).  This forces Democrats to choose between participating in elections and the privacy and security of their personal information.  Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).  The

---

[1]  No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief.  All parties have consented to the filing of this brief.

concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data.  In turn, the DNC has a compelling interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *Cf. Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519–21 (2026).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Federal law authorizes the Attorney General to demand voter registration records, but he cannot do so based on pretext.  Rather than disclosing "the purpose" for its demand for the complete, unredacted Michigan voter file—as Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. § 20701–05, requires—DOJ professes it is engaged in routine enforcement of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20501–11, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901–21145.  It is not.  Rather, DOJ intends to transfer the personally identifying information of every registered voter in Michigan to the Department of Homeland Security (DHS) and is using this unprecedented power grab to "put the [November] election in question."  DOJ Mot. to Expedite 14.  This deception invalidates the Title III demand.  A Justice Department that cannot be forthright with election officials cannot be trusted with the personal data of every registered voter in Michigan.

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57–58

(1964), requires scrutiny of any administrative subpoena, and the district court erred by declining to examine the stated purpose of DOJ's demand, Opinion, R. 67, Page ID ## 907–908. Thus, "a district court is not a 'rubber stamp' for agency demands for the production of information." *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995). Here, DOJ asserted that the "purpose of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA," Aug. 14 Let., R. 39-4, Page ID # 501, but a request for complete, unredacted voter files does not align with enforceable mandates under those provisions, *see* 52 U.S.C. §§ 20507(a)(4), 21083(a)(2). Moreover, DOJ's admissions in this Court and others establish intent to use Michigan voters' personal information for purposes unrelated to NVRA and HAVA enforcement. Because DOJ failed to provide "the purpose" of its Title III demand, this Court should affirm.

## STANDARD OF REVIEW

This Court reviews a district court's decision to dismiss a complaint de novo. *See, e.g.*, *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2008). This Court reviews decisions concerning administrative subpoena enforcement for abuse of discretion, including application of "the wrong legal standard" or misapplication of "the correct legal

- 3 -

standard." *EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 343 (6th Cir. 2024) (internal quotation marks and citations omitted). "This [C]ourt can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).[2]

## ARGUMENT

**I.** **Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand.**

A valid Title III demand must "contain a statement of the basis and the purpose therefore." 52 U.S.C. § 20703. Title III also affords federal courts "jurisdiction by appropriate process to compel the production" of records or papers so demanded. *Id.* § 20705. For more than 60 years, Courts have imposed summons and subpoena requirements to basic scrutiny, *see, e.g.*, *Powell*, 379 U.S. at 57–58, and this Court should impose comparable review before enforcing DOJ's demand for the personally identifying information and voter history of Michigan's 8.3

---

[2] DOJ framed its Title III demand as a cause of action in a complaint, rather than filing a miscellaneous action to compel production. Complaint, R. 1, Page ID # 16; *cf., e.g.*, *United States v. Brown*, 223 F. Supp. 3d 697 (N.D. Ohio 2016). In turn, the district court granted a motion dismiss for failure to state a claim and did not simply quash the demand. Opinion, R. 67, Page ID ## 904–913. On appeal, DOJ argues that the district court's procedural frame "was an error," U.S. Br. 29, while still claiming that this Court must accept its allegations as true, befitting a Rule 12(b)(6) motion, U.S. Br. 13 (citing *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020)). Ultimately, distinctions between review of dismissal—including plausibility requirements and the availability of judicial notice—and review of a decision declining to enforce an administrative subpoena make no difference here. This Court may affirm under either framework.

million registered voters.  *See* Defs.-Appellants' Br. 41 n.22, 56–57.  The Title III

demand cannot withstand even this simple inquiry.

> **A.** **Judicial Enforcement of Title III Demand Requires Independent Judgment.**

Adopting the administrative subpoena framework applied below, Opinion, R.

67, Page ID # 905, and by the United States, DOJ Br. 28, federal courts must proceed

through a well-established process of judicial scrutiny before enforcing a Title III

demand.  *See, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950)

(recognizing Congress provides for judicial review "[t]o protect against mistaken or

arbitrary orders").  A court is "first called upon to decide whether the Department of

Justice complied with the statute empowering it to issue the [demand]."  *United*

*States v. Markwood*, 48 F.3d 969, 975 (6th Cir. 1995).  A court must also "apply the

judicially-created standards for enforcement of administrative subpoenas and apply

them to the facts of the case at issue."  *Id.*  Thus, a court's function is "neither minor

nor ministerial" when enforcing an administrative subpoena.  *Okla. Press Pub. Co.*

*v. Walling*, 327 U.S. 186, 217 n.57 (1946).

