## NO. 26-1225
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

United States of America,

*Plaintiff-Appellant*

On appeal from the United States District Court
for the Western District of Michigan

v.

Civil Action No. 1:25-CV-01148
Hon. Hala Y. Jarbou, United States District Judge

Jocelyn Benson, in her official capacity as
Secretary of the State of Michigan;
State of Michigan,

*Defendants- Appellees*

and

Michigan Alliance for Retired Americans;
Donald Duquette;  Keely Crimando,

*Intervenors-Appellees*

## COMMONWEALTH OF KENTUCKY
## STATE BOARD OF ELECTIONS' *AMICUS CURIAE* BRIEF
## IN SUPPORT OF APPELLEES

Respectfully submitted,

*/s/ Carmine G. Iaccarino*
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY  40507
Telephone: (859) 255-8581
Carmine@sturgillturner.com

Taylor A. Brown
*General Counsel*
Kentucky State Board of Elections
140 Walnut Street
Frankfort, Kentucky 40601
TaylorA.Brown@ky.gov

*Counsel for Amicus Curiae, the Commonwealth of Kentucky State Board of Elections*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii-v

STATEMENT OF ISSUES............................................................................... vi

INTRODUCTION........................................................................................ 1

AMICUS INTEREST ................................................................................... 2

RELEVANT BACKGROUND ....................................................................... 4

    A.  The Kentucky State Board of Elections—the bipartisan agency responsible for voter list maintenance in the Commonwealth........................................... 4

    B.  The Department of Justice's demands the Commonwealth's complete voter list, and the State Board's response.............................................................. 5

ARGUMENT............................................................................................... 9

    I.  The Kentucky Board provided a redacted list to the Department—consistent with its privacy concerns and state and federal law. ....................................... 10

    II.  Under the major questions doctrine, the Department has no authority to gather statewide voter registration lists for its stated purposes...................... 15

CONCLUSION ......................................................................................... 20

CERTIFICATE OF COMPLIANCE.............................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1 (2013)...................................... 18

*Biden v. Nebraska*, 600 U.S. 477 (2023) ...................................................15, 16, 18

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024)......................... 13

*Foster v. Love*, 522 U.S. 67 (1997)..................................................................... 18

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)................................................................ 19

*Judicial Watch, Inc. v. Grimes*, No. 3:17-cv-94 (E.D. Ky. Nov. 14, 2017) ........................ 5,7

*Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018) .................................................... 14

*Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76 (Ky. 2013) ................... 11, 12

*Learning Res., Inc. v. Trump*,
　　No. 24-1287, 2026 WL 477534 (U.S. Feb. 20, 2026) .....................................16, 17, 20

*Millsaps v. Thompson*, 259 F.3d 535 (6th Cir. 2001)............................................... 18

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
　　595 U.S. 109 (2022) ......................................................................... 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)................................ 13

*Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections,*
　　996 F.3d 257(4th Cir. 2021) .................................................................. 3

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022)................................................. 13

*Perrin v. United States*, 444 U.S. 37 (1979)............................................................. 14

*Project Vote, Inc. v. Kemp*,  208 F.Supp.3d 1320 (N.D. Ga. 2016) ..................................... 3

*Project Vote/Voting For Am., Inc. v. Long*, 752 F.Supp.2d 697 (E.D. Va. 2010) ................ 3

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .............................. 3

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ................................. 8, 11

*Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F.Supp.3d 1004 (D. Alaska 2023) ............... 3

*Pub. Int. Legal Found., Inc. v. Matthews*, 589 F.Supp.3d 932 (C.D. Ill. 2022) ..................... 3

*True the Vote v. Hosemann*, 43 F.Supp.3d 693 (S.D. Miss. 2014) ........................................ 3

*United States v. Benson*, --- F.Supp.3d ----, No. 1:25-CV-1148,
   2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ...................................................... 3, 9

*United States v. Galvin*,
   No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) .......................... 9

*United States v. Granderson*, 511 U.S. 39 (1994) .................................................................. 15

*United States v. Kentucky State Board of Elections, et al.,* No. 3:26-cv-00019-GFVT............. 5

*United States v. Medlock*, 792 F.3d 700 (6th Cir. 2015) ........................................................ 15

*United States v. Oregon*,
   No. 6:25-CV-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025)...................... 9

