No. 26-1225

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of
Michigan; STATE OF MICHIGAN,

Defendants-Appellees

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN
ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE;
KEELY CRIMANDO,

Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION CASE NO. 1-25-cv-01148
The Honorable Hala Y. Jarbou

REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of counsel)*

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................1

ARGUMENT

I.  Defendants and intervenors are incorrect that the
    DOJ is not entitled to Michigan's SVRL. ...............................1

    A.  The DOJ did not waive argument on appeal. ................1

    B.  The district court correctly determined its
        limited authority to weigh the substance
        of the basis and purpose of the DOJ' request. ...............4

    C.  The DOJ had a valid basis and purpose for
        seeking Michigan's SVRL. ................................................9

    D.  The SVRL, comprised of voter information,
        naturally "comes into possession" of state
        election officials. ............................................................11

    E.  A dynamic document is not an altered document. ......15

    F.  The DOJ's authority under the CRA to
        investigate violations of  the NVRA and HAVA
        is not limited to racial discrimination. ........................17

II.  The DOJ's demand for an electronic, unredacted
     copy of Michigan's SVRL does not violate federal
     privacy laws. ........................................................................21

    A.  The Privacy Act does not warrant dismissal
        of the DOJ 's CRA claim. .............................................22

**TABLE OF CONTENTS (continued):**                    **PAGE**

B.   The E-Government Act and Driver's Privacy Protection Act do not prevent the DOJ from obtaining an electronic, unredacted copy of Michigan's SVRL..........................................................26

C.   The DOJ is entitled to an unredacted SVRL...............28

III.   All unfounded allegations of the DOJ's bad faith in in its stated purpose should be disregarded. ........................31

CONCLUSION ................................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................26

*Beaven v. United States Dep't of Just.*,
    622 F.3d 540 (6th Cir. 2010) ......................................................24

*Bondi v. Vanderstok*, 604 U.S. 458 (2025) ..............................................12

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ......................................12

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)............................5, 10

*Donovan v. FirstCredit, Inc.*, 983 F.3d 246 (6th Cir. 2020) ..............17-18

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019)..............11

*Gap, Inc. v. GK Dev., Inc.*, 843 F.3d 744 (8th Cir. 2016) .........................3

*Guinn v. United States*, 238 U.S. 347 (1915)....................................20-21

*Honeycutt v. United States*, 581 U.S. 443 (2017) ..............................13-14

*Judicial Watch, Inc. v. Lamone*,
    399 F. Supp. 3d 425 (D. Md. 2019) ...............................................28

*Karriem v. Barry*, 743 F.2d 30 (D.C. Cir. 1984) ....................................24

*Keen v. Helson*, 930 F.3d 799 (6th Cir. 2019) ........................................12

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)...............................*passim*

*Lane v. Wilson*, 307 U.S. 268 (1939) ................................................20-21

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021).........................................5-6

**CASES (continued):**                                    **PAGE**

*Public Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ...........28

*Public Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025)........28

*Rotkiske v. Klemm*, 589 U.S. 8 (2019)....................................................14

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft,*
    974 F.3d 756 (6th Cir. 2020) ........................................................25

*Senne v. Village of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) .............28

*Swerchowsky v. U-Haul Int'l, Inc.*, No. 24-3007,
    2025 WL 1671927 (6th Cir. Feb. 11),
    *cert. denied*, 146 S. Ct. 162 (2025) ................................................3

*United States Dep't of Just. v. Tax Analysts,*
    492 U.S. 136 (1989) .......................................................................13

*United States v. Association of Citizens Councils of La.,*
    187 F. Supp. 846 (W.D. La. 1960)...................................................9

*United States v. Atkins*, 323 F.2d 733 (5th Cir. 1963) ......................19-21

*United States v. Bergrin*, 885 F.3d 416 (6th Cir. 2018) ......................2-3

*United States v. Gray*, 315 F. Supp. 13 (D.R.I. 1970) .............................5

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)........................8-9

*United States v. Oregon*, No. 6:25-cv-01666,
    2026 WL 318402 (D. Or. Feb. 5, 2026),
    *appeal pending*, No. 26-1231 (9th Cir.) ..........................................5

*United States v. Powell*, 379 U.S. 48 (1964) ........................................6-8

*United States v. Ward*, 349 F.2d 795 (5th Cir. 1965)......................19, 21

**CASES (continued):** **PAGE**

*United States v. Ward*, 352 F.2d 329 (5th Cir. 1965) ............................. 19

*United States v. Weber*, No. 2:25-cv-09149,
    2026 WL 118807 (C.D. Cal. Jan. 15, 2026),
    *appeal pending*, No. 26-1232 (9th Cir.) ......................................... 27

*Utility Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) .............................. 31

*Weems v. McCloud*, 619 F.2d 1081 (5th Cir. 1980) ................................. 5

