No. 26-1225

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of
Michigan; and STATE OF MICHIGAN,

*Defendants-Appellees*

MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD
DUQUETTE; and KEELY CRIMANDO,

*Intervenors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

**INTERVENORS-APPELLEES' OPPOSITION TO UNITED STATES'
MOTION TO EXPEDITE PETITION FOR REHEARING EN BANC**

Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Tel.: (202) 968-4490
abranch@elias.law

Sarah Prescott
**SALVATORE PRESCOTT
PORTER & PORTER**
105 E. Main St
Northville, MI 48167
Tel.: (248) 679-8711
prescott@spplawyers.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................... ii

INTRODUCTION & BACKGROUND ................................................................1

ARGUMENT .......................................................................................................4

I.    DOJ's baseless speculation about election security fails to show any real-world risk of irreparable harm to any party or the public. ..............................4

II.   Even if DOJ prevails, it cannot request any systematic changes to voter rolls until after the November election, undercutting any need to expedite............5

III.  DOJ's continued failure to act expeditiously throughout this litigation further confirms that expedited proceedings are not warranted now. .........................8

CONCLUSION ...................................................................................................10

i

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page(s)**

*Arcia v. Fla. Sec'y of State,*
  772 F.3d 1335 (11th Cir. 2014) ..................................................................................6

*Grassi v. Grassi,*
  No. 24-3291, 2024 WL 4715614 (6th Cir. Nov. 5, 2024) ......................................4

*Nader v. Land,*
  115 F. App'x 804 (6th Cir. 2004) ..............................................................................9

*Pub. Int. Legal Found. v. Benson,*
  136 F.4th 613 (6th Cir. 2025) ....................................................................................5

*United States v. Amore,*
  No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026).... 2, 9

*United States v. Bellows,*
  No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) ...............2

*United States v. Clarke,*
  573 U.S. 248 (2014) ...................................................................................................7

*United States v. DeMarinis,*
  No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026), .........................2

*United States v. Fontes,*
  No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026)......1

*United States v. Galvin,*
  No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ...............1, 9

*United States v. Oregon,*
  No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................1, 7

*United States v. Scanlan,*
  No. 25-CV-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026) ..........................2

*United States v. Schmidt,*
  No. 2:25-CV-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026) ...............2

*United States v. Weber*,
   816 F. Supp. 3d 1168 (C.D. Cal. 2026)...............................................................1, 7

*United States v. Wis. Elections Comm'n*,
   No. 3:25-CV-1036-JDP, 2026 WL 1430354 .......................................................2

**STATUTES**

52 U.S.C. § 20507 ............................................................................................4–6

52 U.S.C. § 21083 ..............................................................................................4

**RULES**

Fed. R. App. P. 27(a)(3) ....................................................................................1

## INTRODUCTION & BACKGROUND[1]

The Department of Justice's declaration that the "security and sanctity" of this fall's elections hinge on it receiving an "immediate" favorable ruling in this matter is preposterous. Mot. at 2. One need only look at what this case is actually about to see through DOJ's hyperbole. This is one of 31 similar lawsuits commenced by DOJ over the past year as part of its unprecedented campaign to amass highly personal, private information about every registered voter in the country. DOJ claims authority for this power grab under the Civil Rights Act of 1960 ("CRA")—a Civil Rights Era statute that, until DOJ's recent wave of litigation, had never been misused as part of a nationwide dragnet to collect the private information of millions of voters. And yet, the nation has long enjoyed "secure" elections, DOJ's scaremongering notwithstanding. Even now, courts have unanimously rebuffed DOJ's demands—the panel below affirmed one of *eleven* district-court orders dismissing DOJ's claims for States' unredacted voter lists so far.[2] No court has thus far agreed with DOJ's

---

[1] The clerk directed the State Defendants to file an opposition to DOJ's motion to expedite by July 10, 2026, at 5:00 p.m. Intervenors-Appellees were not named in that order but file this opposition by the same deadline. *See* Fed. R. App. P. 27(a)(3) ("Any party may file a response to a motion.").

