No. 26-1225

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

    Defendants-Appellees,

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

    Intervenors-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Hala Y. Jarbou

**DEFENDANTS-APPELLEES' SECRETARY OF STATE AND STATE OF MICHIGAN'S RESPONSE IN OPPOSITION TO PLAINTIFF-APPELLANT'S MOTION TO EXPEDITE CONSIDERATION OF PETITION FOR REHEARING EN BANC**

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
(517) 335-7659

Dated: July 10, 2026

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................ii

Introduction ...................................................................................... 1

Relevant Proceedings ........................................................................3

Argument............................................................................................5

I.    The Court should decline to further expedite en banc
      proceedings where Michigan already conducts proper
      elections, and federal law prohibits further systematic
      removals for the 2026 election cycle. ......................................5

      A.    Federal law prohibits any further systematic removal
            of voters in Michigan until after the November election. ......6

      B.    The United States has not demonstrated any harm
            that would arise from allotting the ordinary time for en
            banc review................................................................................8

      C.    Michigan would suffer prejudice from the United
            States's requested expedited schedule. ...............................11

      D.    That this appeal involves legal questions does not
            merit expedition where many—if not most—cases
            before this Court present questions of law...........................12

      E.    The interests of finality and judicial economy do not
            require expedited en banc review. ........................................12

Conclusion and Relief Requested............................................................13

Certificate of Compliance....................................................................15

Certificate of Service .........................................................................16

Designation of Relevant District Court Documents.............................17

# TABLE OF AUTHORITIES

Page

**Cases**

*Arcia v. Fla. Sec'y of State,*
   772 F.3d 1335 (11th Cir. 2014) ..........................................................7

*See Public Interest Legal Foundation v. Benson,*
   136 F.4th 613 (6th Cir. 2025), cert denied ___ U.S. ___ (U.S.
   Mar. 2, 2026) ..............................................................................1, 9

**Statutes**

52 U.S.C. § 20507 ..............................................................................10

52 U.S.C. § 20507(4)(a).........................................................................7

52 U.S.C. § 20507(a)(3)..........................................................................7

52 U.S.C. § 20507(c)(2)(A) ..................................................................2, 7

52 U.S.C. § 20507(c)(2)(B)(i).................................................................7

52 U.S.C. § 20701 ..................................................................................4

52 U.S.C. § 20703 ..................................................................................5

# INTRODUCTION

Michigan has a robust voter list maintenance program. (Doc. 42, Page ID # 21-26.) *See Public Interest Legal Foundation v. Benson*, 136 F.4th 613, 628 (6th Cir. 2025), cert denied ___ U.S. ___ (U.S. Mar. 2, 2026). From 2019 to April 2025, the state canceled more than 1.5 million voter registrations.[1] Another 593,032 registrations are slated for cancellation in 2027 or 2029.[2] Michigan also cancels registrations based on non-citizenship when the facts support it, even though federal law does not require a program to do so. (R. 39-6, Page ID # 512.)

The United States argues that a rapid resolution of the appeal (which has already been decided) will permit Michigan to "properly conduct an election this fall without the specter of noncitizen and other ineligible voters remaining on its voter rolls." (Motion, C.A., R 107, p 9). But it does not identify a source for any supposed "specter," or elaborate on why en banc review is necessary to permit Michigan to "properly conduct" its election when Michigan already does so.

---

[1] *Id.*

[2] *See* Voter registration statistics (accessed July 10, 2026.)

1

The United States argues that expediting review will allow it to "confirm" that Michigan's voter rolls contain only eligible voters. (Motion, C.A., R 107, p 6). But federal law *prohibits* any further systematic removal of voters in Michigan before the November election, 52 U.S.C. § 20507(c)(2)(A), and so any "confirmation" of Michigan's voter rolls by the United States would now occur too late for any widespread action to be taken in this cycle. If ultimately the United States is entitled to the sensitive personal information of Michigan's 7.3 million registered voters, that information will be available.

This Court of course has complete discretion to expedite review. But the rules already impose a condensed timeframe for en banc proceedings. Shaving an additional two weeks or so off the timeline will not benefit the United States in any meaningful way but will deprive this Court of time to consider what the United States insists is an important matter. However, if the Court decides to expedite review, it should permit the State Defendants at least 14 days to respond to the petition—the same amount of time the United States took to file the petition.

