No. 26-1225

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

– v. –

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,
*Defendants-Appellees,*

MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,
*Intervenors-Appellees.*

Appeal from the U.S. District Court for the
Western District of Michigan at Grand Rapids
(No. 1:25-cv-01148)
Hon. Hala Y. Jarbou

## BRIEF OF *AMICUS CURIAE* LIBERTY LEGAL FOUNDATION
## IN SUPPORT OF PETITION FOR REHEARING EN BANC

Stacey Bucci
LIBERTY LEGAL FOUNDATION
P.O. Box 443
Bennington, Vermont 05201
518-407-3020
stacey@libertylegalusa.org

Ronald D. Coleman
COLEMAN LAW FIRM, PC
50 Park Place
Newark, New Jersey 07102
973-264-9611
rcoleman@colemanlaw-pc.com

*Counsel for Amicus Curiae
Liberty Legal Foundation*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-1225            Case Name: United States v. Jocelyn Benson

Name of counsel: Ronald D. Coleman

Pursuant to 6th Cir. R. 26.1, Liberty Legal Foundation
_Name of Party_
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Amicus is not a subsidiary or affiliate of a publicly owned corporation.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

There is no other publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ronald D. Coleman
_____
_____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

     **(a)  Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

     **(b)  Financial Interest to Be Disclosed.**

       (1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

       (2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

     **(c)  Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

**PAGE**

INTEREST OF *AMICUS CURIAE* ……...…………………………….. 1

INTRODUCTION ………………………..………………………… 1

ARGUMENT …………………………………………………….... 2

   I.    THE MAJORITY ARTIFICALLY CONSTRAINS TITLE III SCOPE ….. 3

   II.   ARTIFICIAL SEPARATION OF "BASIS" AND "PURPOSE" ………..… 7

   III.  CONSTITUTION BASIS FOR FEDERAL ACCESS TO VOTER ……... 10

CONCLUSION …………………………..…………….…………… 12

**TABLE OF AUTHORITIES**

**CASES**                                                               **PAGE**

*Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ................... 8

*Coleman v. Campbell*, 208 F. Supp. 199 (S.D. Miss. 1962) .......................…… 8

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ……….…….……..…. 6, 8

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ………………………….. 8, 9

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846
     (W.D. La. 1960) ………………………………………………... 8, 9

*United States v. Benson,* No. 1:25-cv-01148 (W.D. Mich. 2026)……..…..… *passim*

*United States v. Benson*, No. 26-1225 (6th Cir. June 23, 2026) …………... *passim*

*United States v. Bisceglia,* 420 U.S. 141 (1975) ….…….……….……..…….. 9

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) …………….………… 9

*United States v. Powell*, 379 U.S. 48 (1964) ……………………………..… 9

**UNITED STATES CONSTITUTION**

U.S. Const. art. I, § 4, cl. 1 ("Elections Clause") ………………………… 10

**STATUTES**

Civil Rights Act of 1960 ("Title III")
     Pub. L. No. 86-449, title III, 74 Stat. 86, 88–89 (codified
          at 52 U.S.C. 20701–20706)……….....………………………… *passim*
     52 U.S.C. 20701 …………………………………………….. 3, 4, 5
     52 U.S.C. 20703 …………………………………………. 2, 3, 4, 6

Help America Vote Act ("HAVA")
     Pub. L. No. 107-252, 116 Stat. 1666 (codified
          at 52 U.S.C. 20901–21145)……………………………. *passim*

**STATUTES (cont.)**                                                                   **PAGE**

52 U.S.C. 21083(a)(1)(A) ....................................................... 11
52 U.S.C. 21083(a)(2)(A) ...................................................... 11
52 U.S.C. 21083(a)(2)(B) ...................................................... 11
52 U.S.C. 21111 ................................................................... 11

National Voter Registration Act ("NVRA")
    Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at
        52 U.S.C. 20501–20511)............................................ *passim*
    52 U.S.C. 20502(b)(1),(3),(4) ............................................... 10
    52 U.S.C. 20507(a)(4) .....................................................10, 11
    52 U.S.C. 20507(i)(1) ..................................................... 10, 11
    52 U.S.C. 20510(a)..........................................................10

**MISCELLANEOUS**

DOJ Guidance "Federal Law Constraints on Post-Election 'Audits,'"
    July 28, 2021, https://www.justice.gov/
    archives/opa/press-release/file/1417796/dl ..................................... 11

# INTEREST OF *AMICUS CURIAE*[1]

Liberty Legal Foundation ("Liberty Legal" and "Amicus") is a 501(c)(3) public-interest organization devoted to the rule of law, due process, and equal protection under the Constitution. This case presents questions central to federal election administration, and Liberty Legal and its Michigan supporters are deeply concerned because the outcome affects the integrity and security of federal elections in the State. Liberty Legal urges rehearing en banc to secure full consideration of the two exceptionally important questioned presented.

