No. 26-1225

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of
Michigan; and STATE OF MICHIGAN,

*Defendants-Appellees*

MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD
DUQUETTE; and KEELY CRIMANDO,

*Intervenors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

**INTERVENORS-APPELLEES' RESPONSE TO
PETITION FOR REHEARING EN BANC**

Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Tel.: (202) 948-1135
abranch@elias.law

Sarah Prescott
**SALVATORE PRESCOTT
PORTER & PORTER**
105 E. Main St
Northville, MI 48167
Tel.: (248) 679-8711
prescott@spplawyers.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................... ii

INTRODUCTION AND BACKGROUND...............................................................1

ARGUMENT .......................................................................................................4

I. This appeal does not warrant en banc review. ...................................4

II. The panel's decision is correct...........................................................6

  A. The panel correctly held that the plain text of Title III does not extend to Michigan's statewide voter list.......................................6

    1. The panel carefully and correctly analyzed the text of Title III. ..................................................................................7

    2. The panel appropriately avoided a statutory conflict. .............12

  B. The panel correctly held DOJ failed to comply with §20703.............14

III. DOJ's claim fails for independent reasons not reached by the panel or discussed in the petition. .................................................................15

CONCLUSION.................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appalachian Res. Dev. Corp. v. McCabe*,
　387 F.3d 461 (6th Cir. 2004)................................................................13

*Black Farmers & Agriculturalists Ass'n v. Rollins*,
　154 F.4th 473 (6th Cir. 2025)..............................................................10

*Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*,
　601 U.S. 42 (2024)..............................................................................13

*Fenner v. Gen. Motors, LLC*,
　121 F.4th 1117 (6th Cir. 2024)..............................................................5

*Fischer v. United States*,
　603 U.S. 480 (2024)...................................................................... 12, 13

*Ickes v. Whitmer*,
　No. 1:22-CV-817, 2022 WL 4103030 (W.D. Mich. Sep. 8, 2022).................5

*Kennedy v. Lynd*,
　306 F.2d 222 (5th Cir. 1962).................................................................4

*Kim v. Cedar Realty Trust, Inc.*,
　116 F.4th 252 (4th Cir. 2024)..............................................................15

*Leocal v. Ashcroft*,
　543 U.S. 1 (2004).................................................................................7

*Niz-Chavez v. Garland*,
　593 U.S. 155 (2021)............................................................................14

*Pub. Int. Legal Found. v. Benson*,
　136 F.4th 613 (6th Cir. 2025).................................................................2

*U.S. Department of Justice v. Tax Analysts*,
　492 U.S. 136 (1989).............................................................................9

*United States v. Amore*,
　No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17,
　2026)..................................................................................................1

*United States v. Bd. of Elections of N.Y.*,
No. 1:25-CV-1338-MAD-PJE, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) ...............................................................................................2, 7

*United States v. Bellows*,
No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) ........................................................................... 1, 6, 7, 16

*United States v. Benson*,
819 F.Supp.3d 753 (W.D. Mich. 2026)......................................................2, 7

*United States v. DeMarinis*,
No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026)...............2, 7

*United States v. Fontes*,
No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ...............................................................................................1, 7

*United States v. Galvin*,
No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ............1

*United States v. Koski*,
No. 3:26-CV-42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026) ...............................................................................................2, 7, 11

*United States v. Markwood*,
48 F.3d 969 (6th Cir. 1995)...............................................................................5

*United States v. Oliver*,
No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026) ......................................................................................................2

*United States v. Oregon*,
No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ..........1, 5

*United States v. Scanlan*,
No. 25-CV-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026) ..........2, 7, 11

*United States v. Schmidt*,
No. 2:25-CV-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026) .....2, 7

*United States v. Thomas*,
No. 3:26-CV-21 (KAD), 2026 WL 2070437 (D. Conn. July 17, 2026)......2, 7

*United States v. Warner*,
No. 2:26-CV-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026) .............2

*United States v. Weber*,
816 F.Supp.3d 1168 (C.D. Cal. 2026) ....................................................1, 16

*United States v. Wis. Elections Comm'n*,
No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026)....2, 7

