No. 26-1225

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

    Defendants-Appellees,

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

    Intervenors-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Hala Y. Jarbou

## BRIEF FOR STATE DEFENDANTS-APPELLEES

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants-Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Dated:  July 22, 2026        (P55439)

**TABLE OF CONTENTS**

Page

Table of Authorities.................................................................... iii

Introduction ..................................................................................1

Argument......................................................................................3

I.    The petition identifies no conflict or precedent-setting error
      of exceptional importance warranting en banc review. .................3

      A.    The panel's interpretation of Title III's "come into . . .
            possession" language is correct and does not merit en
            banc review...................................................................4

            1.    The history and text of Title III of the Civil
                  Rights Act of 1960. ........................................4

            2.    Michigan's voter registration database .........................5

            3.    The panel's interpretation was correct.........................7

                  a.    The interpretation does not conflict with the
                        text of Title III....................................................8

                  b.    The panel correctly construed Title III to
                        avoid conflict with NVRA and HAVA.................12

                  c.    The panel's interpretation is not an absurd
                        result. ..............................................................14

      B.    The panel's interpretation of Title III's "basis and
            purpose" language does not conflict with precedent or
            its plain text and does not merit en banc review. ................15

      C.    DOJ's demand fails for additional reasons...........................17

            1.    DOJ's demand did not state a proper "purpose"
                  under Title III. ..........................................................18

2.    DOJ's demand violates the Privacy Act. ...................... 19

Conclusion and Relief Requested ........................................................... 20

Certificate of Compliance ..................................................................... 22

Certificate of Service ............................................................................ 23

ii

# TABLE OF AUTHORITIES

Page

**Cases**

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.,*
498 U.S. 533 (1991) ............................................................... 16

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ......................... 10

*Fischer v. United States*, 603 U.S. 480 (2024) ....................................... 13

*Honeycutt v. United States*, 581 U.S. 443 (2017) .................................... 8

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ............................... 17

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ................................... 16

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................... 15, 16

*U.S. v. Bd. of Elections of N.Y.*, 2026 WL 1999921 (N.D.N.Y. July
10, 2026) ............................................................................... 8

*U.S. v. Bellows*, 2026 WL 1430481 (D. Me. May 21, 2026) ...................... 8

*U.S. v. DeMarinis*, 2026 WL 1780586 (D. Md. June 18, 2026) ............... 8

*U.S. v. Fontes,* 2026 WL 1177244 (D. Az. April 28, 2026) ...................... 8

*U.S. v. Koski*, 2026 WL 2032532 (E.D. Va. July 14, 2026) ...................... 8

*U.S. v. Scanlan, et al.*, 2026 WL 1864054 (D.N.H. June 29, 2026) .......... 8

*U.S. v. Schmidt*, 2026 WL 1850016 (W.D. Pa. June 27, 2026) ................ 8

*U.S. v. Thomas*, 2026 WL 2070437 (D. Conn. July 17, 2026). ................ 8

*U.S. v. Wisconsin Elections Comm., et al.*, 2026 WL 1430354 (W.D.
Wis. May 21, 2026) ................................................................... 8

*United States Department of Justice v. Tax Analysts, Inc.*, 492 U.S.
136 (1989) ............................................................................. 10

*United States v. Benson,* 179 F.4th 470 (6th Cir. 2026) ........... 4, 8, 13, 15

*United States v. Galvin,* No. 25-cv-13816-LTS, 2026 WL 972129 (D. Mass., April 9, 2026)................................................................16

*United States v. Markwood,* 48 F.3d 969 (6th Cir. 1995) .......................15

*United States v. Oregon,* ___ F. Supp. 3d ___, 2026 WL 318402 (D. Or. Feb. 5, 2026) ..................................................................19

*United States v. Powell,* 379 U.S. 48 (1964)...........................................15

*United States v. Warner,* 2026 WL 201887 (S.D. W. Va. July 13, 2026) ...........................................................................................19

*United States v. Weber,* ___ F. Supp. 3d ___, 2026 WL 118807 (C.D. Ca., Jan. 15, 2026)................................................................19

