No. 26-1225

# In the United States Court of Appeals for the Sixth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

*Defendants-Appellees,*

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

*Intervenors-Appellees.*

**BRIEF OF THE HONEST ELECTIONS PROJECT AS *AMICUS CURIAE* IN SUPPORT OF THE UNITED STATES' PETITION FOR REHEARING EN BANC**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION
NO. 1:25-CV-01148

Jason B. Torchinsky
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
2300 N St. NW, Suite 643
Washington, D.C. 20037
Phone: (202) 737-8808
Email: jtorchinsky@holtzmanvogel.com

*Counsel for the Honest Elections Project*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26 1225                    Case Name: United States v. Benson

Name of counsel: Jason B. Torchinsky

Pursuant to 6th Cir. R. 26.1, the Honest Elections Project
                                               *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ July 15, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jason B. Torchinsky

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                      Page 1 of 2

## TABLE OF CONTENTS

Disclosure of Corporate Affiliations and Financial Interest.....................i

Table of Contents ..................................................................................ii

Table of Authorities................................................................................ iii

Identity and Interest of *Amicus Curiae*....................................................1

Argument...............................................................................................1

   I.   Congress Enacted Title III to Grant the Attorney General Broad Authority to Investigate and Enforce Suspected Violations of the Civil Rights Act .................................................................................2

     A.  The 1957 Civil Rights Act ensured equal access to elections and confidence in voter records but lacked a crucial federal enforcement mechanism ...........................................................2

     B.  Congress passed Title III to provide the Attorney General with necessary enforcement mechanisms ..........................................6

   II.  Contemporaneous Precedent Confirmed That the Basis and Purpose of the Attorney General's Demand for Records Under Title III Is Not Reviewable.............................................................7

   III. Title III's Text and Structure Confirm That the Basis and Purpose of the Attorney General's Demand Is Not Reviewable.................10

Conclusion ...........................................................................................13

Certificate of Compliance.....................................................................14

Certificate of Service ...........................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Coleman v. Kennedy,*
  313 F.2d 867 (5th Cir. 1963) ........................................................ 7, 9, 10
*FDA v. Brown & Williamson Tobacco Co.,*
  529 U.S. 120 (2000) ............................................................................... 11
*In re Coleman,*
  208 F. Supp. 199 (S.D. Miss. 1962) ..................................................... 10
*In re Wallace,*
  170 F. Supp. 63 (M.D. Ala. 1959) .......................................................... 4
*Kennedy v. Lynd,*
  306 F.2d 222 (5th Cir. 1962) ......................................................... 8, 9, 11
*United States v. Benson,*
  No. 26-1225, 2026 U.S. App. LEXIS 18362 (6th Cir. June 24, 2026).... 2
*United States v. R. Enters., Inc.,*
  498 U.S. 292 (1991) ............................................................................... 12

**Statutes**

52 U.S.C. § 10101 .......................................................................................... 3
52 U.S.C. § 20701 ................................................................................ 6, 10, 11
52 U.S.C. § 20702 ...................................................................................... 6, 11
52 U.S.C. § 20703 ................................................................................... 2, 6, 11
52 U.S.C. § 20705 ...................................................................................... 6, 11
Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634....................... 2
Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 ................... 1, 6

**Other Authorities**

*Proposed Civil Rights Legislation: Hearing on S. 942 and S. 955–960*
  *Before the Subcomm. on Constitutional Rights of the S. Comm. on the*
  *Judiciary,* 86th Cong. (1959)................................................................ 5
United States Commission on Civil Rights, Report of the United States
  Commission on Civil Rights (1959)................................................... 3, 4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

Honest Elections Project ("HEP") is a nonpartisan organization devoted to supporting the right of every lawful voter to participate in free and honest elections. Through public engagement, advocacy, and public-interest litigation, HEP defends the fair, reasonable measures that legislatures put in place to protect the integrity of the voting process. HEP supports commonsense voting rules and opposes efforts to reshape elections for partisan gain. HEP has a significant interest in this case because it involves efforts to dismantle the federal statutory safeguards that ensure nationwide voter record compliance.

