No. 26-1225

# In the United States Court of Appeals for the Sixth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JOCELYN BENSON, in her official capacity as Secretary of the State of Michigan; STATE OF MICHIGAN,

*Defendants-Appellees,*

LEAGUE OF WOMEN VOTERS OF MICHIGAN; MICHIGAN ALLIANCE FOR RETIRED AMERICANS; DONALD DUQUETTE; KEELY CRIMANDO,

*Intervenors-Appellees.*

**BRIEF OF THE AMERICAN CONSTITUTIONAL RIGHTS UNION AS *AMICUS CURIAE* IN SUPPORT OF THE UNITED STATES' PETITION FOR REHEARING EN BANC**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION
NO. 1:25-CV-01148

Abhishek Kambli
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
1325 Avenue of the Americas, Suite 2843, New York, NY 10019
Phone: (646) 792-9288
Email: akambli@holtzmanvogel.com

*Counsel for the American Constitutional Rights Union*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26 1225                     Case Name: United States v. Benson

Name of counsel: Abhishek Kambli

Pursuant to 6th Cir. R. 26.1, the American Constitutional Rights Union
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ July 15, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Abhishek Kambli

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                Page 1 of 2

# TABLE OF CONTENTS

Disclosure of Corporate Affiliations and Financial Interest .....................i

Table of Contents ..............................................................................ii

Table of Authorities............................................................................ iii

Identity and Interest of *Amicus Curiae* ...............................................1

Argument..........................................................................................2

   I.  Title III's Preservation Regime Coexists With List Maintenance ..3

     A.  Title III requires election officials to preserve voter records and make them available to the Attorney General on demand..........3

     B.  The NVRA pairs controlled list maintenance with retention of specified maintenance records....................................................5

     C.  HAVA treats voter-registration lists as dynamic, not immutable ....................................................................................6

     D.  Michigan law implements the same distinction...........................6

   II.  Title III Prohibits Willful Impairment of Preserved Records, Not Legally Required List Maintenance ...............................................7

     A.  The requested QVF is the aggregated form of individual registration records.................................................................7

     B.  When read with its statutory neighbors, "alters" does not prohibit lawful list maintenance ................................................9

     C.  Title III's willful *means rea* forecloses any conflict with the NVRA or HAVA ...................................................................10

   III. The Canon Against Implied Repeal Requires Giving Effect to Each of Title III, the NVRA, and HAVA...................................................12

Conclusion ......................................................................................13

Certificate of Compliance...................................................................15

Certificate of Service ........................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bondi v. Vanderstok,*
  604 U.S. 458 (2025) ...............................................................................10

*Bryan v. United States,*
  524 U.S. 184 (1998) ......................................................................... 10, 11

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
  601 U.S. 42 (2024) ...............................................................................12

*Fischer v. United States,*
  603 U.S. 480 (2024) ................................................................................9

*Jud. Watch, Inc. v. Lamone,*
  399 F. Supp. 3d 425 (D. Md. 2019).........................................................8

*Kennedy v. Lynd,*
  306 F.2d 222 (5th Cir. 1962) ..................................................................4

*McKenna v. Dillon Transp., LLC,*
  97 F.4th 471 (6th Cir. 2024)..................................................................13

*Morton v. Mancari,*
  417 U.S. 535 (1974) ...............................................................................12

*Posadas v. Nat'l City Bank,*
  296 U.S. 497 (1936) ...............................................................................12

*United States v. Benson,*
  No. 26-1225, 2026 U.S. App. LEXIS 18362 (6th Cir. June 24, 2026)...1, 2, 8

*United States v. Emmons,*
  8 F.4th 454 (6th Cir. 2021)...................................................................11

**Statutes**

18 U.S.C. § 1001 .....................................................................................11
26 U.S.C. § 501 .........................................................................................1
52 U.S.C. § 20507 ...........................................................................5, 8, 11
52 U.S.C. § 20701 .........................................................................1, 3, 8, 10
52 U.S.C. § 20702 ............................................................... 1, 3, 4, 8, 9, 10

52 U.S.C. § 20703 ........................................................................... 1, 4, 8

52 U.S.C. § 20704 ................................................................................. 1

52 U.S.C. § 20705 .............................................................................. 1, 4

52 U.S.C. § 20706 ................................................................................. 1

52 U.S.C. § 21083 ............................................................... 6, 8, 10, 11

Mich. Comp. Laws § 168.509m .......................................................... 6, 7

Mich. Comp. Laws § 168.509o .............................................................. 7

Mich. Comp. Laws § 168.509p ............................................................. 7

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The American Constitutional Rights Union ("ACRU") is a nonpartisan, nonprofit organization exempt under 26 U.S.C. § 501(c)(3). It supports the constitutional structure of election administration and promotes compliance with federal and state election law. Its work includes election administration, accurate voter rolls, and protections for vulnerable voters, including servicemembers and senior citizens.