The plain text of Title III establishes statutory prerequisites to judicial

enforcement.  Title III's demand provision states,

> Any record or paper required by section 20701 of this title to be
> retained and preserved shall, upon demand in writing by the Attorney
> General or his representative directed to the person having custody,
> possession, or control of such record or paper, be made available for
> inspection, reproduction, and copying at the principal office of such

custodian by the Attorney General or his representative.  This demand
shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703.  Broken down to elements, the Attorney General or his designee

must (1) make a demand in writing, (2) for a record or paper required by Title III to

be retained and preserved, (3) to the person having custody, possession, or control,

(4) including a statement of the basis and the purpose therefor.  *Id.*  This framework

does not require DOJ establish a prima facie case of a statutory violation before it

may obtain responsive records, but it does mandate that the Attorney General

disclose "the reasons for his demand."  *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th

Cir. 1963) (quoting 106 Cong. Rec. 7767 (statement of Sen. Keating)).

Judicial safeguards extend beyond these statutory prerequisites.  *See, e.g.*,

*Markwood*, 48 F.3d at 976–79.  Administrative subpoena enforcement requires

showing "that the investigation will be conducted pursuant to a legitimate purpose,

that the inquiry may be relevant to the purpose, that the information sought is not

already within the [issuing agency's] possession, and that the administrative steps

required by [statute] have been followed."  *United States v. Powell*, 379 U.S. 48, 57–

58 (1964); *see also, e.g.*, *United States v. Will*, 671 F.2d 963, 966–67 (6th Cir. 1982);

*cf. McLane Co., Inc. v. EEOC*, 581 U.S. 72, 76–77 (2017) ("If the charge is proper

and the material requested is relevant, the district court should enforce the subpoena

unless the employer establishes that the subpoena is 'too indefinite,' has been issued

for an 'illegitimate purpose,' or is unduly burdensome.").  These provide both

substantive and procedural grounds to contest administrative subpoena enforcement. *See, e.g.*, *Ferrellgas*, 97 F.4th at 344–50.

Title III demands to a state's chief election officer require a particularly "careful analysis that takes adequate account of the separation of powers principles at stake." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 869 (2020) (addressing horizontal separation of powers). The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," U.S. Const. art. I, § 4, cl. 1, although the Clause "grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States," *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995)). "The President does not feature at all" in the constitutional scheme. *LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135, 159 (D.D.C. 2025) (quoting Federalist No. 59), *appeal docketed*, No. 25-5478 (D.C. Cir. Dec. 31, 2025). Congress may empower the Attorney General to enforce legislation or constitutional protections, *see, e.g.*, 52 U.S.C. §§ 20510(a), 21111, but DOJ's power goes no further, *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (explaining that executive authority "must stem either from an act of Congress or from the Constitution itself"). Without limits on Title III authority, DOJ could "exert an imperious control" over the states and "aggrandize itself" at the states' expense.

*Cf. Mazars*, 591 U.S. at 867 (addressing congressional subpoena implicating the President). As a result, a Title III demand "that raises sensitive constitutional issues" must be subject to rigorous judicial scrutiny. *Id.* at 870–71.

### B. The District Court Erred by Excluding the Statement of Purpose from Judicial Scrutiny.

Before dismissing the Title III demand on alternative grounds, the district court erroneously declined to scrutinize the requisite statement of the basis and the purpose therefor, concluding that Title III "does not allow courts" to undertake this inquiry before ordering enforcement. Opinion, R. 67, Page ID ## 907–908. The court solely relied on *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), which provides no underlying statutory basis to exclude the validity of the "statement of the basis and the purpose" for the demand from judicial scrutiny. Although this Court bars inquiry into the merits of an underlying investigation when addressing an administrative subpoena, there is no bar to scrutiny of its purpose, let alone scrutiny of a statutory requirement. *See, e.g.*, *Markwood*, 48 F.3d at 978; *see also Becker v. United States*, 451 U.S. 1306, 1309 (1981) (Rehnquist, J., in chambers) (holding that where "enumerated exceptions" do not cover aspects of administrative subpoena enforcement, "*[e]xpressio unius est exclusio alterius*"). Indeed, the Supreme Court decided *Powell* just two years after *Lynd*, holding that courts must assess investigatory purpose. 379 U.S. at 57–58; *see also, e.g.*, *CFPB v. Accrediting Council for Independent Colleges & Schs. (ACICS)*, 854 F.3d 683, 690 (D.C. Cir.