*United States v. Sweeney*, 891 F.3d 232 (6th Cir. 2018) ........................................................ 14

*United States v. Weber*, No. 2:25-CV-09149-DOC-ADS,
   2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .................................................................. 9

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ............................................................. 17

*West Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022) .......................................16, 17, 19

*Whitman v. Am. Trucking Associations*, 531 U.S. 457 (2001)................................................. 16

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................................... 15

*Yick Wo v. Hopkins*,
    118 U.S. 356, 370 (1886) ............................................................................................ 20

**STATUTES & REGULATIONS**

U.S. Const. Art. I, § 4, cl. 1............................................................................................... 18

Civil Rights Act of 1960 .................................................................................................... 3

5 U.S.C. § 552a(b).................................................................................................11, 12, 13

5 U.S.C. § 552a(e)(4)........................................................................................................ 12

18 U.S.C. § 2721(a), (b)......................................................................................11, 12, 13

52 U.S.C. § 20501(a), (b)............................................................................................... 4, 6

52 U.S.C. § 20507 .............................................................................................................. 2

52 U.S.C. § 20701 ......................................................................................................... 13, 14

52 U.S.C. § 20702 ............................................................................................................ 14

52 U.S.C. § 20703 ......................................................................................................... 3, 13

52 U.S.C. §§ 20901–21145.............................................................................................. 3

52 U.S.C. § 21083 .............................................................................................................. 2

Title 31 KAR 3:010, Section 6 ......................................................................................... 12

KRS 61.878(1)(a) .......................................................................................................11, 12

KRS 117.015(1) ................................................................................................................. 4

KRS 117.025(3)(a), (i)............................................................................... 2, 4, 6, 11, 12

## BOOKS, ARTICLES, & INTERNET RESOURCES

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* (2012) ........................................................ 14

Brennan Ctr. for Justice, *Tracker of Justice Department Requests for Voter Information*
   (April 17, 2026), https://perma.cc/ALN9-ZZ63 ........................................................ 2

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
   Voter      Roll*,      N.Y.      Times      (Sept.      9,      2025),
   https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-
   data.html ........................................................................................................................ 17

Federalist No. 51 (Madison).............................................................................................. 20

DOJ Press Release*, Justice Department Sues Five Additional States for Failure to Produce Voter
   Rolls* (Feb. 26, 2026), https://perma.cc/HN9T-M772 ................................................ 2

Kentucky State Board of Elections Press Release, https://perma.cc/D96R-HEDC... 5

Kentucky State Board of Elections Registration Statistics,
   https://elect.ky.gov/Resources/Pages/Registration-Statistics.aspx ........................ 4

# STATEMENT OF THE ISSUES

Whether the Civil Rights Act authorizes the Department of Justice to compel a State to produce its entire voter registration list even though the statute speaks only to discrete records that have "come into [the State's] possession," and, if so construed, would effect a major expansion of federal authority over state election administration without the clear statement the Constitution requires.

## **INTRODUCTION**

This case is not about a routine records request. It is about the structure of government and the balance struck by our Framers in balancing powers between the States and the National government. The question here is whether the Executive Branch may seize for itself a power the Constitution assigns elsewhere——to the States. By reading a decades-old statute to authorize something Congress never approved, the Department of Justice asks this Court to treat its demand as ordinary. It is not.

Through modest words in an ancillary provision of the Civil Rights Act, the Department claims the power to compel every State to surrender its complete voter registration list—containing the personal data of millions of citizens. To justify that claim, the Department does what agencies often do when asserting some new power: it simplifies the law, dismisses contrary authority, and stretches modest statutory language beyond recognition.

But the Supreme Court has rejected that approach time and again. When an agency asserts a previously-unheralded power of vast significance, it must point to *clear* congressional authorization. The Department cannot do so here, and this Court should not be the first to approve such a transformation of federal authority—least of all in an area where the Constitution assigns primary responsibility to the States.

In sum, the Department of Justice's claim fails as a matter of law. The district court correctly rejected it, and this Court should affirm. There is no statutory basis for the authority the Department asserts—and no constitutional room to infer it.

1

## **INTEREST OF THE AMICUS**[1]

The Kentucky State Board of Elections is the state agency entrusted by the Kentucky General Assembly with the responsibility and authority to maintain the Commonwealth's list of qualified registered voters.[2] Like Secretary Benson, the State Board has also been sued by the Department of Justice as part of its campaign to obtain the voter registration lists from every State.