**STATUTES:**

Civil Rights Act of 1960 (CRA) (Title III)
    52 U.S.C. 20701-20706 ............................................................. 8, 19
    52 U.S.C. 20701 ................................................................... *passim*
    52 U.S.C. 20703 ...................................................................... 6, 29
    52 U.S.C. 20704 .................................................................. 24, 30
    Public Law No. 86-449, 74 Stat. 90 (Section 601) (Title VI) ........ 18
    52 U.S.C. 10101 ......................................................................... 19

Civil Rights Act of 1964 (Title VII)
    42 U.S.C. 2000e-2 ..................................................................... 20

Drivers' Privacy Protection Act (DPPA)
    18 U.S.C. 2721 *et seq.* ............................................................. 28

E-Government Act of 2002
    44 U.S.C. 3501 note .................................................................. 27
    Pub. L. No. 107-347, 116 Stat. 2899 .......................................... 27

Fair Housing Act of 1968
    42 U.S.C. 3604-3606 .................................................................. 19
    42 U.S.C. 3617 ........................................................................... 19

Help America Vote Act of 2002 (HAVA)
    52 U.S.C. 21083(a)(1)(A) ........................................................... 22

**STATUTES (continued):**                                     **PAGE**

52 U.S.C. 21083(a)(5)(A) ........................................................ 10
52 U.S.C. 21111 ....................................................................29

Internal Revenue Code (IRC)
26 U.S.C. 7605(b)...................................................................8

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20507(b)...............................................................21
52 U.S.C. 20507(i)................................................................30
52 U.S.C. 20510 ...................................................................29
52 U.S.C. 20510(d)(1) ..........................................................16
52 U.S.C. 20510(b)...............................................................17

Privacy Act of 1974
5 U.S.C. 552a(a)(3) ..............................................................23
5 U.S.C. 552a(b)...................................................................22
5 U.S.C. 552a(e) ...................................................................23
5 U.S.C. 552a(e)(4) .........................................................24, 26
5 U.S.C. 552a(e)(7) ..............................................................23

Voting Rights Act of 1965
52 U.S.C. 10301-10306........................................................20
52 U.S.C. 10309 ...................................................................20

**RULE:**

Fed. R. App. P. 3(c)(1)(B)..........................................................2

**REGULATIONS:**

68 Fed. Reg. 47,610 (Aug. 11, 2003) ........................................25

70 Fed. Reg. 43,904 (July 29, 2005).........................................25

82 Fed. Reg. 24,147 (May 25, 2017).........................................25

**MISCELLANEOUS:**                                                                      **PAGE**

7 *Oxford English Dictionary* (1933) ..........................................................14

Black's Law Dictionary (11th ed. 2019).....................................................12

## INTRODUCTION

The American people deserve elections they can trust, and accurate voter rolls are an essential precondition for that trust. As with its efforts nationwide, the Department of Justice seeks to obtain Michigan's statewide voter registration list (SVRL) to ensure that our federal elections are deserving of such trust. In so doing, the Department (DOJ) is not doing anything extraordinary warranting judicial second-guessing. DOJ's request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960, and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of the NVRA and HAVA.

Although the district court properly rejected defendants' and intervenors' arguments for dismissal, it nonetheless erred in dismissing the case on the ground that an SVRL is not a record that "comes into the possession" of Secretary Benson and is thus not required to be disclosed pursuant to the CRA.[1] On appeal, defendants and intervenors rely on the

---

[1] "R.__, PageID# __" refers to the docket entry and page number of documents filed in the district court. "Defs. Br." refers to defendants-appellees Benson and Michigan's brief, "Ints. Br." refers to intervenors' brief, and "U.S. Br." refers to the United States' brief filed in this court.

same mistaken interpretation of the CRA. Their arguments lack merit and should be rejected. This Court should reverse the dismissal order and remand with instructions directing the district court to compel Secretary Benson to produce the unredacted version of Michigan's SVRL to the DOJ forthwith.[2]

## ARGUMENT

I.    **Defendants and intervenors are incorrect that the DOJ is not entitled to Michigan's SVRL.**

A.    **The DOJ did not waive argument on appeal.**

The DOJ has not waived its right to appeal the district court's decision. The issue before this court on appeal is the judgment and order of the district court, not the appeal of intervenors' argument. Fed. R. App. P. 3(c)(1)(B) ("The notice of appeal must . . . designate the judgment—or the appealable order—from which the appeal is taken."); *United States v. Bergrin*, 885 F.3d 416, 419 (6th Cir. 2018) ("We review judgments, not opinions."). Here, the district court correctly rejected every argument raised by defendants but then still dismissed the United States'

_____

[2] Intervenors seek a remand where they "would be entitled to discovery." Ints. Br. 17. But as described below, *see* pp. 7-8, *infra*, discovery would be beyond the scope of a CRA judicial review process.

- 2 -

Complaint based on a novel, and as the Court described it, "pedantic," argument raised by intervenors. Opinion, R.67, PageID# 909-910. The United States is entitled to appeal the district court's order and address the reasoning upon which it rested.