[2] *See United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Fontes*, No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026),

erroneous view of its own power, and none have found that the security of elections will be in jeopardy if DOJ is unable to seize the private voter information that it seeks. In short, the purported "emergency" is a figment of DOJ's imagination, and its motion to expedite should be denied and its petition for rehearing resolved in the normal course.

Not only are DOJ's theories unsound, it is already too late for it to achieve its ultimate aim of forcing the removal of Michigan voters from the rolls before November: federal law prohibits the systematic cancellation of voter registrations in the 90 days ahead of an election. DOJ knows this—in fact, when it sought to expedite the underlying appeal back in February, it pointed to this clear and unequivocal prohibition in federal law and calculated **August 4** as the drop-dead deadline for the voter removals it seeks. 1st Mot. to Expedite at 15, C.A.R. 6-1. That date is now only weeks away. There is simply not time to thoughtfully consider the question of

_____

*appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wis. Elections Comm'n*, No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026), *appeal filed*, No. 1:25-cv-03934 (D. Md. July 6, 2026); *United States v. Schmidt*, No. 2:25-CV-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026), *appeal docketed*, No. 26-2684 (3d Cir. July 7, 2026); *United States v. Scanlan*, No. 25-CV-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026).

whether this matter should be reheard en banc, much less for this Court to hear and decide the matter and remand it, have the State then turn over the private data of millions of Michigan voters, and then for DOJ to be able to analyze that data before attempting to seek removals of voters from the voter registration rolls before the November election. Thus, even if the Court were to ultimately decide that the matter should be heard en banc, there is no sound basis for expediting that decision, because DOJ's own theory for why expedition is necessary runs headlong into the reality that, at this point in the election calendar, it is simply too late.

And while DOJ now asks this Court and the parties to rush at a breakneck pace to brief and decide whether to convene the entire Circuit to rehear its arguments (which, again, have been uniformly rejected by twelve federal courts so far), DOJ itself has not acted with urgency in pursuing this matter. That in and of itself provides ample reason to deny the motion to expedite. Far from taking any steps to expedite the case in the district court, DOJ moved to stay, accepted a leisurely briefing schedule for motions to dismiss, and then failed to promptly appeal when those motions to dismiss were granted. Even now, it waited 14 days to petition for a rehearing en banc—yet proposes to cut Appellees' time to respond to just seven days. These are not the actions of a litigant that truly believes expedition is warranted. For these reasons and others, the Court should reject DOJ's motion to expedite, just as

3

the Seventh and First Circuits have recently rejected DOJ's similar motions to expedite its appeals of orders dismissing DOJ's parallel claims in those circuits.

## ARGUMENT

**I.     DOJ's baseless speculation about election security fails to show any real-world risk of irreparable harm to any party or the public.**

DOJ claims that "prompt resolution" of this petition is necessary because otherwise "irreparable harm *will* occur to Michigan voters" and other States. Mot. 7 (emphasis added). But that assertion is entirely unsupported; indeed, DOJ does not even explain *what* harm might befall States or voters absent expedited resolution. DOJ's enigmatic theory of irreparable harm appears to be that voter rolls in Michigan could "*potentially*" include ineligible voters. Mot. 2 (emphasis added). But such a "bald assertion," based on "mere speculation," does not come close to demonstrating irreparable harm. *Grassi v. Grassi*, No. 24-3291, 2024 WL 4715614, at *4 (6th Cir. Nov. 5, 2024).

DOJ's theory of irreparable harm also suffers from at least two fundamental legal misconceptions concerning *who* is responsible for conducting voter list maintenance and *what* federal law requires with respect to voter-roll hygiene. Voter list maintenance is a responsibility of the *States*, not the federal government. *See* 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(1). And federal law does not require States— and certainly not DOJ—to ensure that their "voter rolls are composed solely of individuals who are eligible [to] vote," as DOJ claims. Mot. 6. To the contrary, to

*protect* voters against the irreparable harm that occurs when they are removed in error when list maintenance is conducted in a rushed or haphazard manner, the National Voter Registration Act ("NVRA") *forbids* States from removing certain ineligible voters—namely those who have moved away—absent express voter consent or the passage of several election cycles. *See* 52 U.S.C. § 20507(d)(1). The NVRA therefore expressly contemplates that at least *some* residually ineligible voters will remain on the rolls for some period of time.