**RELEVANT PROCEEDINGS**

On July 21, 2025, the Department of Justice (DOJ) demanded, among other things, a description of Michigan's list maintenance activities, answers to six questions regarding Michigan's Election Assistance Commission's Election Administration and Voting Survey (EAVS) results, and "[t]he current electronic copy of Michigan's computerized statewide voter registration list" with "all fields in the list," (R. 39-2, Page ID # 491), which DOJ later confirmed meant an unredacted list with voters' full dates of birth, driver's license or identification numbers, and/or the last four digits of social security numbers, (R. 39-4, Page ID # 499.)  On September 9, 2025, the Secretary of State answered the DOJ's questions, confirmed Michigan would only provide a redacted voter list, (R. 39-6, Page ID # 506) and later provided the list and other materials.

The United States filed its complaint on September 25, 2025.  (R. 1, Page ID # 1-19.)  The State Defendants filed their motion to dismiss on November 26, 2026.  (R. 39, Page ID # 438-439; R. 40, Page ID # 440-512.)  Intervenors filed their motion to dismiss on December 9, 2026.  (R. 47, Page ID # 563-613.)  The United States responded on December

3

26, 2025.  (R. 53, Page ID # 664-698.)  The lower court entered its opinion and order granting the motions to dismiss on February 10, 2026.  (R. 67, Page ID # 892-914; R. 68, Page ID # 915.)

The United States did not move to expedite either the district court's determination of any of the motions before it, or the determination of the case as a whole.

The United States appealed on February 27, 2026, and moved to expedite briefing on March 3, 2026.  (Motion, C.A., R.6).  This Court granted in part the motion to expedite, declining to order the truncated briefing schedule requested by the United States.  (Order, C.A., R. 20-1, p 1).  The panel issued their opinion affirming the district court's order of dismissal on June 24, 2026.  (Order, C.A., R. 105).

The panel majority agreed with the district court that Michigan's electronic voter registration list is not a record covered by Title III because it does not "come into [an election officer's] possession," 52 U.S.C. § 20701, as it is "internally generated" and "not a record acquired from an outside source." (Op. 9.)[3]  Alternatively, the panel

---

[3] At least six other courts have dismissed in whole or in part on similar grounds.  *See U.S. v. Fontes,* CV-26-00066-PHX-SMB (D. Az. 2026); *U.S. v. Bellows*, No. 25-cv-00468-LEW (D. Me. 2025); *U.S. v. DeMarinis*, No.

majority held that the Department of Justice's (DOJ) demand was statutorily deficient because the "statement of the basis and purpose" required by Title III, 52 U.S.C. § 20703, were not contained within a single written document. (Op. 15.)[4]

## ARGUMENT

**I.   The Court should decline to further expedite en banc proceedings where Michigan already conducts proper elections, and federal law prohibits further systematic removals for the 2026 election cycle.**

The court rules already provide an abbreviated schedule for en banc proceedings.  Fed. R. App. P., 40, Sixth Cir. R. 40.  Nevertheless, the United States seeks to shorten the schedule for en banc review by reducing by half the time for the panel to submit comments;  the time for the United States to withdraw, modify, or maintain the petition if the panel changes the substance of its decision; and the time for voting on a poll, if requested.  The United States further requests, if a response

---

SAG-25-3934 (D. Md. 2025); *U.S. v. Scanlan, et al.*, No. 25-cv-371-JL (D.N.H. 2025); *U.S. v. Schmidt*, No. 25-cv-01481-CB (2025); *U.S. v. Wisconsin Elections Comm., et al.*, No. 25-cv-1036-jdp (W.D. Wis.).

[4] At least one other court has concluded similarly.  *See, e.g., U.S. v. Galvin*, No. 25-cv-13816-LTS (D. Mass., 2025).

to the petition by the State Defendants is requested, that the response be due within 7 days of the request.

The United States cites many reasons for its request—none are persuasive. Significantly, to the extent the United States suggests that the information the DOJ seeks would or could have any effect on Michigan's November 3, 2026 general election, federal law *prohibits* any further systematic removal of voters before the November election, and so any "confirmation" of Michigan's voter rolls by DOJ would now occur too late for any widespread action to be taken in this cycle.