Liberty Legal has substantial institutional interests and submits this brief solely to aid the Court as a nonpartisan organization that neither supports nor opposes any party or candidate.

## INTRODUCTION

The divided panel opinion held that Title III of the Civil Rights Act[2] does not authorize DOJ[3] to compel production of Michigan's unredacted statewide voter file ("SVRL") and deemed DOJ's demand deficient because no single letter contained both a "basis" and a "purpose." The dissent held that Title III does reach the file and

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amicus* contributed money intended to fund preparing or submitting the brief.

[2] Pub. L. No. 86-449, title III, 74 Stat. 86, 88–89 (codified at §20701–20706). All references to "§" herein are to 52 U.S.C.

[3] "Attorney General," "AG," and "DOJ" are used interchangeably throughout this brief.

that DOJ's demand satisfied the "basis and purpose" requirement, so Michigan must produce the list.

The majority's misinterpretation of Title III and its interaction with National Voter Registration Act ("NVRA")[4] and Help America Vote Act ("HAVA")[5] threatens major public interests in federal election law enforcement. A rehearing is needed to correct precedent-setting errors.

## ARGUMENT

The majority opinion rests on a narrow reading of Title III that is deficient in text, structure, precedent, and factual application. According to the majority, Title III applies to records and papers the officer receives (e.g., voter registration applications), but not to an SVRL that is itself created and maintained by the state and updated pursuant to NVRA/HAVA.

The dissent, by contrast, treats the statewide file as a compilation of constituent records that individually "came into" Benson's possession and therefore argues Title III reaches the aggregate file as the form in which those records are preserved.

Separately, the majority held that the Attorney General's ("AG") demand "failed to 'contain a statement of the basis'" under §20703 simply because no single

---

[4] Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at §20501–20511).
[5] Pub. L. No. 107-252, 116 Stat. 1666 (codified at §20901–21145).

letter contained both a "basis" and "purpose." The opinion treats the letters in isolation and insists on a hyper-literal "magic-words" requirement ("basis" distinct from "purpose") not demanded by statutory text or Title III case law, even though multiple communications together may be a unified written demand.

The majority's approach reflects an unduly formalistic and ahistorical reading of "basis," an over-expansion of judicial review, selective reliance on adverse district court decisions while discounting contrary authority, and a practical effect that frustrates enforcement of HAVA/NVRA through Title III's investigatory mechanism.

## I. THE MAJORITY ARTIFICIALLY CONSTRAINS TITLE III SCOPE.

Title III requires election officials to retain, preserve, and, upon demand, produce "records and papers which come into [their] possession" relating to acts "requisite to voting," such as applications, registrations, and poll-tax payments. §20701 governs retention and preservation:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election... **all records and papers which come into his possession relating to any** application, registration, payment of poll tax, or **other act requisite to voting** in such election.... (Emphasis added.)

§20703 governs the AG's demand:

> **Any** record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody... be made available for inspection,

reproduction, and copying.... This demand shall contain a statement of the basis and the purpose therefor. (Emphasis added.)

The majority notes that DOJ sought the unredacted SVRL itself, not the underlying voter applications and other records, and held that Title III does not authorize compulsion of a state-created database that aggregates information from multiple sources, some unrelated to acts "requisite to voting." It emphasizes that Michigan's "qualified voter file" is an internally created and constantly updated database, not something "acquired, obtained, or received" from a third party, so it did not "come into" possession within the ordinary meaning of that phrase at the time of enactment.

Relying on contemporaneous dictionary definitions, the majority construes "come into possession" as limited to items obtained from outside sources and analogizes to a baker who comes into possession of ingredients but not of the cake she bakes. It reads Title III's reference to "application, registration, payment of poll tax, or other act requisite to voting" as describing records generated by voters or other third parties, not state-created composite databases, and asserts that Congress used broad "all records" language in NVRA's public-disclosure provision but narrower "records and papers which come into [her] possession" in Title III to confine Title III to externally-obtained records.

The majority further rejects DOJ's reliance on "agency records" case law — including self-generated materials — on grounds that FOIA"s "create or obtain"

formulation is broader than Title III's "come into possession" wording. In its view, Title III is primarily concerned with individual records — "any" application, registration, poll-tax payment, or similar act — so "come into possession" applies at the level of the underlying documents, not the compiled list.

Michigan's SVRL, however, is an aggregate of externally-sourced records (voter applications, inter-agency data, interstate exchanges, etc.) that themselves came into Benson's possession. The list is covered as the compilation form of records that independently satisfy Title III, even if the database as a "thing-in-itself" did not "come into" her possession. Even if one accepts the majority's premise that a compilation must itself "come into" officials' possession, Title III does not categorically exclude government-generated records; historically, officials compiled internal indices that, when transmitted from one office to another, plainly "came into" recipient possession. By this logic, if Benson's subordinates generate and transmit the statewide voter list to her, she "comes into possession" of it within the ordinary meaning of the phrase.