## Statutes and Rules

52 U.S.C. §20701 .............................................................................. 2, 6, 10, 12

52 U.S.C. §20702 ...............................................................................................2, 12

52 U.S.C. §20703 .............................................................................. 3, 14, 15

52 U.S.C. §20705 ...............................................................................................15

M.C.L. §168.509o ...............................................................................................11

M.C.L. §168.509p ...............................................................................................11

Fed. R. App. P. 40(b)(2) ...............................................................................................4

## Other Authorities

Rep. of the U.S. Comm'n on Civ. Rights (1959) ...................................................10

iv

## INTRODUCTION AND BACKGROUND

Last year, the Department of Justice embarked on an unprecedented crusade to collect the voter-registration data of nearly every American. Dozens of States refused to produce their unredacted voter lists, recognizing that DOJ lacks the authority to compel such disclosure of voters' sensitive information. DOJ then sued 30 States and the District of Columbia to force them to surrender these lists. Courts nationwide—including the district court and the panel here—have uniformly rejected these suits because Title III of the Civil Rights Act of 1960 simply does not authorize DOJ to engage in this abuse of executive power.

En banc review should be denied. The panel's decision does not conflict with any Supreme Court, Sixth Circuit, or other circuit ruling. All *seventeen courts* to address these issues have rejected DOJ's power grab, whether because DOJ's tortured interpretation of the text would render Title III unrecognizable, because DOJ failed to state a basis and purpose for its demands, or both.[1] And while DOJ asserts

---

[1] *See United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Weber*, 816 F.Supp.3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Fontes*, No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 10, 2026); *United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 10, 2026); *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wis. Elections Comm'n*, No. 3:25-

it requires Michigan's voter list to assess the State's compliance with federal list-maintenance obligations, this Court affirmed just last year that Michigan's "multi-layered" list-maintenance program is "more than reasonable." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 628 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 1772 (2026).

The panel affirmed the dismissal on two independent grounds: *First*, Title III only permits DOJ to inspect records that "come into" the possession of election officials. 52 U.S.C. §20701. Michigan's voter list is not a record that "came into" election officials' possession—it is a dynamic database that they *created* and continuously maintain. Op.8-14. And interpreting Title III to cover voter lists would produce an unnecessary conflict between that statute, which makes it a crime to "alter" covered records, 52 U.S.C. §§20701-20702, and other federal laws that

---

CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026), *appeal docketed*, No. 26-1878 (4th Cir. July 13, 2026); *United States v. Schmidt*, No. 2:25-CV-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026), *appeal docketed*, No. 26-2684 (3d Cir. July 7, 2026); *United States v. Scanlan*, No. 25-CV-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026); *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-1338-MAD-PJE, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Oliver*, No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Koski*, No. 3:26-CV-42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Thomas*, No. 3:26-CV-21 (KAD), 2026 WL 2070437 (D. Conn. July 17, 2026); *United States v. Benson*, 819 F.Supp.3d 753 (W.D. Mich.), *aff'd*, 179 F.4th 470 (6th Cir. 2026).

2

affirmatively command States to continually update and thus "alter" their voter lists. Op.10-11. *Second*, Title III requires DOJ to issue "a statement" of DOJ's basis and purpose in its pre-suit "demand" to inspect records. 52 U.S.C. §20703. Based on that clear statutory mandate, the panel correctly rejected DOJ's attempt to construct a single demand out of multiple communications, none of which individually contained a statement of both its basis and purpose. Op.15-16. Nothing in DOJ's petition or in the dissent undermines the panel's correct conclusions.

Nor is this case of such "exceptional public importance" that it warrants en banc review. States have run secure elections for centuries without the intrusive oversight DOJ now seeks, and seventeen courts have concluded that no such intrusion is suddenly necessary. Other statutes, including the National Voter Registration Act ("NVRA"), already provide DOJ with reasonable powers to access list-maintenance information without having to do violence to Title III. DOJ's unfounded preference for broader access than what Congress provided does not make this case exceptional.

Finally, because the panel affirmed dismissal on two independent grounds, it had no occasion to reach the other fatal defects in DOJ's suit that further counsel against en banc review.