**Statutes**

52 U.S.C. § 20507(a)(4)(A)........................................................................6

52 U.S.C. § 20507(c)(2)(A) .......................................................................2

52 U.S.C. § 20510 ...................................................................................18

52 U.S.C. § 20701 .....................................................................................4

52 U.S.C. § 20702 .....................................................................................5

52 U.S.C. § 20703 .....................................................................................5

52 U.S.C. § 21083(a)(2)(A), (4) ...............................................................6

Mich. Comp. Laws § 168.493b..................................................................6

Mich. Comp. Laws § 168.493a..................................................................6

Mich. Comp. Laws § 168.497(1) ...............................................................6

Mich. Comp. Laws § 168.497(2) ...............................................................6

Mich. Comp. Laws § 168.499b..................................................................7

Mich. Comp. Laws § 168.499e.................................................................6

Mich. Comp. Laws § 168.500a.................................................................6

Mich. Comp. Laws § 168.506..................................................................6

Mich. Comp. Laws § 168.509ii ...............................................................6

Mich. Comp. Laws § 168.509o.................................................................6

Mich. Comp. Laws § 168.509p(b) ...........................................................5

Mich. Comp. Laws § 168.509q......................................................6, 7, 14

Mich. Comp. Laws § 168.509q(1)(f).....................................................6, 14

Mich. Comp. Laws § 168.509r.................................................................6

Mich. Comp. Laws § 168.509r(1)............................................................6

Mich. Comp. Laws § 168.509v.................................................................6

Mich. Comp. Laws § 168.516(1) .............................................................7

Mich. Comp. Laws § 168.811......................................................5, 7, 14

Mich. Comp. Laws § 168.509gg..............................................................7

Mich. Comp. Laws § 168.509p(b) ...........................................................6

Mich. Comp. Laws § 168.761d(14) ..........................................................5

## Rules

Fed. R. App. P. 40.................................................................. 1, 3, 4, 17

Fed. R. App. P. 40(b)(2) ....................................................... 1, 3, 17

Mich. Admin. Code, R. 168.790...............................................................5

## INTRODUCTION

The petition for rehearing en banc should be denied.  While cases involving elections often involve important and compelling issues, this is not one of them.

The petition presents no conflict with Supreme Court, Sixth Circuit, or any other circuit precedents, no precedent-setting error of exceptional importance, and no doctrinal uncertainty warranting en banc review.  *Contra* Fed. R. App. P. 40(b)(2).  Rather, it largely restates arguments the panel majority already considered—and rejected—after full briefing and argument.

The petition's core claim is that the panel "distorted" Title III by declining to rewrite the statutory phrase "come into . . . possession" to cover internally generated statewide voter registration databases.  But the panel applied ordinary principles of construction, considering Title III's historical context, its structure and text, consulting contemporaneous dictionaries, and avoiding conflict with the National Voter Registration Act and the Help America Vote Act.  The panel's interpretation is reasonable, consistent with statutory text, and does not produce the "exceptional nationwide error" the petition alleges.

The petition also challenges the panel's determination that the Department of Justice's multi-letter correspondence failed to provide a unified demand setting forth the "statement of the basis and purpose" as required by Title III.  But the panel properly applied the statute's plain language that a demand "shall contain" the "basis and purpose," and found that no single letter did so.  This is a straightforward statutory application—not a matter requiring en banc intervention.

DOJ's claim that the decision will "paralyze" its ability to ensure pre-election enforcement and compliance with voting laws, including NVRA and HAVA, is unfounded.  DOJ is free to demand any other record Michigan retains under Title III, including other records that include voter registration or voting information.  DOJ may also request records Michigan maintains under NVRA and may bring enforcement actions directly under NVRA and HAVA if it so chooses.

Moreover, as State Defendants recently explained, federal law prohibits any further systematic removal of voters in Michigan before the November 3, 2026 election, 52 U.S.C. § 20507(c)(2)(A), and so any confirmation of Michigan's voter rolls by DOJ would now occur too late

2

for any widespread action to be taken in this cycle.  (Doc. 110, State Defs. Resp. Mot. Exp., pp. 8-11.)