## ARGUMENT

This case raises questions of exceptional importance regarding the Attorney General's ability to safeguard election integrity and protect the rights of voters. Congress passed Title III of the Civil Rights Act of 1960 (the "1960 CRA"), Pub. L. No. 86-449, 74 Stat. 86, to grant the Attorney General broad authority to demand and investigate state election records. The Attorney General need only make a written demand for such

---

[1] No party's counsel authored this brief in whole or in part, and no one besides *Amicus* or its counsel contributed money to fund the brief's preparation or submission.

records that contains "a statement of the basis and the purpose" of the demand. 52 U.S.C. § 20703. The text, history, and contemporaneous precedent construing Title III demonstrate that the sufficiency of this basis and purpose statement is not subject to review by federal courts. Nevertheless, the panel held that the Attorney General failed to comply with Title III because the demand for records, in the panel's view, did not include a sufficient "basis" or "purpose." *United States v. Benson*, No. 26-1225, 2026 U.S. App. LEXIS 18362, at *26 (6th Cir. June 24, 2026). Because neither text, history, nor precedent demands eviscerating the Attorney General's ability to safeguard federal elections, this Court should grant rehearing en banc and reverse the decision of the panel.

I. **Congress Enacted Title III to Grant the Attorney General Broad Authority to Investigate and Enforce Suspected Violations of the Civil Rights Act**

A. **The 1957 Civil Rights Act ensured equal access to elections and confidence in voter records but lacked a crucial federal enforcement mechanism**

Congress passed the Civil Rights Act of 1957 (the "1957 CRA"), Pub. L. No. 85-315, 71 Stat. 634, to guarantee all Americans the equal opportunity to participate in elections. The 1957 CRA, among other things, established the United States Commission on Civil Rights (the

2

"Commission") and strengthened existing civil rights statutes. Most importantly, however, it authorized the United States, acting through the Attorney General, to initiate civil actions for injunctive relief to protect the right to vote. *See* 52 U.S.C. § 10101(c).

To bring these lawsuits, the 1957 CRA authorized the appointment of a new Assistant Attorney General that would be in charge of the Department of Justice's newly created Civil Rights Division. United States Commission on Civil Rights, Report of the United States Commission on Civil Rights 128 (1959) ("CCR Report"). The Civil Rights Division's jurisdiction also included investigating and enforcing "statutes relating to election frauds [and] interference with the right to vote." *Id.*

The 1957 CRA, however, did not provide the Attorney General, Civil Rights Division, or the Commission with sufficient mechanisms to investigate suspected infringements on the right to vote. In its 1959 evaluation of the 1957 CRA's progress, the Commission described that "[i]n both Alabama and Louisiana . . . the Commission and its staff encountered obstacles in its effort to examine records." *Id.* at 137. These obstacles, according to the Commission, "were at least partially effective as a deterrent to the Commission's discharge of its duty." *Id.*

3

For example, Alabama officials erroneously interpreted state constitutional provisions as precluding review of registration applications by the federal government and production of such records at the Commission's hearing. *Id.* Without an explicitly legislated enforcement mechanism in the 1957 CRA, the Commission was forced to rely on its subpoena power. When Alabama officials refused to comply with the subpoenas, a federal court ordered them to do so, noting that the inspection of voting records "must be considered to be an essential step in the process of enforcing and protecting the right to vote." *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959). This led to delays in evaluating complaints and even provided time for Alabama to pass legislation permitting the destruction of voting records to further thwart compliance with the 1957 CRA. CCR Report at 137. This experience led the Commission to conclude that "lack of uniform provision for the preservation and public inspection of all records pertaining to registration and voting hampers and impedes investigation of" civil rights complaints. *Id.* The solution, according to the Commission, was to require all State "registration and voting records" to be preserved and subject to public inspection. *Id.* at 138.