That work gives ACRU a direct interest in the question presented here. The panel reasoned that bringing Michigan's qualified voter file ("QVF") within Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701–20706 ("Title III"), would put the statute "on a collision course" with the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA") because those later laws require officials to update the list. *United States v. Benson*, No. 26-1225, 2026 U.S. App. LEXIS 18362, at *16–17 (6th Cir. June 24, 2026). That premise forces a choice that Congress did not make. Sound election administration depends on both accurate current voter rolls and

---

[1] No party's counsel authored this brief in whole or in part, and no one besides *Amicus* or its counsel contributed money to fund the brief's preparation or submission.

1

preserved election records. ACRU therefore has an institutional interest in a construction that permits officials to maintain the former while preserving the custody, demand-based availability, and integrity of the registration and maintenance records embodied in those systems.

## ARGUMENT

This case raises questions of exceptional importance regarding the construction of Title III, the NVRA, and HAVA. The panel did not just fail to harmonize these statutes; it created a conflict that none of them contains. The panel held that interpreting Title III to permit the Attorney General access to the QVF "would place Title III on a collision course with the NVRA and HAVA" because "Title III requires election officers to retain and preserve" voting records but "the NVRA and HAVA *require . . .* election officials to alter the qualified voter file routinely as part of their reasonable efforts to ensure accuracy." *Benson*, 2026 U.S. App. LEXIS 18362, at *16–17.

The panel's collision course is entirely fictional. Title III's preservation regime can—and does—coexist with the NVRA and HAVA's list maintenance obligations. The most salient evidence that is true is that Title III's criminal provisions reach only willful conduct. 52 U.S.C.

2

§§ 20701–20702. An official who updates a voter roll for NVRA- and HAVA-mandated list maintenance does not engage in a willful violation. And the canon against implied repeal requires courts to give legal effect to each of Title III, the NVRA, and HAVA, not to erase a key mechanism for the Attorney General to protect the integrity of federal elections based on a manufactured "collision course." The Court should grant the United States' petition for rehearing en banc and reverse the panel decision.

## I. Title III's Preservation Regime Coexists With List Maintenance

### A. Title III requires election officials to preserve voter records and make them available to the Attorney General on demand

Title III begins with coverage, custody, and duration. For twenty-two months after a federal election, every election officer must "retain and preserve . . . all records and papers that come into [the officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in that election. *Id.* § 20701. An officer or custodian who "willfully fails to comply" with these retention and preservation obligations is subject to criminal penalties. *Id.*

Companion provisions protect those records and make them available for investigation by the Attorney General. Section 20702

prohibits any person from "willfully steal[ing], destroy[ing], conceal[ing], mutilat[ing], or alter[ing]" a record covered by Section 20701. *Id.* § 20702. Section 20703 requires the person with custody, possession, or control of such records to make them "available for inspection, reproduction, or copying" upon a written demand from the Attorney General. *Id.* § 20703. The written demand need only "contain a statement of the basis and the purpose" of the demand. *Id.* And Section 20705 authorizes the district court to compel production where the demand is made or the demanded record is located. *Id.* § 20705.

Taken together, these provisions preserve custody and access while guarding against willful impairment. This makes sense given that Congress enacted Title III to provide "an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles." *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). Nothing in the NVRA or HAVA indicates that Congress decided to revoke that tool with respect to qualified voter lists.

4

## B. The NVRA pairs controlled list maintenance with retention of specified maintenance records

The NVRA requires States to keep the official list current. Each State must conduct a general program making a reasonable effort to remove voters who have died or changed residence, subject to safeguards: the program must be uniform and nondiscriminatory; failure to vote cannot alone justify removal; and an address-based removal ordinarily requires written confirmation or notice and an opportunity for the voter to respond. 52 U.S.C. § 20507(a)(4), (b)–(d).

Like Title III, the NVRA also requires preservation. Subject to exceptions for records concerning a declination to register and the identity of the voter-registration agency through which a particular voter registered, each State must "maintain for at least 2 years" and "make available for public inspection" all records concerning its list-accuracy efforts, including the names and addresses of persons sent a removal notice and, as of the date of inspection, whether each has responded. *Id.* § 20507(i)(1)–(2). Section 20507(i) does not automatically require preservation of the entire QVF or every superseded entry. It nevertheless shows that removal from the operative list can coexist with retention of the records documenting that process.