2017) (emphasizing that the validity of a civil investigating demand "is measured by the stated purpose," making notification of actual purpose "an important statutory requirement"). *Powell* and its progeny control. *See, e.g.*, *Rosales-Garcia v. Holland*, 322 F.3d 386, 414 (6th Cir. 2003).[3]

DOJ's defense of the district court's decision fares no better. DOJ first suggests this Court simply adopt *Lynd* as its own, notwithstanding contrary and controlling authority. U.S. Br. 24. *But see* Section I.A, *supra*. DOJ then argues that Title III triggers a "special statutory proceeding" immune from meaningful challenge and review. U.S. Br. at 23–24, 26 (quoting *Lynd*, 306 F.2d at 225); *see also* The Independent Institute, *Harmeet Dhillon | Trump DOJ: Ensuring Election Integrity and Fixing Immigration* (Dec. 9, 2025), https://www.youtube.com/watch?v=FLtqQqt2FwA (at 2:41) ("The 1960 Civil Rights Act is actually very clear. The Attorney General doesn't have to show her

---

[3] *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, warranting aggressive judicial action against the "frustration of national purposes." *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962). *See generally* Jack Bass, *Unlikely Heroes* (1982). But as the Supreme Court has recognized, "history did not end in 1965." *Shelby Cnty. v. Holder*, 570 U.S. 529, 552 (2013). In 1965, the Voting Rights Act removed exigency that once justified paltry process by suspending disenfranchising tests and devices and imposing preclearance on states that had used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313, 319, 333–34 (1966). In the six decades between DOJ's last contested Title III action and this one, the Supreme Court has imposed effective judicial oversight on all administrative subpoenas.

homework as to what she is going to do with it, and I am her designee. So, I get to ask for that information and they have to give it."). Not so. Where Congress authorizes "a special statutory proceeding," it does so explicitly and in detail. *Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing Title II of the Civil Rights Act of 1964); *see also* 42 U.S.C. § 2000a-5 (detailing procedures). DOJ also claims that a Title III recipient cannot invoke "litigation tools ordinary available under the Federal Rules" but fails to tie this argument to the text of Title III. DOJ Br. 24–25. Federal Rule of Civil Procedure 81(a)(5) makes clear that the Federal Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order." Once again, DOJ merely invokes *Lynd*. That is not enough.

Fundamentally, DOJ does not acknowledge the Supreme Court's seminal decision in *Powell* and addresses this Court's controlling decision in *Markwood* by claiming that the inquiry "goes further than appropriate," pointing yet again to *Lynd*. DOJ Br. 30. However, this Court cannot simply disregard the decision of an earlier panel. *See, e.g., United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000). DOJ instead highlights *Donaldson v. United States*, 400 U.S. 517 (1971), which offers no relief from judicial scrutiny of statutory requirements. DOJ Br. 24–26. To be sure, judicial scrutiny of an administrative subpoena should not be "inflexible" and should

- 10 -

not "impair" bona fide enforcement. DOJ Br. at 25 (quoting *Donaldson*, 400 U.S. at 528–29). Yet *Donaldson* also acknowledges that where "the purpose [of an administrative subpoena] is not a legitimate one . . . enforcement may be denied," requiring the precise type of inquiry DOJ seeks to avoid. 400 U.S. at 533.

Finally, Title III provides "a meaningful standard against which courts could ascertain the sufficiency of the Attorney General's stated . . . purpose," contrary to DOJ's contention. DOJ Br. at 26. Title III requires a statement of "*the* purpose" for the demand. 52 U.S.C. § 20703 (emphases added). It is not enough for DOJ to offer "*a* proper 'basis and purpose' for its demand." DOJ Br. 30 (emphasis added) (quoting 52 U.S.C. § 20703). By using the definite article, Title III requires the Attorney General to offer "a discrete thing": DOJ's complete and accurate purpose and not merely a possible purpose or one purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024). Without a complete statement of the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III demands cannot be "used without restraint"). In other words, the "meaningful standard" is truth. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S.