In all, the Department has demanded voter lists from at least 48 States, and has sued 30 States.[3] On the day it sued Kentucky's Board, the Department also sued four other states—Utah, Oklahoma, West Virginia, and New Jersey—"for failure to produce their full voter registration lists upon request."[4] The Department celebrated the number of its suits.[5] Yet even as the Department has expanded its demands and litigation nationwide, it has narrowed its legal theory. Where it once invoked multiple statutes in an attempt to authorize its demand,[6] it has sued Kentucky's State Board of Elections

---

[1]    No counsel for any party authored this brief in whole or in part, and no entity or person, other than amicus curiae or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief. Also, the Board is a state agency, has no parent corporation, and no publicly held corporation owns any stock in it.

[2]    KRS 117.025(3)(i).

[3]    Brennan Ctr. for Justice, *Tracker of Justice Department Requests for Voter Information* (April 17, 2026), https://perma.cc/ALN9-ZZ63.

[4]    Press Release, *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://perma.cc/HN9T-M772.

[5]    *Id.*

[6]    In Michigan, for example, the Department to "compel disclosure of the full list, citing its authority under provisions of the Help America Vote Act (HAVA), 52

on only one: the alleged violation of 52 U.S.C. § 20703.[7] But that statute can't bear the weight the Department puts on it, and this Court should say so to provide needed clarity to the States in this Circuit on an important question of election administration.

Because Kentucky deserves a voice in the question before this Court, the Kentucky State Board of Elections files this amicus brief. In it, the Board explains why the Civil Rights Act does not authorize the Department's demand and presses an

---

U.S.C. § 21083, the National Voter Registration Act (NVRA), 52 U.S.C. § 20507, and the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20703." *United States v. Benson*, --- F.Supp.3d ----, No. 1:25-CV-1148, 2026 WL 362789, at *1 (W.D. Mich. Feb. 10, 2026).

[7] The Department's retreat makes sense. HAVA includes *no* disclosure requirement whatsoever, *see* 52 U.S.C. §§ 20901-21145, and the NVRA's "public inspection provision" does not authorize wholesale access to the voter registration list, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F.Supp.3d 1004, 1016 (D. Alaska 2023) (holding the NVRA permits "the exclusion of sensitive personal information" from disclosure); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F.Supp.3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp,* 208 F.Supp.3d 1320, 1344–45 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birthdates); *True the Vote v. Hosemann*, 43 F.Supp.3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F.Supp.2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers); *see also* footnote 31.

argument made by no other State so far in similar litigation—that the Department's demand raises a major questions. To understand why that is so, some brief background.

## RELEVANT BACKGROUND

**A.    The Kentucky State Board of Elections—the bipartisan agency responsible for voter list maintenance in the Commonwealth**

Like its sister agencies in other states, the Kentucky State Board of Elections maintains a complete roster of all of the qualified registered voters.[8] As of February 2026, there are 3,358,707 Kentuckians on that list of registered voters.[9] As an independent agency of Kentucky state government, the State Board of Elections is entrusted with the maintenance of that list and the administration of Kentucky's election laws.[10] The Board, with its staff, diligently works to comply with state and federal law, including the National Voter Registration Act (NVRA), the Civil Rights Act (CRA), and the Help America Vote Act (HAVA). Consistent with the NVRA's purposes "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained,"[11] Kentucky's State Board of

---

[8]    KRS 117.025(3)(i).

[9]    *See* State Board's Registration Statistics, https://elect.ky.gov/Resources/Pages/Registration-Statistics.aspx (March 2026 reports).

[10]    KRS 117.015(1) (charging the Board with the "registration and purgation of voters").

[11]    52 U.S.C. § 20501(b)(3), (4).

Elections has, since 2019, removed roughly 735,000 ineligible voter registrations from the voter rolls.[12]

To do that work, the State Board relies on robust relationships with state and federal partners. It contracts with the Kentucky Department of Transportation and Kentucky's Administrative Office of the Court to double-check the accuracy of the voter registration list and to update it. The Board also regularly compares its voter registration list with the Social Security Master death file, and works with the Department of Justice to remove individuals who have self-identified as unable to serve on federal juries due to citizenship. The Board also routinely removes registrants who have moved away or registered to vote in other jurisdictions.