As acknowledged in defendants' brief, the United States argued at the district court that Title III of the CRA unambiguously permits the Attorney General to request Michigan's SVRL. Defs. Br. 21-22 (citing DOJ Mem. of Law, R.53, PageID# 668 n.1, 674; *see id.* at PageID# 696). The United States stated explicitly that the CRA allows the request of the SVRL, averring that "United States is entitled to copying and production of Michigan's unredacted SVRL under the plain language of Section 303 of the CRA." DOJ Mem. of Law, R.53, PageID# 676-677. It does not now raise any new arguments on appeal unrelated to the complaint filed in the district court. Nor does this appeal go "beyond the legal grounds offered by the district court." *See Swerchowsky v. U-Haul Int'l, Inc.*, No. 24-3007, 2025 WL 1671927, at *2 (6th Cir. Feb. 11), *cert. denied*, 146 S. Ct. 162 (2025). Nor is the United States raising any new evidence on appeal. *See Gap, Inc. v. GK Dev., Inc.*, 843 F.3d 744, 749 (8th Cir. 2016) (citation omitted) ("This court has 'addressed new arguments

raised on appeal where the new issue is encompassed in a more general argument previously raised and no new evidence is presented on appeal.'"). Thus, contrary to defendants' assertion, this Court is not called upon for a first review, but to review the district court's analysis.

**B.    The district court correctly determined its limited authority to weigh the substance of the basis and purpose of the DOJ's request.**

Defendants and intervenors are similarly incorrect that the district court had authority to conduct a deep inquiry into the factual basis of the DOJ's request. The district court, relying on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), concluded that the CRA does *not* give the court the authority to evaluate the substance of the basis and purpose of a request under the CRA. "[C]ourts lack the power 'to ascertain the factual support for, or the sufficiency, of the Attorney General's 'statement of the basis and the purpose therefor[e]' as set forth in the written demand.'" Opinion, R.67, PageID# 907-908 (quoting *Lynd*, 306 F.2d at 226).[3]

---

[3] Even if the court had authority to review the substance of the DOJ's demand, the court was also required to take all allegations in the DOJ's complaint as true at the motion to dismiss stage. Opinion, R.67, PageID# 894.

By declining judicial review of the substance of DOJ's demand, the district court followed established precedent. *See Weems v. McCloud*, 619 F.2d 1081, 1096 (5th Cir. 1980); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 at \*8 (D. Or. Feb. 5), *appeal pending*, No. 26-1231 (9th Cir. oral argument scheduled for May 19, 2026); *United States v. Gray*, 315 F. Supp. 13, 23 (D.R.I. 1970). *See also Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (finding only a basic statement alleging the potential violation of federal law need be made by the Attorney General to satisfy the CRA).

Further, the United States's written demand was statutorily sufficient, as the district court agreed. *See* Opinion, R.67, PageID# 908 n.3. Intervenors ask this Court to review the district court's holding on that issue and cite to *Niz-Chavez v. Garland*, 593 U.S. 155 (2021) (Ints. Br. 39-40), which they aver supports dismissal. But in *Niz-Chavez*, the Supreme Court construed an alien-removal statute referring to "a notice to appear" to mean providing the alien with one document containing all the statutorily required elements—hardly similar to requiring state officers with no personal rights at stake to respond to a demand by producing certain records they are statutorily obligated to preserve. 593

- 5 -

U.S. at 158, 172. And the Court's decision in *Niz-Chavez* largely hinged on the word "a." *Id.* at 161. Here, the statute refers to "demand in writing," not "a" demand in writing, and its use of "a" is in the context of the "statement of the basis and the purpose" that forms *part* of this demand. 52 U.S.C. 20703. Nothing in *Niz-Chavez* mandates that a complete written demand for an SVRL appear in only one document.

Intervenors also wrongly rely on *United States v. Powell*, 379 U.S. 48 (1964), to claim that an agency must prove at a hearing held under the standards of the Federal Rules of Civil Procedure that an investigation will be conducted pursuant to a "legitimate purpose" and the agency's inquiry must be relevant to that purpose (Ints. Br. 49 (citation omitted)). Intervenors also claim the *Powell* mandate is inconsistent with the United States' reliance on *Lynd*, 306 F.2d at 226. *Ibid.* However, *Powell*, which applied the Federal Rules of Civil Procedure to an Internal Revenue Service (IRS) administrative summons, is readily distinguishable. *Powell* prescribed appropriate protections for a taxpayer summoned before the IRS to testify and produce his own personal records. *See Powell*, 379 U.S. at 58. That is hardly similar to a state elections officer being asked to produce state

- 6 -

records in her custody by virtue of her official position. In *Powell*, the Supreme Court made the unremarkable observation that because Section 7604(a) of the Internal Revenue Code (IRC) "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18.

The district court here did not interpret *Powell* to afford it the authority to question the stated purpose of the DOJ to investigate Michigan's compliance with the NVRA and HAVA. Opinion, R.67, PageID# 908. Instead, the district court correctly concluded that, consistent with *Lynd*, "[c]ourts lack the power 'to ascertain the factual support for, or the sufficiency of, the Attorney General's "statement of the basis and purpose therefor" as set forth in the written demand.'" *Id.* at 907-908 (quoting *Lynd*, 306 F.2d at 226).