Further, the statute only requires that the States make "*reasonable* effort[s]" to remove certain categories of ineligible voters from their rolls. *Id.* § 20507(a)(4) (emphasis added). Those efforts "need not be perfect, or even optimal," just "within the bounds of rationality." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025). As this Court affirmed just last year, "Michigan's multi-layered efforts are more than reasonable." *Id.* at 628. In light of that holding, DOJ cannot even muster enough to allege that Michigan has fallen short of its modest list-maintenance obligations, never mind that it is doing so in a manner that constitutes *irreparable harm* to any party or the public or that would call into question the legitimacy of the election results this November.

## II.    Even if DOJ prevails, it cannot request any systematic changes to voter rolls until after the November election, undercutting any need to expedite.

DOJ claims expedited resolution of its petition for rehearing en banc is warranted because it "successfully moved to expedite the panel consideration of this

5

case." Mot. 8. But DOJ entirely ignores that the basis for its motion to expedite in February was that "Michigan must finish removing nonvoters from its rolls in systemic processes ***by August 4, 2026***." 1st Mot. Expedite at 15, C.A.R. 6-1 (emphasis added). That is because the NVRA bars "any program . . . to systematically remove" voters from a State's rolls within 90 days of a primary or general election, 52 U.S.C. § 20507(c)(2)(A), which would include the systematic removal program DOJ apparently hopes to force on Michigan after seizing the State's unredacted voter list and comparing it to federal databases. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (holding that the NVRA bars removals within 90 days of an election based on "a mass computerized data-matching process to compare the voter rolls with other state and federal databases"). Thus, in its first motion to expedite, DOJ sought a panel decision well *before* the 90-day bar on removals began on August 4, which it received.

In fact, since Michigan has a primary election on August 4, the 90-day bar against systematic voter removals began on May 6, 2026, and will continue without interruption through the conclusion of the November general election. Thus, DOJ is *currently* barred from requesting that Michigan systematically remove any potentially ineligible voters from its SVRL under federal law before the November election. There is simply no schedule upon which this Court could consider and

6

decide the en banc petition that would give DOJ the relief that it seeks in advance of this year's elections.

Even if this Court were to ultimately conclude that DOJ adequately stated a CRA claim and the decision below was in error, that would not automatically result in judgment for DOJ. Remand proceedings would be necessary to resolve underlying factual disputes, including as to DOJ's intended uses for the unredacted voter lists. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (recognizing that recipients of government document demands are entitled to discovery into the government's motive when they can "make a showing of facts that give rise to a plausible inference of improper motive"). There is serious reason to doubt the veracity of DOJ's stated motive for demanding States' unredacted voter lists, as several courts have already noted. *See, e.g.*, *Oregon*, 2026 WL 318402, at *11 (after dismissing DOJ's claims, noting the court's "serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data"); *Weber*, 816 F. Supp. 3d at 1184 (finding DOJ's stated purpose in seeking California's unredacted voter list was "contrived" and "pretextual").

And even if DOJ prevailed on remand and through any further appeals after summary judgment or trial, its only relief would be to obtain and inspect Michigan's unredacted voter list. Even assuming that DOJ then concluded, after reviewing that list, that it has a *further* claim against Michigan for not complying with the NVRA,

7

DOJ would then need to bring a *new* lawsuit alleging a substantive list-maintenance violation, and then prevail through any appeals in that new case, before Michigan could be ordered to undertake additional, unspecified list-maintenance efforts. And then Michigan would need time to actually implement any such removal program, subject to the constraints on voter removals in the NVRA, including the 90-day quiet period. In short, at this point, it is not feasible under any set of circumstances for DOJ to compel removal of voters from the rolls before the November election and, accordingly, there is no basis to rush to resolve the petition.