### A. Federal law prohibits any further systematic removal of voters in Michigan until after the November election.

The United States argues that both it "and Michiganders deserve an answer from this Court on such a major issue as soon as possible" but it offers no explanation as to why the matter remains urgent where federal law prohibits any further systematic removal of voters for this cycle. The NVRA requires that, "A State shall complete, not later than *90 days* prior to the date of a primary or general election for Federal office, any program the purpose of which is to *systematically remove* the names of ineligible voters from the official lists of eligible voters." 52

U.S.C. § 20507(c)(2)(A)(emphasis added).  *See, e.g., Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (a systematic program includes cancelling registrations by "us[ing] a mass computerized data-matching process to compare the voter rolls with other state and federal databases, followed by the mailing of notices.")  Exceptions to this prohibition include only removal at the request of the voter, death of the voter, or due to criminal conviction or mental incapacity.  52 U.S.C. § 20507(c)(2)(B)(i), 52 U.S.C. § 20507(a)(3), (4)(a).  *See also Arcia*, 772 F.3d at 1345 (removals based on citizenship not a listed exception).

But even if the United States were to obtain the requested sensitive voter data, the motion does not describe what efforts the United States plans to take to "confirm" the over 7.3 million active registered voters in Michigan[5], how long it estimates that "confirmation" process might take and when it might deliver any information to Michigan, or how much time Michigan would have to

---

[5] Michigan Voting Dashboard, https://app.powerbigov.us/view?r=eyJrIjoiMTk3MjM4ZWQtMTlkZi00N 2QxLTk5ZTktODdhYjk3YTVmMzk3IiwidCI6ImQ1ZmI3MDg3LTM3Nz ctNDJhZC05NjZhLTg5MmVmNDcyMjVkMSJ9 (last accessed July 10, 2026).

review for itself the United States' findings before taking any action with its voter rolls.

Again, the NVRA does not permit systematic removal of voters within 90 days of a federal election.  For this election cycle, the 90-day period for Michigan's August 4, 2026, primary began on May 6, 2026, and the 90-day period for the November 3, 2026, general election will begin August 5, 2026.[6]  Given that Michigan's safe harbor periods run consecutively, any systematic removal in Michigan had to cease by May 6 and cannot resume until after the November 3 election.  Because the time for any large-scale removal efforts before the November election has already passed, the approach of that election does not support expediting this Court's en banc review.

**B.  The United States has not demonstrated any harm that would arise from allotting the ordinary time for en banc review.**

The United States asserts that the issues raised in its petition are "still consequential," and that expediting consideration will allow it to

---

[6] See https://www.michigan.gov/sos/-/media/Project/Websites/sos/Election-Administrators/Election-Dates.pdf?rev=92c677694ef34a6b8e2deba08754741f&hash=4BF38DFEA291F1A56213EBC3CA7E2413 (accessed March 6, 2026.)

"confirm" that Michigan's voter rolls contain only eligible voters. (Motion, C.A., R 107, p 6). But the United States does not elaborate or explain what supposed harm will or might occur if parts of the en banc review take 14 days instead of 7. Also, while the United States invokes unspecified and speculative harm to Michigan voters, it notably offers no analysis balancing such supposed harms against harm caused to the same voters by the release of their private, sensitive information to the federal government. (See R. 39, Page ID # 461.)

Moreover, the United States' complaint did not claim that Michigan does not perform voter list maintenance, or even that Michigan's program does not satisfy the requirements of federal law. And this Court has held that Michigan's list maintenance program for the removal of deceased voters more than satisfies the "reasonable effort" standard required by the NVRA. *Pub. Int. Legal Found.*, 136 F.4th at 626-27. Instead, the United States' claim is only that the information Michigan has already provided to the DOJ is not enough for it to "confirm" whether Michigan's program is sufficient. But it does little to explain its threshold for "confirmation," or why the already-provided information is not enough for that task.

More pointedly, the United States has not explained why the ordinary 14-day periods for en banc review will cause any harm to its' ability to "confirm" the efficacy of Michigan's list maintenance program—especially where multiple federal courts have already held that the DOJ's demands for the restricted voter data are inconsistent with federal law.