The majority adds atextual "external-source" limitation to "come into possession" and shifts attention from individual records to high-level compilations, contrary to the word "any" and the structure of §20701. That approach allows states to avoid Title III disclosure duties by consolidating covered records into aggregated formats and labeling those aggregations as separate, self-generated databases.

Early Fifth Circuit authority approves written demands that state only that they are "based upon information in the possession of the Attorney General tending to show" discrimination, and *Coleman II* explicitly held that "a sufficient statement would be the assertion that the demand was made for the purpose of investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963). The majority acknowledged these cases but then treated them as prescribing a model that DOJ failed to meet, effectively setting its own standard.

Even assuming *arguendo* that the file was a Title III record, the majority held that DOJ failed to comply with §20703's requirement that any written demand "shall contain a statement of the basis and purpose" for inspection, even though the statute does not define "basis" or "purpose" and precedent treats the clause as calling for a general statement rather than detailed factual allegations.

According to the majority, the July 21 and August 8 letters invoked NVRA and HAVA and laid out factual anomalies but did not mention Title III or clearly state a "purpose"; the August 14 letter invoked Title III and articulated a purpose— assessing compliance with NVRA/HAVA list-maintenance requirements—but did not set out a factual "basis." ECF No. 105-2.

Treating "shall" as mandatory and "and" as conjunctive, the majority concluded that the statute requires a single demand that itself contains both specific terms "basis" and "purpose." In its view, no one DOJ letter satisfied both elements,

and the majority refused to piece together multiple letters as a demand/request. There is no reason why the July 21 and August 14 letters cannot be read together as a single "demand": the July letter supplies a basis (complaints and anomalies suggesting possible NVRA/HAVA violations), and the August letter invokes Title III and a purpose (ascertaining Michigan's compliance with NVRA/HAVA list-maintenance requirements), with the latter incorporating the former by reference. Alternatively, the August 14 letter itself can be read to contain both a legal basis and purpose, as it cited NVRA/HAVA/Title III and stated the purpose of "ascertain[ing] Michigan's compliance with the list maintenance requirements of NVRA and HAVA."

The majority treats "basis" as articulation of concrete evidence in one letter and treats an expressly articulated investigative purpose as legally insufficient, even though precedent has accepted a "possible violations" formulation that DOJ replicated with different statutes.

## II.   ARTIFICIAL SEPARATION OF "BASIS" AND "PURPOSE"

The majority rejects any interpretation under which "basis" collapses into "purpose" and refuses to treat an explanation that the AG is seeking records to ascertain compliance with the list maintenance requirements of the NVRA/HAVA as satisfying "basis," even inferentially.

The Fifth Circuit has construed "basis and purpose" functionally, not formalistically. *Coleman II* approves a demand stating that it was "made for the

7

purpose of investigating possible violations of a Federal statute," treating that language as satisfying the statutory requirement without parsing whether "possible violations" constitute basis, purpose, or both. 313 F.2d at 868. Also, a proceeding under Title III requires no greater than "a simple statement by the Attorney General that after a [§20703] written demand for inspection of records and papers covered in [§20701], the [custodian] has failed or refused to make such papers 'available for inspection…'" and "factual foundation for, or the sufficiency of" the statement of basis and purpose "is not open to judicial review or ascertainment." *Kennedy v. Lynd*, 306 F.2d 222, 225–26 (5th Cir. 1962).

As *Coleman II* and *Coleman I* explain, a sufficient purpose to examine federal election records is "to see if any Federal laws were violated," and "possible violations of a Federal statute" supply both basis and purpose. *Coleman II*, 313 F.2d at 868; *Coleman v. Campbell*, 208 F. Supp. 199, 200 (S.D. Miss. 1962).

The purpose of Title III "is to facilitate the investigation of the records *before suit is filed*," and "the function sought to be exercised by the [AG] is ... purely investigative" to evaluate possible violations, determine whether a federal lawsuit "should be instituted," and obtain evidence for use if and when cases are filed. *USA v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam); *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960); *Lynd*, 306 F.2d at 228.

No factual allegations of a substantive violation of federal law are required. Congress has specifically committed investigative responsibility to the AG and equipped her "with machinery thought suitable for the effective fulfillment of that obligation" through Title III. *Lynd*, 306 F.2d at 230. The majority's strict separation of "basis" and "purpose" is not compelled by Title III and conflicts with precedent.