## ARGUMENT

### I.    This appeal does not warrant en banc review.

None of the four criteria for en banc review is satisfied. *See* Fed. R. App. P. 40(b)(2)(A)-(D). DOJ does not allege any conflict between the panel's decision and Supreme Court, Sixth Circuit, or any other circuit court precedent—since DOJ has never sought to misuse Title III to seize protected voter data across the nation as it does now, there has never been any occasion for any court to address the issues in this appeal until this year. For similar reasons, DOJ's attempt to manufacture a conflict between the panel's decision and a Fifth Circuit case, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), falls apart under the barest scrutiny.

DOJ does not claim any conflict between *Lynd* and the panel's first holding: that Title III does not extend to statewide voter registration lists. And there is no conflict on the second because DOJ issued a demand letter including a statement of *both* its basis and purpose in *Lynd*, *id.* at 229 n.6 (quoting DOJ's demand letter), unlike here, Op.15-16. The panel also did not interrogate the "factual support" for DOJ's demand, *Lynd,* 306 F.2d at 226—only whether the demand met DOJ's "mandatory statutory obligation"—so there cannot be any conflict between *Lynd* and the panel decision on that score, either. Op.16. Further, *Lynd* confirmed that if there was a "genuine dispute" about whether a "particular paper or record" fell within Title III's scope—as here—a court "would, of course, be open for its determination." 306

4

F.2d at 226. Any remaining overbroad language from *Lynd* regarding the extent of judicial review is irrelevant in light of "binding precedent from the Supreme Court and this court [that] carves out a role for the courts in reviewing civil investigative demands like the government's." Op.15 n.2 (citing *United States v. Powell*, 379 U.S. 48, 58 (1964); *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995)); *see also, e.g.*, *Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd*.").

En banc review is also unwarranted because it is not "likely that [the Court] will continue to see these types of cases in the future." *Fenner v. Gen. Motors, LLC*, 121 F.4th 1117, 1120 (6th Cir. 2024) (Griffin, J., dissenting from denial of rehearing en banc). DOJ's nationwide campaign to demand States' voter lists under Title III is so far removed from the statute's intended use (to investigate the denial of voting rights) that, until the district court's decision this year, no court in this circuit had ever adjudicated a Title III inspection demand, and there is no reason to believe such a demand will recur.[2]

The fact that no court has ever interpreted Title III as DOJ now urges also undermines DOJ's hyperbole that its ability to enforce federal voting laws will be

---

[2] A handful of *private* litigants brought frivolous Title III claims after the 2020 election, but courts quickly dismissed them because Title III does not confer a private right of action. *See, e.g.*, *Ickes v. Whitmer*, No. 1:22-CV-817, 2022 WL 4103030, at *3 (W.D. Mich. Sep. 8, 2022).

"paralyze[d]" absent a ruling in its favor. Pet.3. DOJ has long enforced voting laws without its newfound and capacious interpretation of Title III. If Congress intended to grant DOJ the extraordinary authority to conduct a "line-by-line audit of each state's" voter list to "assess compliance" with the NVRA and the Help America Vote Act ("HAVA"), it would have done so *in the NVRA or HAVA*—but it did not. *Bellows*, 2026 WL 1430481, at *8.

## II.    The panel's decision is correct.

### A.    The panel correctly held that the plain text of Title III does not extend to Michigan's statewide voter list.

En banc review is also unnecessary because the panel correctly interpreted the scope of Title III. The statute reaches only those "records and papers" that "come into [the] possession" of election officials relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §20701. In analyzing that provision, the panel inquired into the words' natural and ordinary meanings (after consulting contemporary dictionaries), considered the provision in its broader statutory context, and correctly recognized that DOJ's proposed interpretation would render key language superfluous and place Title III into irreconcilable conflict with other federal statutes. Op.8-11. In short, the panel correctly concluded that *all* relevant interpretive tools pointed toward the same conclusion: Title III applies only to records that election officials receive from an

6

external source, not to an internally created dynamic database like Michigan's voter list. *Id.* Ten district courts have reached the same conclusion.[3]