Because the panel's reasoning neither conflicts with binding authority nor presents any issue or error of exceptional importance as required by rule, *see* Fed. R. App. P. 40(b)(2), the petition falls far short of the demanding standards for rehearing.

## ARGUMENT

**I.    The petition identifies no conflict or precedent-setting error of exceptional importance warranting en banc review.**

Under Sixth Circuit I.O.P. 40 and Fed. R. App. P. 40, en banc review is reserved for addressing panel decisions that conflict with Supreme Court or circuit precedent or that involve exceptionally important questions.  This is a high hurdle.  It has not been met.

Here, the petition points to no actual conflict.  It instead attacks the panel's interpretation of statutory text—a routine appellate function.  The panel grounded its interpretation in contemporaneous dictionary definitions, statutory structure, and historical context of Title III.  Nothing in the petition transforms this ordinary interpretive dispute into an extraordinary issue requiring full-court review.

Further, the petition's assertion of "paralysis" of federal enforcement authority is speculative and does not meet Rule 40's standard. The panel expressly rejected such policy arguments as irrelevant to statutory interpretation. The petition should be denied.

## A. The panel's interpretation of Title III's "come into . . . possession" language is correct and does not merit en banc review.

### 1. The history and text of Title III of the Civil Rights Act of 1960.

Congress enacted the Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86, in response to deficiencies in the Civil Rights Act of 1957, which did not "arm the Attorney General with the tools necessary to investigate allegations of voting discrimination." *United States v. Benson*, 179 F.4th 470, 475 (6th Cir. 2026). Under Title III, election officials "shall retain and preserve, for a period of twenty-two months from the date of any [federal] election . . . all records and papers which come into [the official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701. The act authorizes criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or

4

alters any record or paper required by section 20701 of this title to be retained and preserved." 52 U.S.C. § 20702. The records and papers retained under § 20701 must be "made available for inspection, reproduction, and copying" by the Attorney General. 52 U.S.C. § 20703.

Title III thus requires election officials to retain records relating to a preceding federal election for 22 months following that election. For example, records relating to Michigan's November 5, 2024, general election, its last federal election, will be retained until September 22, 2026, 22 months post certification, after which they will be disposed of as appropriate. *See*, *e.g.*, Mich. Comp. Laws §§ 168.811, 168.761d(14), Mich. Admin. Code, R. 168.790.[1]

### 2.    Michigan's voter registration database

Michigan's qualified voter file (QVF) is a distributed database that ties Michigan's 1,604 local clerks to a fully automated, interactive statewide voter registration file. *See* Mich. Comp. Laws § 168.509p(b)-(c). The QVF was created and is maintained by the Secretary of State.

---

[1] *See also*, pp. 12-14, Election Officials Manual Chapter 17: Election Preparation, Post-Election Duties, and Reporting Requirements (accessed July 22, 2026).

5

Mich. Comp. Laws §§ 168.509o, 168.509r.  Local clerks are granted direct access to the QVF to add, change, or delete registration records in the performance of their duties.  Mich. Comp. Laws §§ 168.509p(b)-(c), 168.509r(1).

The QVF is a live database and registration information is constantly updated through transactions at motor vehicle offices, see, e.g., Mich. Comp. Laws §§ 168.493a, 168.500a, online transactions, see, e.g., Mich. Comp. Laws §§ 168.493b, 168.509ii, by mail, *see*, e.g., Mich. Comp. Laws §§ 168.497(1), 168.509v, and by clerk office transactions, *see*, e.g., Mich. Comp. Laws §§ 168.497(2), 168.499e, 168.506.  The QVF is also updated through routine list-maintenance.  (Doc. 42, State Defs. Brf., pp. 21-26.)