4

The Attorney General's attempts to access state voter records were no more successful. Attorney General William P. Rogers, in a statement before the Senate Judiciary Committee's Subcommittee on Constitutional Rights, stated that it was "impracticable, if not impossible" for the government to assemble "the necessary proof of discrimination" to bring a civil suit under the 1957 CRA without pre-suit access to state voter records. *Proposed Civil Rights Legislation: Hearing on S. 942 and S. 955–960 Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong. 13–14 (1959) (statement of Honorable William P. Rogers, Attorney General of the United States) ("Rogers Statement"). But under then-existing law, the Attorney General had no "power to require the production of election records." *Id.* at 14. "The need for this power [was] plain," according to Attorney General Rogers, because "[s]ome state and local authorities ha[d] refused to permit inspection." *Id.* He thus advocated for legislation that would permit "production and inspection of the records rather than for the issuance of a subpoena" and require "retention of records for a period of three years." *Id.* at 15.

5

### B. Congress passed Title III to provide the Attorney General with necessary enforcement mechanisms

In response to the Attorney General's and the Commission's concerns, Congress passed Title III of the Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86. Title III requires every election officer to "retain and preserve, for a period of twenty-two months from the date of any [federal] election . . . all records and papers which come into [the official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. And it authorizes criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or alters any record or paper required . . . to be retained and preserved." *Id.* § 20702.

Further, Title III requires that such records "upon demand in writing by the Attorney General or his representative . . . be made available for inspection, reproduction, and copying." *Id.* § 20703. The Attorney General's demand need only "contain a statement of the basis and the purpose therefor." *Id.* The federal "district court for the district in which a demand is made" has "jurisdiction by appropriate process to compel the production of" the voting records. *Id.* § 20705.

6

Title III's supporters made clear that its provisions provided the Attorney General with the robust investigatory authority needed to pursue civil actions under the 1957 CRA without unnecessarily impairing that authority. For example, Senator Keating, "one of the principal spokesmen for the bill in the Senate," emphasized that Title III's requirement that the Attorney General's demand include a statement of its basis and purpose "means only that the Attorney General identify in a general way the reasons for his demand." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting 106 Cong. Rec. 7767). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating possible violations of a Federal statute," and "[n]o showing even of a prima facie case of a violation of Federal law need be made." *Id.* (quoting 106 Cong. Rec. 7767).

## II. Contemporaneous Precedent Confirmed That the Basis and Purpose of the Attorney General's Demand for Records Under Title III Is Not Reviewable

Armed with this new investigatory authority under Title III, the Attorney General immediately began demanding access to state voting records to ensure compliance with federal law. Despite desperate attempts from some state officials to defy the Attorney General's

7

demands, federal courts routinely upheld the Attorney General's Title III authority.

The seminal case is *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). After mass resistance to the Attorney General's Title III demands led to conflicting district court decisions and "a basic misconception by the respective trial Judges concerning a Title III proceeding," the *Kennedy* Court sought to "make plain" the nature of the Attorney General's authority under Title III. *See id.* at 225. The court noted that "Title III provides an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles." *Id.* (internal quotation marks omitted). In making a Title III demand, the Attorney General performs a "purely investigative" function. *Id.* And when the Attorney General is forced to bring an application to compel production pursuant to the demand, such an application is not an "ordinary civil action" but a "special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.*

Because such a proceeding is simply to enforce the Attorney General's investigatory powers granted by Congress, "the factual

8

foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Id.* at 226 (citation omitted). The custodian of the requested records is not entitled to discovery or "any other procedural device or maneuver . . . to ascertain the factual support for, or the sufficiency of, the Attorney General's statement of the basis and purpose." *Id.* And the Court may only "determine whether the written demand has been made" or "whether the custodians against whom orders are sought have been given reasonable notice." *Id.* at 226. Only these "narrowly confined issues [are] open for judicial review or ascertainment." *Id.* at 227.