5

### C. HAVA treats voter-registration lists as dynamic, not immutable

HAVA requires states to create a "single, uniform, official, centralized, interactive computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." *Id.* § 21083(a)(1)(A)(i)–(iii). HAVA makes the statewide computerized list the "single system for storing and managing" the official list and requires registration information obtained by local officials to be entered promptly. *Id.* § 21083(a)(1)(A)(i), (vi). It requires regular maintenance and NVRA-compliant removals, *id.* § 21083(a)(2), while directing that "voter registration records" be "accurate" and "updated regularly," *id.* § 21083(a)(4). A registration record therefore remains a record as officials ensure the voter registration list is accurate and current.

### D. Michigan law implements the same distinction

Michigan's QVF is a "single qualified voter file" "compiled from other state files" to maintain "accurate and current records of qualified voters." Mich. Comp. Laws § 168.509m(1)(d)–(e). Its network allows authorized officials to "add, change, or delete records contained in" the

6

file. *Id.* § 168.509p(b). That authority to change the operative system does not imply authority to destroy, corrupt, or suppress any covered registration record that Title III requires to be retained and preserved.

Michigan pairs those changes with continuing availability. The Secretary must use federal death information at least monthly to update the QVF and cancel a deceased elector's registration, while also making the "canceled voter registration information" available to local clerks. *Id.* § 168.509o(4). Although the statute does not establish full versioning or indefinite retention, it proves the narrower point that cancellation from the current roll and continued availability of specified registration information are compatible.

## II. Title III Prohibits Willful Impairment of Preserved Records, Not Legally Required List Maintenance

### A. The requested QVF is the aggregated form of individual registration records

The United States requested the QVF itself, which under Michigan law is "compiled from other state files," *id.* § 168.509m(1)(d), and is a computer file that maintains "records" through a network that can add, change, or delete records "contained in" it, *id.* § 168.509p(a)–(b). HAVA likewise calls the statewide list the system for "storing and managing"

7

the official list and directs that registration information obtained by local officials be entered into it. 52 U.S.C. § 21083(a)(1)(A)(i), (vi). As a result, and as Judge Nalbandian correctly determined, the QVF is "the aggregated form of documents which are themselves subject to Title III disclosure," not a different product that loses the character of its contents. *Benson*, 2026 U.S. App. LEXIS 18362, at *31–32 (Nalbandian, J., dissenting); *see also Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 440–41 (D. Md. 2019) ("[A] voter list is simply a pared down compilation of voter registrations.").

Accordingly, the records required to be preserved under Title III are each of the covered registration records that make up the QVF in the aggregate, not every momentary state of the QVF as a whole. As Judge Nalbandian described it, the QVF provides "a current snapshot of eligible voters." *Benson*, 2026 U.S. App. LEXIS 18362, at *30 (Nalbandian, J., dissenting). HAVA and the NVRA may require an official to change a voter's registration status or correct current information in that snapshot, but they do not require destroying the underlying records supporting a particular entry. *See* 52 U.S.C. §§ 20507(a)–(d), 20701–20703, 21083(a)(2), (4).

8

### B. When read with its statutory neighbors, "alters" does not prohibit lawful list maintenance

In addition, lawful list maintenance does not require an election official to "alter" any of the underlying voting records that makeup the QVF. Title III imposes criminal liability on any person who "willfully steals, destroys, conceals, mutilates, or alters" a record that is required to be preserved. 52 U.S.C. § 20702. But updating a particular entry in the QVF does not "alter" the QVF or the underlying records. As used in Section 20702, "alters" means more than just "change." It takes color from the four neighboring acts, which all relate to impairing a record's integrity or availability.

*Fischer v. United States*, 603 U.S. 480 (2024), illustrates this. *Fischer* construed a different statute that used a phrase similar to that at issue here, imposing criminal liability on any person who "alters, destroys, mutilates, or conceals a record." *Id.* at 486. The Court described this verb cluster—nearly identical to the verbs used in Section 20702—as acts that by their nature "impair an object's integrity or availability for use in an official proceeding." *Id.* at 489–90.

Under that construction, each verb retains a distinct core. Theft deprives the lawful custodian of a record; destruction eliminates it;

9

concealment hides it; mutilation damages it; and alteration reaches doctoring or corrupting information. That preserves substantial work for "alters" without transforming every correction, supplementation, or update to the QVF into a federal crime.

Congress required "voter registration records" to be accurate and "updated regularly." 52 U.S.C. § 21083(a)(4). An authorized, accuracy-enhancing update may make the current snapshot of those records different, but it does not doctor, suppress, or otherwise impair the underlying records that Title III protects.