80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."); *see also* Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U (compiling recent findings of "serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption" of regularity).

## II.     The Title III Demand Does Not State "the Purpose Therefor"

Applying appropriate scrutiny, DOJ's demand for the complete, unredacted Michigan voter file cannot be enforced because it fails to meet a basic statutory prerequisite, to state "the purpose therefor."   52 U.S.C. § 20703; *see also, e.g.*, *Markwood*, 48 F.3d at 975 (requiring review of DOJ compliance "with the statute empowering it").   DOJ has asserted that the "purpose of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA."  Aug. 14 Let., R. 39-4, Page ID # 501.  However, the NVRA and HAVA's flexible requirements focus on reasonable processes, not line-by-line analysis of voter files.  *See, e.g.*, *Pub. Int. Legal Found. v. Benson* (*PILF v. Benson*), 136 F.4th 613, 625 (6th Cir. 2025), *cert denied*, No. 25-437, 2026 WL 568298 (U.S. Mar. 2, 2026).  DOJ submissions to this Court and others establish that this invocation of the

NVRA and HAVA was pretextual; DOJ has other intended uses for the data. *Cf. Dep't of Commerce v. New York*, 588 U.S. 752, 781–85 (2019) (remanding agency action due to pretextual invocation of the Voting Rights Act). This forecloses any "reasonable inference" that DOJ has plausibly pled the statutory prerequisites to Title III enforcement, *Iqbal*, 556 U.S. at 678, let alone the possibility that DOJ has met its burden to enforce a Title III demand, *see Powell*, 379 U.S. at 57–58.[4]

### A. DOJ's Demand for Michigan's Unredacted Voter File Is Unrelated to Bona Fide NVRA and HAVA Investigations.

Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4), the Act's list maintenance mandate, is limited in scope, and unredacted voter files do not assist in investigating compliance. The "text unambiguously mandates that the states maintain a 'general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of' only two things: death or change of address." *Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019) (quoting 52 U.S.C. § 20507(a)(4)); *see also Am. Civ. Rights Union v. Phila. City Comm'rs* (*ACRU*), 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the

---

[4] Courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012). This includes matters of public record and records in related litigation. *See id.*; *Hodges v. City of Grand Rapids*, 139 F.4th 495, 511–12 (6th Cir. 2025).

mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away.").  This Court has limited the federal mandate to "a serious attempt that is rational and sensible" and has rejected any "quantifiable, objective standard." *PILF v. Benson*, 136 F.4th at 624–26; *see also* 52 U.S.C. § 20507(c)(1) (allowing the "reasonable effort" requirement for movers to be met using U.S. Postal Service data alone).[5]  Even if DOJ could use unredacted voter data to find individual deceased voters or movers on Michigan's registration rolls, DOJ Br. 37, this would not indicate that state actions to remove such voters did not meet the "reasonable effort" requirement.  *See PILF v. Benson*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation); *Rep. Nat'l Comm. v. Benson*, 754 F. Supp. 3d 773, 793 (W.D. Mich. 2024) (concluding that "reasonable effort" does not require states to "ensure that ineligible registrants are not on the voter rolls"), *aff'd*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025) (per curiam).  Because compliance with the NVRA turns on list maintenance procedures rather than a voter-by-voter

---

[5] DOJ's suggestion that NVRA creates a "duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters," without reference to the grounds for ineligibility, is entirely baseless.  DOJ Br. 5. For three decades after the NVRA's passage, DOJ had recognized its limited and flexible standard.  *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 18, 2024), https://perma.cc/J3C2-WSSE.

review of the resulting voter rolls, DOJ's statement of "the purpose" for its voter file demand is implausible and ultimately invalid.  *See also* Defs.-Appellants' Br. 39–41.[6]

HAVA enforcement also does not require or use complete, unredacted voter files.  HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]," 52 U.S.C. § 21083(a)(4)(A), and so this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations."  *Bellitto*, 935 F.3d at 1202; *see also ACRU*, 872 F.3d at 184–85 (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA).  HAVA separately establishes database architecture requirements,

---

[6]  Thus, for nearly two decades, DOJ neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy.  *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017 information requests); *see also* Consent Judgment, *United States v. Kentucky*, No. 3:17-cv-94 (E.D. Ky. July 3, 2018), ECF No. 39.  DOJ places great weight on 2006 and 2008 settlements under which it obtained unredacted voter files from Texas and Georgia.  DOJ Br. 21–22 & n.5.  However, DOJ did not pursue enforcement actions based on either file, *see* U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025), https://perma.cc/A3JG-CNZA, and soon abandoned attempts to use voter files to assess NVRA compliance.

including removal of duplicate records. *See* 52 U.S.C. § 21083(a)(2)(B)(iii). Each

requirement is implemented pursuant to state discretion. *Id.* § 21085; *see also* U.S.

Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide*

*Voter Registration Lists* 11–14 (July 2005), https://perma.cc/KJX9-ZZ3W

("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure

that eligible voters are not removed in error from the official list of eligible voters").

Thus, if the NVRA does not set a "quantifiable, objective standard," *PILF v. Benson*,

136 F.4th at 626, neither does HAVA. Because HAVA list maintenance

requirements also do not turn on individual voter records, DOJ's statement of "the

purpose" for its voter file demand is implausible and invalid twice over.[7]

DOJ's acknowledgment that it wishes to use Michigan's unredacted voter file

---

[7] Here again, DOJ has recognized state flexibility across decades of enforcement. For instance, a 2006 consent decree required New Jersey to undertake "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not to perform perfect removal of ineligible registrants and consolidation of duplicate records. Consent Decree ¶¶ 4, 8–9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006), https://perma.cc/TF6V-NUY4. Once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See id.* ¶ 11. In related litigation, DOJ has stated that prior HAVA consent decrees mandated production of complete, unredacted voter files, but this is incorrect. *See* DOJ Opp. 4-5, *United States v. Aguilar*, No. 3:25-cv-728 (D. Nev. Apr. 10, 2026), ECF No. 71. *But see* N.J. Decree ¶ 5 (omitting production requirements); Supp. Consent Decree ¶ 9(e), *United States v. Maine*, No. 1:06-cv-86 (D. Me. Apr. 4, 2007), ECF No. 70 (requiring only production of a "unique identifier" used for database architecture). *See generally* 52 U.S.C. § 21083(a)(1)(A)(iii) (mandating assignment of unique identifier).

to identify "duplicate registration records, registrants who have moved, and registrants who have died *or otherwise are no longer eligible to vote in federal elections*" dooms its demand. DOJ Br. 37 (emphasis added); *see also* DOJ Mot. to Expedite 14 (describing intention "to confirm that Michigan's voter rolls are composed solely of individuals who are eligible to vote"). DOJ may not expand federal list maintenance obligations merely by cutting off statutory text. *See* DOJ Mot. to Expedite 16 (quoting 52 U.S.C. §§ 20507(a)(4), 21083(a)(2)(B)(ii)) (omitting "by reason of the death of the registrant; or a change in the residence of the registrant" from the NVRA and selectively quoting "not eligible to vote" from HAVA protections *against* removal). Because the NVRA and HAVA do not create affirmative obligations to remove registrants other than movers and the deceased, DOJ's search for *all* ineligible voters overreaches both the stated purpose in its Title III demand and DOJ's own authority. *See Youngstown*, 343 U.S. at 587; *see also Coleman*, 313 F.2d at 868 (connecting the statement of purpose to "possible violations of a Federal statute"). Finally, DOJ suggests that pursuant to the NVRA, "the Attorney General needs to examine both applications to register to vote and the final voting rolls . . . to assure [himself] that the applications are being properly processed," DOJ Br. 21, but the Title III demand does not include voter registration applications. An unredacted voter file alone cannot be used to assess compliance with NVRA requirements for prompt and effective voter registration processing, *see*

- 17 -

52 U.S.C. §§ 20504(e), 20506(d), 20507(a)(1), as even DOJ appears to admit.[8]

## B. DOJ Failed to Disclose the Actual Purpose of Its Demand for Michigan's Unredacted Voter File.

While DOJ's statement of the purpose for its Title III demand fails to bear scrutiny on its own, activity in related litigation confirms that DOJ failed to provide the requisite statement of "the purpose" for its demand here. 52 U.S.C. § 20703; *see also* Defs.-Appellants' Br. 52–56. Take the recent settlement in a similar Title III voter file suit in Oklahoma. *See* Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026), https://perma.cc/8XHQ-MSJG. Although DOJ had alleged that "the purpose of the demand" was to "ascertain Oklahoma's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 21, *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026), ECF No. 1, the settlement allowed DOJ to