**B.      The Department of Justice's demands the Commonwealth's complete voter list, and the State Board's response[13]**

The State Board values its relationship with *any* agency that helps it do its work. That is why the State Board of Elections has *not* refused the Department's request—though the Complaint filed against it in the United States District Court for the Eastern District of Kentucky suggests otherwise. In fact, the Department has repeatedly

---

[12]    *Judicial Watch, Inc. v. Grimes*, No. 3:17-cv-94, 2018 (E.D. Ky. Nov. 14, 2017) (State Board of Elections' Notice of Compliance with Consent Decree, Doc. No. #99, March 28, 2025); *see also* Press Release, available at https://perma.cc/D96R-HEDC.

[13]    In this section, the Board references the correspondence and filings in *United States v. Kentucky State Board of Elections, et al.,* Case No. 3:26-cv-00019-GFVT, pending in the United States District Court for the Eastern District of Kentucky.

suggested that the Board "refused the Attorney General's demand,"[14] and that it "refused to comply with the Attorney General's demand."[15] That demand was first sent to Kentucky's Secretary of State in July 2025,[16] who directed the Department to contact the State Board of Elections.[17] When the Department followed up with the State Board, it demanded a response within just 14 days.[18]

Before the time to respond had expired, the Department sent yet another letter. In it, the Department "clarified" that the list "should contain *all* fields, . . . include[ing] the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number."[19] The Department also claimed that it intended to "assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act," that the demand was made "pursuant to the Attorney General's authority under Section 11

---

[14]    Compl. [DE 1, PageID#8], ¶ 26.

[15]    *Id.* [DE 1, PageID#8–9], ¶ 33.

[16]    July 17, 2025, correspondence to Secretary of State Michael Adams, Exhibit 2 to the State Board's Motion to Dismiss [DE 9-2, PageID#233-236].

[17]    Aug. 8, 2025, correspondence to Executive Director Karen Sellers, Exhibit 3 to the State Board's Motion to Dismiss [DE 9-3, PageID#238-239]. Again, it is the Board that maintain the "complete roster of all qualified registered voters within the state by county and precinct." KRS 117.025(3)(a).

[18]    July 23, 2025, correspondence from Jennifer Scutchfield, Exhibit 1 to the State Board's Motion to Dismiss [DE 9-1, PageID#230-231].

[19]    Aug. 14, 2025, correspondence to Secretary of State Michael Adams, Exhibit 4 (emphasis added) to the State Board's Motion to Dismiss [DE 9-4, PageID#241-243].

of the NVRA to bring enforcement actions,"[20] further suggested that the Attorney General's demand was made under the Help America Vote Act and Title III of the Civil Rights Act of 1960,[21] and—*without citation to any authority*—asserted that "Congress plainly intended that DOJ be able to conduct an independent review of each state's list," and that "[a]ny statewide prohibitions are clearly preempted by federal law."[22]

The State Board timely responded.[23] As requested, the Board outlined its substantial efforts to comply with the voter list maintenance program required by the National Voter Registration Act, including its having successfully met the requirements of a consent judgment ensuring its compliance with that federal law.[24] Later in August, the Board supplemented its response. There, it provided comprehensive answers to the many questions the Department asked in its July 17 correspondence.[25]

Yet the Board did not provide its statewide voter registration list. For good reason. The Board expressed concern over the broad demand for such sensitive

---

[20]    *Id.* (citing 52 U.S.C. § 20501(a)).

[21]    *Id.*

[22]    *Id.* at n.2. Of course, one would expect there would be *some* authority for such a claim. None has been provided.

[23]    August 22, 2025, correspondence from the Board to the Department, Exhibit 5 to the State Board's Motion to Dismiss [DE 9-5, PageID#245-246]. Notably, the Board timely responded within the arbitrary deadline the Department had set.

[24]    *Judicial Watch, Inc. v. Grimes*, No. 3:17-cv-94, 2018 (E.D. Ky. Nov. 14, 2017) (State Board of Elections' Notice of Compliance with Consent Decree, Doc. No. #99, March 28, 2025).