Further distinguishing this case from *Powell*, the Supreme Court explained in *Powell* that judicial inquiry was appropriate where asked to investigate an administrative summons under the IRC to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or

- 7 -

for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was permitted because it was specifically authorized by Section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). However, no similar language limits the Attorney General's authority to compel records under the CRA. *See* 52 U.S.C. 20701-20706. Nor does the CRA provide any process for officers of election to object to Title III proceedings being initiated against them. *See ibid.*

Moreover, even with language in the IRC limiting the production of records to those that are the subject of "[]necessary" investigations, the Supreme Court noted in *Powell*, 379 U.S. at 57, that strong deference is given to the Government to investigate, and the Government "'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)). *Powell* is completely consistent with *Lynd*, 306 F.2d at 226, and does not

subject records demands under the CRA to the statutory limits Congress included in the IRC.

## C. The DOJ had a valid basis and purpose for seeking Michigan's SVRL.

Title III of the CRA is a tool "to facilitate the investigation of [election] records before suit is filed." *United States v. Association of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960). As a pre-suit investigatory tool, the law empowers the Attorney General to gather evidence necessary to determine whether a lawsuit "should be instituted" and to use that evidence "in such cases if and when filed." *Lynd*, 306 F.2d at 228. The Civil Rights Division's sole purpose for requesting Michigan's SVRL is to assess the State's compliance with the voting laws that the Division enforces. *See* July 21, 2025 Letter, R.23-2, PageID# 214 & August 14, 2025 Letter, R.39-4, PageID# 501.

The district court held that the "CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." Opinion, R.67, PageID# 908. The district court further held that "the DOJ may use the CRA to investigate possible violations of the NVRA." *Id.* at PageID# 909 (citing *Morton Salt Co.*, 338 U.S. at 652 (holding that an administrative subpoena should be enforced "if the

- 9 -

inquiry is within the authority of the agency")). Both rulings were correct. To fully investigate Michigan's compliance with federal election law, the United States needs the unredacted SVRL based on HAVA's requirement that voter applicants provide either a driver's license number or the last four of their social security number. *See* 52 U.S.C. 21083(a)(5)(A).

The fundamental purpose of the CRA is an investigative tool of violations of Federal statutes, as the statement of Senator Keating in the Congressional Record reflects. *Coleman*, 313 F.2d at 868:

> The language added by the House Judiciary Committee in section 303 that the Attorney General's demand "contain a statement of the basis and the purpose therefor" means only that the Attorney General identify in a general way the reasons for his demand. Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating possible violations of a Federal statute. No showing even of a prima facie case of a violation of Federal law need be made. Mr. President, I believe that a majority of the Senate shares my understanding of the meaning of these provisions, but I thought it was important to make the record on this point abundantly clear.

As the district court correctly concluded, the DOJ's articulated request under the CRA put Michigan "on notice" of the basis and purpose of [its] request, which [the court found] sufficient to comply with the CRA. Opinion, R.67, PageID# 908 n3. Even former DOJ Attorneys admit that the CRA is a proper vehicle for "investigating or proving a potential legal

- 10 -

violation in a particular jurisdiction." Former DOJ Amicus Br. 24. That is exactly the course of action the current DOJ is taking in Michigan and other States: investigating potential HAVA and NVRA violations.

### D. The SVRL, comprised of voter information, naturally "comes into possession" of state election officials.

As discussed in the United States' Opening Brief (at 13), Section 301 of the CRA requires "[e]very officer of election" to, for a period of twenty-two months of a federal election "retain and preserve . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701. The plain meaning of the phrase "come into his possession" denotes a temporal qualification, not an exclusion of self-generated documents, despite intervenors' arguments. *See* Ints. Br. 30 (citation omitted).

When a statute does not itself define a term, courts "ask what that term's ordinary, contemporary, common meaning was" at the time of enactment. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433-434 (2019) (citation and internal quotation marks omitted). Thus, the contemporaneous dictionary definitions cited by the United States are persuasive—far more so than the modern list of related words on which

intervenors rely. *Compare* U.S. Br. 25-27, *with* Ints. Br. 22. Indeed, the United States is in good company in citing contemporaneous dictionary definitions. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 657-658 (2020) (consulting contemporaneous dictionary definitions); *Bondi v. Vanderstok*, 604 U.S. 458, 470 (2025) (same); *Keen v. Helson*, 930 F.3d 799, 802-803 (6th Cir. 2019) (same).

Both the district court and intervenors point to a modern dictionary that defines "receive" as "to come into possession of or get from some outside source." Opinion, R.67, PageID# 910 (quoting *Receive*, *Black's Law Dictionary* (11th ed. 2019)); Ints. Br. 22. But to the extent non-contemporaneous definitions of entirely different terms have any persuasive value, this definition supports the United States' reading—if "come into possession of" and "get from some outside source" were synonymous, they would not be joined by the disjunctive "or."