### III. DOJ's continued failure to act expeditiously throughout this litigation further confirms that expedited proceedings are not warranted now.

DOJ's lackadaisical pace in this litigation provides an independent reason to deny the motion to expedite. DOJ took no steps to expedite the district court proceedings. Quite to the contrary, a week after filing its Complaint, DOJ moved to stay the case for an indefinite period of time, citing the government shutdown. DOJ's Mot. to Stay, R.8. The only reason the case continued to move forward is because the district court *denied in part* DOJ's stay request. Order, R.9. DOJ then consented to multiple requests by the State Defendants to extend their responsive pleading deadline. R.11; R.19. As a result, the State Defendants' motion to dismiss was not filed until November 26, over two months after the suit began. R.38. DOJ then waited a full 30 days to file its opposition. *See* R.53. And after the district court issued its order dismissing the case on February 10, DOJ took more than two weeks

to notice its appeal. R.70. This Court has previously denied motions to expedite where the party seeking expedition has not itself proceeded expeditiously. *See, e.g.*, *Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004).

It gets worse, however, because DOJ delays even now as it seeks expedition. DOJ waited 14 days after the panel's decision to request a rehearing en banc—yet asks this Court to cut short its own time for review and afford Appellees' only seven days to respond (in the event the Court calls for a response). DOJ makes no effort to explain how this lopsided allotment comports with its supposed need for expedition.

DOJ's combination of procrastinating and then demanding that the courts and the other parties hurry up is part of a pattern. When the district court in Massachusetts dismissed DOJ's substantially identical suit, DOJ waited *53 days* to notice the appeal. *See Galvin*, 2026 WL 972129, at *6; Notice of Appeal, *Galvin*, No. 1:25-CV-13816-LTS (D. Mass. June 1, 2026), ECF No. 95. It similarly waited *47 days* to appeal the dismissal order in Rhode Island. *Amore*, 2026 WL 1040637, at *6; Notice of Appeal, *Amore*, No. 1:25-CV-00639-MSM-PAS (D.R.I. June 3, 2026), ECF No. 53. Nevertheless, DOJ moved to expedite both appeals, fearmongering about the exact same purported emergency that it claims requires expedition here. Appellant's Mot. to Expedite, *Galvin*, No. 26-1657 (1st Cir. June 12, 2026); Appellant's Mot. to Expedite, *Amore*, No. 26-1665 (1st Cir. June 17, 2026). The First Circuit rejected those motions to expedite, as did the Seventh Circuit when confronted with yet

9

another materially identical motion to expedite. *See* Order, *United States v. Galvin*, No. 26-1657; *United States v. Amore*, No. 26-1665; *United States v. Bellows*, No. 26-1676 (1st Cir. July 6, 2026); Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026). This Court should do the same.

## CONCLUSION

DOJ's motion to expedite should be denied and the petition decided in the ordinary course.


July 10, 2026                                          Respectfully submitted,

                                                      *s/ Aria C. Branch*
Sarah Prescott                                        Aria C. Branch
**SALVATORE PRESCOTT**                                Joshua C. Abbuhl
**PORTER & PORTER**                                   Branden D. Lewiston
105 E. Main St.                                       Derek A. Zeigler
Northville, MI 48167                                  **ELIAS LAW GROUP LLP**
Telephone: (248) 679-8711                             250 Massachusetts Ave NW
prescott@spplawyers.com                               Suite 400
                                                      Washington, DC 20001
                                                      Telephone: (202) 968-4490
                                                      abranch@elias.law
                                                      jabbuhl@elias.law
                                                      blewiston@elias.law
                                                      dzeigler@elias.law

                                                      *Counsel for Intervenors-Appellees*

10

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,507 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared in Times New Roman 14-point font using Microsoft Word version 365.

*s/ Aria C. Branch*
Aria C. Branch

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, I electronically filed the above document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF System, which will provide electronic copies to counsel of record. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*s/ Aria C. Branch*
Aria C. Branch