Also, the United States' argument appears to contemplate changes made to Michigan's voter registration list before the November election. But the relief sought in the complaint did not include any changes being made to Michigan's list maintenance program, and it is far from clear that *any* changes to that program would be necessary even if the United States received the sensitive voter information it demanded. Presumably, if Michigan's list is as accurate as the law requires, no changes would be necessary at all. And considering Congress' assignment of list maintenance duties to the states (*see* 52 U.S.C. § 20507), the United States cites no authority that would obligate the State Defendants to accept or act upon their findings without question or review of their own. In other words, even if the United States was to

prevail and obtain the information it seeks, there is no certainty of any effect or change for Michigan's November election.

Regardless, this case is about only the United States' authority to demand *confidential* voter information.  The records sought would still be available after the ordinary period for en banc review, and the United States has not identified any harm that will occur to its ability to review and confirm voters' eligibility, even assuming it has the authority to do so.

### C.    Michigan would suffer prejudice from the United States's requested expedited schedule.

The United States contends that there would be no prejudice to Michigan, but the motion expressly seeks to require any response by the State Defendants—if one is requested—to be due 7 days from the date of the Court's request.  The United States offers no explanation for its proposed timeline, or why this Court's own assessment of the time necessary to respond would cause it any harm.  But, even if expedited consideration were appropriate, the United States offers no justification for requiring the State Defendants to respond in half the time the United States took to write its petition.  The panel issued its decision in this case on June 24, 2026, and the United States filed its petition for

en banc review *two weeks* later.  But the United States' motion would give the State Defendants only one week for its response, without any justification for the imbalance.  The United States also does not explain why—if time is of the essence—they did not file their petition within 7 days of the panel's decision.

**D.     That this appeal involves legal questions does not merit expedition where many—if not most—cases before this Court present questions of law.**

The United States argues that there is good cause to expedite because this case presents an "important purely legal question." (Motion, C.A., R. 107, p 9-10.)  But it cites no authority holding that "important purely legal questions" equate to good cause to expedite. Indeed, many appeals to this Court could as easily boast of "purely legal questions," but not all are entitled to expedited review.  Expedited review is, by its nature, an exception and not the rule.

**E.     The interests of finality and judicial economy do not require expedited en banc review.**

In the final paragraph of their motion, the United States argues that "regardless of the outcome" and whether it prevails or not, the interests of finality and judicial economy are furthered by an expedited

decision.  (Motion, C.A., R. 107, p 10).  But it does not explain what benefit to either finality or judicial economy is derived from abbreviating the time for en banc review.  Nothing in the court rules suggests this Court does not have complete discretion to decide whether to expedite the petition regardless of the Court's earlier decision to expedite the appeal.  If the case presents as important a question as the United States insists, thoughtful and thorough consideration is warranted—not a rush to judgment.

## CONCLUSION AND RELIEF REQUESTED

The State of Michigan and Michigan Secretary of State Jocelyn Benson respectfully request that this Honorable Court deny the United States's motion to expedite consideration of the petition for rehearing en banc.

Respectfully submitted,

*/s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659

13

grille@michigan.gov
meingasth@michigan.gov

Dated:  July 10, 2026

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This motion response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this motion contains no more than 5,200 words.  This document contains 2,482 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

*/s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
(517) 335-7659
grille@michigan.gov
meingasth@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on July 10, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

/s/Erik A. Grill
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
(P64713)
grille@michigan.gov

16

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 09/25/2025 | R. 1 | 1-19 |
| Defendants Michigan Secretary of State Jocelyn Benson's and State of Michigan's Brief in Support of Motion to Dismiss | 11/26/2025 | R. 39 | 440-512 |
| Certificate of Concurrence | 11/26/2025 | R. 40 | 513-514 |
| Motion to Dismiss Defendant-Intervenors Michigan Alliance for Retired Americans, Donald Duquette and Keely Crimando | 12/09/2025 | R. 47 | 563-613 |
| United Sates' Memorandum of Law in Opposition to Defendants' Motion to Dismiss | 12/26/2025 | R. 53 | 664-698 |
| Opinion | 02/10/2026 | R. 67 | 892-914 |
| Order | 02/10/2026 | R. 68 | 915 |