The requirement that DOJ articulate a "basis" beyond an express investigative purpose without access to the very data it seeks creates a Catch-22: DOJ must identify anomalies or concrete suspicions before requesting records, yet those anomalies are only detectable through the SVRL. If states may satisfy federal law by providing only redacted and non-verifiable datasets, federal enforcement becomes impossible. Such a rule allows states to control federal oversight and shield underlying system operations from review, hamstringing DOJ's investigatory mechanism.

Title III invests the AG with powers akin to a grand jury, which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *USA v. Bisceglia*, 420 U.S. 141, 148 (1975). The Supreme Court has recognized similar grand jury-like investigatory authority in other Executive-branch agencies. *See, e.g.*, *USA v. Powell*, 379 U.S. 48, 57 (1964); *USA v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950).

## III. CONSTITUTIONAL BASIS FOR FEDERAL ACCESS

The Elections Clause assigns primary responsibility for regulating the "Times, Places and Manner" of federal elections to the states but gives Congress power to "make or alter" those regulations. U.S. Const. art. I, § 4, cl. 1. Once Congress enacts federal-election rules, state authority is derivative and may not be used to frustrate or nullify those commands, including as to voter registration and recordkeeping.

Statewide voter registration lists are themselves part of the "Manner" of federal elections. Congress has chosen to regulate this domain and those federal enactments necessarily carry with them authority to obtain the information needed to enforce them.

NVRA was passed to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal Office," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." §20502(b)(1),(3),(4). It requires every state to conduct "a general program that makes a reasonable effort" to remove ineligible registrants and to keep records of list-maintenance activities and "make such records available for public inspection." §§20507(a)(4), 20507(i)(1).

Congress authorized the AG to sue states to enforce these obligations, which presupposes access to underlying registration data sufficient to assess compliance. §20510(a). It would be inconsistent with NVRA/HAVA's enforcement design to

read Title III in a way that denies DOJ meaningful access to SVRLs needed to evaluate "reasonable effort" compliance.

HAVA requires states to maintain computerized SVRLs and implement systems that remove ineligible voters while protecting eligible voters from erroneous removal. §21083(a)(1)(A), (a)(2)(A)–(B). It also gives DOJ enforcement authority, meaningless if federal officials can be blocked from obtaining the very database whose compliance they must evaluate. §21111. DOJ Guidance on federal election law underscores that enforcement of voting-rights and election-crimes provisions "often depends on documentation generated during the voter registration, voting, tabulation, and election certification processes," and clarifies that this extends to electronic records to ensure federal investigators can access materials needed to enforce federal voting-rights and election-crime statutes.[6]

Title III is a direct federal regulation of election records for federal contests. States may regulate time, place, and manner in the first instance, but Congress has already "made or altered" those regulations by specifying retention, preservation, and federal inspection rights. States cannot redefine their own roles to override an express federal authorization for DOJ inspection.

---

[6] https://www.justice.gov/archives/opa/press-release/file/1417796/dl (last accessed July 8, 2026).

Federal statutes contemplate DOJ as primary enforcer of federal election law. Giving DOJ unredacted access provides data necessary for enforcing election integrity, whereas allowing states to withhold data wholesale impedes federal oversight while doing nothing to prevent misuse at the state level.

**CONCLUSION**

Reviewing actual rolls, not just policy manuals, is indispensable to determining whether state programs are reasonable in practice — for example, to see if counties remove movers or if certain groups are disproportionately purged — so seeking the lists is a proportional, statute-tethered investigative step, not a power grab. It suffices to say (1) Congress set substantive and procedural standards for voter records, (2) DOJ is the designated enforcer, and (3) access to the contested materials is reasonably necessary to vindicate those statutory standards.

*Amicus* recognizes that states may impose reasonable disclosure modalities and redactions at margins but maintains that, at the core, federal law entitles DOJ to unredacted records for federal enforcement and investigatory purposes.

Dated: July 15, 2026

Respectfully submitted,

COLEMAN LAW FIRM, PC 50 Park
Place
Newark, New Jersey 07102
973-264-9611
rcoleman@colemanlaw-pc.com

Stacey Bucci
LIBERTY LEGAL FOUNDATION
P.O. Box 443
Bennington, Vermont 05201
518-407-3020
stacey@libertylegalusa.org

*Counsel for Amicus Curiae*
*Liberty Legal Foundation*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation for an *amicus* under the Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,588 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(2)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in a 14-point Times New Roman font.

Dated; July 15, 2026

/s/ Ronald D. Coleman
Ronald D. Coleman

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amicus Brief was filed on July 15, 2026 with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the Court's Electronic Filing System.

Parties will be served, and may obtain copies electronically, through the operation of the Electronic Filing Systm.

Dated: July 15, 2026

/s/ Ronald D. Coleman
Ronald D. Coleman