### 1.    The panel carefully and correctly analyzed the text of Title III.

DOJ's petition does not undermine the panel's careful analysis of Title III's text. *First*, DOJ asserts that a record comes into the possession of an election official whenever the official "'get[s]' or 'acquire[s]' it and retains it within his control." Pet.8. But in everyday conversation, "getting" or "acquiring" something conveys a markedly different meaning than "*creating*" it. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning."). As recognized by the panel, it would be natural to say that a shopper "acquired" a cake by buying it at the store, but it would be unusual and jarring to say that a baker "acquired" a cake by making it at home from scratch. Op.9. For the same reason, "[a]n ordinary English speaker" would not say that the voter list "came into [the] possession" of election officials, when those election officials *created* the list. *Id.*

---

[3] *Benson*, 819 F.Supp.3d at 768; *Koski*, 2026 WL 2032532, at *4-6; *Bd. of Elections of N.Y.*, 2026 WL 1999921, at *8-11; *Scanlan*, 2026 WL 1864054, at *4-6; *Schmidt*, 2026 WL 1850016, at *1-2; *DeMarinis*, 2026 WL 1780586, at *4-6; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3-5; *Bellows*, 2026 WL 1430481, at *6-7; *Fontes*, 2026 WL 1177244, at *3-7; *Thomas*, 2026 WL 2070437, at *4-7.

Indeed, DOJ's suggestion that Michigan election officials "com[e] into possession" of the voter list by "aggregat[ing] individual voter records," Pet.8, precisely illustrates the distinction drawn by Title III: "Individual voter records" sent by voters to the Secretary "came into her possession" and thus are covered by Title III, but no reasonable English speaker would say that *the voter list itself* "came into [her] possession" because (unlike the voter records) it was not received from an external source. As the panel noted, this theory "taints the dissent's entire analysis" as well because it relies on this same "mismatch between what the government actually requested from Benson and what the dissent thinks the government requested." Op.14. DOJ did *not* request the underlying individual voters' records. It requested Michigan's *statewide voter list*. While that list may draw *information* from the underlying records (*e.g.*, voter registration forms), it also draws information *not* from those records (*e.g.*, precinct numbers; voting histories) and from sources *other than the voter* (*e.g.*, other state or federal agencies). Thus, the voter list is its own distinct, self-created, and dynamic database that compiles vast amounts of private, sensitive information on voters that do not appear in the "records and papers" voters submit to Michigan's election officials.

*Second*, DOJ is flatly wrong to suggest that reading Title III as limited to records obtained from an external source "impermissibly adds a limitation Congress did not write into the statute." Pet.8. To the contrary, the panel faithfully applied

8

traditional canons of interpretation and concluded that this external-source limitation flows directly from the text of Title III, namely, its use of the phrase "come into [] possession." Op.8-11.

The panel also correctly recognized that *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), "provides no insight" about "'come into [] possession,' as Title III uses it." Op.13. In *Tax Analysts*, there was no dispute that the relevant statutory term ("agency records") would include self-created records; the Court's analysis relied on an agency-recordkeeping statute that defined "record" to include materials "made *or received*" by an agency, 492 U.S. at 145-46 (emphasis added); and the phrase "come into [] possession" appears nowhere in the statute at issue in *Tax Analysts*.

*Third*, DOJ claims Title III must cover "at least some government-generated records" because the 1959 Report of the Civil Rights Commission notes that the Commission had examined certain internally created voucher files in a handful of counties. Pet.10. This is a reference to a defunct practice by which voters would "vouch" for registration applicants. While documents *submitted by a voter* as part of that process would be covered by Title III, DOJ conspicuously fails to locate any evidence in the statutory text or legislative history to suggest Congress intended Title III to reach *internally created* files relating to such records. While DOJ cites the Commission's Report, that report contains only a few passing references to voucher

9

materials; it does nothing to suggest that Congress intended Title III to reach *internally created records such as voucher lists*. And, in any event, that Report emphasized that the most important evidence needed to initiate lawsuits was voter registration applications. Comm'n Rpt. 137 (describing reviewing "application forms" as "essential to any investigation of denials of the right to vote"). So, it is unsurprising that Title III's text *as enacted* is limited to cover those applications and other similar records and papers received by election officials from voters. 52 U.S.C. §20701.