Given the QVF's live status and that NVRA and HAVA require Michigan to perform list maintenance, *see* 52 U.S.C. § 21083(a)(2)(A), (4), 52 U.S.C. § 20507(a)(4)(A), the state has not considered the complete registration data maintained in the QVF subject to Title III's 22-month retention period.  Michigan instead retains voting history, *see* Mich. Comp. Laws § 168.509q(1)(f), poll lists of voters, and other

election-related records for purposes of § 20701.  *See* Mich. Comp. Laws § 168.811.

The QVF can generate a statewide list of registered voters.  Mich. Comp. Laws § 168.516(1).[2]  The list includes all active registered voters *as of the day* the report is generated.  The list does not include information exempt from disclosure, *see* Mich. Comp. Laws §§ 168.509gg, 168.499b, 168.509q, or information relating to voting in a particular election.  It simply reflects who is registered as of a particular day.  DOJ only requested a copy of the statewide voter list. (R. 39-2, Page ID # 491; R. 39-3, Page ID # 499; R. 39-4, Page ID # 500.)

### 3.    The panel's interpretation was correct.

DOJ argues that the panel "distorts" the phrase "come into … possession" by excluding internally generated records.  But the panel reasonably concluded that the ordinary meaning of the word or phrase—"acquire, obtain, or receive"—does not include a database the Secretary of State created and maintains under state or federal law.  At

---

[2] *See* Statewide Records Summaries Available by a FOIA Request, June 2024, pp. 2-4, available at Statewide Records Summaries Available by a FOIA Request (accessed July 22, 2026).

least nine district courts outside this circuit have dismissed DOJ's complaints on similar grounds.[3]

### a. The interpretation does not conflict with the text of Title III.

Congress did not define what it means to "come into . . . possession" of a record. The panel determined that when Congress enacted Title III, "the term 'come into' meant to 'acquire,' 'obtain,' or 'receive,'" citing *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) and contemporaneous dictionary definitions. (Slip op, p 9.) Applying this definition, the panel concluded the Secretary "did not acquire, obtain, or receive the qualified voter file from a third party. Instead, Michigan officials created it themselves." *Id*. at 478-79.

---

[3] *See U.S. v. Fontes,* 2026 WL 1177244 at * 2 (D. Az. April 28, 2026); *U.S. v. Bellows*, 2026 WL 1430481 at * 7 (D. Me. May 21, 2026); *U.S. v. DeMarinis*, 2026 WL 1780586 at * 4 (D. Md. June 18, 2026); *U.S. v. Scanlan, et al.*, 2026 WL 1864054 at * 4 (D.N.H. June 29, 2026); *U.S. v. Schmidt*, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *U.S. v. Wisconsin Elections Comm., et al.*, 2026 WL 1430354 at * 4 (W.D. Wis. May 21, 2026); *U.S. v. Bd. of Elections of N.Y.*, 2026 WL 1999921 at * 9 (N.D.N.Y. July 10, 2026); *U.S. v. Koski*, 2026 WL 2032532 * 5 (E.D. Va. July 14, 2026); *U.S. v. Thomas*, 2026 WL 2070437 at * 5 (D. Conn. July 17, 2026).

The panel found further support for its position by looking to the types of records referenced in § 20701, like poll taxes, and observed that "[e]lection officers do not create these kinds of records. Rather, they obtain them from third parties—generally voters or prospective voters." *Id.* at 480.

Last, the panel concluded that "[a] construction that makes all voting records and papers in the election officers' possession subject to Title III would render 'come into' superfluous." *Id.* "Reading Title III in a way that requires election officers to retain and preserve voting records and papers that they obtain, acquire, or receive allows 'come into [her] possession' to do real work." *Id.*

DOJ argues the panel's exclusion of internally generated records conflicts with the text of Title III. But the petition relies largely on the dissenting opinion and analogies rather than actual contrary precedent. (Doc. 106, pp. 7-13.) The panel applied ordinary statutory construction principles to the text and grounded the limitation to external sources in the text, specifically the "comes into [ ] possession" language. (Slip op, pp 8-10.). Nor did the panel err in construing the "application, registration, [and] payment of poll tax," language as limiting § 20701 to

9

records received from voters or other third parties.  (Doc. 106, p 15.)
The records expressly mentioned provide context to what other records
may relate to an act requisite to voting, supporting the panel's
interpretation that records include only those from external sources,
like voters.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15
(2001) (applying the canon of *ejusdem generis*).  DOJ also points to
*United States Department of Justice v. Tax Analysts, Inc.*, 492 U.S. 136
(1989), to support its counter-construction.  (Doc. 106, pp. 8-10.)  But as
the panel noted, the Supreme Court there construed different and
broader language in another statute and thus "provides no insight
about the narrower term 'come into h[er] possession,' as Title III uses
it."  (Slip op, p 13.)