The Fifth Circuit reaffirmed its construction of federal courts' limited role in reviewing the sufficiency of the Attorney General's basis and purpose statement just one year later in *Coleman*, 313 F.29 at 867. There, the court upheld a Mississippi federal court's order compelling three Mississippi registrars to produce "registration and voting records" for the Attorney General's inspection. *Id.* The registrars argued that there was not a sufficient basis for inspection under Title III because "the Attorney General did not divulge the source of his information as to

9

alleged discriminations." *In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962). In affirming the district court's order compelling production, the Fifth Circuit emphasized Senator Keating's statement that the Attorney General's basis and purpose statement need only be "general." *Coleman*, 313 F.2d at 868 (quoting 106 Cong. Rec. 7767). Accordingly, contemporaneous precedent construing Title III in response to immediate challenges to the Attorney General's authority confirmed that sufficiency of the Attorney General's basis and purpose statement is not reviewable.

### III. Title III's Text and Structure Confirm That the Basis and Purpose of the Attorney General's Demand Is Not Reviewable

All of this makes sense in light of Title III's text and structure, which confirm that the basis and purpose of the Attorney General's demand is not reviewable. Title III carefully articulates the records that election officers "shall" preserve and make available for public inspection—"all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in [a federal] election." 52 U.S.C. § 20701. It imposes criminal penalties on anyone who willfully fails to preserve or make such records available or who willfully destroys such records. *Id.* §§ 20701–

10

20702. Title III further provides that such records "shall . . . be made available for inspection" upon a demand by the Attorney General. *Id.* § 20703. And federal courts "shall have jurisdiction by appropriate process to compel the production of" such records. *Id.* § 20705.

Read in harmony, these provisions plainly demonstrate that the Attorney General's basis and purpose statement is unreviewable. *See FDA v. Brown & Williamson Tobacco Co.*, 529 U.S. 120, 133 (2000) (discussing importance of construing statutory provisions as a "harmonious whole"). Congress has already articulated the universe of records that election officers are required to preserve and has imposed criminal penalties for failing to do so. *See* 52 U.S.C. §§ 20701–20702. Congress has also entitled the Attorney General to those records upon demand and empowered federal courts to "compel the production" of such records. *See id.* §§ 20703, 20705. Congress has thus left little to no room for judicial review of the substance of the Attorney General's demand. That is why, over six decades ago, the *Kennedy* Court held that a court may only review the "narrowly confined issues" of "whether the written demand has been made" or "whether the custodians against whom orders are sought have been given reasonable notice." 306 F.2d at 226.

11

Title III demands are not the only investigative tool that are rarely reviewable by federal courts. Grand jury subpoenas are also generally presumed to be reasonable. *United States v. R. Enters., Inc.*, 498 U.S. 292, 300 (1991). The "recipient who seeks to avoid compliance" bears the burden of proving a subpoena is unreasonable. *Id.* at 301. Before Title III, it was necessary that the Civil Rights Commission issue a subpoena to compel states to respond to requests for voter records. Rogers Statement at 14. Considering that the purpose of Title III was largely to create a mechanism to avoid that step, the new demand letter mechanism would surely not have been understood to have a lower burden of proof necessary for district courts to review their requests than the subpoenas before Title III's enactment.

If federal district courts have the flexibility to decide whether the basis and purpose of the Attorney General's demand for voter records is sufficient—as the panel decision purports—the Attorney General's ability to gather the evidence necessary to evaluate whether state registration practices are consistent with federal law will be severely limited. The panel's interpretation of Title III brings the state of election oversight back to the time of the 1957 CRA, eviscerating one of the

12

hallmark provisions of the 1960 CRA. Because Title III's text, history, and precedent do not require such a drastic limitation on the Attorney General's election oversight, this Court should grant rehearing en banc.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' petition for rehearing en banc.

Dated: July 15, 2026

Respectfully submitted,

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
2300 N St. NW, Suite 643
Washington, D.C. 20037
Phone: (202) 737-8808
Email: jtorchinsky@holtzmanvogel.com

*Counsel for the Honest Elections Project*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Federal Rules of Appellate Procedure 29 and 32 and 6th Circuit Rule 32 because the brief contains 2,474 words, excluding the parts that can be excluded, and has been prepared in a proportionally spaced font using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky
*Counsel for the Honest Elections Project*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I filed the foregoing via ECF, which will electronically notify all counsel of record.

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky
*Counsel for the Honest Elections Project*