### C. Title III's willful *means rea* forecloses any conflict with the NVRA or HAVA

Sections 20701 and 20702 impose criminal liability for "willful[]" violations. 52 U.S.C. §§ 20701–20702. In criminal law, "willfully" generally requires proof that the defendant knew the conduct was unlawful. *Bryan v. United States*, 524 U.S. 184, 191–93 (1998). Justice Kavanaugh recently restated the rule in the analogous setting of the Gun Control Act's licensing, recordkeeping, and serialization requirements: the government "must demonstrate that an individual knew that his conduct was unlawful, not merely that he knew the facts that made his conduct unlawful." *Bondi v. Vanderstok*, 604 U.S. 458, 486–87 (2025)

10

(Kavanaugh, J., concurring). *Bryan* cautioned, however, that meaning depends on context. 524 U.S. at 191, 194–96. Applying *Bryan* to charges under the Federal Election Campaign Act and 18 U.S.C. § 1001, this Court required proof that a defendant knew of the corporate-contribution ban and Federal Election Commission reporting requirements. *United States v. Emmons*, 8 F.4th 454, 478–79 (6th Cir. 2021).

That element forecloses the panel's supposed collision, because a conflict requires one statute to forbid what another commands. Section 20702 forbids nothing the NVRA and HAVA require: an official who updates a registration record because federal law directs it does not know her conduct is unlawful—she knows the opposite. *See* 52 U.S.C. §§ 20507(a)–(d), 21083(a)(2), (4). The prosecution the panel feared cannot lawfully occur. The NVRA and HAVA expressly permit required list maintenance, and knowing compliance with those obligations does not equate to a willful violation of Title III. But "maintenance" is no talisman: one who willfully destroys, conceals, or alters a covered preserved record cannot escape Title III's criminal provisions by relabeling that conduct.

11

### III. The Canon Against Implied Repeal Requires Giving Effect to Each of Title III, the NVRA, and HAVA

The panel's categorical exclusion uses the NVRA and HAVA to remove the QVF from Title III altogether, allowing those later laws to displace Title III's preservation and access rules for the records at issue. That is implied repeal in practical effect.

Repeals by implication are strongly disfavored. Implied repeal requires a clear and manifest congressional choice, shown either by irreconcilable commands or by a later enactment that covers the whole subject of the earlier law and was plainly meant as a substitute. *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936). When statutes are "capable of co-existence," courts must, absent a clearly expressed congressional intention to the contrary, "regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Shared subject matter and overlapping obligations alone do not establish irreconcilable commands. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42, 63–64 (2024). The NVRA and HAVA neither mention Title III nor replace its preservation, criminal, and access provisions.

Nor are the statutes' commands irreconcilable. As discussed above, Title III protects covered registration records through continued official

12

custody, demand-based availability, and evidentiary integrity. The NVRA and HAVA regulate current eligibility and accuracy under prescribed safeguards. An official can make authorized updates to the QVF while preserving the covered records embodied in it. And a prohibition limited to willful—knowingly unlawful—conduct cannot condemn what other federal statutes require. As this Court explained, "[g]reater specificity only matters if two complementary acts cannot be implemented at the same time." *McKenna v. Dillon Transp., LLC*, 97 F.4th 471, 476 (6th Cir. 2024). These statutes can be.

\* \* \*

The panel created a "collision course" where none existed in order to uphold an incorrect district court ruling that severely curtailed the Attorney General's ability to safeguard federal elections. Because Title III, the NVRA, and HAVA, correctly construed, do not conflict or prohibit the Attorney General from demanding Michigan's QVF, the Court should grant the government's petition to correct the panel's error.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' petition for rehearing en banc.

13

Dated: July 15, 2026

Respectfully submitted,

*/s/ Abhishek Kambli*
Abhishek Kambli
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
1325 Avenue of the Americas, Suite 2843,
New York, NY 10019
Phone: (646) 792-9288
Email: akambli@holtzmanvogel.com

*Counsel for the American Constitutional Rights Union*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Federal Rules of Appellate Procedure 29 and 32 and 6th Circuit Rule 32 because the brief contains 2488 words, excluding the parts that can be excluded, and has been prepared in a proportionally spaced font using Microsoft Word in 14-point Century Schoolbook font.

>  */s/ Abhishek Kambli*
> Abhishek Kambli
> *Counsel     for     the     American Constitutional Rights Union*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I filed the foregoing via ECF, which will electronically notify all counsel of record.

>  */s/ Abhishek Kambli*
> Abhishek Kambli
> *Counsel     for     the     American Constitutional Rights Union*