---

[8] In related matters, DOJ has suggested that it requires a state's complete, unredacted voter file to assess compliance with Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5), which mandates that states may not accept or process voter registration applications unless the application includes a driver's license number, partial Social Security number, or an indication that the applicant lacks both. *See, e.g.*, DOJ Mem. at 10, *United States v. D.C. Bd. of Elections*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025), ECF No. 4-3. This provision is distinct from the "list maintenance requirements of . . . HAVA." Aug. 14 Let., R. 39-4. *Compare* 52 U.S.C. § 21083(a)(2) ("Computerized list maintenance"), *with id.* § 21083(a)(5) ("Verification of voter registration information"). In any case, a bona fide inquiry concerning Section 303(a)(5) at most requires production of voter records *lacking* these identifiers, along with associated registration dates to ensure the voter registered after HAVA went into effect.

use voter data both to "assess the State's compliance with [the] NVRA [and] HAVA" and for "other purposes outlined in 28 C.F.R. §§ 0.50-51." Okla. Settlement Agreement ¶ 2 (Mar. 24, 2026), https://perma.cc/CX66-S7G2. These expanded purposes incorporate the full functions of DOJ's Civil Rights Division, including coordination with other DOJ components and assistance to other federal departments and agencies. *See* 28 C.F.R. § 0.50(d)–(e). Even if these expanded purposes were additions to bona fide NVRA and HAVA enforcement—and they are not—this renders DOJ's written statement at most a half-truth. Ultimately, "half-truths— representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . . misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016).

DOJ has also admitted in a parallel case that it intends to provide complete, unredacted voter files it obtains using Title III to the Department of Homeland Security (DHS), a purpose unrelated to NVRA and HAVA enforcement. *See* Tr. at 65:1–6, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026), ECF No. 47 ("THE COURT: What I'm saying is can you take this list and send it to Homeland Security . . . . MR. NEFF: In compliance with all federal laws, yes, and we intend to do so."); *see also* Gabe Cohen et al., *Trump Is Trying to Build a Massive Voter Database. Election Officials Are Afraid of What He'll Do with It*, CNN, Apr. 5, 2026, https://perma.cc/9HUU-N7NU ("The Justice Department has finalized a deal

with the Department of Homeland Security to give DHS sensitive voter-roll data the administration has demanded from states."). DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA or HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only interested in comparing the Michigan voter file with DHS data to identify voters who may not meet state eligibility requirements, this would not advance NVRA or HAVA enforcement. With respect to movers, the "reasonable effort" requirement can be met using U.S. Postal Service data alone, as noted above. 52 U.S.C. § 20507(c)(1); *see also* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials); Mich. Comp. Laws § 168.509dd(3) (allowing use of Postal Service data). Federal data concerning deaths is held by the Social Security Administration (SSA), not DHS. *See* 42 U.S.C. § 1306c(d) (defining SSA Death Master File); Exec. Order No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that SSA allows election officials to access the Death Master File); *see also PILF v. Benson*, 136 F.4th at 618 (describing Michigan's use of Death Master File data). Ultimately, the NVRA and HAVA place responsibility for voter registration list maintenance with the states and do not authorize DOJ to search for individual registrants who federal officials suspect may not meet state eligibility requirements. Any attempt to do so is unrelated to

"Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 14 Let., R. 39-4, Page ID # 501. Thus, the statement of "the purpose" of DOJ's Title III demand is at best inaccurate and must be deemed invalid. Without a valid statement of "the purpose" of the demand, 52 U.S.C. § 20703, DOJ's enforcement request must be denied.

## CONCLUSION

For the foregoing reasons, the Court should affirm on the alternative ground that the Title III demand failed to provide "the purpose therefor."

Dated: April 14, 2026

Respectfully submitted,

*/s/ Daniel J. Freeman*_____
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(A)(5), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(B)(1), this document contains 5,476 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.

Dated: April 14, 2026

*/s/ Daniel J. Freeman*_____
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2026, this document was served on all parties or their counsel of record through the CM/ECF system.

Dated: April 14, 2026

/s/ Daniel J. Freeman_____
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*