[25]    August 29, 2025, correspondence from the Board to the Department, Exhibit 6 to the State Board's Motion to Dismiss [DE 9-6, PageID#248-249].

personal data. As it explained to the Department, the Board "is committed to safeguarding the sensitive information it possesses, as that information belongs to the Kentuckians [the Board] serves."[26]

The Department didn't respond—*for months*. Thus, the Board followed up on October 15, 2025. In its correspondence, the Board reiterated its concerns and that it "ha[d] not received the requested clarification as to how DOJ is complying with its requirements under both the Privacy Act of 1974 and the Driver's License Protection Act."[27] In any event, the Board provided a redacted list—that is, "a copy of the voter registration list that does not include the otherwise protected data."[28]

More than a month passed. Nothing. When the Department finally responded, it did so with another demand: that the Board execute a memorandum of understanding *within seven days.*[29] The Department did not, however, address the Board's concerns nor

---

[26]    August 22, 2025, correspondence from the Board to the Department, Exhibit 5 to the State Board's Motion to Dismiss [DE 9-5, PageID#245-246].

[27]    Oct. 15, 2025, correspondence from the Board to the Department, Exhibit 7 to the State Board's Motion to Dismiss [DE 9-7, PageID#251-252].

[28]    *Id.* That complied with the NVRA and the Board's practice in other contexts. The Board redacts personal information because "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

[29]    Dec. 2, 2025, email from the Department to the Board, Exhibit 8 to the State Board's Motion to Dismiss [DE 9-8, PageID#254-255].

invite any further discussion or negotiation. Sign and send, it said. Now, the Department has sued the Board, and it wants the records in five days.[30]

As the Board reads the law, however, neither it nor Secretary Benson have any obligation nor any authority to share their voter registration lists with the Department. Increasingly, federal courts across the country agree.[31] This one should too, and the Board submits this amicus brief to make an argument not yet made by any other State facing similar litigation—that this case raises a major question.

Against that backdrop, the legal question presented is straightforward—and the Department's position cannot be reconciled with either the statute's text or the Constitution's structure.

## ARGUMENT

As with the case against Kentucky, the Department's case against Michigan can be resolved on straightforward statutory grounds. The Civil Rights Act reaches only records that "*come into*" a state agency's possession—not records the State creates itself. That textual limit forecloses the Department's demand. But even if the statute were ambiguous, the Department's theory would fail for a separate and independent reason.

---

30    Compl. [DE 1], at PageId#9.

31    *See United States v. Weber*, --- F.Supp.3d ----, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (on appeal); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (on appeal); *United States v. Galvin*, --- F.Supp.3d ----, No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026).

It asks this Court to recognize a sweeping new federal authority over state election administration based on ancillary language in a decades-old statute. Under the major questions doctrine, that is not a judgment an agency may make for itself. The Department's claim fails, and this Court should affirm the opinion below.

## I.    The Kentucky Board provided a redacted list to the Department—consistent with its privacy concerns and state and federal law.

At the outset, one point must be made clear. Kentucky's State Board of Elections has *not* refused to cooperate with the Department. To the contrary and like Michigan,[32] the Board sought to accommodate the Department's request while honoring its legal obligation to safeguard sensitive personal information entrusted to it by Kentucky voters. It gave the Department a redacted list.[33]

That context matters. The Department's lawsuits against Secretary Benson and Kentucky's State Board did not arise from a refusal to comply with federal law or from any identified violation. They arose from the Department's attempt to compel disclosure of sensitive statewide data in the absence of clear statutory authority. As in

---

[32]    *United States v. Benson*, --- F.Supp.3d ----, No. 1:25-CV-1148, 2026 WL 362789, at *1 (W.D. Mich. Feb. 10, 2026) ("Michigan informed the DOJ that it would provide only the public voter registration list, which omits dates of birth, driver's license numbers, and social security numbers (SSNs).").

[33]    Oct. 15, 2025, correspondence from the Board to the Department, Exhibit 7 to the State Board's Motion to Dismiss [DE 9-7, PageID#251-252]. The Department failed to view the statewide voter registration list until November 18, 2025. *See* Electronic package delivery receipt, Exhibit 10 to the State Board's Motion to Dismiss [DE 9-10, PageID#262].