Despite intervenors' assertion that Michigan's SVRL is beyond the scope of the CRA because it is "created" and does not "come into [the] possession" of Michigan election officials (Ints. Br. 32), the Supreme Court has previously held in Freedom of Information Act cases that, when the agency is in control of the materials at the time the request is

- 12 -

made, the materials have come into the agency's possession in the course of official duties. *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989). Thus, the Supreme Court has made clear that an agency record can be both created by the agency *and* have come into the agency's possession—coming into possession of material refers to *when*, not *how*, the possession began. *See ibid.* Here, because defendants were in control of Michigan voter information at the time the request was made for the SVRL, the individual records were within the agency's possession in the form of the SVRL. *See ibid.*; Ints. Br. 30. To suggest that the State itself *generated* the voting information of millions of Michiganders rather than *stored*, in one central digital file, what came into its possession as many individual registration records is puzzling at the very least. Voter information, at one point or another, came into the possession of defendants.

In reaching a contrary interpretation that the SVRL is in the possession of defendants, the district court relied on *Honeycutt v. United States*, 581 U.S. 443 (2017). Opinion, R.67, PageID# 910. But *Honeycutt* dealt with the meaning of the term "obtained," not "come into possession." 581 U.S. at 449-450. Regardless, *Honeycutt* noted that one definition of

"obtain" is "[t]o come into the possession or enjoyment of (something) by one's own effort, or by request; to procure or gain, as the result of purpose and effort." *Id.* at 449 (alteration in original) (quoting 7 *Oxford English Dictionary* 37 (1933)). Even under this definition, an officer of election who uses his own efforts to compile voter data "comes into possession" of the SVRL.

Further, the United States' temporal interpretation gives full effect to every word in Section 301. U.S. Br. 14. Intervenors argue that the phrase "come into his possession" is surplusage if used to denote only a temporal requirement. Ints. Br. 23-24. It is not. Absent that phrase, every officer of election, whether or not in current possession of relevant records, would have a duty to preserve those records, potentially making each officer vicariously liable for the unknown missteps of others. Congress explicitly foreclosed this result, rather than relying on judicial construction. This phrase is not merely a nod to technical grammar (*see* Ints. Br. 30), but an example of careful drafting, *see Rotkiske v. Klemm*, 589 U.S. 8, 13-14 (2019) ("We must presume that Congress says in a statute what it means and means in a statute what it says there." (citation and internal quotation marks omitted)).

- 14 -

Instead, it is intervenors who would read out part of the statute—namely, the phrase "relating to," which broadens the scope of "records and papers" to cover self-created records and not just voter applications and registrations generated by third parties. This court should reject intervenors' interpretation of "comes into possession" as it is an incorrect interpretation. Ints. Br. 28-33.

**E.    A dynamic document is not an altered document.**

Intervenors argument that a dynamic document is an altered document and thus not under the authority of the CRA is unpersuasive. Intervenors argue that because Michigan's SVRL must be updated, it is an "altered" document and is not subject to the CRA. Intervenors provide scant and unrelated cases to support their argument.

The chief election officer is required to retain the voter information for a state's registered voters under the CRA. 52 U.S.C. 20701. In addition, CRA Section 20702 punishes any person who "willfully steals, destroys, conceals, mutilates, or alters" any of the election related records required by Section 20701. Intervenors contend that because Secretary Benson is required to update the list under the NVRA and HAVA, she is "altering" the list. Ints. Br. 18. Obviously, updating the list is

- 15 -

supplementing it, not "willfully" altering it in a punishable sense. If, for example, we consider how records were retained and preserved before digital storage technology was available, we can easily recognize that inserting a new hardcopy voter-registration card or document in a binder-file that contains all the hardcopy voter-registration cards or documents of a particular jurisdiction is updating the file. Far from altering voter records, updating the binder-file in this way is the very means of preserving the voter records, and, of course, the entire binder-file is itself a "record[] . . . *relating to* any . . . registration," 52 U.S.C. 20701 (emphasis added), just as a state's SVRL is such a record.

Intervenors' argument is that Secretary Benson's compliance with the retention-of-records requirement of 52 U.S.C. 20701 would force her to violate 20702. Penalizing an election official for keeping a voter registration record would be absurd and turn the CRA on its head. It would also contravene Section 11 of the NVRA, providing that "[t]he rights and remedies established by this section are *in addition* to all other rights and remedies provided by law." 52 U.S.C. 20510(d)(1) (emphasis added).

In supporting the argument that the SVRL is an altered and dynamic document outside the scope of the CRA, intervenors cite *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020), stating "'[b]ecause alternative interpretations consistent with the legislative purpose are available' the Court should reject DOJ's expansive reading of title III and its 'absurd results.'" Ints. Br. 21 (citation omitted). This is an ill-fitting text. *Donovan* was a consumer debt case, where the disclosure of information at issue was on the front of mailing envelopes, and whether that information was subject to the "benign language" exception. *Donovan*, 983 F.3d at 254 (citation omitted). Here we have no such issue. The voter information contained in the SVRL will not be on billboards, mailing envelopes, or otherwise publicized; rather, it is sought to enforce the law. Moreover, the fundamental rules governing the Fair Debt Collection Practices Act at issue in *Donovan* are not applicable to those that govern the CRA.