For similar reasons, DOJ's contention that the panel's reading of Title III means that it would not cover an internal document "created by a county clerk tracking voters by race," Pet.11, is likewise misplaced. "What controls here, of course, is the text." *Black Farmers & Agriculturalists Ass'n v. Rollins*, 154 F.4th 473, 480 (6th Cir. 2025). And for all the reasons explained by the panel, Congress chose language that limits Title III's reach to records obtained from an external source. In any event, the incriminating document hypothesized by DOJ would plainly be obtainable via civil discovery. Further, DOJ's reading of Title III would lead to the absurd conclusion that *all* internal records relating to voter registration (including emails, handwritten notes, draft memoranda, and more) must be retained, preserved, and not altered—a far-reaching expansion of federal power over *internal* local

10

recordkeeping practices that could not plausibly have been intended by Congress in 1960.

*Fourth*, DOJ argues that if Title III reaches internally created documents, then "come into [] possession" is not rendered superfluous because it imposes a "temporal and custodial limitation." Pet.11 (quoting Op.21 n.7 (dissent)). But if that was Congress's intent, it could have used the much more natural choices of "*in* the possession of" or simply referred to "records" without qualification (as in the NVRA). Instead, Congress chose to use the phrase "come into [] possession," which "Congress has consistently employed . . . to describe the process by which a person receives something from an external source." *Scanlan*, 2026 WL 1864054, at *5. Further, Title III "already has an explicit temporal component—a period of twenty-two months from the date of certain enumerated elections—so there is no reason to believe 'come into [] possession' is imbued with a hidden meaning about additional time restraints." *Koski*, 2026 WL 2032532, at *6.

*Finally*, DOJ hypothesizes that Secretary Benson "c[a]me into [] possession" of Michigan's voter list "when she received it from someone else in her office." Pet.13. But this misunderstands the nature of Michigan's voter list: It is an interactive database that many people can simultaneously access and change, *e.g.*, M.C.L. §§168.509o-168.509p, rather than a static record submitted by a voter to Michigan election officials. The Secretary did not simply "receive[] it from someone else in

11

her office." Further, Title III already addresses the situation when a covered record is transferred between election officials. 52 U.S.C. §20701 (stating that, when records are appropriately "deposited" with another custodian, the duty to retain and preserve "devolve[s] upon such custodian"). DOJ's interpretation would render that separate language entirely redundant and nonsensical: Under DOJ's theory, a record created by an employee would *not* be covered by Title III *unless* and *until* the employee gave the record to another election official within their office.

### 2.    The panel appropriately avoided a statutory conflict.

Title III requires election officials to "retain and preserve" and not "alter" all covered records. 52 U.S.C. §§20701-20702. But "the NVRA and HAVA *require* Michigan election officials to alter the qualified voter file routinely as part of their 'reasonable effort[s]' to ensure accuracy." Op.10 (citing 52 U.S.C. §§20507(a)(4), 21083(a)(4)(A)). To avoid this "collision course" of federal statutes, the panel appropriately invoked the harmonious-reading canon to buttress its conclusion that Title III does not apply to voter lists. *Id.* at 10-11.

DOJ's arguments to the contrary, Pet.13-15, do not undermine the panel's straightforward conclusion. DOJ first suggests that the prohibited actions in §20702 (including "alter[ing]") should be "understood as 'actions that, by their nature, impair the integrity or availability of records, documents, or objects,'" citing *Fischer v. United States*, 603 U.S. 480, 481 (2024). But that is inconsistent with the plain

12

meaning of "alter," and the statute in *Fischer* codified a specific *mens rea*, prohibiting records' "alter[ation]" only when done "with the intent to impair the object's integrity or availability for use in an official proceeding." *Id.* at 486 (quoting 18 U.S.C. §1512(c)(1)). Title III has no equivalent *mens rea* requirement.

DOJ seizes on the word "willful" in Title III to claim election officials have free reign to "alter" a voter list. Pet.15. But there is a "wealth of case law" finding that a person "willfully" violates the law when they know their action is prohibited by statute. *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 463-65 (6th Cir. 2004). If the Court holds Michigan's voter list is covered by Title III, election officials would thereafter be on notice that they cannot "alter" it without violating Title III.

DOJ ultimately resorts to arguing that, "[e]ven if the statutes were truly inconsistent," the general/specific canon would apply and make HAVA and NVRA list-maintenance "an exception" to Title III's prohibition. Pet.15. This gets things backwards. As DOJ admits, that canon would apply only if the statutes were "truly inconsistent." But the point of the harmonious-reading canon is to interpret statutes in a way that *avoids* conflict, *Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024), which is precisely what the panel did. Op.10-11.