Quoting its preferred dictionary, DOJ asserts that a record comes
into the possession of an election official whenever the official "'get[s]' or
'acquire[s]' it and retains it within his control." (Doc. 106, p 13.)  But
"acquiring" is not the same or akin to "creating," and is not a natural
reading of the text, as the panel's "cake" analogy aptly shows.  (Slip op,
p 9.)  Further, as Intervenors aptly note in their brief, DOJ's suggestion
that election officials "com[e] into possession" of the voter list by

10

"aggregat[ing] individual voter records," (Doc. 106, p 13), highlights the
distinction drawn by Title III:

> "Individual voter records" sent by voters to the Secretary
> "came into her possession" and thus are covered by Title III,
> but no reasonable English speaker would say that the voter
> list itself "came into [her] possession" because (unlike the
> voter records) it was not received from an external source. As
> the panel noted, this theory "taints the dissent's entire
> analysis" as well because it relies on this same "mismatch
> between what the government actually requested from
> Benson and what the dissent thinks the government
> requested."

(Doc. 126, p 13) (citing Slip op, p 14).  But as the panel noted, DOJ
requested the statewide voter list, not any individual or underlying
records. (Slip op, p 14.)  Further, the statewide list contains information
from underlying records, like registration forms, but also information
from sources other than a voter (e.g., other state or federal agencies).  In
this way, the statewide voter list functions as a self-created, dynamic
database containing sensitive voter information on voters from sourced
other than "records" voters submit to election officials.

DOJ also argues that Title III must cover some "government
generated records" based on reports of the Civil Rights Commission.
(Doc. 106, p 15.)  But it is the text of the statutes that control, and

11

nothing in Title III suggests it was intended to capture internally created records of any sort.

Equally unavailing is DOJ's argument that if Title III reaches internally created documents, then "come into [ ] possession" is not rendered superfluous because it imposes a "temporal and custodial limitation." (Doc. 106, p 16) (quoting Slip op, p p.21 n.7 (dissent)). But as Intervenors observe "if that was Congress's intent, it could have used the much more natural choices of 'in the possession of' or simply referred to 'records' without qualification (as in the NVRA)." (Doc. 126, MARA Brf., p 16.) Congress did not do so.

Lastly, DOJ suggests that the Secretary comes into possession of Michigan's voter list "when she received it from someone else in her office." (Doc. 106, p 13.) Neither the Secretary nor any employee "receives" the voter list in an ordinary sense. It is a living database that hundreds if not thousands of people simultaneously have access to.

### b.    The panel correctly construed Title III to avoid conflict with NVRA and HAVA.

In support of its "come into . . . possession" analysis and exclusion of the QVF, the panel noted officials "must constantly change

12

information" in the QVF under NVRA's and HAVA's list maintenance requirements.  (Slip op, p 10.)  "Title III tells election officials to retain and preserve certain records," and the NVRA and HAVA "tell election officials to remove ineligible voters" from their voter lists.  *Id.* "We should not adopt a reading that would place election officials in violation of one federal law for trying to comply with others."  *Id.* at 480.