Michigan, the Department demands every field in the Board's list, including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security."[34] The State Board, however, expressed concern that disclosing such information would expose the personal data of millions of Kentuckians without a clear statutory basis.[35]

Even so, the Board tried to work with the Department. Recognizing the State and Federal government's shared interest in working *together* to ensure election integrity,[36] the Board invited further discussion on the more private information requested.[37] To be clear, the Board provided a *redacted* version of the statewide voter registration list—in compliance with state[38] and federal law.[39] The Board provides such

---

[34]   Aug. 14, 2025, correspondence to Secretary of State Michael Adams, Exhibit 4 to the State Board's Motion to Dismiss [DE 9-4, PageID#241-243] (emphasis added).

[35]   August 22, 2025, correspondence from the Board to the Department, Exhibit 5 to the State Board's Motion to Dismiss [DE 9-5, PageID#245-246].

[36]   KRS 117.025(3)(i).

[37]   August 22, 2025, correspondence from the Board to the Department, Exhibit 5 to the State Board's Motion to Dismiss [DE 9-5, PageID#245-246].

[38]   KRS 61.878(1)(a) (exempting from disclosure public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy); *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 89 (Ky. 2013) (holding that agencies may apply a "categorical rule" to withhold certain information, including "phone number, social security number, or the other forms of personal information");

[39]   5 U.S.C. § 552a(b) (Privacy Act); 18 U.S.C. § 2721(a) (Driver's Privacy Protection Act); *see also Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting authority). None of exceptions to the Privacy Act apply. Yet even if one did apply, the Department has not complied with the procedural

11

lists to candidates, political parties, and ballot-question advocates.[40] The Board does not, however, provide social security and driver license numbers. [41]

That complies with federal law. The Privacy Act prohibits the disclosure of "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless the disclosure meets one of thirteen exceptions not relevant here.[42] Because the Board contracts with the Kentucky Transportation Cabinet to aid in its voter-list maintenance program, the Drivers Privacy Protection Act prohibits the Board from disclosing "personal information" about any individual that is obtained in connection with a "motor vehicle record."[43] The Department refused to address its obligations—or the Board's—under these statutes.

---

requirement to publish a System of Records Notice in the Federal Register." 5 U.S.C. § 552a(e)(4).

[40]   KRS 117.025(3)(i); 31 KAR 3:010, Section 6 (Requests for Voter Registration Lists).

[41]   KRS 61.878(1)(a) (exempting from disclosure public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy); *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 89 (Ky. 2013) (holding that agencies may apply a "categorical rule" to withhold certain information, including "phone number, social security number, or the other forms of personal information").

[42]   5 U.S.C. § 552a(b).

[43]   18 U.S.C. § 2721(a)(1).

Instead, the Department sued. Yet neither the Board nor Secretary Benson have any obligation to turn over each State's complete voter registration list to the Department—whether under the CRA or any other federal law.[44] Judge Jarbou's reasoned opinion explains why, and her opinion should be affirmed. The Department may claim her reading of the law is "pedantic." It is not. The text matters, and Congress used specific words that control. Time and again, the Supreme Court has said exactly that.[45]

The text controls here too. The Civil Rights Act permits the Attorney General to inspect and copy a defined category of materials: "all records and papers which come into [the Board's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting."[46] A voter registration list is not one of those

---

[44]    Both statutes include exceptions for "law enforcement." For example, the Privacy Act provides an exception if the Department articulates "the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C.A. § 552a(b)(7). The Drivers Privacy Protection Act exempts disclosure for "use by any government agency . . . in carrying out its functions." 18 U.S.C. § 2721(b)(1). Neither exception allows for the sort of generalized request for all data from all state for general assessment purposes, as the Department suggests here.

[45]    *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) "[T]he text of a law controls."); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 36 (2022) (same); *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (same).

[46]    52 U.S.C. § 20703 (referencing and incorporating by reference the records stated in the record keeping requirement of § 20701) (emphasis added). The record keeping requirements applies to "any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico." 52 U.S.C. § 20701.

13

records. The text includes a precise limitation. The statute reaches only records that "*come into*" the Secretary's—or the Board's—possession. That phrase describes *acquisition* from an external source. There can be no reasonable argument that a record the Secretary or the Board creates has "come into" their possession. Rather, the ordinary and common meaning of that phrase is that the statute applies to records *received* by the Secretary and the Board.[47]

The Department's contrary interpretation would effectively read the limiting phrase "come into [its] possession" out of the statute,[48] while expanding potential criminal liability.[49] That cannot be right. If every record in the Board's possession qualifies, then the statute would cover not only registration applications, but any list, database, spreadsheet, or other record created by the State that incorporates such

---

[47]    *United States v. Sweeney*, 891 F.3d 232, 238 (6th Cir. 2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69–77 (2012).