> **F.    The DOJ's authority under the CRA to investigate violations of the NVRA and HAVA is not limited to racial discrimination.**

Defendants are incorrect that the *only* time the CRA can be used is to investigate racial discrimination. Rather, the language of Title III of

- 17 -

the CRA was expressly broad. The district court also disagreed with defendants' assertions on this topic. *See* Opinion, R.67, PageID# 908. ("[T]he CRA's text includes no such limitation, and courts 'have no warrant to elevate vague invocations of statutory purpose over the words Congress chose.'" (citation omitted)). The district court agreed with the basic idea that the CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights. *Ibid.* This is true, even in light of the circumstances surrounding the enactment of the CRA, where Congress had to deal with different localities ever-evolving plans to disenfranchise voters.

Congress made clear in the CRA where it intended a remedy to be limited to racial discrimination. *See* Section 601 of the CRA, Public Law No. 86-449, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101). That is consistent with express limitations Congress made to remedies in other civil rights statutes. *See, e.g.*, 42 U.S.C. 2000e-2 (prohibiting employment practices "because of such individual's race, color" in Title VII of the CRA of 1964); 52 U.S.C. 10301-10306, 10309 (prohibiting discrimination "on account of race or color," or language minority status in the Voting Rights Act of

1965); 42 U.S.C. 3604-3606, 3617 (prohibiting discrimination in housing or rentals "because of race, color, . . . or national origin" in the Fair Housing Act of 1968). No such language limiting Title III of the CRA to voting rights violations based upon racial discrimination appears anywhere in the statutory text. *See* 52 U.S.C. 20701-20706.

As an example, in *United States v. Ward*, 349 F.2d 795 (5th Cir. 1965), a Louisiana parish registrar implemented discriminatory practices by unequally administering voting tests to black voter applicants and new white voter applicants. *Id.* at 799. The registrar also implemented a "citizenship test" among other requirements that affected many. *Id.* at 805. The Fifth Circuit ordered a variety of changes for the parish registrar that would remedy the unequal treatment of black and new white voter applicants. *Id.* at 805-807. (The Fifth Circuit's order was later amended in minor part by *United States v. Ward*, 352 F.2d 329 (5th Cir. 1965).).

In *United States v. Atkins*, 323 F.2d 733 (5th Cir. 1963), an Alabama county registered to vote numerous unqualified white voters and failed to register qualified black voters. *Id.* at 736. Despite a prohibition against applicants having assistance to complete the voter application, 47% of

- 19 -

white registered voters received assistance in completing the application, often with the help of the registrar. *Ibid.* Omissions or errors in the applications were often overlooked for white voter applicants, but black voter applicants were rejected for the same mistakes. *Id.* at 738. Yet "both whites and [blacks] were rejected for seemingly trivial errors." *Ibid.* The registrar was ordered to cease rejecting applicants for criteria not specified in the Constitution or laws of Alabama and keep records on voter applicant rejections. *Id.* at 745.

Another type of voter discrimination that the CRA had to cover were "grandfather clauses" such as those found in *Guinn v. United States*, 238 U.S. 347 (1915) and *Lane v. Wilson*, 307 U.S. 268 (1939). In *Guinn* and *Wilson*, state laws permitted certain individuals to vote if they, or their "grandfathers" had been previously registered. *Wilson*, 307 U.S. at 276-277; *Guinn*, 238 U.S. at 364-365. These laws were ultimately held to violate the Fifteenth Amendment as these laws unlawfully suppressed black voters who had not, nor had their ancestors been eligible to vote. *Wilson*, 307 U.S. at 276-277; *Guinn*, 238 U.S. at 364-365.

Because of the insidious nature of racial prejudice, not one specific method of voter disenfranchisement was consistently used. Thus, Title

III of the CRA, which is an investigatory tool, needed to be built broadly to combat disenfranchisement generally. In order for the DOJ to properly investigate voting rights cases, the CRA needed to be a large bucket.

Although the problem at the time of the CRA's enactment was racial discrimination in voting, that circumstance does not limit the application of the CRA to only racial discrimination investigations. As in *Ward*, while there was a large discrepancy when it came to black voters, there was also discriminatory behavior against new-applicant white voters. *Ward*, 349 F.2d at 800-801. The same was true in *Atkins*, 323 F.2d at 738.

Therefore, despite defendants' contentions, while the NVRA and HAVA require "nondiscriminatory" list maintenance, 52 U.S.C. 20507(b) and 21083(a)(1)(A), the language of the CRA does not limit the Attorney General's authority to invoke the CRA to obtain a state's SVRL only when racial discrimination is alleged. By its plain terms, the statute is not so cabined.