13

**B.    The panel correctly held DOJ failed to comply with §20703.**

The panel also correctly held that DOJ failed to provide "*a statement* of the basis and the purpose" for its record "demand" as Title III requires. 52 U.S.C. §20703 (emphasis added).

As with its first holding, the panel's alternative ground for affirmance follows from Title III's plain text. When a statute uses "the indefinite article 'a,'" it means "'a' single document containing the required information, not a mishmash of pieces with some assembly required." *Niz-Chavez v. Garland*, 593 U.S. 155, 161, 163 (2021). The panel noted that, "even if [it] assume[d]" that vague factual statements DOJ made in its July 21 letter could constitute DOJ's "basis," the letter was nonetheless deficient because it never invoked Title III and did not state DOJ's "purpose." Op.15. Then, in an August 14 letter, DOJ purported to provide a purpose, but it was unaccompanied by any factual allegations that could possibly constitute a "basis" for its demand. *Id.* As a result, the panel correctly found that DOJ failed to provide all the required information—"*a* statement" of both the "basis *and* the purpose," 52 U.S.C. §20703 (emphases added)—in a single written demand.

DOJ argues the panel was incorrect because Title III does not provide for "*a* demand," but rather just "*a* statement" of the basis and purpose, and thus, that statement can come through multiple communications. Pet.18-19. But after stating DOJ can request documents "upon demand in writing," Title III continues: "*This*

14

*demand* shall contain *a* statement" of the basis and purpose. 52 U.S.C. §20703 (emphases added). As "this" precedes the singular noun "demand," it most plainly reads as referring to a singular demand made by DOJ, rather than a collection of demands. *Cf. Kim v. Cedar Realty Trust, Inc.*, 116 F.4th 252, 262-63 (4th Cir. 2024) (interpreting "the" as referring to a singular object when coupled with a "singular noun"). And Title III's later use of the phrase "*a demand*" confirms that Congress envisioned DOJ would state its basis and purpose in a single demand communication. *See* 52 U.S.C. §20705.

DOJ is also wrong to suggest it need only have generally given Secretary Benson "notice" of its demand. Pet.19. Title III does not impose an amorphous "notice" requirement; rather, it requires DOJ's written demand to include specific information ("the basis *and* the purpose" of the demand), contained in "a" single statement. 52 U.S.C. §20703 (emphasis added). DOJ failed to satisfy this requirement.

## III. DOJ's claim fails for independent reasons not reached by the panel or discussed in the petition.

To obtain relief, DOJ would also need to prevail on other complicated issues that the panel had no occasion to address given its Title III holdings.

DOJ would need to show both that it provided a factual basis for its record demand and that its asserted purpose for collecting the voter list—to ascertain compliance with the NVRA and HAVA's list-maintenance requirements—is an

appropriate purpose under Title III. Seven district courts have already held that such a purpose is improper. *E.g.*, *Bellows*, 2026 WL 1430481, at *7-10.

Further, the Privacy Act prohibits DOJ from obtaining Michigan's voter list unless DOJ publishes a compliant "System of Records Notice" that covers the list, which DOJ has not done. *See Weber*, 816 F.Supp.3d at 1193-94.

These legal defects in DOJ's case each independently bar its claim. And although the parties briefed these complicated questions before the panel, DOJ failed to address them in its petition. DOJ cannot meet its burden for en banc review while ignoring issues that independently doom its claim.

## CONCLUSION

The Court should deny the petition.

July 22, 2026

Sarah Prescott
**SALVATORE PRESCOTT
PORTER & PORTER**
105 E. Main St.
Northville, MI 48167
Telephone: (248) 679-8711
prescott@spplawyers.com

Respectfully submitted,

*s/ Aria C. Branch*
Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
abranch@elias.law
jabbuhl@elias.law
blewiston@elias.law
dzeigler@elias.law

*Counsel for Intervenors-Appellees*

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)–(4) because it contains 3,847 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 40(d)(2) & (4) because it was prepared in Times New Roman 14-point font using Microsoft Word version 365.

*s/ Aria C. Branch*
Aria C. Branch