DOJ argues there is no conflict between the laws because removing ineligible voters under NVRA or HAVA is "not 'alter[ing]'" the registration list, § 20702, rather it is " 'retain[ing] and preserv[ing]' " the registration list, § 20701.  (Doc. 106, p 19.)  But that construction is unpersuasive.  If a state removes an ineligible voter from the state voter list during the retention period, the state is " 'impair[ing] the . . . availability of the [voter's] record.' " (*Id.*) (quoting *Fischer v. United States*, 603 U.S. 480, 418) (2024)).  DOJ's citation to *Voter Reference Found., LLC v. Torres*, 160 F.4th 1068, 1085 (10th Cir. 2025) is also inapt where NVRA requires states to "maintain" records, which does not foreclose updating the same records.  Further, that an official may not be prosecuted for altering the voter list under § 20702 does not obviate the conflict between § 20701 and NVRA and HAVA.  (Doc. 106,

13

pp. 19-20.)  At the least, there is significant tension between NVRA's and HAVA's list maintenance requirements and Title III's retention and non-alteration requirements, such that it supports the panel's interpretation of Title III's text.

### c.   The panel's interpretation is not an absurd result.

Interpreting Title III to exclude an electronic voter registration database like the QVF is not an absurd result.  (Doc. 106, p 15.)  Congress did not require electronic statewide voter registration lists until the passage of HAVA in 2002—42 years after Title III.  It is not surprising then that the text of Title III does not capture this modern, dynamic electronic record.  Regardless, other than the electronic lists DOJ may still demand other records containing registration and voting information that are retained under § 20701.  In Michigan, that would include voting history, Mich. Comp. Laws § 168.509q(1)(f), and the poll lists retained for 22 months after every federal election.  *See* Mich. Comp. Laws § 168.811.

14

**B.    The panel's interpretation of Title III's "basis and purpose" language does not conflict with precedent or its plain text and does not merit en banc review.**

DOJ's second argument—contesting the "single-document rule"—also fails to justify rehearing.  The majority straightforwardly applied § 20703, which states that a written demand "shall contain a statement of the basis and the purpose."  Where none of DOJ's "three letters contains both a statement of the basis along with the purpose of the government's request," the demand failed.  (Slip op, p 15.)

DOJ argues the panel was foreclosed from reviewing the sufficiency of its demand citing the dissent and *Kennedy v. Lynd*, 306 F.2d 222, 225-26 (5th Cir. 1962).  (Doc. 106, pp. 16-17.)  But as the panel correctly observed later precedent from the Supreme Court and this Court permits review of DOJ's civil demand for basic compliance with its enabling statute, § 20703.  (Slip Op, p 15, n. 2) (citing *United States v. Powell*, 379 U.S. 48, 58 (1964); *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995)).  Nor did review run afoul of *Kennedy* regardless, where that court observed "it would be in order for the Court to determine whether the written demand has been made[.]  306 F.2d at 226.

15

DOJ further disagrees that the basis and purpose for its demand must be set forth in a single document.  (Doc. 106, pp. 18-19.)  But contrary to the petition, the panel did not impose an a-textual rule.  It simply enforced the statute's requirement that the demand itself contain both elements.  That is the most natural reading of § 20703: "*This* demand *shall contain* a statement of the basis *and* purpose therefor."  (Emphasis added).  *See, e.g, Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 547 (1991) ("Court will not reject the natural reading of a . . . statute in favor of a less plausible reading, even one that seems to us to achieve a better result.")  And at least one other court has interpreted § 20703 similarly. *See, e.g., United States v. Galvin*, No. 25-cv-13816-LTS, 2026 WL 972129 at * 3 (D. Mass., April 9, 2026).  Tellingly, that is how DOJ understood § 20703 to function from its first demands under Title III. *See, e.g., Kennedy*, 306 F.2d at 229 & n.6 (referencing and quoting the Attorney General's demand); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same).

As a last resort, DOJ suggests its August 14, 2025 letter satisfied the "single-letter rule."  (Doc. 106. pp. 19-20.)  But that letter does not

16

expressly refer to the July 21, 2025, letter it simply refers to "the request" and "our original letter." (R. 39-4, Page ID # 500, 502.) Nor does it mention, even in passing, the purported irregularities outlined in the July 21, 2025, letter. (*Id.*, Page ID # 500-02.) The letter simply does not contain a statement of the basis for the demand. The panel's routine statutory application does not justify en banc review.