[48]    *Keeley v. Whitaker*, 910 F.3d 878, 884 (6th Cir. 2018) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

[49]    *See* 52 U.S.C. § 20701 ("Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both); 52 U.S.C. § 20702 (providing criminal penalties for "an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved");

14

information, and the potential for criminal liability multiplies.[50] That is not how statutory construction works—nor how a textual limit operates. Courts must "give effect, if possible, to every clause and word of a statute."[51] The phrase "*come into*" must do work. Under the Department's endorsed construction, it doesn't. And if Congress intended to cover *every* record it would have said so. Yet it didn't.

In sum, courts "do not interpret a statute for all it is worth when a reasonable person would not read it that way."[52] Because the States' voter registration list is *created* by each State agency entrusted to do so, and because such record does not "*come into*" each agency's possession within the meaning of § 20701, the list is not subject to "demand" by the Department under Title III of the Civil Rights Act, just as Judge Jarbou reasoned. But the Department's demand also raises a major question.

## II. Under the major questions doctrine, the Department has no authority to gather statewide voter registration lists for its stated purposes.

This case presents the textbook conditions for application of the major questions doctrine: an agency claims a novel and unprecedented power of vast political

---

[50] *See United States v. Granderson*, 511 U.S. 39, 54 (1994) ("In these circumstances—where text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor.").

[51] *United States v. Medlock*, 792 F.3d 700, 709 (6th Cir. 2015) (quoting *Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("It is a cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute." (cleaned up)).

[52] *Biden v. Nebraska*, 600 U.S. 477, 521 (2023) (Barrett, J. concurring).

15

significance in an area of traditional state authority based on an ancillary and ambiguous statutory provision. Yet the Supreme Court "has long expressed reluctance to read into ambiguous statutory text extraordinary delegations of Congress's powers."[53] In "major questions cases," the Court "has reasoned that both separation of powers principles and a practical understanding of legislative intent suggest Congress would not have delegated highly consequential power through ambiguous language."[54] And the Supreme Court has repeatedly refused to discover sweeping authority in "modest words"[55] and "ancillary"[56] provisions—whether the claimed power was cancellation of hundreds of billions in student-loan debt,[57] a nationwide vaccine mandate,[58] or a forced transition of the national energy grid.[59]

This is that kind of case. The Department seeks every State's voter registration list so that it may compare them against federal databases and second-guess voter list

---

[53]   *Learning Res., Inc. v. Trump*, 607 U.S. ----, No. 24–1287, 2026 WL 477534, at *7 (U.S. Feb. 20, 2026) (cleaned up).

[54]   *Id.*

[55]   *W.W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) (cleaned up).

[56]   *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ('Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

[57]   *Biden v. Nebraska*, 600 U.S. 477.

[58]   *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109 (2022) (per curiam).

[59]   *West Virginia v. EPA*, 597 U.S. at 723.

16

maintenance in Washington.[60] That may be a policy Congress should adopt. But it is not a program the Department may implement using an ancillary statutory provision. Under the Supreme Court's precedent, "this is a major questions case."[61] The Department "claim[s] to discover in a long-extant statute an unheralded power" representing a "transformative expansion in [its] regulatory authority."[62] It does so not through any targeted enforcement action tied to a concrete violation, but through a generic "demand" mechanism—an "ancillary provision"—to assemble a nationwide program of election administration oversight out of whole cloth. In other words, it claims a previously unknown "extraordinary" and "unilateral" power never used for this purpose.[63] "Given these circumstances, there is every reason to hesitate before concluding that Congress meant to confer on [the Department] the authority it claims under [52 U.S.C. § 20703]."[64] That is because "[e]xtraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle

---

[60]    *See* Department's Proposed "Confidential Memorandum of Understanding," Exhibit 11, at 2, to the State Board's Motion to Dismiss [DE 9-11, PageID#264-272] ("The Justice Department is requesting your state's VRL to test, analyze, and assess states' VRLS for proper list maintenance and compliance with federal law."); *see also* Devlin Barrett & Nick Corasaniti, Trump Administration Quietly Seeks to Build National Voter Roll, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[61]    *W. Virginia v. EPA*, 597 U.S. at 724.