## II.   The DOJ's demand for an electronic, unredacted copy of Michigan's SVRL does not violate federal privacy laws.

In dismissing the DOJ's CRA claim, the district court did not reach defendants' privacy-related arguments. Importantly, defendants concede

that this Court should not address this argument should it reverse the district court but should remand for the district court to address the federal privacy issues in the first instance. Defs. Br. 46. Defendants nevertheless argue that federal privacy laws prohibit the DOJ from collecting the sensitive information of Michigan voters. Defs. Br. 58-66; Ints. Br. 43-47. These arguments are meritless.

### A. The Privacy Act does not warrant dismissal of the DOJ's CRA claim.

Section 3 of the Privacy Act provides, with certain exceptions, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. 552a(b) (the non-disclosure provision). By its terms, Section 3 only applies to disclosures of personal information by federal agencies and does not apply to state and local entities at all. Accordingly, as the DOJ argued in its Opening Brief (at 38-40), the non-disclosure provision does not prohibit the Attorney General's demand to Michigan that it turn over an electronic, unredacted copy of its SVRL or Michigan's compliance with that demand.

Defendants do not dispute that the non-disclosure provision does not apply here. Instead, they argue that the Privacy Act also imposes requirements regarding an agency's *maintenance* of a system of records, *see* 5 U.S.C. 552a(e) (the maintenance provisions), that the DOJ's demand violates, warranting dismissal. Defs. Br. 59-63; Ints. Br. 44-47. These arguments lack merit.

First, defendants argue (Defs. Br. 60-61) that the maintenance provisions prohibit the DOJ from maintain[ing]—defined as including "maintain[ing], collect[ing], us[ing], or disseminat[ing]," 5 U.S.C. 552a(a)(3)—a voter registration list that "describe[es] how an[] individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. 552a(e)(7). This argument overlooks that this case is on appeal from the district court's grant of a motion to dismiss and defendants have not alleged the DOJ is violating the Privacy Act. This Court has observed that the Privacy Act "is an attempt to strike a balance between the government's need to collect and maintain information and the privacy interests of the persons to whom such

information pertains." *Beaven v. United States Dep't of Just.*, 622 F.3d 540, 549 (6th Cir. 2010) (citations and internal quotation marks omitted). The appropriate balance between the First Amendment rights of individual voters and the DOJ's need to collect information to investigation violation of federal election laws such as HAVA and the NVRA, and the applicability of any exceptions to the maintenance provision's coverage, are best left to another case after the records are produced and in the possession of a federal agency but only if a well-pled violation of the Privacy Act is actually alleged. *Cf. Karriem v. Barry*, 743 F.2d 30, 40 n.63 (D.C. Cir. 1984) ("In first amendment jurisprudence, . . . the development of a complete factual record is critical to the task of striking a balance between competing interests."). After all, the CRA already requires privacy protection of the information sought under the CRA. 52 U.S.C. 20704.

Second, defendants argue that the DOJ failed to comply with the maintenance provision's requirement that it publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records," 5 U.S.C. 552a(e)(4). Defs. Br. 61-63; Ints. Br. 45-47. As the DOJ argued in its Opening Brief (at 40), however, an

- 24 -

electronic, unredacted copy of Michigan's SVRL is covered by the existing SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017).

Defendants respond that the unredacted SVRL does not fall under the SORN's coverage for "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47,611. This argument also ignores this appeal's procedural posture. The DOJ alleged in its Complaint that "the statutes cited [in the SORN] for routine use include the CRA, NVRA, and HAVA" and that it demanded the unredacted SVRL "to determine Michigan's compliance with both the NVRA's and HAVA's voter list maintenance requirements." Complaint, R.1, PageID# 13, 15. These allegations, which must be accepted as true and construed in the light most favorable to the DOJ, *see Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020), render the DOJ's claim that Michigan's SVRL is a record "relating to enforcement of civil rights

laws" covered by the SORN facially plausible, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Intervenors' contention that "the SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level" (Ints. Br. 47 (citation omitted)), incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. *See* 5 U.S.C. 552a(e)(4) (listing what each "notice shall include").

**B.    The E-Government Act and Driver's Privacy Protection Act do not prevent the DOJ from obtaining an electronic, unredacted copy of Michigan's SVRL.**

Defendants argue that the DOJ's demand violated the E-Government Act because the DOJ failed to conduct a privacy impact assessment (PIA) required by the statute before initiating the collection of personal voter information. Defs. Br. 63-64; *see* E-Government Act of 2002, Pub. L. No. 107-347, 208, 116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note). This argument should be rejected for the reasons set forth in DOJ's Opening Brief (at 40-43).

Defendants also argue that the DOJ's demand violated the Drivers' Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq.* Defs. Br.

64-65. This argument also fails for the reasons the DOJ sets forth in its Opening Brief (at 43-44). Defendants' sole response is that DOJ failed to establish that its demand is exempted from the DPPA's coverage because it "has not plausibly alleged that it will 'use' the millions of personal voter records to assess Michigan's compliance with NVRA or HAVA." Defs. Br. 65.