Because DOJ has not shown that the panel made any precedent-setting errors of exceptional public importance, *see* Fed. R. App. P. 40(b)(2), the petition should be denied.

### C. DOJ's demand fails for additional reasons.

The State Defendants contend that the panel's two holdings are correct interpretations of Title III and that DOJ's petition will be denied accordingly. Even so, DOJ's demand was deficient, and its complaint subject to dismissal, for multiple other reasons. (*See* Doc. 42, State's Brf, pp. 42-54, 59-78; Doc. 41, MARA Brf, pp. 45-50, 53-59.) Two in particular warrant a brief discussion.

### 1. DOJ's demand did not state a proper "purpose" under Title III.

DOJ's demand letter states that the "purpose of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." (R. 39-4, Page ID # 501.)  But auditing list maintenance is not a proper purpose under Title III.

The context surrounding Title III's passage makes plain that it was enacted to assist DOJ investigations into voting discrimination. (Slip Op, p 4.)  Nothing surrounding its enactment suggests Congress intended Title III to go beyond the purpose of investigating discriminatory efforts to obstruct the right to vote.  Certainly nothing suggests it was intended to authorize DOJ to manage administrative aspects of election regulation, like list maintenance.  Further, Congress provided a records disclosure provision in NVRA, 52 U.S.C. § 20507(i), and both NVRA and HAVA provide DOJ with enforcement mechanisms, 52 U.S.C. §§ 20510, 21111.  Whatever authority DOJ may have to investigate or review list maintenance compliance, and to obtain records for that purpose, it exists only under those acts, not Title III.

Other district courts have agreed that investigating list maintenance is not a proper purpose for a demand under Title III.  See,

18

e.g., *United States v. Weber*, ___ F. Supp. 3d ___, 2026 WL 118807 at * 9 (C.D. Ca., Jan. 15, 2026); *United States v. Oregon*, ___ F. Supp. 3d ___, 2026 WL 318402 at *10 (D. Or. Feb. 5, 2026); *United States v. Warner*, 2026 WL 201887 at * 7 (S.D. W. Va. July 13, 2026).

### 2.     DOJ's demand violates the Privacy Act.

The Privacy Act, 5 U.S.C. § 552a, bars DOJ's demand for the sensitive information of Michigan voters in two respects.

First, by demanding registration lists DOJ is seeking to collect records describing First Amendment activity, which it cannot do where no statute expressly authorizes the collection of the records and where the individuals have not consented.  5 U.S.C. § 552a(e)(7).  See, e.g., *Weber*, 2026 WL 118807 at *17 (Privacy Act bars DOJ's request for unredacted voter roll, which reflects First Amendment activities).

Second, the Privacy Act requires DOJ to publish a System of Records Notice, or SORN, in the Federal Register before "establish[ing] or revis[ing]" a "system of records."  *Id.* § 552a(e)(4).  DOJ alleges that the registration records would be collected and maintained under the existing "SORN titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611

19

(Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)." (R. 1, Page ID # 15, ¶ 51; Doc. 25, Page ID # 50-52.)

But that SORN does not cover a voter list complete with names, addresses, much less driver's license and social security numbers and full dates of birth. *See* 68 Fed. Reg. at 47611. The other regulations cited by DOJ amended certain DOJ SORNs that are likewise inapplicable here. *See Weber*, 2026 WL 118807 at \*18 ("[T]he DOJ fails to identify relevant [SORNs] as necessitated by the Privacy Act.")

DOJ's demand for the personal information of Michigan voters thus violates the Privacy Act.

## CONCLUSION AND RELIEF REQUESTED

The petition identifies no conflict with precedent, no precedent-setting error of exceptional importance, and no institutional need for en banc review. It largely restates arguments the panel majority addressed and rejected and relies on policy concerns and dissenting views rather than binding law. The petition should be denied.

20

Respectfully submitted,

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

Dated:  July 22, 2026

21

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This response to an en banc petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(b) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 3,900 words. This document contains 3,890 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

/s/ Heather S. Meingast
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

22

# CERTIFICATE OF SERVICE

I certify that on July 22, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
(P55439)

23