[62]    *Id.* at 724 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014)).

[63]    *Learning Res., Inc. v. Trump*, 2026 WL 477534, at *13.

[64]    *W. Virginia v. EPA*, 597 U.S. at 725.

devices.'"[65] The Department therefore must identify "clear congressional authorization" for the power it asserts.[66] Yet it cannot do that here.[67]

The Constitutional context makes the Department's demand extraordinary. The Elections Clause says: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators."[68] It establishes a structural default: States prescribe the "times, places and manner" of federal elections, and Congress—not the Executive—may "make or alter" those state regulations.[69] The Elections Clause assigns this authority to Congress—not the Executive. The Department's position would invert that design.

---

[65]    *Id.*

[66]    *Id.* at 723.

[67]    *Biden v. Nebraska*, 600 U.S. 477, 517–18 (Barrett, J. concurring) ("We have also been skeptical of mismatches between broad invocations of power by agencies and relatively narrow statutes that purport to delegate that power. Just as an instruction to 'pick up dessert' is not permission to buy a four-tier wedding cake, Congress's use of a 'subtle device' is not authorization for agency action of 'enormous importance.'").

[68]    U.S. Const. Art. I, § 4, cl. 1.

[69]    *Millsaps v. Thompson*, 259 F.3d 535, 539 (6th Cir. 2001) (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) ("In practice, the Clause functions as 'a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices.'").

18

That default matters. If Congress intends to displace state control with a nationwide federal verification regime, it must do so with unmistakable clarity.[70] Ambiguity will not do—especially where the claimed power would reallocate the mechanics of elections administration from state officials to federal administrators without Congressional approval. Yet the fix is easy. The Court should read "come into possession" as the limiting principle that Congress provided.

The Department's interpretation has no limits. It would use the same phrase so that *it* may "come into possession" of *every record* in every State registrar's possession. If the Department believes a centralized federal verification system is wise, it should ask Congress to authorize it because "a decision of such magnitude and consequence rests with Congress itself."[71]

The Constitution's design is deliberate. It channels decisions of this magnitude through Congress—not executive action. And that is a feature, not a flaw. It ensures that questions of national importance are resolved through deliberation, not unilateral action. "Through that process, the Nation can tap the combined wisdom of the people's elected representatives, not just that of one faction or man. There, deliberation tempers

---

[70]    *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (explaining that where Congressional interference would upset the usual constitutional balance of federal and state powers, "it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides" this balance).

[71]    *W. Virginia v. EPA*, 597 U.S. at 735.

19

impulse, and compromise hammers disagreements into workable solutions."[72] Given the fundamental importance of election law and administration,[73] it is easy to "appreciate the legislative process for the bulwark of liberty it is."[74]

For these reasons, textual and structural alike, the Department's theory must fail.

## **CONCLUSION**

This Court should **AFFIRM** the district court's judgment.

/s/ *Carmine G. Iaccarino*
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
Telephone: (859) 255-8581
Carmine@sturgillturner.com

&

Taylor A. Brown
*General Counsel*
State Board of Elections
140 Walnut Street
Frankfort, Kentucky 40601
TaylorA.brown@ky.gov

*Counsel for Amicus curiae, the Commonwealth of Kentucky's State Board of Elections*

---

[72] *Learning Res., Inc. v. Trump*, 2026 WL 477534, at \*35; *see also* Federalist No. 51 (Madison) ("Ambition must be made to counteract ambition.").

[73] *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

[74] *Learning Res., Inc. v. Trump*, 2026 WL 477534, at \*35.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 5,371 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using proportionally-spaced, 14-point face.

*/s/ Carmine G. Iaccarino*
*Counsel for Amicus curiae, the Commonwealth of Kentucky's State Board of Elections*

21

22

## CERTIFICATE OF SERVICE

I certify that on April 20, 2026, I served a true and complete copy of this amicus brief using the Court's CM/ECF system, which will send notice to all counsel of record.

/s/ Carmine G. Iaccarino
*Counsel for Amicus curiae, the Commonwealth of Kentucky's State Board of Elections*