Defendants' argument misses the mark. The absence of identifiers required by HAVA (as in a redacted SVRL) would hamper the DOJ's ability to make findings as to the validity of voter roll registrations and thus perform its role of NVRA compliance. Also, since HAVA requires states to collect the identifiers, the DOJ cannot fulfill its obligation to investigate HAVA without the unredacted voter rolls to confirm the identifiers are present. The contrary view of the district court in *United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *19 (C.D. Cal. Jan. 15), *appeal pending*, No. 26-1232 (9th Cir. oral argument scheduled for May 19, 2026), which Michigan cites, does not undermine the DOJ's position. That court relied on a Seventh Circuit decision that "emphasize[d]" that it "d[id] not read 'use'" in the DPPA "to mean 'necessary use,' nor d[id it] require" those subject to the DPPA "to adopt

- 27 -

some form of 'best practices' not commanded by the statute" to narrow permissible disclosures as much as possible. *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 606 n.12 (7th Cir. 2012).

**C. The DOJ is entitled to an unredacted SVRL.**

Intervenors and defendants cite *Public Interest Legal Foundation (PILF) v. Benson* to justify the redaction of information requested by the United States. 136 F.4th 613 (6th Cir. 2025). However, intervenors[4] fail to acknowledge the distinction between the Attorney General requesting records under federal authority to fulfill a valid basis and purpose of enforcing federal statutes and public interest legal organizations like PILF requesting the publicly available version of a state's SVRL. *See, e.g.*, *PILF v. Bellows*, 92 F.4th 36 (1st Cir. 2024), *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019). First neither the privacy related provisions of the CRA nor the Privacy Act apply to PILF. Thus, in handing over private information to the general public, Michigan would undoubtedly have legitimate privacy concerns that may prohibit disclosure. But public interest organizations and the general public do

---

[4] Defendants concede that "DOJ's standing to request voting records may be different than members of the public." Defs. Br. 38.

not have the federal mandate to enforce the law. 52 U.S.C. 20510, 21111. The general public does not have authority to keep watch over states' election procedures to prevent ineligible voters from voting and eligible voters from being disenfranchised. The Attorney General does.

Section 303's language provides that "[a]ny record or paper required by [Section 301] to be retained and preserved shall" upon written demand by the Attorney General stating the basis and purpose, "be made available for inspection, reproduction, and copying." 52 U.S.C. 20703. "The incorporated standard of [Section 301] is sweeping." *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). The question is only "open for its determination" by the Court if "a genuine dispute . . . arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers . . . relating to any . . . act requisite to voting.'" *Ibid.* (second and third omissions in original).

Nevertheless, defendants ask the Court to legislate limitations conspicuously absent from Title III by limiting the United States to only the redacted, publicly available SVRL. Defs. Br. 39. The statutory text of Title III itself makes clear that the records that must be produced under the CRA are not limited to only those that are public. Section 304 of the

CRA explicitly requires the nondisclosure of records produced to the Attorney General under the Act:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. 20704. Section 304's privacy protection only has meaning if the records covered by the CRA include non-public information. Yet, defendants and intervenors ignore the plain language of Section 304 and ask the Court to do the same by rewriting the CRA to exclude all non-public records and information. Congress rejected the position that they advance by its broad reference to "all records and papers." 52 U.S.C. 20701. In sharp contrast, where Congress intended to require a smaller class of records to be produced in a statute, it has said so. *See* 52 U.S.C. 20507(i) (providing in the NVRA that voter records to be produced to the public for assessment of list maintenance "shall include lists of the names and addresses" of voters sent confirmation notices and any responses). To put it succinctly: Section 301 means what it says in requiring production of "all records and papers" relating to registration to vote in a federal

election, including Michigan's SVRL. 52 U.S.C. 20701. As *Lynd* made clear, "All means all." 306 F.2d at 230.

## III. All unfounded allegations of the DOJ's bad faith in its stated purpose should be disregarded.

To the extent that the basis and purpose for DOJ's request is reviewable, this Court should reject speculative allegations as to the "true purpose" of the DOJ's request. In doing so, intervenors strain credulity. This is exemplified as intervenors omit key portions of quotes to support their argument. Intervenors omit a key phrase in *Utility Air Regulatory Group* as: "when 'an agency claims to discover in a long-extant statute an unheralded power,' courts 'typically greet its announcement with a measure of skepticism.'" Ints. Br. 37 (citing *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). The correct quote appears as: "When an agency claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,' we typically greet its announcement with a measure of skepticism." *Utility Air Regul. Grp.*, 573 U.S. at 324 (citation omitted). Defendants and intervenors allegations only deflect from Michigan's obligation to provide its SVRL to the DOJ.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Jocelyn Benson to immediately produce the requested unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Sixth Circuit Rule 32(b) because it contains 6500 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: April 20, 2026

## CERTIFICATE OF SERVICE

On April 20, 2026, I filed this foregoing reply brief with the Clerk of the Court for the Sixth Circuit Court of Appeals by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney
